Avery Tam (California State Bar No. 247900)
Law Office of James Tam
428 S. Atlantic Blvd., #305
Monterey Park, CA 91754
Tel: 626-288-9922
avery.tam@gmail.com

*Attorneys for Plaintiffs:*
*Arthur Lee Alfred II, et al*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ARTHUR LEE ALFRED II et al., | Case No. 2:18-cv-08074-CBM-AS |
| Plaintiffs, | **PLANITIFFS ARTHUR LEE ALFRED II'S, EZEQUIEL MARTINEZ, JR.'S AND TOVA LAITER'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| THE WALT DISNEY COMPANY et al., | |
| Defendants. | Judge:    Hon. Consuelo B. Marshall<br>Date:     January 8, 2019<br>Time:     10:00 a.m.<br>Crtrm.:    8B |

## TABLE OF CONTENTS

**Page**

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**…...............................06


II.     **ARGUMENT**

A. Applicable Legal Standards

1. 12(b)(6) Standard for Dismissal………………………………………06

2. Extrinsic Standard …………………………………………………07

(a) Inverse Ratio Rule ………………………………………09

B. Unprotectable Elements …………………………………………………..11

C. Plaintiffs Screenplay was Original, and Owned by Plaintiffs and Defendants

had Access …………………………………………………………..13

D. The Screenplay and the Pirates of the Caribbean Pictures are Substantially

Similar as a Matter of Law……………………………………………………14

1. The Works are Strikingly Similar …………………………………15

(a) Plot ………………………………………………………15

(b) Theme ……………………………………………………16

(c) Dialogue …………………………………………………17

(d) Mood ……………………………………………………19

(e) Setting ……………………………………………………20

(f) Character  ……………………………………………….....21

(g) Pace and Sequence of Events ……………………………24


III.    **CONCLUSION** ……………………………………………………………26

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.,*
    583 F.2d 426, 429–30 & n. 2 (9th Cir.1978)0…………………………………….. 07

*Ashcroft v. Iqbal,*
    556 U.S. 662, 679 (2007) …………………………………………………………07

*Balistreri v. Pacifica Police Dept.,*
    901 F.2d 696, 699 (9th Cir.1988) ………………………………………………06

*Baxter v. MCA, Inc.,*
    812 F.2d at 425 (9th Cir. 1987) ………………………………………………11

*Berkic v. Crichton,*
    761 F.2d 1289, 1293 (9th Cir. 1985) …………………………………………08

*Branch v. Tunnel,*
    14 F.3d 449, 454 (9th Cir.1994)…………………………………………….....10

*Buraye v. Equifax,*
    625 F.Supp.2d 894, 896–97 (C.D.Cal.2008) ………………..………………...07

*DeSoto v. Yellow Freight System, Inc.,*
    957 F.2d 655, 658 (9th Cir.1992) ………………………………………………10

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.,*
    462 F.3d 1072, 1077 (9th Cir. 2006)……………………………………………08

*Gadh v. Spiegel*, 2014 WL 1778950, at *2 (C.D. Cal. Apr. 2, 2014) ……………………10

*Gilligan v. Jamco Development Corp,*
    108 F.3d 246, 248 (9th Cir. 1997) ………………………………………………06

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
    896 F.2d 1542, 1555 n. 19 (9th Cir.1990) …………………………………….....10

*Hogan v. D.C. Comics*
  48 F.Supp 2d 298, 309-310 (S.D.NY 1999.) …………………………………..21

*Idema v. Dreamworks, Inc.*,
  162 F. Supp. 2d 1129, 1142 (C.D. Cal. 2001) ……………………………………07

*Kouf v. Walt Disney Pictures & Television*,
  16 F. 3d 1042, 1045 (9th Cir. 1994) …………………………………………………08

*Metcalf v. Bochco*,
  294 F.3d 1069, 1073 (9th Cir. 2002) ……………………………...……………08

*Narell v. Freeman*,
  872 F. 2d 907, 909 (9th Cir 1989) …………………………………………...08

*Nimmer on Copyright* § 1303[A]..............................................................09

*Olson v. National Broadcasting Company, Co.*,
  855 F.3d at 1446, 1450 (9th Cir. 1988) …………………………………………...18

*Shame on You Productions, Inc. v. Elizabeth Banks*,
  120 F. Supp. 3d 1123 (2015) ...……………………………………………...07

*Shaw v. Lindheim*,
  919 F.2d 1353, 1356 (9th Cir. 1990) …………………………………………...08

*Sid and Marty Kroff Television Prods. Inc. v McDonalds Corp.*,
  562 F.2d at 1172 ……………………………………………………………...…13

*Summit Technology, Inc. v. High–Line Medical Instruments Co., Inc.*,
  922 F.Supp. 299, 304 (C.D.Cal.1996) ……………………………………………06

*Thomas v. Fin. Recovery Servs*.,
  No. CV 12–01339 PSG (OPx), 2013 WL  387968,  *2 (C.D.Cal. Jan. 31,  2013)
  ..................................................................................................................07

*Three Boys Music Corp. v. Bolton*,
     212 F.3d 477, 485 (9th Cir. 2000)……………………………………………………09


*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
     715 F.2d 1327, 1329-30 (9th Cir.1983 ……………………………….……………12

**RULES**

Rule 12(b)(6) ……………………………………………………………………………...06

**OTHER AUTHORITIES**

The Curse of the Black Pearl Official Trailer:
https://www.imdb.com/title/tt0325980/videoplayer/vi2529559321?ref_=vp_pl_1


News Article on the Changes to Disney's Pirates of the Caribbean theme park ride:
https://www.latimes.com/entertainment/la-ca-mn-disneyland-pirates-timeline-20170707-htmlstory.html


YouTube Video of Disney's Pirates of the Caribbean theme park ride in 1997:
https://www.youtube.com/watch?v=qw4CMqFQS_k

## INTRODUCTION AND SUMMARY

Defendants Motion to Dismiss Plaintiffs Complaint (the "Motion") should be denied and/or Plaintiffs should be afforded the opportunity to amend their complaint.  The Plaintiffs have sufficiently and plausibly pled that the works at issue—Plaintiffs' *Pirates of the Caribbean* screenplay (the "Screenplay"), and Disney's five *Pirates of the Caribbean* motion pictures ("Disney films") share substantially similar copyrightable elements.   The Defendants have admitted original ownership by the Plaintiffs of the Screenplay and admitted that the Defendants had access to the Screenplay.  The works tell fundamentally similar stories, with many of the same characters, plot and sequence of events.   Most importantly, the works share the same main theme—supernatural undead pirates.  Plaintiffs could amend their pleadings to establish further similarity, especially if the Defendants were to provide the original screenplays for the Disney films.  The Court should deny the Motion to Dismiss and/or allow the Plaintiffs to amend their complaints after having the opportunity to view the original scripts used by the Defendants for the Disney films.

## ARGUMENT

### 12(b)(6) STANDARD FOR DISMISSAL

A 12(b)(6) dismissal would only be proper when "there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High–Line Medical Instruments Co., Inc.,* 922 F.Supp. 299, 304 (C.D.Cal.1996) (quoting *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988) *See also Gilligan v. Jamco Development Corp,* 108 F.3d 246, 248 (9th Cir. 1997) ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "). The Plaintiff's complaint establishes a set of facts that support their claim, entitling them to relief. There is little doubt that the set of

facts established by the Plaintiffs would entitle them to relief.  The Defendants had access to the Screenplay.  The works share strikingly similar theme, characters, pace and sequence of events. Where the Plaintiffs have made material allegations and a reasonable inference can be drawn from those material allegations, the Court *must* accept these material allegations as true.  *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1142 (C.D. Cal. 2001).  "A complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2007).  The determination as to whether a complaint states a plausible claim is a "content specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*.

The Defendants encourage the Court not to examine the Appendix filed with their original pleading, however, the Court may consider extrinsic evidence if the Plaintiffs relied on that extrinsic evidence in their pleading.  "It is well- settled that materials properly attached as exhibits to the complaint and matters that are subject to judicial notice may ... be considered in evaluating a motion for judgment on the pleadings." *Shame on You Productions, Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123 (2015) (quoting *Thomas v. Fin. Recovery Servs*., No. CV 12–01339 PSG (OPx), 2013 WL  387968,*2 (C.D.Cal. Jan. 31, 2013) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.,* 583 F.2d 426, 429–30 & n. 2 (9th Cir.1978); *Buraye v. Equifax,* 625 F.Supp.2d 894, 896–97 (C.D.Cal.2008)).  The Court must consider the extrinsic evidence submitted by the Plaintiffs when performing a content specific task to determine if there is a plausible claim for relief, or allow the Plaintiffs to amend their pleading to include all of the material contained in the Appendix as a reference to the similarities of the two works.

**EXTRINSIC STANDARD**

In copyright cases it is clearly established, especially in the 9th Circuit, that the extrinsic test is the only test to be employed when reviewing the Defendants Motion, and the test must be

"objective in nature" and examined in the "light most favorable to the non-moving party." *Shaw v. Lindheim,* 919 F.2d 1353, 1356 (9th Cir. 1990) (quoting *Narell v. Freeman,* 872 F. 2d 907, 909 (9th Cir 1989).  "In applying the extrinsic test, this court 'compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters'." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.,* 462 F.3d 1072, 1077 (9th Cir. 2006) quoting *Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir. 1985).

"The extrinsic test is an objective one that focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events'." *Metcalf v. Bochco,* 294 F.3d 1069, 1073 (9th Cir. 2002) quoting *Kouf v. Walt Disney Pictures & Television,* 16 F. 3d 1042, 1045 (9th Cir. 1994).  When "[T]he totality of the similarities…goes beyond the necessities of the…theme and belies any claim of literary accident" the Plaintiff's claim survives. *Shaw,* 919 F.2d at 1364.  Protectable expression includes the specific details of an author's rendering of ideas, or "the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic,* 761 F. 2d at 1293 (9th Cir. 1985).  Even the presence of multiple generic similarities and the common patterns in which they arise will help satisfy the extrinsic test.  When comparing the two works side by side, there is clearly a totality of similarities that make up concrete elements in both the Screenplay and the Disney films.

"The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element…A common "pattern [that] is sufficiently concrete…warrant[s] a finding of substantial similarity." *Metcalf,* at 1363.  The Defendants have pointed to a variety of generic or unprotectable elements in the Screenplay that are also in the Disney films.  The common pattern of these unprotectable elements, put together in a sequence of events with a common pattern establishes substantial similarity.  There is no "literary accident"

that the plot, theme, characters, pace and sequence of events from the Plaintiffs Screenplay and the finished product of the Disney films is substantially similar.  The Defendants have admitted that they had access to the Screenplay.  It is not incomprehensible to believe that this extended period of unfettered access (possession of the Screenplay over a *two* year period, *during* production of the first film, *The Curse of the Black Pearl*,)  created an opportunity for the Defendants to read the Screenplay (perhaps multiple times) and thus the Defendants work was a result of copying, not just a mere coincidence of mashing up of generic and unoriginal ideas based on pirate lore/stories or the Pirates of the Caribbean theme park ride.  Even if none of these elements are remarkably unusual in and of themselves, the fact that both scripts contain so many similar elements gives rise to a triable question of fact as to substantial similarity of protected expression. "[t]he respective plots parallel each other.... [T]he plots in both scripts share a common sequence and rhythm." "Where plot is ... properly defined as 'the "sequence of events" by which the author expresses his "theme" or "idea," it constitutes a pattern which is sufficiently concrete so as to warrant a finding of substantial similarity if it is common to both plaintiff's and defendant's works." *Nimmer on Copyright* § 1303[A], at 13–31 (quoting *Shipman v. RKO Radio Pictures, Inc.,* 100 F.2d 533, 537 (2d Cir.1938)).


### INVERSE RATIO RULE (part of extrinsic test)

"Under our case law, substantial similarity is inextricably linked to the issue of access." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).  In this case, the Defendants have admitted access to the screenplay, which is a significant factor to be considered in favor of the Plaintiffs.  See *Shaw*, at 1353, 1362.  Defendants concede that the Plaintiffs have pled sufficiently that the Defendants had access.  The Plaintiff's claim "is strengthened considerably" by the Defendant's concession of access to the Plaintiff's work. *Metcalf*, at 1075; *Shaw*, at 1361.

The Court must view the evidence in a manner most favorable to the Plaintiffs.  "after viewing the evidence and drawing inferences in a manner most favorable to the non-moving party…" *Narell v. Freeman,* 872 F. 2d 907, 909 (9th Cir 1989).

To view the evidence in a manner most favorable to the Plaintiffs and while applying the extrinsic test and filtering out unprotectable elements, the Court must examine the material contained in the Appendix provided by the Plaintiffs, which points to substantial similarities in the elements in the two works.  The Defendants have requested the Court not examine the Appendix, but only the screenplay and the finished product of the Disney films.  "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Gadh v. Spiegel,* 2014 WL 1778950, at *2 (C.D. Cal. Apr. 2, 2014);[1] See also *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). "However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment."  Gadh at 2*; See also Branch v. Tunnel,* 14 F.3d 449, 454 (9th Cir.1994).

In addition, "[w]here a motion to dismiss is granted, a district court must decide whether to grant leave to amend."   *Id*.  "Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted." *Id. See, e.g., DeSoto v. Yellow Freight System, Inc.,* 957 F.2d 655, 658 (9th Cir.1992). To not review the Appendix, prepared by the Plaintiffs as a supplemental aid to substantiate concrete elements of similarity would be tantamount to applying the extrinsic test in a light "more favorable to the Defendant" and not the

---

[1] ** Gadh is an unpublished opinion that contains useful language regarding leave to amend and judicial notice.

Plaintiffs. [2]   Should the Court nor review the Appendix and initially favor a dismissal of the claim, they should allow the Plaintiffs to amend the Complaint to incorporate the supplemental aid of the Appendix into the Complaint.

### UNPROTECTABLE ELEMENTS

The Defendants, in their Motion, endeavor to filter out unoriginal elements or generic ideas in their comparison of the Screenplay and the Disney films.   In fact, the Defendants end up repeatedly affirming that their own films actually contain unoriginal and generic elements commonplace in stories about pirates, which would seem to make their own works not copyrightable.   Are the Defendants then stating that their own films do not have concrete expressions, but only generic elements?   The Defendants argument essentially declares that their films are generic and based on unoriginal elements and thus would not be copyrightable.   The Defendants go even further to state that the generic elements found in both the Screenplay and the Disney films historically have been generic elements in stories about pirates; such as ship captains, mutinies, swordfights, rum, ghosts and the like.   The Plaintiff's disagree with this general categorization of all the elements in the Screenplay and the Disney films.   If there is any similarity, even a small portion of the Plaintiff's work, that is similar to the Defendant's work, then "a reasonable trier of fact could find that the similarity…is not so general as to be beyond the protections of copyright law." *Baxter v. MCA, Inc.,* 812 F.2d at 425 (9th Cir. 1987).

While some (or perhaps many) of the elements that are present in both the Screenplay and the Disney films are generic and contain what could be considered historical elements in all stories about pirates or incorporate popular visual elements from the *Pirates of the Caribbean* theme park ride, there is one key theme that is not historical or common; but was unique and new to the

---

[2] The Plaintiffs would note again for the Court that the Defendants have not provided their original scripts used for the Disney films, rather a final finished product.  The extrinsic test should be applied between the scripts for an accurate comparison.  However, the Plaintiffs have shown substantial similarity between their original Screenplay and the finished product of the Disney films.

Disney films; that of the supernatural, or undead "Ghost" pirates, whose true nature is only revealed in the moonlight. These pirates are not just merely skeletons, but appear human, until it is revealed in the moonlight that they are in fact "undead." This fundamental theme in both the Screenplay and the Disney films, was in fact new to the genre of pirate storytelling. This new genre in the Disney films is strikingly similar to main theme of the Plaintiff's Screenplay. Further, *Nimmer* on Copyright §13.02[B] 2005 opines that "Striking similarity simply means that, in human experience, it is virtually impossible that the two works could have been independently created." The supernatural undead pirates that appear to be human, but in the moonlight are revealed to actually be undead or ghosts, was a fresh and original theme that originated with the Plaintiff's Screenplay and then subsequently in the Disney films. Therefore, it is impossible to believe that the two works where independently created when there is such striking similarity in the supernatural undead pirates theme in both the Screenplay and the Disney films.

The Defendants are correct that the extrinsic test is the proper legal standard for the Court to apply in the Motion to Dismiss and in comparing the two works. However, the extrinsic test must be employed from an objective viewpoint of a lay observer, not a subjective viewpoint. After applying the extrinsic test, if satisfied, then "the satisfaction of the extrinsic test creates a triable issue of fact in a copyright action…" *Shaw,* at 1359.

The Defendants, in their Motion, repeatedly use a subjective viewpoint and state their own observations or views. The Defendants appear to be attempting to plead in their Motion to Dismiss what would amount to a Motion for Summary Judgment. While the Courts may consider the Motion to Dismiss as a Motion for Summary Judgment, "Where reasonable minds could differ on the issue of substantial similarity, however, summary judgment is improper." *Twentieth Century-Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1329-30 (9th Cir.1983).

**Plaintiffs Screenplay was Original, and Owned by Plaintiffs and Defendants had Access**

Defendants have conceded access to Plaintiff's Screenplay and that the Screenplay was in the possession of the Defendants for over two years.  The Role of Access is a key part of the extrinsic test: "degree of access justifies a lower standard of proof to show substantial similarity." *Sid and Marty Kroff Television Prods. Inc. v McDonalds Corp.,* 562 F.2d at 1172.  Access has been successfully pled by the Plaintiffs and thus must be a factor that is considered *in a light favorable to the Plaintiffs,* with a lower standard of proof to show substantial similarity.

During these two years, undoubtedly, the scripts for the Disney films would have undergone several revisions.  Defendants give "screen story credit" to Jay Wolpert and Stuart Beattie.  Ted Elliott and Terry Rossio also receive "screen story and screenplay" credits.  The Defendants have not lodged with the Court any original script by Jay Wolpert, Stuart Beattie or even the revised scripts authored by Ted Elliott and Terry Rossio.  The Defendants, in their Motion, have merely lodged exhibits representing the final finished products of their films, not the original screenplays used to create the final finished product.  If only examining the finished product of the films to the Plaintiffs Screenplay, one might as well compare apples and oranges for similarities. [3]

To objectively determine if any of the Plaintiff's Screenplay was infringed upon is simply impossible without the original screenplays of the Defendants to compare to the Plaintiff's Screenplay.   The Court must also consider whether additional discovery would assist in establishing substantial similarity *Funky Films,* 462 F.3d at (9th Cir. 2006).   While the Plaintiffs assert that the final finished product of the Disney films when compared with the Screenplay sufficiently establishes substantial similarity, with the dearth of evidence provided by the

---

[3] The Plaintiffs still believe that the finished products of the films still represent elements that are substantially similar elements in the Screenplay.

Defendants, specifically the original screenplays, it is plausible that the Plaintiffs claim would be strengthened by additional discovery.

**The Screenplay and the Pirates of the Caribbean Pictures are Substantantially Similar as a Matter of Law**

Plaintiff's do not concede in their complaint that their Screenplay is based solely upon the Pirates of the Caribbean theme park ride. The Plaintiff's concede only that they were inspired to polish their original Screenplay in an effort to enhance the sale of their Screenplay to Disney. This was largely due to the Plaintiff's working at Disney on their screenplay *Red Hood* (a new twist on the Red Riding Hood fairy tale genre) and they decided to rename their original work "*Pirates of the Spanish Main*" to "*Pirates of the Caribbean*", to put a new twist on the theme park ride. The Plaintiffs believed that a new twist, a supernatural theme of undead pirates, would greatly enhance the Pirates of the Caribbean theme park ride, which in their opinion, did not have a 'story'; but was a generic/historical tour pirate ride. The Plaintiff's added some popular visual references of the Pirates of the Caribbean theme park ride into their Screenplay, as they believed that Disney would be more interested in their supernatural undead pirate story, if the Screenplay expanded on the Pirates of the Caribbean theme park ride. [4]

Plaintiff's claim alleges infringement of copyright ownership of elements in their original Screenplay that did not exist on the ride in 1999 and consequently were infringed upon and incorporated into the subsequent Disney films. While some generic elements are included in the Screenplay, there are numerous elements and ideas in the Screenplay that were not a part of the Pirates of the Caribbean theme park ride in 1999. The elements that are in the theme park ride currently, or as shown in Defendants exhibit of a "ride through", produced in 2006, have been

---

[4] The Plaintiffs actually changed the name of one of the Rascal Scoundrels to "Brigham Taylor" as a gesture of the relationship with the Disney executive and his relationship as a producer on the *Red Hood* project.

incorporated *since* the Disney films.    In fact, the ride in 1999 did not have supernatural pirates, but was based upon pirates chasing "lusty wenches" and "bloodthirsty pirates pillaging."  See: https://www.youtube.com/watch?v=SkaEFkaMkcI; https://www.latimes.com/entertainment/la-ca-mn-disneyland-pirates-timeline-20170707-htmlstory.html.

The extrinsic test, through an objective viewpoint, will confirm substantial similarity between multiple elements in the Screenplay and the Disney *Pirates of the Caribbean* films.  The Defendants have pled that the extrinsic test filters out any generic and unoriginal similar elements, however their own narrative of the extrinsic test, told primarily from a subjective viewpoint, not an objective viewpoint, bolsters the Plaintiff's claim of substantial similarities between the Screenplay and the Disney films through plot, theme, dialogue, mood, setting, characters, pace and sequence of events.  Therefore, after conducting the extrinsic test, from an objective viewpoint, if any similarity survives, then the Motion to Dismiss must be denied as a triable issue of fact was established by the extrinsic test.  *Baxter*, at 424; *Shaw*, at 1363.

**The Works are Strikingly Similar**

The Plaintiffs allege that the following are concrete examples of striking similarity between the Screenplay and the Disney Films, with regards to plot, theme, dialogue, mood, setting, characters, pace and sequence of events.

*PLOT*

The introduction of the characters of Captain Jack Nefarious and Davey Jones, sets the plot of the Screenplay:  Captain and first mate are mortal enemies who will continually battle each other over a treasure map, albeit with different intentions for the use of the treasure map.  Jack Nefarious and Davey Jones are both morally ambiguous pirates who later turn privateers. In the Disney films, Captain Barbossa and Captain Jack Sparrow are also morally ambiguous pirates. They are mortal

enemies and continually battle each other for the treasure map. Barbossa and Sparrow turn privateer during the Disney films.  However, both Jack Nefarious and Davey Jones, just like Barbossa and Sparrow, must encounter many different tribulations throughout the Screenplay and in the Disney films, to include a dreaded sea monster and supernatural pirates. The Defendants state that the Plot of the Disney *Pirates of the Caribbean* Motion Pictures "total 12 hours over five feature-length stories, telling an epic and morally ambiguous tale of piracy and supernatural monsters."  (Motion, page 12:18-19.)   However, when examining the two works, from an objective viewpoint, the plots are substantially and strikingly similar.

### THEME

The theme of the Screenplay and the Disney films are so substantially similar, any elements that are generic is immaterial and are in fact, part of a sequence of events and a pattern. The supernatural element of undead pirates is the main theme of the Screenplay, as in the Disney films.  One may only look to Disney's *The Curse of the Black Pearl* film trailer for the theme of the film: the pirates that are "not your normal demented, cruel and vicious pirates, but the moonlight shows them for what they really are, supernatural pirates who are ghosts." (*The Curse of the Black Pearl Official Trailer)* Barbosa even says to Elizabeth: 'Y*ou best start believing in Ghost stories Ms. Turner, you're in one*."  (*The Curse of the Black Pearl*, at 1:00:25.)   The beginning of *The Curse of the Black* Pearl opens with Gibbs saying to a young Elizabeth, "Cursed pirates sail these waters and you don't want to bring them down on us, do you?" (*The Curse of the Black Pearl,* at 00:55.)  This is not a film that primarily focuses a rescue of Elizabeth or a love story.  The audience is enticed to come see a new genre of pirate film based on a supernatural theme:  supernatural undead or ghost pirates.   The climax of any film is designed to resolve the film's main content.  The Screenplay opens with an epic sea battle between two ships, while Nefarious is ultimately sucked under the sea by a sea monster.  The climax of the Screenplay is

Davey Jones and Nefarious fighting in the cavern over a treasure with supernatural undead pirates battling all around them. (Screenplay, at 94)

All of the Disney films end with the climax of a supernatural conflict of some sort: *The Curse of the Black Pearl*:  Barbossa, Will and Jack are fighting in the cove while trying to return the coin to the treasure to break a supernatural curse of being undead. (*The Curse of the Black Pearl*, at 1:52:00-1:55:00.) In *Dead Man's Chest*, the Kraken is attacking the ship when Sparrow is sucked under the sea by the sea monster. (*Dead Man's Chest,* 2:10:32-2:11:03.)  In *At Worlds End*, the final climax is the whirlpool ship battles involving a God of the sea and supernatural pirates.  (At Worlds End, at 2:07:00 and 2:32.)

Indeed, while Barbossa and his crew are not trying to *find* lost treasure, like Nefarious and the Rascals, but trying to *return* it, it is in an effort to break the curse that has made them undead, a treasure unto itself.  Still, Barbossa and his crew are *seeking* treasure, the treasure that will break the curse that made them inhuman.  This search for the treasure to break the curse of being undead continues the main theme of the Screenplay and the Disney films, the supernatural undead pirates.  Therefore, the theme of searching for a treasure, whether to return the treasure or find the treasure, is central to both the Screenplay and the Disney films.

None of these feature length films are structured as a love story, but as an action film with a supernatural element as its main theme.  This is not generic or found in historical pirate stories, this is a concrete example of substantial similarity of the supernatural theme in both the Screenplay and the Disney films. The love stories are "subplots", seen in both the Screenplay and the Disney films.

***DIALOGUE***

The Screenplay has several instances of 'extended similarity of dialogue' *Olson v. National Broadcasting Company, Co*. 855 F.3d at 1446, 1450 (9th Cir. 1988).  In *The Curse of the Black Pearl:* the Black Pearl is described as "A black ship with black sails, crewed by the damned" (at 00:12:55) and in the Screenplay "His ghost sails the seas in his ghost ship." (Screenplay, at 27, 45.)  While a black ship with black sails may be common in pirate lore or pirate stories, the use of the description and visual imagery of this ship is strikingly similar.  Also, the Black Pearl is "captained by a man so evil that hell itself spat him back out." (*The Curse of the Black Pearl*, at 00:13:00.) The Screenplay similarly has dialogue: "Legend says that a big sea monster ate him and spat him out." (Screenplay, at 27, 31.) The sea monster that is depicted in the Screenplay could only have come from hell itself, making these two phrases of dialogue strikingly similar.

It is said in the Screenplay that the "ship has been attacking for 10 years and never leaves survivors." (Screenplay, at 12, 46, 48, 52, 66.) Similarly, in The *Curse of the Black Pearl* it is said that the "Black Pearl has been attacking for 10 years and never leaves survivors." (*The Curse of the Black Pearl*, at 00:29:57; 1:10:10.)

In *The Curse of the Black Pearl*, Elizabeth tells Barbossa: "Í hardly believe in ghost stories anymore."  (*The Curse of the Black Pearl*, at 00:56:44.)  The Screenplay has the Rascal Scoundrels discussing that the tale of "undead Jack" is an old seaman's tale and not real. (Screenplay, at 28,32.)

Before it is revealed that Sparrow may be undead, it is said that Jack may be a cursed pirate too; (*The Curse of the Black Pearl*, at 1:15:16) just as in the Screenplay the scoundrels say "Perhaps he be a Ghost!  Maybe he thinks he be Phantom Jack." There is additional dialogue that he is "undead Jack." (Screenplay, at 34.)

Davey Jones tries to convince a woman in the tavern that he was once a dashing, swashbuckling pirate, a talented thief.  (Screenplay, at 34.)  In the Disney films, Jack Sparrow constantly tries to convince everyone of his lore as a great pirate. (*The Curse of the Black Pearl*, at 00:18:20)

While the utterances when being slapped by women in the two works are similar and stereotypical one-liners, the situation and the theme of these two characters being slapped by women for their lifestyles is substantially similar. "You had that coming, Davey Jones!" (Screenplay, at 35.) where Jack Sparrow says, "Not sure I deserved that," followed by "I definitely deserved that." (*The Curse of the Black Pearl*, at 00:51:15 and again at 00:51:27.)   The situation of being slapped by women continues in *At Worlds End*, when Will Turner is slapped by a harlot and says "If you find him, give him a message for me", referring to Jack Sparrow.  (*At Worlds End*, at 00:21:01.) The situations and continual theme for the characters Jones and Sparrow that is strikingly similar, even if the line is a stereo-typical romantic one liner.


***MOOD***

The mood in the Screenplay is fastmoving.  The Disney films are also fast moving, even if spread over three full length feature films.  There is slapstick humor in both films.  In the Disney films, the monkey provides slapstick humor throughout, as does the characters of Pintel and Rigetti, much like the Rascal Scoundrels do in the Screenplay.

Throughout the Screenplay the emotion that is invoked when the ships manned by supernatural undead pirates or the true nature of the supernatural pirates is revealed is substantially similar to the emotion invoked during the same reveals in the Disney films, an eerie mood of something bad about to happen, revealing the ship crewed by the undead and supernatural pirates that are undead and not in fact human.

The scene of Jack Sparrows' hat in the water summoning the supernatural sea monster is the same mood that is created in the Screenplay when Davey Jones hat is seen floating in the water after the sea monster has arrived.  (*Dead Man's Chest*, at 00:16:28) (Screenplay, at 9, 10, 11, 89, 97, 98.)

The use of the black ship, black sails, fog indicating the arrival of the ship, as well as other "common" pirate symbols, while generic and unprotectable, are used in substantially the same pattern and sequence of events in both the Screenplay and the Disney films, to create a mood for the audience. (Screenplay, at 5, 26, 27, 30, 31, 32, 36, 45, 56, 57.) (*The Curse of the Black Pearl*, at 00:01:10; 00:04:46; 00:29:29; 1:23:10 and in *Dead Man's Chest,* at 21:18.)


**SETTING**

While it is historically accurate that a majority of pirate stories take place in the Caribbean, and therefore not copyrightable, what is substantially similar between the Screenplay and the Disney films is the specific settings of the scenes.  The ghost ship (*The Curse of the Black Pearl*, at 00:12:55) (Screenplay, at 27, 45); the port town (*The Curse of the Black Pearl*, at 00:29:45) (Screenplay, at 30); the cavern where the treasure is hidden (*The Curse of the Black Pearl*, at 1:08:08) (Screenplay, at 61, 65.)  It is of note that by attempting to filter out an alleged similarity, the Defendants actually detail another setting in the Screenplay of the Plaintiffs; the tribal painting on the faces is in the scenes of "*Dead Man's Chest*," where Captain Jack Sparrow is marooned on an island with natives, who have painted their faces to look like skulls. [5]  (*Dead Man's Chest*, at 23:28:00), (Screenplay, at 46.)

---

[5] Captain Jack Sparrow is marooned on this island by Barbossa, substantially similar in idea to Nefarious kicking Jones off the boat and marooning him to the sea and leaving him for dead.

*CHARACTER*

When it comes to characters, the court looks at "the totality of attributes and traits as well as the extent the defendant's characters capture the total concept and feel of figures in the Plaintiff's works." *Hogan v. D.C. Comics* 48 F.Supp 2d 298, 309-310 (S.D.NY 1999.)   The totality and attributes and traits of the Defendant's characters is captured by the total concept and feel of the characters in the Screenplay as follows:

Davey Jones is morally ambiguous, opportunistic and more concerned with rum, versus piracy. (Screenplay, at 2, 24, 25,28, 29, 34, 60, 70, 71, 75, 93,102) The character of Captain Jack Sparrow is introduced as a morally ambiguous, opportunistic pirate who is more concerned with his ship, the Black Pearl, rum and women, than piracy (*The Curse of the Black Pearl*, at 10:29; 12:10; 1:36-39; 1:49; *Dead Man's Chest*, at 11:16;   12:36; 14:20; 20:56; 1:17:28; *At World's End,* at 1:11:45; 1:46:00; On *Stranger Tides*, at 2:03:38.)  It is said of Jack Sparrow in the Disney films: "He is without a doubt the worst pirate I have ever seen"; (*The Curse of the Black Pearl*, at :48:15) where in the Screenplay the Rascal Scoundrels question the reputation as a pirate of Davey Jones when saying: "the great Davey Jones, huh?  That's some legend you've got there." (Screenplay, at 23)

Jones is a drunk, disillusioned with piracy and full of regret.  Similarly, Sparrow is a drunk, disillusioned with piracy and full of regret.  Both Jones and Sparrow want to be known as "great pirates", and even encouraged at some point to be the pirates they once were or that legend claims them to be.  The Rascal Scoundrels are disappointed in Davey Jones, who is always drunk, (Screenplay, at 23) just as others are disappointed in Jack Sparrow who is always drunk (*The Curse of the Black Pearl,* at 1:01 and 1:39:00).  In the Disney films, this character

of Davy Jones is substantially similar to Captain Jack Sparrow, from both an objective and subjective view.[6]

Captain Jack Nefarious is sinister, morally ambiguous and opportunistic. Nefarious is a pirate that is more concerned with finding treasure by any means necessary, including throwing his former first mate, Davey Jones overboard while taking the ship. (Screenplay, at 3,4, 6, 66, 84, 96.)   In the Disney films, Captain Barbossa is seen as sinister, morally ambiguous and opportunistic.  Barbossa betrays Sparrow, at one-point maroons him on an island, mutinies and takes the Black Pearl. Nefarious and Barbossa both battle with Jones and Sparrow, respectively, throughout the Screenplay and the Disney films (*The Curse of the Black Pearl,* at 29:45; 38:00; 53:12; 1:07; 1:13:10; 1:55; *At World's End,* at 2:37:37.)

In the Screenplay, the Rascal Scoundrels are introduced, a ragtag crew of orphans, fiercely loyal to Davey Jones.  This crew of Rascals are immature, as seen through their slapstick humor and dialogue yet have violent tendencies as morally ambiguous, opportunistic pirates. Plaintiff's Screenplay depicts this crew led by a dissolute, charismatic pirate captain-Davy Jones. The Scoundrels, as orphaned children, are fascinated with the pirate life.  In *The Curse of the Black Pearl*, the opening scenes introduce a young Will Turner and young Elizabeth Swann (children) seen on a ship and are seen to become obsessed with pirates and the pirate life. Will is a young man obsessed with swordplay and the pirate life, and is in fact, an orphan, who ends up being led by Jack Sparrow.

Just as in the Screenplay, in a shipping port town, the crew of the Black Pearl is introduced:  all violent and morally ambiguous, opportunistic pirates.  While they are not

---

[6] The similarities between Davey Jones and Jack Sparrow was discussed in detail in the Plaintiff's Complaint and the attached appendix.

children, [7] they are very childlike and are substantially similar in character to the orphans described in the Screenplay.  The pirate crew assembled by Jack Sparrow, likewise, are fiercely loyal to Jack Sparrow.  The crew in the Disney films, while not children, are very immature, with slapstick humor, are orphans to the sea and are led by their pirate captain, Jack Sparrow. Conversely, Pintel and Ragetti provide comic relief throughout each of the first three *Pirates of the Caribbean* motion pictures but are also shown as having a very violent side.  The character Stink is described as round and plump, with a funny pudgy face, gulping down the last piece of whatever he was eating.  Stink is vile and smelly. (Screenplay, at 2, 20, 24, 25.) The character Gibbs, who is round and plump, with a pudgy face, in the Disney films, is known to sleep with pigs and Jack refers to "catching a pig" when referencing Gibbs. (*The Curse of the Black Pearl*, at 52:08; *On Stranger Tides*, at 1:42:12.)

The character of Jane in the Screenplay, is reintroduced in the shipping port town, and is more concerned with adventure on the high seas, than her love for Davey Jones.  Elizabeth is a young woman, who dreams of pirates and longs for adventure on the high seas, away from the boredom of her comfortable life as the Governors daughter. (The Curse of the Black Pearl, at 00:32-00:52; 01:21.)

The Defendants are incorrect in their analysis that the Screenplay plot dynamic with an adult pirate serving as a surrogate father to the children does not exist in the Disney films.  Jack acts a surrogate father to Will Turner, prior to Will's father is discovered to be a supernatural pirate in *Dead Man's Chest*.  Also, Barbossa, in later movies, is a surrogate father to Elizabeth and is a sort of surrogate father to his own crew.

---

[7] The reasoning for declining the script, by Brigham Taylor, was the children in the Screenplay.  The finished product of the Disney films features "adults", a pirate crew, who are substantially similar to the description of the orphan children as crew for Davy Jones.

*PACE AND SEQUENCE OF EVENTS*

The pace and sequence of events in the Screenplay is mirrored in the Disney films, admittedly over at least three feature length films.  It is disingenuous to say that the pace of the Screenplay is faster than the Disney films, when the Screenplay is just that, a Screenplay consisting of 111 pages versus a film franchise spread out over five feature length films.  Regardless, the pace in the Disney films is not slow moving and follows the same sequence of events in the Screenplay.  The sizzle reel prepared by the Plaintiffs that accompanied their Screenplay envisions a fast paced, supernatural themed feature length film.

From an objective viewpoint, the following is a synopsis of the substantial similarities of the pace and sequence of events of the Screenplay and the Disney films.[8]

The Screenplay opens with a prologue, in which a privateer ship and a pirate ship exchange cannon fire. (Screenplay, at 1.) The opening of *The Curse of the Black Pearl* shows the aftermath of a ship torn apart by cannon fire after being attacked by pirates. (*The Curse of the Black Pearl*, at 02:26-02:51.) Davy Jones is engaged in a series of battles with his arch nemesis, Captain Jack Nefarious. *The Curse of the Black Pearl* opens the same, with a ship owned by the British government discovering the character Will Turner as a child floating on flotsam after the ship he was on was ransacked and destroyed by pirates.  (We don't see the actual exchanging of cannon fire with a pirate/privateer ship, however it is told that the reason for Will Turner on the flotsam is due to the battle.)  The introduction to Jack Sparrow and Captain Barbossa is that Barbossa mutinied and kicked Jack off his own ship, for a treasure, by any means necessary, similar to Nefarious' battle with Jones on the ship and taking the ship and the treasure map, with any means necessary.

---

[8] Again, the comparison is limited to comparing the Screenplay with the finished product of the Disney films, as the Defendants have not provided for comparison the scripts that were the basis of their finished product.

The plot and sequence similarities continue when in the Screenplay the shipping port town is fired upon by cannon fire and the "supernatural" pirates are revealed, not just with painted faces as skeletons, but in the moonlight their true nature as "ghosts" is revealed. [9]   (Screenplay, at 30,32,37,46,53.)  In *The Curse of the Black Pearl*, when the crewmembers are in the port town and visit Sparrow in his jail cell, they are revealed to be supernatural pirates or "ghosts." (*The Curse of the Black Pearl,* at 37:07.)   The Defendants state in their Response that "Stitch and Dagger are not ghosts, but pirates with their faces painted to look like skulls. (*Id.* at 46.)"  Stitch and Dagger are in fact ghosts, as revealed in the Screenplay (Screenplay, at 46.)  The use of "skeleton faces" in the Screenplay is a written word implying that the pirates are supernatural undead pirates, as shown through visual imagery in the Disney films.

In the Disney film, the town of Port Royal is shown, when the town is fired upon and attacked by pirates.  This is a substantially similar element, from an objective viewpoint.  While the attacking of the towns throughout the Caribbean could be inspired by the ride, the notation and chronological order of both the Screenplay and the Disney film *The Curse of the Black Pearl* is of importance.  Both are used as introduction to the theme of the Screenplay and the Disney film of supernatural pirates and the introduction to the characters.

The introduction of the sea monster, in the Screenplay, (9, 10, 11, 89, 97, 98) mirrors so closely the introduction of the Kraken in the Disney films, (*Dead Man's Chest,* 16:20*.)*  it is difficult to see that any lay observer, from an objective or subjective viewpoint, would not find the sea monster to be substantially similar to the Kraken in the Disney films:  It is not merely just a tentacled sea monster, it is the description and expression of this sea monster in the Screenplay that is so substantially similar to the Kraken in the Disney films.  The sea monster drags both

---

[9] The Screenplay often references "skull faces"; this is not implying faces painted as skulls, but rather the moonlight reveals that the pirates are supernatural "ghosts"; substantially similar to the reveal of the supernatural "ghost" pirates in the Disney films.

Nefarious is dragged under the waves in the Screenplay, (at 11) similar to the manner that Captain Sparrow is dragged under by the sea monster in the Disney films. (*Dead Man's Chest,* at 2:15:44.)

The similarity of plot and sequence of events continue throughout the Screenplay and the Disney films to include a battle of foes, betrayal of Davey Jones and Jack Sparrow and searching for treasure and/or a treasure map.

The search for the treasure map and the treasure itself is central to both the Screenplay and the Disney films.  Both the Screenplay and the Disney films have climax with finding the treasure only to be disappointed in the outcome. (Screenplay, at 4, 24, 26, 27, 34, 61, 64, 65, 87, 91, 92, 100.)  (*The Curse of the Black Pearl*, at 39:10; 56:28; 1:08:08; 1:09:52; 1;10:03; *Dead Man's Chest*, at 8:22; 7:19; 8:45; 52:33; *At World's End*, at 52:35; 2:37:37; *On Stranger Tides*, at 1:25:38.)

Both the Screenplay and the Disney films involve redemption of the morally abmigous, opportunistic pirates—Davey Jones giving up his pirate life for his love of his crew and Jane. Will Turner giving up his life to save Jack Sparrow. Barbossa giving up piracy to become a privateer and eventually leading the film audience to see him as a "good guy."

## CONCLUSION

The Defendants have conceded that the Plaintiffs have successfully pled access by the Defendants, a key element in a copyright case.  The Defendants have not provided the original scriptss of the Disney films, thereby not allowing the Court to conduct the extrinsic test by comparing the scripts side by side with the Screenplay of the Plaintiffs, but having to conduct the extrinsic test based solely upon a comparison of the Screenplay of the Plaintiffs to the finished product, the full-length feature films, of the Defendants.

When applying the extrinsic test, the Court must answer the question: "Are the works substantially similar beyond the fact that they depict the same idea?" After applying the extrinsic test, if just one actual concrete element is shown to be substantially similar, this creates enough plausibility for the Claim of the Plaintiffs to survive a motion to dismiss and creates a triable issue of fact, for a jury to determine if substantial similarity exists between the Screenplay and the Disney films. *Shaw,* 919 F.2d at 1363.

Substantial similarity exists between the Screenplay and the Disney films. The Plaintiffs have provided an Appendix which identifies and lists concrete similar similarities in the works, as well as similarities woven together in a pattern and sequence of events. The Motion to Dismiss should be denied as the Plaintiffs have shown substantial and striking similarity, based upon their Screenplay and the elements of Plot, Sequence of Events, Pace, Theme, Mood, Setting, Dialogue, and Characters. The Defendants have admitted that they had access to the Screenplay and a triable issue of fact remains.

DATED:  November 30, 2018                    Law Office of James Tam


By: _____/s/ Avery Tam_____
Avery Tam, Esq.
Attorney for the Plaintiffs.

CERTIFICATE OF SERVICE

I hereby certify the forgoing Plaintiffs' Response to Defendants' Motion to Dismiss was filed and served via CM/ECF to all parties of interest on November 30, 2018.

_____  /s/ Avery Tam_____
                                                        Avery Tam, Esq