UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR LEE ALFRED II *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> THE WALT DISNEY COMPANY, *et al.*, <br><br> Defendants. | Case No.: CV 18-8074-CBM-ASx <br><br> **ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT [JS-6]** |

The matter before the Court is Defendants' Motion To Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 78.)

## I.  BACKGROUND

This is a copyright infringement action wherein Plaintiffs assert five "claims" for copyright infringement under the federal Copyright Law Act: (1) "Infringement of Copyright (Reproduction of Copyrighted Work)"; (2) "Infringement of Copyright (Preparation of Derivative Works)"; (3) "Infringement of Copyright (Distribution of Copyrighted Work)"; (4) "Infringement of Copyright (Public Performance of Copyrighted Work"); and (5) "Infringement of Copyright (Public Display of Copyrighted Work)."  Plaintiffs allege Defendants' five feature films (i.e., (1) *Pirates of the Caribbean: The Curse of the Black Pearl*; (2) Pirates *of the Caribbean: Dead Man's Chest*; (3) *Pirates of the Caribbean: At*

1

*World's End*; (4) *Pirates of the Caribbean: On Stranger Tides*; and (5) *Pirates of the Caribbean: Dead Men Tell No Tales*) infringe Plaintiffs' screenplay entitled *Pirates of the Caribbean* (the "Screenplay").

## II. STATEMENT OF THE LAW

### A. Fed. R. Civ. Proc. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal of a complaint can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). On a motion to dismiss for failure to state a claim, courts accept as true all well-pleaded allegations of material fact and construes them in a light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008). A court may consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, matters properly subject to judicial notice, and materials whose contents are alleged in the complaint, in ruling on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Thomas v. Walt Disney Co.*, 337 Fed. App'x. 694, 694-95 (9th Cir. 2009); *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).[1] To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If a complaint cannot be cured by additional factual allegations, dismissal without leave to amend is proper. *Twombly*, 550 U.S. at 555.

---

[1] Plaintiffs' Screenplay was attached as an exhibit to the Complaint (Dkt. No. 1-1), and therefore the Court has considered the Screenplay for purposes of the instant Motion.

**B.  Copyright Infringement**

"To state a claim for copyright infringement, [Plaintiffs] must plausibly allege two things: (1) that [they] owns a valid copyright in [the work], and (2) that [Defendants] copied protected aspects of [Plaintiffs' work]." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018) (citations omitted).  The second element has two distinct components: "copying" and "unlawful appropriation." *Id.* "When the plaintiff lacks direct evidence of copying, he can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Id.* at 1117. "Such proof creates a presumption of copying, which the defendant can then attempt to rebut by proving independent creation." *Id.*

"To prove unlawful appropriation, . . . the similarities between the two works must be substantial and they must involve protected elements of the plaintiff's work." *Id.* "[W]hether works are substantially similar involves a two-part analysis consisting of the extrinsic test and the intrinsic test." *Id.* at 1118 (internal quotations and citations omitted).  A plaintiff must satisfy both components, and therefore a lack of extrinsic similarity is fatal to a plaintiff's copyright case as a matter of law.  *White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 476-77 (9th Cir. 2014) (citing *Funky Films, Inc.,* 462 F.3d at 1081).[2]

The extrinsic test "is objective in nature.  '[I]t depends not on the responses of the trier of fact, but on specific criteria which can be listed and analyzed.'  The extrinsic test focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two works.  In applying the extrinsic test, this court 'compares, not the basic plot ideas

---

[2] The court may determine that the works are not substantially similar as a matter of law by on a motion to dismiss by applying the objective extrinsic test.  *See White*, 572 F. App'x at 476-77; *Thomas*, 337 F. App'x. at 694-95; *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1150-71 (C.D. Cal. 2015), *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017).

for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters.'" *Funky Films,* 462 F.3d at 1081 (citations omitted). "Familiar stock scenes and themes that are staples of literature are not protected." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002). In addition, "[s]cenes-à-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement." *Id.* "Therefore, when applying the extrinsic test, a court must filter out and disregard the non-protectable elements in making its substantial similarity determination." *Id.* at 822-23.[3] The Court need not explain in its analysis every alleged similarity in a copyright infringement case and may properly disregard alleged similarities that are not protectable. *White*, 572 F. App'x at 477 (citing *Funky Films*, 462 F.3d at 1077 ("[W]e filter out and disregard the non-protectable elements in making [our] substantial similarity determination.")).[4]

### III. DISCUSSION

**A. Judicial Notice**

Defendants request that the Court take judicial notice of the following:

 1. The motion picture *Pirates of the Caribbean: The Curse of the Black Pearl* (Rosen Decl. Ex. 1);

---

[3] *See also Shaw v. Lindheim,* 919 F.2d 1353, 1361 (9th Cir. 1990) (applying the extrinsic test to determine "whether there is substantial similarity between the *protected* expression of ideas in two literary works"); *Berkic*, 761 F.2d at 1293-94 (rejecting consideration of general ideas as well as scènes-à-faire in determining substantial similarity under the extrinsic test).

[4] The intrinsic test is a subjective comparison that focuses on "whether the ordinary, reasonable audience would find the works substantially similar in the "total concept and feel of the works." *Cavalier*, 297 F.3d at 822 (internal quotations and citations omitted). "[T]he intrinsic test for expression is uniquely suited for determination by the trier of fact." *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1166 (9th Cir. 1977). Accordingly, where the plaintiff satisfies the extrinsic test, "the intrinsic test's subjective inquiry must be left to the jury and [any dispositive motion] must be denied." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).

2. The motion picture *Pirates of the Caribbean: Dead Man's Chest* (*id.*, Ex. 2);

3. The motion picture *Pirates of the Caribbean: At World's End* (*id.*, Ex., Ex. 3);

4. The motion picture *Pirates of the Caribbean: On Stranger Tides* (*id.*, Ex., Ex. 4);

5. The motion picture *Pirates of the Caribbean: Dead Men Tell No Tales* (*id.*, Ex., Ex. 5); and

6. Excerpts from the book *Pirates of the Caribbean: From the Magic Kingdom to the Movies* (2005) by Jason Surrell (*id.*, Ex. 6); and

7. two DVDs containing audio and video footage of Disney's Pirates of the Caribbean theme park rides at Walt Disney World as it existed in July and August 2005 (Parras Decl. ¶¶ 3-6, Exs. 1 & 2).

(Dkt. No. 79 ("RJN").) Plaintiffs did not file an objection to Defendants' request for judicial notice.

The Court **GRANTS** Defendants' RJN as to the motion pictures and DVDs which include audio and/or visuals of the Disneyland and Disney World Pirates of the Caribbean theme park rides because they are incorporated by reference into the Complaint. (*See* Compl. ¶¶ 51, 52.)[5] The Court **DENIES** Defendants' RJN as to the book *Pirates of the Caribbean: From the Magic Kingdom to the Movies* (2005) by Jason Surrell (Ex. 6) because neither the book nor its contents are

---

[5] *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."); *Thomas*, 337 F. App'x at 695 ("the district court properly considered materials whose contents [plaintiff] alleged in her complaint" (i.e., *Finding Nemo* movie) in finding as a matter of law that plaintiff's literary work was not "substantially similar" to defendants' animated movie and granting defendant's motion to dismiss plaintiff's copyright infringement action); *Gilbert v. New Line Prods., Inc.*, 2010 WL 891333 (C.D. Cal. Feb. 17, 2010), *aff'd* 490 F. App'x 34 (9th Cir. 2012) (taking judicial notice of the screenplays plaintiff alleged were infringed, as well as defendants' allegedly infringing movie, where there were "no disputes as to the authenticity of the works").

alleged or referenced in the Complaint.

**B.    Copyright Infringement**

Defendants move to dismiss Plaintiffs' copyright infringement claims solely on the ground the parties' works are not substantially similar as a matter of law.[6]

**(1)    Inverse Ratio Rule**

Plaintiffs contend the Court must apply the inverse ratio rule in analyzing whether the works are substantially similar because Defendants have admitted access to the Screenplay. Under the "inverse ratio rule," "a lower standard of proof of substantial similarity is required when a high degree of access is shown." *Skidmore for Randy Craig Wolfe Tr. v. Led Zeppelin*, 905 F.3d 1116, 1130 (9th Cir. 2018) (internal quotations and citation omitted). However, the rule "assists only in proving copying, not in proving unlawful appropriation," and "[t]he showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown." *Id.* Therefore, "[t]he inverse ratio rule has no bearing" in analyzing whether the works are substantially similar for purposes of determining unlawful appropriation. *Rentmeester*, 883 F.3d at 1125. Accordingly, the inverse ratio rule is irrelevant here in determining whether the parties' works are substantially similar under the extrinsic test.

**(2)    Substantial Similarity**

To determine whether there is substantial similarity among the parties' works, the Court must apply an extrinsic analysis of "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the works. *Funky Films*, 462 F.3d at 1081. The Court's objective comparison of the parties' works under the extrinsic test is set forth below.

**a.    Plot and Sequence of Events**

The Complaint alleges a single purported similarity as to the plot of the

---

[6] Defendants do not dispute Plaintiffs sufficiently allege ownership of the Screenplay and access for purposes of the instant Motion.

6

works: "Supernatural 'cursed' pirates or 'skull faced' pirates." (Compl. Ex. 5.) The idea of cursed pirates is scenes-a-faire and unprotectable. Even if such an idea could be protectable, the Complaint alleges that the Screenplay incorporated "the basic elements of the *Pirates of the Caribbean* ride." (Compl. ¶ 26.) The Disney theme park rides on which the Screenplay is based feature skeletal pirates who speak, steer ships, and find treasure. (*See* RJN Ex. 6.) Moreover, in Defendants' first film *Pirates of the Caribbean – Curse of the Black Pearl*, Barbossa and his crew's bodies are skeleton when they appear in moonlight—whereas Jack Nefarious and his crew have skull faces all the time regardless of whether they are in moonlight. Therefore, Plaintiffs' infringement claims cannot be based on the fact that the works include pirates who are skull-faced or skeletal.[7]

    Plaintiffs also allege the works are similar because they include treasure maps, ghost pirates, the "undead," the supernatural, ships flying black sails, skeletons, privateers, naval attacks, dark fog, the "pirate code," ghosts, and sea monsters.[8] These alleged similarities, however, are "unprotectable elements" because they are "familiar stock scenes, and characteristics that flow naturally from the works' shared basic plot premise" regarding pirates.[9]

---

[7] *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010) ("[S]cenes a faire (standard features) and unoriginal components aren't protectable."); *id*. at 917 (noting that the fact that works both included "stuffed, cuddly dinosaurs" is "not the sort of similarity we look for in copyright law" because "[s]ubstantial similarity for copyright infringement requires a similarity of expression, not ideas," and finding defendant's Bratz dolls "can't be considered substantially similar to Bryant's preliminary sketches simply because the dolls and sketches depict young, stylish girls with big heads and an attitude").

[8] While the Complaint alleges these purported similarities, the Complaint does not specifically allege that these purported similarities are similarities in plot.

[9] *See Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) (finding the screenplay and film were not substantially similar under the extrinsic test despite the fact that both were premised on an American war veteran going to Japan to help the Imperial Army by training it in the methods of modern Western warfare for its fight against a samurai uprising; both had protagonists who are authors of non-fiction studies on war and who have flashbacks to battles in America; both included meetings with the Emperor and numerous battle scenes; both were reverential toward Japanese culture; both featured the leader of the samurai rebellion as an important foil to the protagonist; and in both works the American protagonist is spiritually transformed by his experience in Japan); *see*

1    Moreover, an objective analysis of the works demonstrates the plot and
2 sequence of events in Plaintiffs' Screenplay and Defendants' films are not
3 substantially similar. Plaintiffs' Screenplay is based on Davey Jones, a group of
4 orphans named the Rascal Scoundrels, and Davey Jones' love interest Jane, who
5 are in pursuit of a map leading to treasure. After battling with Jack Nefarious who
6 has one half of the treasure map, Jones ultimately gives up the treasure for Jane
7 and the orphans, whom Jones and Jane then raise as their own children.
8    Defendants' Films do not focus on a search for treasure. The plot of
9 Defendants' first film, *Pirates of the Caribbean – The Curse of the Black Pearl*, is
10 about returning treasure Captain Barbossa and his crew found to end a curse they
11 were put under when they stole the treasure. (*See also* Plaintiffs' Opposition at 17
12 (acknowledging that "Barbossa and his crew are not trying to *find* lost treasure,
13 like Nefarious and the Rascals, but trying to *return* it").[10]  Defendants' second
14 film, *Pirates of the Caribbean – Dead Man's Chest*, focuses on characters trying
15 to break curses and pay debts owed – Jack Sparrow and Bill Turner's debts owed
16 to Davey Jones—and Barbossa's attempt to seek revenge on Davey Jones who
17 took the Black Pearl from him. Defendants' third film, *Pirates of the Caribbean –*
18 *At Worlds' End*, focuses on saving Jack Sparrow, the characters' attempt to defeat

---

*also Funky Films*, 462 F.3d at 1077-78 (finding the works were not substantially similar in plot despite the fact that the works both included an older brother who moved home from a distant city, was creative in contrast to his conservative younger brother, and initially had no interest in becoming involved in the family business; both works included a business was financially fragile; both included a rival funeral home which attempted to take over the home but failed; and both included a younger brother who changed his church affiliation in order to increase their client base, reasoning a closer examination of the works revealed one to be essentially a murder mystery and the other to be a study of "the way the characters struggle with life in the wake of the cataclysmic death of [their] father").

[10] Plaintiffs argue the plot of parties' works both feature a search for treasure because Plaintiffs' Screenplay depicts Nefarious, Davey Jones, and the Rascal Scoundrels are searching for treasure to keep it, and Defendants' first film depicts Barbossa and his crew searching for treasure in order to return it. Pirates searching for treasure, however, is unoriginal and generic, and therefore unprotectable. *See Mattel*, 616 F.3d at 913 ("[S]cenes a faire (standard features) and unoriginal components aren't protectable.").

Davey Jones, and Will Turner's attempt to free his father from the curse tying him to the Flying Dutchman. Defendants' fourth film, *Pirates of the Caribbean - On Stranger Tides*, focuses on the characters' race to find the Fountain of Youth. Defendants' fifth film, *Pirates of the Caribbean – Dead Men Tell No Tales*, again focuses on attempts to break the curses at sea.

Accordingly, the parties' works are not substantially similar as to plot or sequence of events under the extrinsic test because "a closer inspection reveals that they tell very different stories." *Benay*, 607 F.3d at 625.[11]

### b. Characters

The Complaint alleges the key characters in the Screenplay are delineated and consistent, widely identifiable with several of the character and characters of [Defendants'] *Pirates* franchise." (Compl. ¶ 71, Ex. 5.)

1. <u>Defendants' Jack Sparrow / Plaintiffs' Davey Jones</u>

The Complaint alleges Defendants' Captain Jack Sparrow character is "substantially similar" to the character Davey Jones in Plaintiffs' Screenplay because Jack Sparrow is repeatedly portrayed in Defendants' Films as "funny, not feared," "repeatedly referred to as a 'good man,'" cocky but with a "heart of gold," and a drunk who loves rum, and Plaintiffs' Davey Jones is a dashing young rogue," clean-shaven, hair pinned back in a tail," with "unsurpassed" talents in piracy who is cocky and brave, and a drunk. (Compl. ¶ 13, Ex. 5; Screenplay at 2, 29, 79.) However, cockiness, bravery, and drunkenness are generic, non-distinct characteristics which are not protectable.[12]

---

[11] *See also Wild v. NBC Universal*, 513 F. App'x 640, 642 (9th Cir. 2013) ("[R]andom similarities scattered throughout the works . . . are insufficient to support a claim of substantial similarity."); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 844 (C.D. Cal. 2010), *aff'd sub nom., Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011) (finding no substantial similarity in plot where many of the elements pointed out by plaintiff were not similar when viewed in context, and those that did "bear some commonality—e.g., lottery winnings, prison time, paying off debts—[did] not occur in the same sequence").

[12] *See DC Comics v. Towle*, 802 F.3d 1012, 1019 (9th Cir. 2015) ("[C]opyright protection is available only for characters that are especially distinctive. To meet

Moreover, Plaintiffs' Davey Jones character and Defendants' Jack Sparrow character are not substantially similar based on an objective analysis of the works. As to their appearance, Plaintiffs' Davey Jones is described as a "dashing young rogue," clean-shaven, hair pinned back in a tail (Screenplay 79), whereas Defendants' Jack Sparrow is never clean shaven, has facial hair, is dirty, has his hair in dreadlocks and wears a black hat, and his hair is never pinned back. Plaintiffs' Davey Jones character ultimately gives up the treasure he has been pursuing for love, to raise orphan children, and to return to life as a privateer with his newfound family at his side. Defendants' Jack Sparrow never renounces his piracy, does not have an equivalent love interest, does not care for children, is willing to sacrifice everything to be captain of his beloved Black Pearl ship, and continues to live the life of a pirate.

2. Plaintiffs' Jack Nefarious / Defendants' Captain Barbossa

The Complaint alleges Defendants' Captain Barbossa character is substantially similar to Plaintiffs' Jack Nefarious character because Barbossa is introduced in Defendants' first film *The Curse of the Black Pearl* in a black outfit with a black hat, a twisting mustache and goatee, with sunken eyes, and left eye twitching. (Compl. Ex. 5.) In objectively comparing the works, however, Barbossa is introduced in the film dressed in dark pirates clothing with a white collar and a dark feathery hat with a pet monkey on his shoulder, he has a scraggly

---

this standard, a character must be sufficiently delineated and display consistent, widely identifiable traits.") (internal quotations and citations omitted); *Mattel*, 616 F.3d at 917 (noting that the fact that works both included "stuffed, cuddly dinosaurs" is "not the sort of similarity we look for in copyright law," and finding defendant's dolls "can't be considered substantially similar to Bryant's preliminary sketches simply because the dolls and sketches depict young, stylish girls with big heads and an attitude"); *see also Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1115 (N.D. Cal. 2010) ("[T]he characters generically labeled in the Complaint only as a 'cocky kid' and an 'older mentor' are not protected by copyright law. Moreover, the Court does not find anything outside of the two characters' generic cocky attitude to be similar."); *Esplanade Prods., Inc. v. Walt Disney Co.*, 2017 WL 5635027, at *10 (C.D. Cal. Nov. 8, 2017) (the fact that both works had characters "acting bravely and determinedly to help others in trouble" was unprotectable).

1  mustache and beard, and yellowish eyes, but his left eye does not twitch.
2  Plaintiffs' character Jack Nefarious, on the other hand, is introduced in the
3  Screenplay as "[a] distinguished naval officer and pirate hunter with a savage
4  instinct and sinister nature.  You'd hesitate to call him the good guy," and his "left
5  eye twitches." (Screenplay at 1-2.)  Later in the Screenplay, Nefarious is
6  described as "[p]ale," "[e]yes sunken in like a century old dead man," with a
7  "dark, twisting mustache with a curving goatee, makes him look more like a
8  devil," "clad in a black baroque pirate suit, he is charismatic in an evil way."
9  (Screenplay at 47.)  Moreover, any similarities between the characters based on
10 wearing dark pirate clothing and having facial hair are generic and unprotectable.
11       Plaintiffs also allege Barbossa and Nefarious are substantially similar
12 because Barbossa is "not a bargainer." (Compl. Ex. 5.)  This characterization of
13 Barbossa is inaccurate because Barbossa bargains numerous times throughout
14 Defendants' Films, including for his own life and the life of his crew.
15       Plaintiffs also allege Barbossa and Nefarious are substantially similar
16 because Barbossa was Jack Sparrow's first mate and betrayed him.  (Compl. Ex.
17 5.)  Although Barbossa was Jack Sparrow's first mate, Barbossa led a mutiny to
18 overtake the Black Pearl (Jack Sparrow's ship) and marooned Jack Sparrow on an
19 island alone.  Barbossa and Jack Sparrow continually fight over being captain of
20 the Black Pearl, and Barbossa ultimately sacrifices himself, with the help of Jack
21 Sparrow who gives him a sword, to save his daughter Carina from Captain
22 Salazar. In Plaintiffs' Screenplay, Jack Nefarious is captain of a privateer ship
23 which takes control of Davey Jones' pirate ship, but Nefarious shoots his own first
24 mate, turns on his crew, and shoots his own privateer ship which causes it to
25 explode and sink in the ocean because Nefarious and Davey Jones have a deal
26 regarding finding treasure.  It is revealed that Davey Jones was Nefarious's first
27 mate, and Davey allows Nefarious to take command of the ship because Nefarious
28 has the other half of the treasure map.  Davey Jones does not maroon Nefarious on

an island; instead Nefarious tries to take Jones' half of the map but is pulled into the ocean by the tentacle of a sea monster. Nefarious later returns as "Phantom Jack" in search of Davey Jones's half of the map and the treasure. When they find the treasure, the cavern floods with water, Phantom Jack is swallowed by a sea monster, and Davey, Jane, and the orphans escape.

Accordingly, Plaintiffs' Jack Nefarious character and Defendants' Barbossa character are not substantially similar under the extrinsic test.

### 3. Plaintiffs' Rascal Scoundrels and Jane

Six orphan children named the Rascal Scoundrels are main characters in Plaintiffs' Screenplay. Moreover, the female lead in Plaintiffs' Screenplay is Jane, Jones' love interest, who is depicted as a young, beautiful woman with long red hair, whose background is not revealed in the Screenplay. (Screenplay at 8.) Davey Jones ultimately gives up all the treasure for a future with Jane raising the Rascal Scoundrels. Defendants' Films, however, do not include a group of orphan children and have no equivalent to Plaintiffs' Jane character.

Accordingly, there is no substantial similarity as to the characters of the parties' works under the extrinsic test.[13]

### c. Themes

The Complaint alleges the works are similar in theme because "10 years" is mentioned in Defendants' first film *Pirates of the Caribbean – The Curse of the Black Pearl*, and "is a continuing theme of time in the films," and the time period of ten years also appears three times in the Screenplay. (Compl. Ex. 5.) In Defendants' Films, the captain of the Flying Dutchman is cursed and can only go

---

[13] *See, e.g., Benay*, 607 F.3d at 627 (finding no similarity among characters where there were "a number of important characters in the Film and the Screenplay who have no obvious parallel in the other work"); *Funky Films*, 462 F.3d at 1078-79 (finding no similarity in characters where several central characters in defendants' work were "[c]ompletely missing" from or had "no counterpart" in plaintiff's work); *Bernal*, 788 F. Supp. 2d at 1070 (finding no substantial similarity in characters where one is clearly the main character and the other is "one of four main characters that are central to the progression of the series").

on land once every 10 years. In the Screenplay, 10 years pass between the first scene and the second scene when the Rascal Scoundrels are introduced, Jane says, "ten years later you show up only to say you still love me," and Jack tells the Rascal Scoundrels that "[f]or ten years the Phantom [Jack] has stopped at nothing to get that treasure." Accordingly, any theme regarding "10 years" as depicted in the parties' works is not substantially similar, and the concept of 10 years is generic and not protectable.

The Complaint also alleges the parties' works are similar as to theme because they both include betrayal. (Compl. Ex. 5.) Mutiny and betrayal, however, are generic stock themes and flow naturally from the premise of pirates and ships, and therefore unprotectable.[14] Moreover, while Plaintiffs' Screenplay portrays Davey Jones as Jack Nefarious's first mate, Davey Jones does not lead a mutiny against Nefarious. In contrast, in Defendants' Films, Captain Barbossa was Jack Sparrow's first mate, but led a mutiny to overtake Jack's ship and marooned Jack on an island. Accordingly, the idea of "betrayal" in the parties' works is not depicted in a substantially similar manner.[15]

The Complaint also alleges the works are similar in theme because the main character in the parties' works "will be free, a privateer in the employ of England." (Compl. Ex. 5.) Defendants' Jack Sparrow character, however, never becomes a privateer in Defendants' Films and continues living the life of the pirate, whereas Plaintiffs' Davey Jones character gives up treasure and piracy to become a privateer and raise orphans with his love interest Jane.

Based on an objective analysis of the works under the extrinsic test, the

---

[14] *See Benay*, 607 F.3d at 627 (noting that although both works "explore general themes of the embittered war veteran, the 'fish-out-of water,' and the clash between modernization and traditions, . . . those themes arise naturally from the premise of an American war veteran who travels to Japan to fight the samurai" and were therefore unprotectable).

[15] *See, e.g., Gable*, 727 F. Supp. 2d at 844 (finding no substantial similarity where many of the elements pointed out by plaintiff were not similar when viewed in context).

1  Court finds the themes of the works are not substantially similar. The main theme
2  of Plaintiffs' Screenplay is the cost of treasure and piracy,[16] and the realization
3  that love and family are worth more than treasure.[17] Defendants' Films include
4  themes regarding the costs of love,[18] and Defendants' main character Jack
5  Sparrow never gives up piracy for love, children, or family. Moreover, not all
6  pirates are evil in Defendants' Films (e.g., Will becomes a pirate but is not
7  portrayed as evil) and some of the privateers/non-pirates featured in Defendants'
8  works are evil or morally corrupt (e.g., privateers for the East India Trading
9  Company and Lord Becket, Captain Salazar). Furthermore, unlike in Plaintiffs'
10 Screenplay where the privateers prevail, in Defendants' film *Pirates of the*
11 *Caribbean: At World's End,* Lord Becket and the privateers aboard his ship are
12 killed by pirates.
13     Accordingly, the themes of the parties' works are not substantially similar
14 under the extrinsic test.

### d. Dialogue

16 Plaintiffs fail to demonstrate "extended similarity in dialogue" in the works
17 as required for the works to be substantially similar. *Shame on You Prods.*, 120 F.
18 Supp. 3d at 1156.[19] Plaintiffs' Screenplay does not include dialogue similar to the

---

[16] I.e., Nefarious dies because he orders his men to collect the jewels in the cavern, which causes the cavern to flood; the Rascal Scoundrels believe everything bad happened because they wanted to be pirates; Jane feels betrayed by Davey Jones because he hesitates when Captain Nefarious tells him to choose between Jane or the treasure map.

[17] I.e., Davey Jones gives up gold, diamonds and jewels, and the life of the pirate, in exchange for a future as a family with Jane and the orphans, and returns to life as a privateer.

[18] I.e., Davey Jones cuts his heart out because he cannot endure the pain of loving Calypso; Bill Turner foolishly wages his soul for an eternity of servitude aboard the Flying Dutchman to try to save his son Will from losing to Davey Jones in a dice game only to realize that Will was playing the game to find where Davey Jones carried the key to the chest holding his heart which would free Bill Turner; Jack seduced Angelica just before she was going to take a vow to become a nun, Angelica professes her love for Jack but he strands her on an island because he is afraid she will seek revenge for her father Blackbeard's life.

[19] *See also Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988)

1  dialogue from Defendants' Films referenced in the Complaint.[20]  While the Court
2  notes a few instances of similar dialogue based on its objective review of the
3  works, such dialogue appears in different contexts, are made by different
4  characters, and/or are unoriginal because they are identical or substantially similar
5  to portions of the theme song from Disney's Pirates of the Caribbean theme park
6  ride.[21]  Therefore, the parties' works are not substantially similar in dialogue under
7  the extrinsic test.[22]

### e. Mood

While the parties' works include dark scenes involving pirate battles and sea monsters, the mood flowing from these scenes is unprotectable because it flows "naturally from unprotectable basic plot premises" involving pirates.[23] Moreover, although Plaintiffs' Screenplay includes skull-faced pirates and a Phantom Captain Jack, sword fights, and violence, the mood of the Screenplay is more lighthearted, some of the Rascal Scoundrels repeatedly provide comedic relief in the form of slapstick comedy,[24] and the Screenplay ends with Davey

---

(finding no "extended similarity of dialogue [as] needed to support a claim of substantial similarity"); *Gable*, 727 F. Supp. 2d at 847-48 (noting that "plaintiff must demonstrate 'extended similarity of dialogue'" to support a claim of substantial similarity based on dialogue, and finding that no reasonable jury could conclude that works are substantially similar where, *inter alia*, there was no similar dialogue between works).

[20] The Complaint also cites to numerous purported similarities in dialogue among the works which are not actually dialogue.  (*See* Compl. Ex. 5.)

[21] Plaintiffs state in their opposition that "some (or perhaps many) of the elements that are present in both the Screenplay and the Disney films are generic and contain what could be considered historical elements in all stories about pirates or incorporate popular visual elements from the *Pirates of the Caribbean* theme park ride."

[22] *See Cavalier*, 297 F.3d at 824-25 (finding no triable issue of fact on the issue of whether parties' works were substantially similar under the extrinsic test where, *inter alia*, the works differed "markedly" in dialogue).

[23] *See Shame on You Prods.*, 120 F. Supp. 3d at 1158 ("Thus, Shame on You cannot demonstrate there is substantial similarity in mood by arguing that both works are light-hearted comedies that involve a walk of shame" because such a "general mood . . . flows naturally from unprotectable basic plot premises" and is not entitled to protection).

[24] E.g., Clumsy who constantly knocks things over, falls, breaks things; Stink who

15

Jones and Jane kissing with the orphans proudly alongside them. The mood of Defendants' Films is much darker, and Defendants' Films include more violence such as execution scenes. Accordingly, the mood of the parties' works is not substantially similar under the extrinsic test.[25]

### f. Setting

Plaintiffs argue the setting of the parties' works is substantially similar because the works take place primarily aboard ships in the Caribbean, and are set in a "ghost ship" and cavern. The Complaint, however, alleges Plaintiffs' Screenplay incorporated "the basic elements of the *Pirates of the Caribbean*

---

emits an odor, passes gas, and is constantly made fun of because of his stench; and Snooze who falls asleep anywhere.

[25] *See, e.g., Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1180–81 (C.D. Cal. 2016) (finding plaintiffs' screenplay is a dark drama, set primarily at night, replete with examples of unredeemed moral corruption and no humorous moments, whereas defendant's television series is a comedic drama, set primarily during the daytime, which focuses on how players spend their time during the off season and the relationships they have with their agents, teammates, and friends), *aff'd,* 713 F. App'x 626 (9th Cir. 2018); *Bissoon-Dath v. Sony Computer Entm't Am., Inc.*, 694 F. Supp. 2d 1071, 1083 (N.D. Cal. 2010), *aff'd sub nom., Dath v. Sony Computer Entm't Am., Inc.*, 653 F.3d 898 (9th Cir. 2011) (finding no substantial similarity in themes between the works upon noting that although "violence is not absent from plaintiffs' works, it lacks the thematic centrality and intensity seen in [defendant's work]"); *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1071 (C.D. Cal. 2017) (finding the moods of the two works were not substantially similar, reasoning "[w]hile both works are billed as comedies, *Across the Tracks* takes on a more serious mood with the overt racism and clear movement towards a message of family strength and emphasis on religion as the Johnson family deals with the inappropriate behavior of their neighbors," whereas "*Black-ish* is much more light-hearted, even ending the episode with the family dancing at Andre Jr.'s "bro mitzvah"); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1070 (C.D. Cal. 2010) (finding the moods of the two works were not substantially similar, reasoning that although both works "deal with dark subject matter, *Homeless* is a drama, while *Desperate Housewives* is a comedy," and noting that "Plaintiff's work has few humorous elements" whereas "[b]y comparison, Defendant's work is consistently funny throughout the entire show"); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1046 (9th Cir. 1994) (holding the mood of the works "differ dramatically" and were not substantially similar under the extrinsic test because one work was "a light-hearted, family adventure story" whereas the other work was "a darker adventure that spans a series of days and depicts many locations and a shoot-out"); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1114 (N.D. Cal. 2010) (finding the moods of two works not substantially similar where one contained scenes involving drug dealers and the hero chopping off his own finger while the other had "'happy upbeat overtones'").

16

ride."[26] (Compl. ¶¶ 25, 26.) Therefore, the settings of the parties' works aboard ships in the Caribbean and in a cavern are unprotectable because they flow from the natural premise of a story based on Disney's Pirates of the Caribbean theme park ride.[27] Moreover, the fact that the parties' works are primarily set aboard ships, in port towns, and in the Caribbean,[28] does not weigh heavily on the issue of substantial similarity.[29]

Having reviewed the works under the extrinsic test, the Court finds the works are not substantially similar based on any similarities in setting.

### g. Pace

Plaintiffs' work is a 111-page screenplay which depicts a fight between Davey Jones and Captain Nefarious over a treasure map, and then flashes forward 10 years to telling the story of six orphans living aboard Davey Jones' ship looking for the map and treasure, the battle between Nefarious and Jones over the map and the treasure, and concludes with Nefarious's death and Davey Jones's sacrifice of treasure in exchange for Jane and the orphans. Defendants' works include five feature films which are each over two hours long and together total more than 12 hours. Defendants' Films span over the course of many years and portray the various adventures of numerous characters including Jack Sparrow,

---

[26] Disney's Pirates of the Caribbean theme park ride features pirates finding treasure in a cavern, a skeleton pirate steering a ship, and other skeleton pirates. (RJN #7, Parras Decl. Exs. 1, 2.)

[27] *See, e.g., Shame on You Prods., Inc.*, 120 F. Supp. 3d at 1159 ("[T]he use of city streets is generic and flows from the unprotectable concept of setting a work in a city); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 824 (9th Cir. 2002) (night sky setting was unprotectable *scene a faire* where it "naturally and necessarily flows from the basic plot premise").

[28] Plaintiffs acknowledge in their opposition "it is historically accurate that a majority of pirate stories take place in the Caribbean, and therefore not copyrightable." (Opposition at 20.)

[29] *See Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990) (the fact that the works were both "set in large cities . . . do[es] not weigh heavily in our decision" on the issue of substantial similarity); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1177 (9th Cir. 2003) (any similarities in setting, such as being filmed in a secret location without any audience, was "generic and inconsequential" and therefore was not substantially similar).

1  Captain Barbosa, Will and Henry Turner, Elizabeth Swan, and Carina Smith.[30]
2  Accordingly, the parties' works are not substantially similar in pace based on the
3  Court's objective review of the works under the extrinsic test.[31]

* * *

At most, Plaintiffs have demonstrated random similarities scattered throughout the parties' works. Analyzing the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events as discussed above, the Court finds the parties' works are not substantially similar as a matter of law under the extrinsic test.[32]

## C.  Leave to Amend

Plaintiffs request that the Court "allow the Plaintiffs to amend their complaints after having the opportunity to view the original scripts used by the Defendants for the Disney films." The Complaint, however, alleges Defendants' Films (not the scripts for the films) infringe Plaintiffs' Screenplay. (*See* Compl. ¶¶ 50, 63, 77, 91, 105.) Therefore, the scripts used for Defendants' Films are irrelevant in determining whether Defendants' allegedly infringing works (i.e., Defendants' five feature films) infringe Plaintiffs' Screenplay.[33] Moreover,

---

[30] *See The Curse of the Black Pearl* (143 minutes); *Dead Man's Chest* (150 minutes); *On Stranger Tides* (136 minutes); *At World's End* (169 minutes); and *Dead Men Tell No Tales* (129 Minutes).

[31] *See, e.g., Weygand v. CBS Inc.*, 1997 WL 377980, at *8 (C.D. Cal. May 21, 1997) (pace not substantially similar where one work took place within approximately one year whereas the other work spanned over approximately twenty years).

[32] *See Rappoport v. Ovitz*, 242 F.3d 383 (9th Cir. 2000) ("Because Rappoport demonstrated only random similarities, there is no substantial similarity between the works."); *Kouf*, 16 F.3d at 1045 ("[W]e are equally unimpressed by Kouf's compilation of random similarities scattered throughout the works.") (internal quotations omitted); *Zella*, 529 F. Supp. 2d at 1137 (granting summary judgment for defendants where plaintiff "cobbled together" a list of generic elements that did not form a specific pattern); *Flynn v. Surnow*, 2003 WL 23411877, *9 (C.D. Cal. Dec. 9, 2003) (similarities cited by Plaintiff were "randomly scattered throughout the works and ha[d] no concrete pattern . . . in common").

[33] *See Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1168 n.2 (N.D. Cal. 2014) (the proper comparison was plaintiff's copyrighted screenplay and the final version of the film, not the film's screenplay), *aff'd sub nom. Briggs v. Sony Pictures Entm't*,

18

amendment would be futile since the parties' works are not substantially similar under the extrinsic test as a matter of law.[34]

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint without leave to amend, and **DISMISSES** Plaintiffs' copyright infringement claims **WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: May 13, 2019.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

*Inc.*, 714 F. App'x 712 (9th Cir. 2018); *Quirk v. Sony Pictures Entm't Inc.*, 2013 WL 1345075, at *6 (N.D. Cal. Apr. 2, 2013) (finding draft scripts for defendant's film were irrelevant in copyright action alleging infringement based on defendant's film where the plaintiff did not plead that the scripts constituted infringing works, and concluding "the only relevant question at this juncture is whether the final movie as filmed, edited, and released contains matter substantially similar to protectable elements of Quirk's novel").

[34] *See Rentmeester*, 883 F.3d at 1123 ("Nothing disclosed during discovery could alter the fact that the allegedly infringing works are as a matter of law not substantially similar [to Plaintiff's work]."); *Shame on You Prods.*, 120 F. Supp. 3d at 1150-71 (dismissing copyright infringement claim with prejudice upon finding that the works were not substantially similar for purposes of a motion to dismiss).