1  Steven T. Lowe, SBN 122208
2  Aleksandra Hilvert, SBN 258463
   LOWE & ASSOCIATES, a Professional Corporation
3  8383 Wilshire Blvd. Suite 1038
4  Beverly Hills, California 90211
   Telephone: (310) 477-5811
5
6  *Attorneys for Plaintiffs Arthur Lee Alfred II and*
   *Ezequiel Martinez Jr.*
7
8              UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA
10
11  ARTHUR LEE ALFRED, II et al.,      Case No. 2:18-cv-08074-CBM-AS
12          Plaintiffs,               **PLAINTIFFS' EXPERT WITNESS**
13                                     **REBUTTAL REPORT**
                                       **REGARDING SUBSTANTIAL**
14          vs.                        **SIMILARITY**
15  THE WALT DISNEY COMPANY et
16  al.,
                                       Judge:  Hon. Consuelo B. Marshall
17          Defendants.
18
19
20
21
22
23
24
25
26
27
28

Pursuant to Federal Rule of Civil Procedure 26(a)(2) and the stipulation of the parties (Dkt. 121), Plaintiffs Arthur Lee Alfred, II and Ezequiel Martinez, Jr. ("Plaintiffs") hereby disclose the Rebuttal Report of Professor David Román on the issue of substantial similarity. Professor Román, who is serving as Plaintiffs' expert witness on the issue of substantial similarity, may present evidence at trial. Professor Román's rebuttal report is attached hereto as **Exhibit A**.

The following is provided without prejudice to Plaintiffs' right to supplement this disclosure in later stages of discovery or to designate additional experts, including rebuttal experts, at the appropriate time and consistent with the parties' agreement, the Federal Rules of Civil Procedure, and this Court's Local Rules.

Respectfully submitted,

DATED:  May 7, 2021                    LOWE & ASSOCIATES


By:     */s/ steven lowe*
        _____
        STEVEN T. LOWE
        Attorneys for Plaintiffs

# EXHIBIT "A"

## PLAINTIFFS' REBUTTAL

Notwithstanding the highly biased testimony of Disney's expert, Mr. James McDonald, [1] there are significant and substantial similarities between Plaintiff's Screenplay *Pirates of the Caribbean* ("Screenplay") and Disney's *Pirates of the Caribbean* ("Disney's Movie"), with respect to plot, theme, dialogue, mood, setting, characters, pace and sequence of events.   As I concluded in my initial expert report, "While there are various differences between the two works that one could readily identify, I found substantial qualitatively important similarities across the categories of mood, tone, pace, sequence of events, themes, plot, character, and setting which when viewed in combination, form an overarching pattern of creative elements which demonstrate creativity and originality, and which are repeated in the Film."

Disney's expert report drafted by Mr. McDonald ("Disney's Report") fails to address several key similarities (which supports a concession of such similarities), intentionally and consistently distorts the works in a self-serving, conclusory manner, and focuses heavily on dissimilarities that I am informed should be disregarded.

### Disney's Report Focuses on Movie Tropes In the Pirate Genre, Which I am Informed Are Largely Irrelevant Under the Appropriate Analysis

A large portion of Disney's Report focuses on generic, *scenes a faire* and the Disney ride (the "Ride") laden with references to old pirate literature and films, stock characters and even an opera from the 1800s.[2]  I am informed that this is the wrong focus since other pirate movies are irrelevant to this case unless Disney is challenging the originality of Plaintiffs' Screenplay work (which it is not the case).  However, it is my opinion that the Screenplay has much more than

---

[1] Mr. McDonald is a longstanding loyal Disney employee.  Mr. McDonald has worked for Disney since 1990 (and in the litigation department since 1997); and has also worked for 20th Century Fox (owned by Disney) from 1977 to 1990.  This speaks volumes about his impartiality; he is not a truly unbiased expert witness. Rep. pg. 32.

[2] As revealed by his C.V., Mr. McDonald does not have experience or education in the history of film.  Even his filmography career is devoid of any reference to pirate films yet Disney's Report mentions a total of *sixty (60)* different pirate books, films or other works. I, on the other hand, have an extensive background in literary history and incorporate film and film theory in my humanities classes at USC.

1

sufficient originality and creativity to constitute an original work, within what I am informed is the requirement of the Copyright Act of a "modicum" of creativity. Also, I am informed that *scenes a faire* are, in fact, considered in a "selection and arrangement" analysis. Instead, I am informed that the focus should be on the core characters in both works, dialogue comparisons, which coalesce in a new take on the pirate genre (and the pirate captain) and the key sequence of events in both works. Those latter elements are at the core of proving the works are, in fact, substantially similar.

Disney's Report, at its core, claims that Plaintiffs' Screenplay is "uninventive" and dismisses any similarities as merely generic. Rep., *passim*. Specifically, it states that, "the similarities and novelties that Dr. Román identifies either do not exist, are common to other pirate films and literature, or exist at such a high level of abstraction that they constitute unprotectable "ideas" instead of the protectable "expression" of those ideas." Rep. pg. 4. I am also informed that Mr. McDonald's unilateral decision to filter out all generic elements is further flawed given such elements are included under the "selection and arrangement" analysis. In fact, Disney's Report uses the term "generic" over 30 times; "genre" over 50 times and "trope" a total of 13 times. I also note that most of the "generic" references are to obscure works which are not widely known [e.g. *The Red Rover* (1827), *The Black Pirate* (1926)] and therefore, I am informed that Disney has not met its burden to provide sufficient evidence that a particular element is, in fact, *scenes a faire*. One can be certain that if Paramount or MGM released a film with the same core elements featured in Disney's Movie, Disney would undoubtedly sue them for copyright infringement. As the 9th Circuit pointed out in reversing the dismissal of this case in 2020, it is also unclear whether these pirate tropes are true tropes or whether they became tropes due to the success of the POTC franchise - in existence since 2003:

> "As Plaintiffs note, expert testimony would aid in determining whether the similarities Plaintiffs identify are qualitatively significant. *See* <u>Newton v. Diamond</u>, 388 F.3d 1189, 1196 (9th Cir. 2004). This would be particularly useful in this circumstance, where the works in question are almost twenty years old and the blockbuster *Pirates of the Caribbean* film franchise may itself have shaped what are now considered pirate-movie tropes."

2

_Alfred v. Disney et al_. 9th Cir. 19-55669 07/22/2020; Ninth Cir.

(Hon Paez, Hon. Bade and Hon. Melgren)

Without addressing each element which Disney's Report contends is a _scenes a faire_ (i.e. virtually everything), my opinion is that he has been overly liberal in his conclusions, has relied upon insufficient "evidence", thereof, and has neglected to apply the appropriate analysis, which includes said _scenes a faire_.  To summarize, focusing on the generic elements has very limited relevance where there is no possible contention that the Plaintiffs' work is not sufficiently original.  In fact, as I opined in my original report, the way Plaintiffs combined elements is actually a new twist on pirate genre movies including, but not limited to, "lightening the tone and mood of the story to include humor, irony, and even satire." Pl. Rep. pg. 7.  I further opined that "the Screenplay deviates from the conventional narrative without completely undermining its effect. It's still a pirate story—but with a twist."  Pl. Rep. pg. 7.  McDonald's refusal to see the innovation and reduce the Screenplay dismissively as simply "a generic and uninventive combination of two well-known works ("_Goonies_" and "_Cutthroat Island_") is wrong in my opinion.. [3]  This depiction blatantly disregards Plaintiffs' innovations in their Screenplay, to a much more contemporary version of the antiquated pirate story (which, of course, Disney borrowed from Plaintiffs). [4]

Furthermore, Disney's Report's side-by-side comparison of _The Goonies_, _Treasure Island_ and the artwork which was submitted by Plaintiffs to Disney does not mean that the Screenplay is lacking sufficient originality.   Pitches often connect an original screenplay in conversation with already familiar works to help make the sale (e.g. as one of many examples, it is commonly known that "Stranger Things" is a cross between "E.T." and Stephen King's "IT").

---

[3] Of importance, in stark contrast to Mr. McDonald's assertion on page 3 of Disney's Report, Goonies is _not_ a pirate movie – it is a comedy/adventure about kids who are trying to avoid losing their house by searching for treasure in a small Oregon town.

[4] I am informed that, as alleged in Plaintiffs' First Amended Complaint, Disney's Executive Brigham Taylor ("Taylor") solicited, read, and spent significant time (2 months) considering Plaintiffs' Screenplay; Taylor also sent it to then-Disney's studio head Nina Jacobson. Therefore, Plaintiffs' Screenplay must have been innovative and commercially-viable to be worthy of such extensive studio consideration.

It is also widely recognized that combining pre-existing images with a pitch is standard operating procedure in Hollywood.

Also, Disney's Report uses a definition of literary aspects such as plot, character, *etc.* which are grossly antiquated and arbitrary.   For example, the term "plot" is not determined by a 3-act structure exclusively (according to a source cited from 1979).  Rep., Pg. 6.  The 1979 definition used by Mr. McDonald is helpful in the structuring an argument, but it assumes the screenwriters were using this model.  It also assumes that this 3-act model is the only model available to structure a plot, something that isn't actually true.   Therefore, I have not adhered to these definitions and have used what I understand to be currently accepted definitions thereof.

Disney's Report also ignores one of the key findings in my initial report regarding the Screenplay - that Plaintiffs' Screenplay incorporates "humor, irony and wit" and even romance which was a major departure from the typical "tyranny at sea" pirate story. Pl. Rep. *passim*.   While Plaintiffs' Screenplay might include humorous films and pop culture references that Disney's Report cites, both works' use of humor, irony, wit, and romance is one of the ways that the Plaintiffs' Screenplay was able to make the pirate genre commercially appealing to a contemporary audience.  Some of these other stories that the Disney report cites [Gilbert and Sullivan's *Pirates of Penzance* (1879); *Yellowbeard* (1983)] are exclusively comedies, unlike the Screenplay and Movie, which are mixed genres.  The Screenplay is not merely a comedy with pirates, as the Disney Report suggests.  The Screenplay is a far more sophisticated hybrid genre.  As previously pointed out, while there is nothing new under the sun (when each element is broken off and inspected separately), the Plaintiffs' Screenplay is a new twist on an old genre. Pl. Rep., pg. 5-7.

In a similar vein, Disney's Report attempts to refute my opinion to the effect that the likeable protagonist pirate found in both works is "more friendly [and appeals] to a mass audience" by citing a number of popular films of the 1940s and 1950s which feature likeable pirates. Pg. 25.   However, this misses my point:  Plaintiffs' Screenplay combines numerous elements in a creative way. Isolating the nuanced use of likeable pirates in earlier works does not debunk that the two works overlap consistently and substantially. Furthermore, under the

4

selection and arrangement test (which, I am informed, is the law as dictated by the Ninth Circuit) these similarities are considered when looking for similar patterns between the two works.

Even if an element can be traced back to prior existing works that play a prominent role in shaping the genre, this does not automatically mean that the element is a standard or indispensable part of the genre. With this in mind, it is my understanding that even if separate elements resemble those featured in prior works, such similarities are only consequential to the effect that they may establish a particular element is a "*scenes a faire*" (which are nevertheless <u>included</u> in the analysis.

### Disney's Report Fails to Address Key Similarities

It is my opinion that another major flaw with Disney's Report is not what it states - *but what it fails to state*. Disney's Report ignores numerous detailed comparisons identified in my initial report and instead resorts to putting forth conclusory "differences" which I am informed are not even supposed to be considered under well-established case law.

Defendants cannot escape the truth that the pace and sequence of events in the Screenplay is mirrored in Disney's Movie which include: 1) a unique prologue around 10 years earlier (whereby both main protagonists are introduced at gunpoint); 2) villains attacking a shipping port town looking for key items; 3) protagonist pirate losing his prized ship; 4) the protagonists and their crews making their way to an ominous island; 5) followed by a series of conflicts with the antagonists; 6) concluding with a climactic scene inside a cavern, among numerous other similarities in the sequence of events in both works. Pl. Rep. 16-17. The characters are also virtual mirror images of each other in both works. Pl. Rep. pg. 7-11. Disney's Movie could have been about a pirate's quest to steal a ship or a lifetime supply of rum; or about taking over a port town. The main protagonist could have been a privateer saving the town from the evil pirates. However, it was not.

At some key points, Disney's Report even admits similarities do exist – but qualifies the same by saying they "exist at such a high level of abstraction that they constitute unprotectable *'ideas'* instead of the protectable *'expression'* of these ideas." Rep., Pg. 4. However, first of all,

5

exactly when an element transforms from an idea to the expression of an idea is difficult to determine.   I am informed that some writers have opined that once an idea is expressed, that constitutes the expression of an idea.  Moreover, I am informed that ideas, and other unprotectable elements, are still considered when looking for similar patterns in both works under the selection and arrangement test.  Furthermore, as my earlier report points out, the two works "share multiple original patterns of similarities…the patterns that appear in the Screenplay are original, displaying a great deal of creativity; those same original patterns and combinations of literary elements reappear in the Disney Film."  Pl. Rep. pg. 21.  Nevertheless, a non-exhaustive list of similarities which Disney's Report failed to refute is as follows:

1.     Disney's Report does not dispute that the function of the prologue in both the Screenplay and the POTC is similar.   While the Disney Report points out differences in the actual details of each respective prologue (i.e. the female lead is a child in one and a young lady in the other), *it cannot challenge the importance and function of the prologue to the overall narrative.*  Of course there are stories with prologues, and maybe even some pirate stories have prologues, but Disney's Report recognizes that the prologues at issue herein do much more than what prologues generally do.    Every prologue is different and serves a specific function to its story.  And even here, while some details in plot vary, the sequence of them remains similar.    Finally, despite Disney's allegation that the Disney Movie's prologue does not create a conflict, it is my opinion that said prologue was rife with conflict (e.g. whether the boy lost at sea was a pirate, whether pirates exist, whether they will attack the governor's ship, etc.)

2.     Disney's Report does not dispute that Plaintiffs' Screenplay's choice to highlight the heterosexual love plot was innovative, apparently it was innovative enough to use in Disney's Movie.  Pl. Rep., pg. 18-19. The Disney Report attempts to undermine this claim by (again) citing examples of romance in other pirate stories.   However, it is the similarity of this pattern whereby the Screenplay successfully maintains both major plot lines (the pirate adventure, and the heterosexual romance) to the end, that makes this similarity an important one.  The success of both works finale is in the satisfaction from watching the resolution of both the pirate antagonist conflict and the romantic conflict.

6

3.       Disney's Report also attempts to create distinctions in connection with various scenes which truly parallel each other; only by ignoring the glaring similarities and hyper-focusing on the minor differences.  For example, consider the two scenes with pirates heckling women.  Disney's Report ignores that the entire scene has many similarities including: 1) the capture of the female lead; 2) the heckling by a pirate; 3) a slap by the head pirate toward the heckling pirate; and, 4) reprimand/embarrassment.  Just because the men are slapped or kicked in different parts of the body ignores the glaring similarities.  Another example is the scene in _both_ works wherein male pirates are disguised as women "to deceive enemies during battle".  Rep., pg. 9.  Once again, Disney's Report focuses on the minor differences in these scenes (one is trying to evade while and the other is trying to distract) but they are basically identical - and both undoubtedly provide the comedic relief that they are intended to provide.  Disney's Movie could have featured a man dressing up as a farm animal, or an elderly person, or snuck in by a cart or wagon.  Indeed, both works utilize the same vehicle to serve the same purpose.  Finally, Disney's Report attempts to split hairs over the scene in which the protagonists take control of rival ships.  By hyper-focusing on the granular detail, Disney's Report inadvertently highlights the similarity between the scenes.  Both scenes involve the protagonist's crew gaining control over the rival ship where their leader comes on board at the last possible second. Pl. Rep. pg. 22.  These scenes are effectively identical in my opinion.

4.       Disney's Report attempts to refute my expert opinion that neither female lead is the standard "damsel in distress" (Pl. Rep. pg. 10) by saying that Elizabeth _begins_ the story as a classic "damsel in distress" yet she evolves into a stronger female lead.  However, in doing so, Disney actually _admits_ that Elizabeth was actually not a standard damsel in distress - thereby making my point.  Rep. pg. 15.  My initial report emphasized that Elizabeth (like Jane in the original screenplay) is a much more nuanced character and plays a much more advanced role in the plot than simply a stock female role in a typical pirate adventure.

5.     There are over twenty (20) other similarities in my initial report which Disney's Report fails to refute. [5]   For the sake of brevity, instead of analyzing each one in the context of the analysis above, a non-exhaustive list is provided below:

a)     My initial report opines that characters who meet the main characters in both works – Davey Jones (Screenplay) and Jack Sparrow (Disney Movie) – "doubt the legendary status that both these leading characters self-promote" despite their reputations. Pl. Rep. pg. 8. Disney does not refute this.

b)     My initial report opines that Captain Jack Nefarious (Screenplay) and Captain Hector Barbossa (Disney Movie) are both "cunning and sinister figures who despite their off-putting behavior retain a high level of individual charisma." Pl. Rep. pg. 8. Disney does not refute this.

c)     My initial report opines that the characters of Captain Jack Nefarious (Screenplay) and Captain Hector Barbossa (Disney Movie) make their respective works friendlier to a mass audience. Pl. Rep. pg. 8. Disney does not refute this.

d)     My initial report opines that the characters of Davey Jones (Screenplay), Captain Jack Nefarious (Screenplay), Captain Hector Barbossa (Disney Movie), Captain Jack Sparrow (Disney Movie), and William Turner (Disney Movie) each embody the "innovative hybrid persona" where they "excel at the skills of a swashbuckler yet maintain the outsider edginess of a pirate." Pl. Rep. pg. 9. Disney does not refute this.

e)     My initial report opines that the female characters in both works – Jane (Screenplay) and Elizabeth (Disney Movie) – "share a sense of resilience even

---

[5] The foregoing list does not include the numerous detailed similarities I concurred with which were delineated in Plaintiffs' Corrected Appellant Brief (and which were not addressed in Disney's Report).

as they are used as bargaining chips between the competing male pirates." Pl. Rep. pg. 10. Disney does not refute this.

f)   My initial report opines that Jane and Elizabeth serve as "more than merely love interests; they are full dimensional romantic matches." Pl. Rep. pg. 10. Disney does not refute this.

g)   My initial report opines that "both the Screenplay and the Disney Film share dialogue claiming that it's bad luck to have a woman on a ship, a line that foreshadows the power of these women…" Pl. Rep. pg. 10. Disney does not refute this.

h)   My initial report opines that the female characters in both works – Jane (Screenplay) and Elizabeth (Disney Movie) – are important qualitatively in both works and that "their incorporation into the story introduces the element of romance, which becomes increasingly significant as the story develops." Pl. Rep. pg. 11. Disney does not refute this.

i)   My initial report opines that the romance introduced by the two female characters in both works "expands the typical demographic of the pirate film to appeal to women and young girls, two overlapping groups who generally are not the genre's targeted audience." Pl. Rep. pg. 11. Disney does not refute this.

j)   My initial report opines that both works share "the moral that there is more to life than greed and the search for wealth." Pl. Rep. pg. 12. Disney does not refute this.

k)   My initial report opines that the skeleton crews in both works mainly surface at night during scenes of epic battle.  Pl. Rep. pg. 12. Disney does not refute this.

9

l)   My initial report opines that the skeleton crews "provide a sensational thrill-driven aura to the story." Pl. Rep. pg. 12. Disney does not refute this.

m)   My initial report opines that William Turner from the Disney Movie shares similarities to the Screenplay's orphans, known as the young rascal scoundrels, specifically the idea that both Turner and the scoundrels seek out mentors. Pl. Rep. pg. 13. Disney does not refute this.

n)   My initial report opines that both William Turner and the young rascal scoundrels participate in the pirate battles that lead to the defeat of the main antagonist villain in their respective works. Pl. Rep. pg. 13. Disney does not refute this.

o)   My initial report opines that the prologue in both works: (1) "sets the tone and mood of the story;" (2) introduces unfinished business "that will be revisited approximately a decade later;" (3) introduces "some of the major players, including the female lead;" (4) "takes place on a ship in rough seas under threatening skies;" and (5) introduces a "conflict on the ship that throws the viewer into the pirate story." Pl. Rep. pg. 15. Disney does not directly refute any of this.

p)   My initial report opines that the prologues of both works "leave us wondering who survived the conflicts at sea," which is something that both works address in later sequences. Pl. Rep. pg. 16. Disney does not refute this.

q)   My initial report opines that both works end on a note that love wins. Pl. Rep. pg. 18. Disney does not refute this.

r)   My initial report opines that the climatic endings of both works "substantially overlap" as they both "locate their final epic showdown in a remote and

10

ominous cave that is inaccessible except by small boats." Pl. Rep. pg. 18. Disney does not refute this.

s)   My initial report opines that the final scenes of both works revive "the skull-faced pirates who emerge to attempt to fend off Davey Jones, Jane, and the young rascal scoundrels" (Screenplay) and "the phantom skeleton crew pirates to engage in battle" (Disney Movie). Pl. Rep. pg. 18. Disney does not refute this.

t)   My initial report opines that the climatic endings of both works are similar in form and content by combining "multiple elements, including a pattern of main characters, similar themes, and sequence of events, mood, tone, and pace." Pl. Rep. pg. 18-19. Disney does not refute this.

u)   My initial report opines that the setting of both works is virtually identical. Pl. Rep. pg. 19. Disney does not refute this.

**Disney's Expert Report Inappropriately Highlights Dissimilarities Between the Works – and in Doing So, Materially _Mischaracterizes_ the Works.**

Despite what can only be characterized as a tremendous amount of similarity, Disney's Report also attempts to focus on a set of red-herring arguments highlighting dissimilarities. However, I am informed that "dissimilarities" are generally not to be considered because a plagiarist cannot excuse copying by showing how much work he did not appropriate. It is my opinion that the Disney Report "muddies the waters" with alleged dissimilarities. Because they do not actually negate the similarities, I am informed that they should not be given any consideration. Also, Disney's Report includes self-serving descriptions of the differences, which are largely based on a flawed review of the works at issue. A few such examples are as follows:

1.   Disney's Report repeatedly advances the idea that Plaintiffs' Screenplay is a redemption story and the Disney Movie is a liberation story. See, e.g., Rep., pg. 6, 11, 16-17. However, this is not correct in my opinion. Disney's Movie is actually a redemption

11

story of Jack Sparrow.  Sparrow begins the Movie as a type of loser figure (in fact, a failed pirate) - but by the end of the Movie, he "redeems" his reputation as a potent pirate capable of much mischief.  His "redemption" as a pirate in the initial film becomes the basis for the entire franchise.  Also, Plaintiffs' Screenplay also can be described as a "liberation" story, given that the path to redemption for Davey, for Jane, and for the Rascal Scoundrels, is to *liberate* themselves from previous held positions, beliefs, and values.    The report sets up a false dichotomy between "redemption" and "liberation" creating a distinction where one does not exist. They both incorporate both themes.

2.    Disney's Report tries to posit that the Movie's Barbossa is not motivated by greed at all costs. Rep. pg. 12-13.  This is not accurate; while Barbossa is motivated in part to lift the curse on him and his crew, he is *also* motivated by *greed* and a desire to resume his piracy to pillage and plunder uninterrupted or encumbered by the curse.    Lifting the curse is a means to an end.  Also, Barbossa's entire back story is fueled by greed.  His reasoning for marooning Jack Sparrow was for the sake of a greedy desire to take the treasure and the Black Pearl.  His core greediness motivates much of his behavior in the Movie.

3.    Disney's Report opines that Plaintiffs' Screenplay did not incorporate an element of a "curse". Rep., pg. 17.  This is also incorrect.  Plaintiffs' Screenplay referenced Phantom Jack's curse numerous times.  For example, Plaintiffs' Screenplay includes dialogue from one of the Rascal Scoundrels saying, "Legend says that a big sea monster ate [Jack Nefarious] and then spit him out… Now his ghost sails the seas in his Ghost ship. Searching and sailing. Sailing and searching". Screenplay, pg. 27.  A reasonable interpretation thereof is that Jack Nefarious did not die; but he is eternally cursed.  In addition, the characters in Plaintiffs' Screenplay reference Captain Jack as a "ghost" who sails. Screenplay pgs. 27, 31, 34.  That is exactly what the curse of Barbossa is based upon – a perpetual search for something that may last for an eternity.  In Disney's Movie, Barbossa tells Elizabeth "you best start believing in ghost stories, you're in one" – clearly Disney's Movie was also envisioned as a ghost story.  Yet again it appears, in my opinion, that Disney adopted Plaintiffs' unique thematic elements.

12

4.     Disney's Report also insists that Barbossa "has enough morality to live by the pirate code" (Rep. pg. 12) but this is also a mischaracterization.  My view is that Barbossa manipulates the pirate code to serve his own interests and not to uphold some sense of loyalty to a code of honor.   He tricks Elizabeth by invoking the pirate code only to then deceive her, and he does this publicly to show his crew how clever and sinister he is; in fact, Barbossa even tells Elizabeth, "the code is more what you call guidelines, than actual rules" meaning he has no honor and lies and deceives as needed.

5.     Disney's Report disregards the "Rascal Scoundrels" as "generic": simply are a "generic trope of children dropped into a pirate tale".  However, children in a pirate story who happen to have similar traits as the crew members in the Movie cannot possibly be considered *scenes a faire*.   Rep. pg. 13.  Furthermore, the viewer does not know exactly what will happen to these boys when they are first introduced in the Screenplay, and there is considerable suspense surrounding their actions.  In other words, they are more than merely predictable stock characters.  The Disney Report also suggests that the Rascal Scoundrels are not supporting characters because of the "concept" of *Goonies* in the Plaintiff's complaint.   The issue here is not whether the Screenplay differs or departs from *Goonies*; it's whether the Disney Movie differs or departs from the Screenplay.  The case is not whether Plaintiffs' Screenplay is a rip-off of *The Goonies,* which it is not in my opinion.

6.     Disney's Report's also unduly dissects the female leads; opining that Plaintiff's comparison of Jane and Elizabeth is simply that both are "strong female protagonists" (and calling that a "generic idea").  Rep., pg. 15.  Yet this disregards my opinion that the two women are "lively, adventurous young women who dream of a life beyond the constrains of the port town where they've been raised…[and] both of these spirited women engage the pirates on nearly equal terms in matter of skill, wit, and athletics" who are drawn to the pirate life and are not scared or intimidated by pirates Pl. Rep. pg. 10.   My opinion on the similarities between Jane and Elizabeth is that they are similar in virtually every detail.

13

7.      Disney's Report also seeks to conflate ghost pirates, undead pirates, cursed pirates, and living pirates.  Rep., *passim*.   The distinction between the foregoing, while nuanced, is important in this case.  In fact, both works involve cursed, skeleton pirates.  Disney's Movie could have featured vampire pirates, witch pirates, werewolf pirates - or any other feared, supernatural being.  But both works use of ghostly skeleton pirates is an important similar feature – no matter the granular detail used by Disney to distinguish them.  I am informed that, in literary work cases, minor deviations do not negate similarities.

8.      Furthermore, Plaintiffs' Screenplay revolves around a myth of ghosts with skull faces who are feared because of this myth (and given it is unclear to the reader/viewer if they are dead or alive – this would ultimately be up to the filmmaker to decide how to portray this visually).  This is very similar to that in Disney's Movie.  While a pirate trope may be the fear of a black flag with crossbones, Plaintiffs' Screenplay created a new fear - a fear based upon supernatural mythology so terrifying that even those pirates who fly a black flag fear the legend of the ghost pirates. This is an element that was prominent in the Screenplay and reappears in the Disney Movie, to set up their blockbuster franchise.

9.      With respect to the setting, even if the Caribbean is standard in many pirate stories, that doesn't mean that Plaintiffs' Screenplay doesn't tweak this element in new and original ways. See, Pl. Rep. Ex. B.

10.      Disney's Report next claims Plaintiffs' Screenplay was geared to a younger audience often describing it as a "slapstick comedy" - which is simply not true. Rep., pg. 6, 18.  This opinion ignores the fact that Plaintiffs' Screenplay contains ominous elements that Plaintiffs showcased not only in the Screenplay itself but also via their sizzle/trailer.  See, Pl. Rep. Ex. B ("In the Screenplay, the emotion that is invoked when the true nature of the supernatural pirates is revealed is substantially similar to the emotion invoked during the same events in the Film: an eerie mood").  The trailer, submitted along with Plaintiffs' Screenplay, was certainly not childish, and cartoonish.

14

And Disney's Report fails to rebut my position that both works took a somewhat dramatic departure from typical "pirate" and "sailors-at-sea" stories by emphasizing humor, irony, and wit to a far greater extent than is typical in this genre.  Rep., pg. 6.  Disney's Report also ignores my opinion that the Screenplay appeals to a wide range of viewers interested in adventure, romance, and family entertainment.  Rep., pg. 18. The Disney Movie repeats this mood and the aforementioned tone for their wildly successful franchise. Disney's Movie is no less juvenile than Plaintiffs' Screenplay.   Both utilize suspenseful humor.   Also, Disney's Movie actually incorporates slapstick comedy elements – as evidenced by characters Rigetti and Pintel who dress up like women, and continuously bicker providing quirky humor throughout Disney's Movie.   These unusual and peculiar characters are also similar to some of the Rascal Scoundrels in Plaintiffs' Screenplay.  Pl. Rep., pg. 12, 24.

11.     In describing Plaintiffs' Screenplay, Disney's Report conveniently omits who Plaintiffs' "band of child misfits" win a battle against (saying instead that the hero teams up with a "band of child misfits, winning the battle, and ending up with real treasure…" Rep., pg. 6).  That's because this omission is another key similarity – in both works the protagonists battle "cursed, undead pirates" – not just how the Disney Movie as their report would like us to believe.  Rep. pg. 6.

12.     Similarly, in describing Plaintiffs' Screenplay's Nefarious and Davey, the Disney Report goes to great lengths to omit the fact that they are enemies at their core – just like in Disney's Movie. Rep., pg. 7.

13.     Disney's Report also conclusively (and falsely) states that "Dave and the Rascal Scoundrels leave piracy behind forever".  Rep. pg. 8.  This was an assumption made by Disney's Expert; and in fact, there is no dialogue or narration that says they have given up piracy forever.  This is mere conjecture; and therefore, not accurate.

15

14.     Disney's Report also claims that skeletal or "undead" pirates are featured in the Disney's "Pirates of the Caribbean" Ride.[6]  However, "undead" pirates were not found in the Ride – the Ride originally featured immobile skeleton remains.  These are not "undead" –  they were just positioned in the way they died.  The skeletons on the Ride were not living/dead pirates.

15.     There are other flawed representations about the Ride found in Disney's Report. For example, Disney's Report claims that "Skeletal crews and the ghost ship are also featured in the Disneyland ride—indeed, Plaintiffs' sizzle reel incorporated that footage from the Ride". Rep. pg. 27.  This is false.  There was no "ghost ship" anywhere in the Ride to my understanding – and it's not even clear from Disney's Report exactly what he is referring to in making that conclusory statement. The only image I saw were skeletal remains frozen in time and various scenes or vignettes.  Disney's Report also claims that the Ride ends "with an epic shootout in a cave".  Rep., pg. 29.  Not so.   From my review of the videos, the only shootout is between a ship and a port in the first half of the Ride; and the Ride ends with drunk, half cross-eyed pirates who are smirking, laughing and shooting guns aimlessly while drinking rum.   It is more reminiscent of a celebration after looting a town or ship than a "shootout". Finally, this "scene" in the Ride takes place in an armory full of gunpowder barrels that will blow if any stray bullet strikes them – not a cave.

16.     Also, the Ride provides no backstory that discloses whether any pirates were cursed; and there is no inference from the ride that the skeletons would rise from the dead.  This is in stark contrast to Disney's Report that posits that the Ride featured "references to cursed pirates".  Rep., pg. 29.  Finally, in Jason Surrell's *Pirates of the Caribbean* book, Brigham Taylor says that he and Disney screenwriter Jay Wolpert did not get a narrative from the Ride during their walk-through.  ("We went to Walt Disney Imagineering and they arranged a walk-through of the attraction with Tony Baxter and X Atencio…They walked Jay and me through the show before it was open.  We didn't get a narrative from the ride, but we did get a backdrop, a milieu, from the ride.") Pg. 115.

---

[6]  In response to Disney's Report that focused on the Ride, I then proceeded to watch video footage available on the internet of the Pirates of the Caribbean Ride in order to respond to the opinions about the Ride.

17.     Disney's Report contradicts itself with respect to describing the generic "pirate captain". First, on page 11 of their Report, Disney claims that generic pirate captains are "cocky", "dashing" and "fond of rum".  This is contradicted by their subsequent statement that pirate captains are generally "tall, powerful, wily" characters, who alternate between "jovial good humor and utter ruthlessness in the pursuit of gold" – what, in fact, is a generic pirate captain?  It is my opinion that the pirate captain in the Screenplay and the Movie is not a "generic" pirate captain at all.  Rep. pg. 24.

18.     On page 11 of Disney's Report, Disney asserts that "Davey is never depicted as morally suspect".  This is incorrect.  Davey is depicted as morally suspect from the very beginning of the Screenplay.  As just one example, he takes advantage of the Rascal Scoundrels.  When the Rascal Scoundrels catch on to this, they abandon.  Pl. Screenplay, Pg. 26-30.  Also, Davey Jones is called out for his womanizing, lying and deceit when Jane slaps him in the tavern.  Screenplay, Pg. 35.

19.     Disney's Report also claims that Jack Sparrow does not drink "out of self-pity." Pg. 11-12.  Another incorrect statement.  In fact, every time Sparrow is doomed or starting to give up, he starts drinking. When he and Elizabeth are marooned on the island, he starts drinking to drown out his sorrow. Sparrow's whole existence is largely one of self-pity (e.g., he was marooned by Barbossa's crew and lost the Black Pearl).

20.     Disney's Report attempts to make a big deal out of the character flip between pirate captain and first mate which is a distinction without a difference.  Rep., pg. 12 ("Barbossa was Jack's first mate, but Nefarious was *not* Davey's—Plaintiffs have flipped the relationship of their characters, as Davey was *Nefarious's* first mate). The fact remains that these main characters, the protagonist and the villain still share a very important backstory – they were once pirates on the same ship with a head pirate and subordinate pirate relationship.

17

21.     Disney's Report states that Sparrow's crew is not part of the plot or resolution – which is yet another false generalization. Rep., pg. 14. The crew is vital to the climactic battle scene. The Movie ends with Jack Sparrow now having recovered the Black Pearl and having a full crew. They are not only prominently featured at the end – but they are Sparrow's crew going forward.  Rep. pg. 14.

22.     Disney's Report also claims that "Sparrow's history with Barbosa is not depicted, only recounted, while Nefarious' betrayal of Davey plays out in Plaintiff's prologue".  This is yet another distinction without a difference.  Rep. pg. 20.  Both had similar betrayals at sea with the antagonist.

23.     Disney's Report relies heavily on the opinion that the Disney Movie is about a treasure that needs to be _returned_ – not a search for treasure. Rep., pg. 17. As exhaustively briefed for the court and the Ninth Circuit, that truly is a distinction without a difference. First, the mission to return the treasure only commences half way through the Movie after the last piece of gold is found.  The first half of Disney's Movie is about a _search_ for treasure - searching for the last piece to lift the curse (just like Plaintiffs' Screenplay).  Furthermore, the search for treasure advances the main theme and plot of both the Screenplay and Movie.

24.     Finally, Disney's Report completely ignores the laundry list of similarities found in Plaintiffs'/Appellants' Corrected Opening Brief submitted to the Ninth Circuit on the issue of substantial similarity which was attached to my initial report as Exhibit B.  I had verified the accuracy of said similarities and adopted those similarities as an addendum to the Plaintiff's Report.   Those similarities, along with the ones I have addressed in my Report and this Rebuttal, all provide for striking similarity between Plaintiffs' Screenplay and Disney's Movie.

18

**<u>CONCLUSION</u>**

To summarize, Disney's Report does not fundamentally refute my opinions and conclusions that the two works are substantially similar, including the following:

> "...in my opinion the patterns that appear in the Screenplay are original, displaying a great deal of creativity; those same original patterns and combinations of literary elements reappear in the Disney Film. Furthermore, although some of the similarities are more nuanced, the selection and arrangement of these elements point to a pattern of resemblances first found in the Screenplay. In my opinion, the Screenplay is a first-rate piece of original writing, showcasing a brilliant and highly innovative retelling of the standard pirate narrative. Some of the Screenplay's creative innovations, which I have outlined above, constitute sufficiently original, atypical contributions to the pirate storyline not evident before in the literature that I am familiar with."  Pl. Rep. pg. 21.

Respectfully Submitted,

_____

Prof. David Román

19