**LOWE & ASSOCIATES, PC**
Steven T. Lowe (SBN 122208)
steven@lowelaw.com
Aleksandra Hilvert (SBN 258463)
aleksandra@lowelaw.com
8383 Wilshire Blvd, Suite 1038
Beverly Hills, California 90211

**ROBINS KAPLAN LLP**
Patrick M. Arenz
(MN Bar No. 0386537) (Pro hac vice pending)
parenz@robinskaplan.com
800 LaSalle Avenue
Suite 2800
Minneapolis, Minnesota 55402
Telephone:  612 349 8500
Facsimile:   612 339 4181

*Attorneys for Plaintiffs*
*Arthur Lee Alfred, II, et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR LEE ALFRED, II, et al., | Case No. 2:18-CV-08074-CBM-ASx |
| Plaintiff, | **[CORRECTED] PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS** |
| v. | |
| WALT DISNEY PICTURES, | |
| Defendant. | |
| | Date:       October 19, 2021 |
| | Time:       10:00 a.m. |
| | Dept:       Courtroom 8B |
| | Judge:      Hon. Consuelo Marshall |

**Introduction**

As Plaintiffs' proposed Statement of Genuine Disputes of Material Facts highlights, there are fewer than thirty facts the Court need actually consider to dispose of this motion. "A fact is 'material' only if it might affect the outcome of the suit under governing law." *Mahgerefteh v. City of Torrance*, 324 F. Supp. 3d 1121, 1127 (C.D. Cal. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Here, Plaintiffs set forth the material facts about whether Disney's *Pirates* film is substantially similar to Plaintiffs' *Pirates* screenplay. Plaintiffs also respond to Disney's statement of purportedly uncontroverted facts—most of which are immaterial or disputed.

## I.   Plaintiffs' Statement of Facts

### A. Statement of Genuine Disputes of Material Facts

### Alfred and Martinez's original screenplay.

1. Alfred and Martinez created an original screenplay titled *Pirates of the Spanish Main*.

   *Evidence*:
   - Martinez Decl. ¶ 9
   - Alfred Decl. ¶ 10
   - Roman Decl. ¶ 9 & Ex. J at 6-7, 21[1]

2. They later retitled it *Pirates of the Caribbean* to market to Disney.

   *Evidence*:
   - Martinez Decl. ¶ 10
   - Alfred Decl. ¶ 11

3. The original selection and arrangement of expressive element in the *Pirates* screenplay includes a prologue that takes place ten years prior to the main story; introduce the main characters during a battle, at gunpoint; involve treasure stories that take place on islands and in jewel-filled caves; include past stories of betrayal by a former first mate; contain fearful moments driven

---

[1] Page cites to the Roman Decl. Exhibits are to the page numbers at the bottom of the pages.

by skeleton crews; focus on the redemption of a young, rogue pirate.

*Evidence*:
- Román Decl. ¶ 9 & Ex. J at 12, 14, 16-18, 21.
- Martinez Decl. ¶ 11 & Ex. B at 1-26, 53-57. 80-88, 93-99.
- Lowe Decl. Ex. M at 52:6-18

4. Disney has not identified a singular prior work with each of those expressive elements in paragraph [3] arranged together.

*Evidence*:
- *See generally* Lowe Decl. Exs. O-R
- *See also generally* Roman Decl. ¶ 9 & Ex. J at 21

5. Specifically, the original selection and arrangement of the *Pirates* screenplay includes a pirate story with (1) three main characters comprising (a) a rogue, morally ambiguous, disillusioned pirate; (b) a sinister rival pirate who took over as captain by mutiny and who seeks treasure at all costs, while maintaining charisma; and (c) a feminine and resilient fully dimensional character who sustains the romantic storyline; (2) a plot focused on supernatural conflict with a pirate ship with skeleton crews; (3) a fast-paced sequence of events that starts with a prologue, resumes a decade later with an attack on a shipping port town that takes the lead female character captive, and ends with a final battle on an ominous, small island accessible only by boat; (4) an overall theme of redemption; and (5) a hybrid tone and mood that is both suspenseful and adventurous, as well as playful, humorous, and witty.

*Evidence*:
- Román Decl. ¶ 9 & Ex. J at 3-12, 14-16, 18, 21 & Ex. B to the Roman Report (Ex. J)
- Martinez Decl. ¶ 11 & Ex. B at 50-58, 80-88, 93-99

6. Disney has not identified a singular prior work with each of those expressive elements in paragraph [5] arranged together.

*Evidence*:

- *See generally* Lowe Decl. Exs. O-R
- *See also generally* Roman Decl. ¶ 9 & Ex. J at 21.

7. Alfred and Martinez, through Laiter, provided the *Pirates* screenplay to Disney in August 2000.

*Evidence*:

- Laiter Decl. ¶¶ 4-6
- Martinez Decl. ¶¶ 2-6
- Alfred Decl. ¶ 30

8. Disney returned the *Pirates* screenplay to Martinez in November 2002.

*Evidence*:

- Martinez Decl. ¶ 30

9. Disney released the *Pirates of the Caribbean* film in summer 2003.

*Evidence*:

- Martinez Decl. ¶ 31
- Alfred Decl. ¶ 35

**Similarities between the *Pirates* film and *Pirates* screenplay**

10. The *Pirates* film is substantially similar to the original selection and arrangement of expressive elements in the *Pirates* screenplay.

*Evidence*:

- Roman Decl. ¶ 9 & Ex. J
- Roman Decl. ¶ 10 & Ex. K at 5-11, , 19

11. The *Pirates* film is substantially similar to the *Pirates* screenplay, including characters, plot, sequence of events, pace, theme, tone, mood, and dialogue.

*Evidence*:

- Román Decl. ¶ 9 & Ex. J at 4-22

- Roman Decl. ¶ 10 & Ex. K

12. The character Jack Sparrow in the *Pirates* film is substantially similar to the character Davey Jones in the *Pirates* screenplay.

    a.  Both characters are cocky, dashing, and charismatic young rogue pirates with a drinking problem.

    *Evidence*:
- Martinez Decl. ¶ 11 & Ex. B at 2
- Gray Decl. ¶ 2 & Ex. A at 00:08:50, 00:09:56
- Román Decl. ¶ 9 & Ex. J at 3-4 & Ex. B to the Roman Report (Ex. J.) at 9-10

    b.  Both characters are morally ambiguous, opportunistic, and disillusioned swashbuckling pirates who self-promote.

    *Evidence*:
- Martinez Decl. ¶ 11 & Ex. B at 2
- Gray Decl. ¶ 2 & Ex. A at 00:08:50, 00:09:56.
- Román Decl. ¶ 9 & Ex. J at 3-4 & Ex. B to the Roman Report (Ex. J.) at 10

13. The character Captain Barbossa in the *Pirates* film is substantially similar to the character Captain Nefarious in the *Pirates* screenplay.

    a.  Both characters are sinister, and yet funny and charismatic pirates.

    *Evidence*:
- Martinez Decl. ¶ 11 & Ex. B at 1-10
- Gray Decl. ¶ 2 & Ex. A at 01:06:16
- Román Decl. ¶ 9 & Ex. J at 8.

    b.  Both characters ousted their former first-mates and current rivals through mutiny.

    *Evidence*:
- Martinez Decl. ¶ 11 & Ex. B at 1-10
- Gray Decl. ¶ 2 & Ex. A at 01:06:16

- Román Decl. ¶ 9 & Ex. J at 3-4 & Ex. B to the Roman Report (Ex. J.) at 11, 15

14. The character Elizabeth in the *Pirates* film is substantially similar to the character Jane in the *Pirates* screenplay.

   a. Both characters are young women who live in a shipping port town and dream of pirate and adventure on the high seas.

      *Evidence*:
      - Martinez Decl. ¶ 11 & Ex. B at 13; 35; 48-52
      - Gray Decl. ¶ 2 & Ex. A at 00:00:30-00:00:50; 00:01:52
      - Román Decl. ¶ 9 & Ex. J at 10 & Ex. B to the Roman Report (Ex. J.) at 13

   b. Both characters belie the damsel-in-distress stereotype after becoming kidnapped.

      *Evidence*:
      - Martinez Decl. ¶ 11 & Ex. B at 48-52
      - Gray Decl. ¶ 2 & Ex. A at 00:39:40, 01:59:51.
      - Román Decl. ¶ 9 & Ex. J at 10 & Ex. B to the Roman Report (Ex. J.) at 13

   c. Both characters trick the pirate holding them hostage to prevent the captain from finding the sought-after treasure.

      *Evidence*:
      - Martinez Decl. ¶ 11 & Ex. B at 50, 54-56, 102-03
      - Gray Decl. ¶ 2 & Ex. A at 00:39:40, 01:59:51.
      - Román Decl. ¶ 9 & Ex. J at 10 & Ex. B to the Roman Report (Ex. J.) at 13-14

   d. Both characters are feminine and tough.

      *Evidence*:
      - Martinez Decl. ¶ 11 & Ex. B at 48-52
      - Gray Decl. ¶ 2 & Ex. A at 00:39:40, 01:59:51.
      - Román Decl. ¶ 9 & Ex. J at 10-11

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

e. Both characters are the love interest who sustain the romantic story line.

> *Evidence*:
> - Martinez Decl. ¶ 11 & Ex. B at 97
> - Gray Decl. ¶ 2 & Ex. A at 00:07:55, 00:43:13, 02:03:27; 02:11:32.
> - Román Decl. ¶ 9 & Ex. J at 10-11

15. The plots in the *Pirates* film and screenplay are substantially similar.

a. The plots in both works focus on supernatural conflict between Jones/Sparrow and Nefarious/Barbossa, who leads a pirate ship with skeleton-pirate crews with a curse or haunted legend underlying it.

> *Evidence*:
> - Martinez Decl. ¶ 11 & Ex. B at 27-28, 45, 93-98.
> - Gray Decl. ¶ 2 & Ex. A at 00:37:07-00:37:13, 01:52:23-02:02:02.
> - Román Decl. ¶ 9 & Ex. J at 11-12, 18-19, 20 & Ex. B to the Roman Report (Ex. J) at 14-18, 20, 22-23
> - Roman Decl. ¶ 10 & Ex. K at 16

16. Both the *Pirates* film and screenplay include substantially similar prologues.

a. The prologues in both works (1) set the tone and mood of the story; (2) introduce unfinished business that will be revisited about a decade later; (3) introduce some of the major characters, including Jane/Elizabeth; and (5) introduces a conflict on the ship that throws the audience into a pirate story.

> *Evidence*:
> - Martinez Decl. ¶ 11 & Ex. B 1-12, 50-58, 93-99
> - Gray Decl. ¶ 2 & Ex. A at 00:00:16-00:04:52
> - Roman Decl. Ex. J at 15
> - Roman Decl. Ex. K at 10

17. Both the *Pirates* film and screenplay include substantially similar sequences of events and pace.

a. Both works formally introduce the lead pirates (Jones/Sparrow and Nefarious/Barbossa) at gunpoint.

   *Evidence*:
   - Martinez Decl. ¶ 11 & Ex. B at 2
   - Gray Decl. ¶ 2 & Ex. A at 00:17:39

b. The lead pirates next cross paths during Barbossa/Nefarious's attack on a shipping port to search for key items to locate the treasure. While Sparrow/Jones escapes, Barbossa/Nefarious kidnaps Elizabeth/Jane and holds her hostage.

   *Evidence*:
   - Martinez Decl. ¶ 11 & Ex. B at 44-48.
   - Gray Decl. ¶ 2 & Ex. A at 00:29:34-00:32:00, 00:34:00, 00:39:08-00:39:29, 00:57:55-00:58:10, 00:44:24, 00:37:57

c. Both works also include a scene with Barbossa/Nefarious's crew heckling and slapping Elizabeth/Jane until Barbossa/Nefarious stops the crew from harming her any further.

   *Evidence*:
   - Martinez Decl. ¶ 11 & Ex. B at 62-63
   - Gray Decl. ¶ 2 & Ex. A at 00:37:57-00:38:13

d. Both works include a scene involving Sparrow/Jones taking control of Barbossa/Nefarious's ghost ship.

   *Evidence*:
   - Martinez Decl. ¶ 11 & Ex. B at 36, 55-56
   - Gray Decl. ¶ 2 & Ex. A at 01:58:40, 02:12:00

e. Jones/Sparrow engage in a final battle with Barbossa/Nefarious on an ominous island accessible by small boats. The final battle includes Jones/Sparrow battling and defeating skeleton-faced pirates.

   *Evidence*:
   - Martinez Decl. ¶ 11 Ex. B at 50, 53-57, 80-88
   - Gray Decl. ¶ 2 & Ex. A at 01:04:39-01:05:11, 01:50:38

f. During the battle, both works include a scene involving male pirates who disguise as women to deceive enemies.

*Evidence*:
- Martinez Decl. ¶ 11 & Ex. B at 50
- Gray Decl. ¶ 2 & Ex. A at 01:49:02-01:49:31; 01:51:05-01:51:33.

g. Jones/Sparrow and Jane/Elizabethreturn to the bay of the port town.

*Evidence*:
- Martinez Decl. ¶ 11 & Ex. B at 101-02
- Gray Decl. ¶ 2 & Ex. A at 02:02:56

h. The story ends with Jones/Sparrow's redemption by captaining his own ship.

*Evidence*:
- Martinez Decl. ¶ 11 & Ex. B at 102
- Gray Decl. ¶ 2 & Ex. A at 02:12:18
- Roman Decl. ¶ 9 & Ex. J at 3-4 & Ex. B to the Roman Report (Ex. J) at 17-18

18. Redemption is a theme of both the *Pirates* film and screenplay.

*Evidence*:
- Roman Decl. ¶ 9 & Ex. J at 3-4,  & Ex. B to the Roman Report (Ex. J) at 24Martinez Decl. ¶ 11 & Ex. B at 23, 64, 81, 102
- Gray Decl. ¶ 2 & Ex. A at 00:18:15; 02:12:13-02:12:40

19. The *Pirates* film and screenplay have a substantially similar setting on a ghost ship, port town, and small cavernous cove island, accessible only by small boat, where the treasure is hidden.

*Evidence*:
- Martinez Decl. ¶ 11 & Ex. B at 50-58, 93-99
- Román Decl. ¶ 9 & Ex. J at 3-4, 19 & Ex. B to the Roman Report (Ex. J) at 25.

20. The tone and mood of the *Pirates* film and screenplay is substantially similar because both works are suspenseful and adventurous, as well as playful, humorous, and witty.

*Evidence*:
- Martinez Decl. ¶ 11 & Ex. B at 50-58, 93-99
- Román Decl. ¶ 9 & Ex. J at 5-7

21. The *Pirates* film and screenplay include instances of substantially similar dialogue.

*Evidence*:
- Gray Decl. ¶ 2 & Ex. A at 00:00:55, 00:12:51, 00:18:18, 00:29:54, 00:37:10, 00:51:18, 00:56:28, 00:57:33, 01:31:29
- Martinez Decl. ¶ 11 & Ex. B at 27, 31, 34-35, 66, 96
- Román Decl. ¶ 9 & Ex. J at 3-4, 19-20 & Ex. B to the Roman Report (Ex. J) at 18-20.

**B.   Alfred and Martinez's Facts Relied Upon in Opposition Briefing**

The facts below comprise a mixture of the genuine, disputed material facts identified in Part I.A and additional background facts that lend context.

| NO. | BACKGROUND FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Arthur Lee Alfred II ("Alfred") and Ezequiel Martinez Jr. ("Martinez") grew up in lower socio-economic neighborhoods in Los Angeles County (Alfred in Pomona, and Martinez in East Los Angeles). | Martinez Decl. ¶ 3, Alfred Decl. ¶ 3 |
| 2. | Alfred and Martinez both secured admissions to Cal State San Bernardino. | *Id.* |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

| 3. | In college, Alfred and Martinez met each other and discovered a mutual interest in film. By their senior year, they distinguished themselves by producing their first ever feature film made and aired at the college. Alfred and Martinez pursued their dream to become Hollywood screenwriters and producers. | Martinez Decl. ¶ 3, Alfred Decl. ¶ 3 |
| --- | --- | --- |
| 4. | Alfred and Martinez met Tova Laiter ("Laiter") through their respective internships. | Martinez Decl. ¶ 3, Alfred Decl. ¶ 4 |
| 5. | Laiter is a well-established Hollywood film producer. | Laiter Decl. ¶ 2 |
| 6. | Laiter's introduction to Hollywood started on the set of Godfather 2. | *Id.* |
| 7. | Laiter later served as Vice President of Warner Brothers (Head of Story Department), Senior Vice President of Imagine Entertainment, President of Production at Cinergi Pictures, and in other executive positions in the entertainment industry. | Laiter Decl. ¶ 2 & Ex. E |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| | | |
|---|---|---|
| 8. | As an industry veteran with an eye for talent, Laiter was immediately impressed with Alfred and Martinez's creativity, work ethic, and potential. | Laiter Decl. ¶ 3 |
| 9. | In 1999, Alfred and Martinez presented their first professional screenplay—*Red Hood*—to Laiter. | Martinez Decl. ¶ 3, Alfred Decl. ¶ 4, Laiter Decl. ¶ 3(a) |
| 10. | *Red Hood* is a new spin on the classic fairy tale that follows Little Red Riding Hood as an adult pursuing revenge on the wolf. | Alfred Decl. ¶ 4, Martinez Decl. ¶ 3 |
| 11. | Alfred and Martinez prepared both a full screenplay and a "sizzle reel" for *Red Hood* to capture industry interest. | Martinez Decl. ¶ 3, Alfred Decl. ¶ 4 |
| 12. | Laiter marketed the *Red Hood* project to her contacts in Hollywood. | Laiter Decl. ¶ 3(a) |
| 13. | Disney "optioned" the *Red Hood* screenplay. | Laiter Decl. ¶ 3(a), Martinez Decl. ¶ 4, Alfred Decl. ¶ 5 |
| 14. | As part of this option, Disney's creative team led by young executive Brigham Taylor, and joined by Josh Harmon and | Martinez Decl. ¶¶ 6-7, Alfred Decl. ¶¶ 7-9 |

| | | | |
|---|---|---|---|
| | | Michael Haynes, often met with Alfred and Martinez at Disney's offices on the Disney Lot in Burbank, California, to edit, improve, and polish the screenplay for a potential motion picture. | |
| | 15. | Alfred and Martinez created a pirate story with ghosts in 2000. | Martinez Decl. ¶ 9, Alfred Decl. ¶ 10, Martinez Decl. Ex. B at 27 |
| | 16. | Alfred and Martinez's story departed from the archetypal pirate narrative. | Román Decl. ¶ 9 & Ex. J at 5-6. |
| | 17. | Under the archetype, stories focus on an individual pirate with significant power over his crew and a corresponding threat of mutiny. | Román Decl. ¶ 9 & Ex. J at 5. |
| | 18. | The pirate is dangerous and threatening. | Román Decl. ¶ 9 & Ex. J at 5. |
| | 19. | The overall story entertains through suspense, adventure, and thrilling events with an imminent sense of danger. | Román Decl. ¶ 9 & Ex. J at 6. |
| | 20. | Alfred and Martinez' Screenplay is an original twist on a pirate story. | Román Decl. ¶ 9 & Ex. J at 6-7. |

| 21. | The Screenplay starts with a prologue that introduces the two lead characters, Davey Jones and Captain Jack Nefarious, in immediate conflict. | Román Decl. ¶ 9 & Ex. J at 14. Martinez Decl. ¶ 11 & Ex. B at 1-12. |
|---|---|---|
| 22. | The story resumes ten years later with the Rascal Scoundrels led by Davey Jones—a humorous, swashbuckling, morally ambiguous pirate with a drinking problem—seeking redemption. | Román Decl. ¶ 9 & Ex. J at 14 & Ex. B to the Roman Report (Ex. J) at 10-11, 12-13, 14-15, 24. Martinez Decl. ¶ 11 & Ex. B at 12-26. |
| 23. | Jones and his crew battle Nefarious and his supernatural "phantom" ghost crew as they seek the lost treasure. | Román Decl. ¶ 9 &Ex. J 11-12, 18 & Ex. B to the Roman Report (Ex. J) at 14-17, 19. Martinez Decl. ¶ 11 & Ex. B at 53-57, 80-88. |
| 24. | The story ends in a final battle on a small, cavernous island as Jones overcomes the skull-faced pirates. | Román Decl. ¶ 9 & Ex. J at 18. Martinez Decl. ¶ 11 & Ex. B at 93-99. |
| 25. | While the story maintains suspense and adventure, it is also playfully entertaining with layers of humor, irony, and wit. | Román Decl. ¶ 9 & Ex. J at 6-7. Martinez Decl. ¶ 11 & Ex. B at 19, 55 |
| 26. | In the summer of 2000, Laiter called Taylor about Alfred and Martinez's Screenplay. | Laiter Decl. ¶ 4, Alfred Decl. ¶¶ 23-24 |
| 27. | Laiter introduced the Screenplay, including its then title "Pirates of the Caribbean," to Taylor, and Taylor responded with interest. | Laiter Decl. ¶ 4 |

| 28. | Taylor mentioned that he and others at Disney had pondered whether Disney should make a movie called "Pirates of the Caribbean." | Laiter Decl. ¶ 4 |
|---|---|---|
| 29. | Neither Laiter nor Alfred knew about Taylor's abstract thoughts about a pirate movie before this conversation. | Laiter Decl. ¶ 4, Alfred Decl. ¶ 25 |
| 30. | Taylor agreed to accept the Screenplay from Laiter. | Laiter Decl. ¶ 4 |
| 31. | Laiter hand delivered the Screenplay to Taylor on August 9, 2000. | Laiter Decl. ¶ 6 |
| 32. | In her cover letter, Laiter mentioned the Screenplay is "a swashbuckling fun adventure, "Goonies" meets "Pirates of the Caribbean." | Laiter Decl. ¶ 6(a) |
| 33. | This does not mean the Screenplay actually is a combination of those two prior works - it was not - this is merely a common shorthand practice in the entertainment industry to suggest the general feel of a new work by relating it to something the person has probably already seen. | Laiter Decl. ¶ 6(a) |
| 34. | At this time, two versions of the Screenplay existed. In their first version, the script bore its original name: *Pirates of the Spanish Main*. | Martinez Decl. ¶ 10, Alfred Decl. ¶ 11, Laiter Decl. ¶ 5 |

| 35. | As with *Red Hood*, Laiter marketed this script to studios other than Disney. | Laiter Decl. ¶¶ 3, 7 |
|---|---|---|
| 36. | Alfred and Martinez also customized a second version of their Screenplay to market it to Disney. | Martinez Decl. ¶ 10, Alfred Decl. ¶ 11 |
| 37. | This version of the Screenplay incorporated various references to Disney's ride. | Martinez Decl. ¶ 12, 14; Alfred Decl. ¶¶ 12-13, 15. |
| 38. | Alfred and Martinez created the story—and all original constituent parts—from their own creativity. | Martinez Decl. ¶¶ 9, 21; Alfred Decl. ¶¶ 11, 22 |
| 39. | Taylor did not respond to Laiter for several weeks after her submission. | Laiter Decl. ¶ 8; Martinez Decl. ¶ 24; Alfred Decl. ¶ 28 |
| 40. | When Laiter followed up, Taylor told Laiter that he liked the screenplay and that Taylor had submitted it to his superior at Disney, Nina Jacobson. | Laiter Decl. ¶ 8 |
| 41. | After even more time passed, far longer than industry practice, Taylor called Laiter to tell her that Jacobson did not like the children in the screenplay and thus Disney would "pass." | Laiter Decl. ¶ 8 |
| 42. | Alfred and Martinez last saw their Pirates Screenplay on Taylor's desk at their final meeting about Red Hood in October 2000. | Martinez Decl. ¶ 26; Alfred Decl. ¶ 30 |

| 43. | When Alfred and Martinez asked Harmon about the Screenplay, Disney abruptly ushered Alfred and Martinez out of the office. | Martinez Decl. ¶¶ 27-28; Alfred Decl. ¶¶ 31-32 |
| --- | --- | --- |
| 44. | Industry practice is for studios to return a screenplay just after passing on it. | Laiter Decl. ¶ 9 |
| 45. | In November 2002, over two years later, Taylor returned the Screenplay to Martinez. | Martinez Decl. ¶ 30 |
| 46. | Disney released the Pirates of the Caribbean film seven months later in the summer of 2003 | Martinez Decl. ¶ 31; Lowe Decl. ¶ 8 & Ex. S |
| 47. | Three years after the release, Disney undertook a "stern-to-stern enhancement" of the ride that included "new special effects and illusions." | Lowe Decl. Ex. U at 147; *compare* Parras Decl. Exs. A-B (2005 ride) *with* Jessen Decl. Ex. A. |
| 48. | Crowds flocked to see Pirates of the Caribbean at the box office. | Lowe Decl. ¶ 13 & Ex. X |
| 49. | Disney claims the film "re-invented" the pirate movie. | Lowe Decl. ¶ 10 & Ex. U at 148. |
| 50. | Taylor is credited as serving on a "small team that helped develop and launch" the Film." | Lowe Decl. ¶ 9 & Ex. T |
| 51. | Disney has since converted *Pirates of the Caribbean* into a multi-billion dollar franchise across four sequels. | Lowe Decl. Ex. X. <br><br> "Since the debut of "Curse of the Black Pearl," Disney has released |

|  |  |  | five Pirates of the Caribbean movies globally. The film franchise, based on the popular theme park attraction, has generated more than $4.52 billion worldwide." Sarah Whitten, *The 13 highest-grossing film franchises at the box office*, CNBC (Jan. 31, 2021, 9:52 AM), https://www.cnbc.com/2021/01/31/the-13-highest-grossing-film-franchises-at-the-box-office.html |
|---|---|---|---|
| 52. | Taylor is credited as production executive or executive producer on each of the sequels, the last of which aired in 2017. | | Lowe Decl. ¶ 11 & Ex. V |
| 53. | While Martinez continues to make a living as a screenwriter today, he was denied his "big break in the entertainment industry." | | Martinez Decl. ¶ 2 |
| 54. | In 2011, Alfred substantially transitioned out of the entertainment industry and now works with at-risk kids as a high school principal in Riverside, California. | | Alfred Decl. ¶ 2 |
| 55. | Professor Román is not a professional expert witness for one side in copyright cases. Rather, he is a full tenured professor at the University of Southern California with a Ph.D. in Comparative Literature. | | Román Decl. ¶ 1-2 & Ex. I |
| 56. | Román teaches undergraduate and graduate courses in the Department of English at the University of Southern California. | | *Id.* |

| 57. | Román's publications discuss a wide range of plays, novels, and films. | Román Decl. Ex. I<br><br>Román Decl. ¶ 9 & Ex. J at 1-2 |
|---|---|---|
| 58. | Since 2018, Román has held an affiliation with the University of London's Royal Central School of Speech and Drama. | Román Decl. Ex. I<br><br>Román Decl. ¶ 9 & Ex. J at 1-2 |
| 59. | Román detailed his opinion that the Film is substantially similar to the Screenplay. | Román Decl. ¶ 9 & Ex. J<br><br>Román Decl. ¶ 10 & Ex. K |
| 60. | Román's expertise in comparative literature holds special relevance here. Comparative literature is an interdisciplinary practice that encompasses literary, performance, and visual arts. | Román Decl. ¶ 9 & Ex. J at 2 |
| 61. | Román's expertise scrutinizes structures across stories, including themes, plots, characters, sequence of events, tonalities, moods, and dialogue. | *Id.* Ex. J at 2. |
| 62. | Román started his analysis with his opinions about "the archetypical pirate narrative" as "a subgenre of the sailor at sea stories." | *Id.* at 5-6. |
| 63. | Román explained why both the Pirates screenplay and the Pirates film differ from this archetype. | *Id.* at 5-7. |
| 64. | Román meticulously detailed the many similarities across both works—some "nuanced and sophisticated" and others "immediately apparent". | *Id.* at 4; *see also id.* at 3-22. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

| | | |
|---|---|---|
| 65. | Román concluded that the Film is substantially similar to the Screenplay based on the "substantial qualitatively important similarities" across the core elements for the extrinsic test. Specifically, Román found that an original selection and arrangement of elements in the Screenplay was repeated in the Film. | *See, id., e.g.*, at 4, 20-22.<br><br>Román Decl. ¶ 10 & Ex. K at 5-6 |
| 66. | Román also submitted a rebuttal report that details his many disagreements with Disney's expert and identifies the many similarities that Disney's expert failed to rebut. | Román Decl. ¶ 10 & Ex. K at 6-11 |
| 67. | Disney cross-examined Professor Román over two days (consisting of 349 pages of deposition transcript). | Lowe Decl. ¶¶ 2-3 & Exs. M-N |
| 68. | McDonald has a long history as a defense expert witness for Disney. | Lowe Decl. ¶ 7 & Ex. R at 2. |
| 69. | Disney has also employed Mr. McDonald as a W-2 employee for over 30 years. | Lowe Decl. ¶ 4 & Ex. O at 22:9-21 |
| 70. | Throughout that time, the majority of his income has come from Disney. | Lowe Decl. Ex. O at 51:11-53:16 |
| 71. | Throughout his engagements, McDonald has never issued a report that two works were substantially similar. | *See id.* at 35:9-35:21 |
| 72. | Nor does McDonald recall ever finding a single protectible element after his application of the filtration analysis. | *See id.* at 69:10-22 |

| 73. | Most recently, after McDonald argued that no substantial similarity existed in a dispute involving the Disney film, *FROZEN*, Judge Chhabria denied Disney's summary judgment motion. | Lowe Decl. ¶ 6 & Ex. Q at 31:7-16. *See also Wilson v. Walt Disney Co.*, 123 F. Supp. 3d 1172 (N.D. Cal. 2015) |
|---|---|---|
| 74. | McDonald believes "the Court was wrong." | Lowe Decl. ¶ 6 & Ex. Q at 31:7-16. |
| 75. | McDonald also disagrees with the Ninth Circuit's decision in this case. | Lowe Decl. ¶ 6 & Ex. Q at 31:18-32:24. |
| 76. | McDonald concluded that the Screenplay and Film are not substantially similar. | Lowe Decl. ¶ 7 & Ex. R at 5-23 |
| 77. | He then set forth his "novelty" analysis over the elements that Professor Román identified. | Lowe Decl. ¶ 7 & Ex. R at 23-30 |
| 78. | McDonald spent 93 hours watching pirate movies and visiting websites, like pirateking.com and wikipedia.com. | Lowe Decl. ¶ 4 & Ex. O at 87:1-25, 96:1-97:3. |
| 79. | McDonald did not issue an opinion that the Screenplay is a derivative work from the Disney Ride. | *See* Lowe Decl. ¶ 7 & *see generally* Ex. R |
| 80. | McDonald conceded that the ride has "no story." | Lowe Decl. ¶ 4 & Ex. O at 178:7-16. |
| 81. | McDonald conceded that Disney did not ask him to apply the original selection and arrangement test. | Lowe Decl. ¶ 6 & Ex. Q at 54:16-25. |

| 82. | For the third time (and the second time in this case), Disney has failed to consider the selection and arrangement of the Screenplay, even though McDonald recognized the test is a proper one to apply. | *Id.* Ex. Q at 54:3-25. |
|---|---|---|
| 83. | Both Román and McDonald disagree over the themes of the works. Román explained why the theme of both works is redemption, while McDonald characterized the Film as one of liberation. | Román Decl. ¶ 10; Ex. K at 11-12<br>Román Decl. ¶ 9 Ex. J at 12-19<br><br>Lowe Decl. ¶ 7 & Ex. R at 6; 15-17 |
| 84. | Both Román and McDonald disagree over plot structure. McDonald contends that every story must have a 3-act sequence, while Román explains that is not true. | Román Decl. ¶ 10 & Ex. K at 4.<br><br>Lowe Decl. ¶ 7 & Ex. R at 6-10 |
| 85. | Both Román and McDonald disagree over the supernatural element in the Screenplay. McDonald opined that the Pirates screenplay had none, while Román concluded the opposite. | Román Decl. ¶ 9 & Ex. J at 3-4, 11-12; Ex. B to Román's Report (Ex. J) at 17-19; 22-23.<br><br>Román Decl. ¶ 10 & Ex. K at 14-16.<br><br>Lowe Decl. ¶ 7 & Ex. R at 9-10 |
| 86. | Román considered the selection and arrangement of elements across the respective works as a whole; McDonald did not. | Román Decl. ¶ 9 & Ex. J at 4.<br>Román Decl. ¶ 10; Ex. K at 1-3, 19.<br><br>Lowe Decl. ¶ 6 & Ex. Q at 54:3-25. |
| 87. | McDonald bases his opinions on a "novelty" analysis. | Lowe Decl. ¶ 7 & Ex. R at 23-30. |
| 88. | McDonald has relied on Disney for most of his annual income as a W2 employee of Disney for over three decades. | Lowe Decl. ¶ 4 & Ex. O at 51:11-53:16 |

| 89. | Outside his work for Disney, McDonald has worked for "every major" entertainment studio. | Lowe Decl. ¶ 7 & Ex. R at 2. |
|---|---|---|
| 90. | McDonald has never found substantial similarity or even anything protectible, in any of his past testifying experiences. In fact, he candidly conceded that he "wouldn't have done that." | Lowe Decl. ¶ 4 & Ex. O at 35: 9-21<br><br>Lowe Decl. ¶ 6 & Ex. Q at 36:12-37:25 |
| 91. | While McDonald contends that the Pirates screenplay is "generic," "uninventive," and scènes à faire, he reached these conclusions only by watching pirate movies for about 90 hours and googling websites like pirateking.com and wikipedia.com. | Lowe Decl. ¶ 7 & Ex. O at 96:18-97:3 |
| 92. | In his pretrial deposition, McDonald retreated from his positions that the Plaintiffs' screenplay had no "undead pirates". | Lowe Decl. ¶ 4 & Ex. O at 146:9-154:3 |
| 93. | In his pretrial deposition, McDonald retreated from his position that Captain Nefarious was not funny. | Lowe Decl. ¶ 4 & Ex. O at 143:4 - 144:24 |
| 94. | Professor Román's rebuttal expert report explained that he had watched a video of the ride and that the skeletons in the ride "are not 'undead' – they were just positioned in the way they died." | Román Decl. ¶ 10 & Ex. K at 1; 16. |
| 95. | At his deposition, Román testified that "there was, literally, like no story there [in the ride]. It didn't – there was nothing really there. The ride had no narrative structure." | Lowe Decl. ¶ 2 & Ex. M at 120:7-12 |

| 96. | Román explained his methodology that employed his "scholarly expertise to do a comparative study". | Lowe Decl., ¶ 2 & Ex. M at 68:15-21 |
|---|---|---|
| 97. | The similarities Prof. Román identified and explained were "qualitatively important" under this analysis. | Román Decl. ¶ 9 & Ex. J at 4, 20-22. |
| 98. | Prof. Román disregarded "banal" similarities. | Lowe Decl. ¶ 2 & Ex. M 68:22-24 |
| 99. | Román also considered the overall selection and arrangement of these similarities as a whole, as the Ninth Circuit directed. | Román Decl. ¶ 10 & Ex. K at 2; 4-5. Román Decl. ¶ 9; Ex. J at 20-22. |
| 100. | Román explained that the pirate genre is a subgenre of the sailor-at-sea genre. | Román Decl. ¶ 9 & Ex. J at 5. |
| 101. | McDonald agrees in principle with this explanation: "pirate is probably a subgenre of the adventure genre if you're gonna be -- technical on the specifics." | Lowe Decl. ¶ 4 & Ex. O at 91:4-8. |
| 102. | Roman explained his rich familiarity with pirate literature and other pirate movies. | Lowe Decl. ¶ 2 & Ex. M at 18:8-15; 82:3-9; Lowe Decl. ¶ 3 & Ex. N at 260:3-12. |
| 103. | Román considered other pirate movies and literature in rebuttal to Mr. McDonald's report. | Lowe Decl. ¶ 3 & Ex. N at 278:2-17. |
| 104. | Román considered Treasure Island, Cutthroat Island, Robinson Crusoe, Peter Pan, Pirates of Penzance, and The Goonies, along with the book Pirates and Seafaring Swashbucklers on the Hollywood Screen. | Lowe Decl. ¶¶ 2-3 & Ex. M at 81:2-15; 160:3-11; 174:12-18; 178:1-23 |

| | | |
|---|---|---|
| 105. | Alfred and Martinez's original selection and arrangement of elements in their Screenplay includes the Screenplay's three main characters: Davey Jones, Captain Nefarious, and Jane; a plot focused on a supernatural conflict with a pirate ship with skeleton crews; a fast-paced sequence of events that starts with a prologue, resumes a decade later with fast-paced episodes, like Captain Nefarious' attack on the shipping port town where he takes Jane captive, and ending with a final battle on an ominous island, Calavera Island, with skeleton-faced pirates in a cavernous cove accessible only by boat; an overall theme about redemption; the setting on a ghost ship, the port town, and the ominous cove; and a hybrid tone and mood that is both suspenseful and adventurous, as well as playful, humorous (slapstick, satire, and irony) and witty. | Martinez Decl. ¶ 11 & Ex. B at 50-58, 93-99.<br><br>Román Decl. ¶ 9 & Ex. J at 6-21, & Ex. B to Román Report (Ex. J).<br><br>Román Decl. ¶ 9 & Ex. J at 7-11; *see also* Ex. B to Román Report (Dkt. 112-6) |
| 106. | The "standard pirate story," for instance, "typically depicts power differences and the tensions resulting from those conflicts; male bonding and the shipmen as kin motif; maritime culture including work life and quotidian experience; storms at sea or other unforeseen challenges from nature; the necessity of recruiting a future captain to replace an aging or retiring captain; and the overarching threat of mutiny." | Roman Decl. Ex. J at 5 |

| | | |
|---|---|---|
| 107. | Indeed, Disney has not even identified a *single* pirate story that is both supernatural and humorous; suspenseful and playful; and featured a morally ambiguous disillusioned and drunken—and yet charismatic—pirate that seeks redemption against his former first-mate nemesis who has held a strong female character hostage. | *See generally* Lowe Decl. Exs. O-R *See also generally* Román Decl. ¶ 9, Ex. J at 20-21; Román Decl. ¶ 10 Ex. K. at 19. |
| 108. | Davey Jones and Jack Sparrow (Film) are substantially similar. Both characters are one of the main characters. Each is a cocky, dashing, and charismatic young rogue pirate with a drinking problem. He is morally ambiguous, opportunistic, and a disillusioned swashbuckling pirate who self-promotes. Sparrow/Jones wants to be a great pirate, yet routinely fails. Sparrow/Jones is a humorous character. | Martinez Decl. ¶ 11 & Ex. B at 2, 7-12<br><br>Gray Decl. ¶ 2 & Ex. A at 00:08:50, 00:09:56, 00:26:45, 01:35:35-01:36:13 |
| 109. | Nefarious/Barbossa is a sinister—and yet funny and charismatic—pirate focused on finding treasure at all cost. Nefarious/Barbossa is the former first mate to Jones/Sparrow who ousted him after a mutiny. | Martinez Decl. ¶ 11 & Ex. B at 1-10<br><br>Gray Decl. ¶ 2 & Ex. A at 01:06:16 |
| 110. | The likeability—and less menacing nature—of these villains makes both works friendlier to a mass audience. | Román Decl. ¶ 9 & Ex. J at 8. |
| 111. | Jane and Elizabeth (Film) are substantially similar. Jane/Elizabeth is a young woman who lives in the shipping port | Martinez Decl. ¶ 11 & Ex. B at 8-13; 35; 48-52<br><br>Gray Decl. ¶ 2 & Ex. A at 00:00:30-00:00:50; 00:01:52 |

ROBINS KAPLAN LLP<br>ATTORNEYS AT LAW<br>MINNEAPOLIS

| | | |
|---|---|---|
| | town and dreams of pirates and adventure on the high seas. | |
| 112. | After Barbossa/Nefarious kidnaps her, she belies the damsel-in-distress stereotype, and reveals herself as a fully multi-dimensional character who later tricks Barbossa/Nefarious to prevent him from finding the final treasure. Elizabeth/Jane are both feminine and tough. | Martinez Decl. ¶ 11 & Ex. B at 1-12, 48-52<br><br>Gray Decl. ¶ 2 & Ex. A at 00:39:40, 01:59:51. |
| 113. | Elizabeth/Jane are also the love interest who sustains the romantic story line. | Martinez Decl. ¶ 11 & Ex. B at 97.<br><br>Gray Decl. ¶ 2 & Ex. A at 00:07:55, 00:43:13, 02:03:27; 02:11:32. |
| 114. | The overall plot in both works focuses on a supernatural conflict between Jones/Sparrow and Nefarious/Barbossa, who leads a ghost ship with skeleton-pirate crews with a curse or haunted legend underlying it | Martinez Decl. ¶ 11 & Ex. B at 27-28, 45<br><br>Gray Decl. ¶ 2 & Ex. A at 00:37:07-00:37:13, 01:52:23-02:02:02 |
| 115. | In both works, as Professor Román explained, "these skeleton crews mainly surface at night during scenes of epic battle and provide a sensational thrill-driven aura to the story. Both works also rely on a curse or a haunted legend that the characters in each story set out to rectify or undue a quest that involves in both cases the search for lost or stolen treasures on remote islands." | Román Decl. ¶ 9 & Ex. J at 12. |
| 116. | Both works start with a prologue approximately ten years earlier. | Martinez Decl. ¶ 11 & Ex. B at 1-12<br><br>Gray Decl. ¶ 2 & Ex. A at 00:00:16-00:04:52 |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 117. | The prologue in both works (1) sets the tone and mood of the story; (2) introduces unfinished business that will be revisited about a decade later; (3) introduces some of the major characters, including Jane/Elizabeth; (4) takes place on a ship in rough seas under threatening skies; and (5) introduces a conflict on the ship that throws the viewer into a pirate story. | Roman Decl. ¶ 9 & Ex. J at 15; Roman Decl. ¶ 10 & Ex. K at 10(¶o). |
|---|---|---|
| 118. | In both works, the lead pirate characters (Jones/Sparrow and Nefarious/Barbossa) are introduced formally at gunpoint, and Nefarious/Barbossa takes the ship from Jones/Sparrow | Martinez Decl. ¶ 11 & Ex. B at 2<br><br>Gray Decl. ¶ 2 & Ex. A at 00:17:39 |
| 119. | In both works, the characters next cross paths during Barbossa/Nefarious's attack on the shipping port to search for key items to locate the treasure. While Sparrow/Jones escapes unharmed, Nefarious/Barbossa takes Jane/Elizabeth captive. | Martinez Decl. ¶ 11 & Ex. B at 44-48, 57<br><br>Gray Decl. ¶ 2 & Ex. A at 00:29:34-00:32:00, 00:34:00, 00:37:57, 00:39:08-00:39:29, 00:44:24, 00:57:55-00:58:10 |
| 120. | The competing ships make way to an ominous island, Calavera Island (meaning Skull Island)/Isla de Muerta (meaning Island of the Dead), for the final battle scene with Nefarious/Barbossa's skeleton pirates in a cavernous cove accessible only by small boats. | Martinez Decl. ¶ 11 & Ex. B at 64, 81<br><br>Gray Decl. ¶ 2 & Ex. A at 01:04:39-01:05:38 |

ROBINS KAPLAN LLP<br>ATTORNEYS AT LAW<br>MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 121. | After defeating Nefarious/Barbossa and his crew, Jones/Sparrow and Jane/Elizabeth return to the port town. | Martinez Decl. ¶ 11 & Ex. B at 101-02<br><br>Gray Decl. ¶ 2 & Ex. A at 02:02:56 |
|---|---|---|
| 122. | The story ends with Jones/Sparrow's redemption by captaining his ship. | Martinez Decl. ¶ 11 & Ex. B at 101-02<br><br>Gray Decl. ¶ 2 & Ex. A at 02:12:18 |
| 123. | When Jane/Elizabeth are first taken hostage by Nefarious/Barbossa, they are both brought aboard ship where they are taken past crew members before meeting with Nefarious/Barbossa directly. | Martinez Decl. ¶ 11 & Ex. B 62-63<br><br>Gray Decl. ¶ 2 & Ex. A at 00:37:57 |
| 124. | In the Screenplay, the crew members heckle Jane while she is escorted across the deck. | Martinez Decl. ¶ 11 & Ex. B at 62-62 |
| 125. | After being insulted, one crew member tries to attack Jane before Nefarious intervenes | Martinez Decl. ¶ 11 & Ex. B at 62-63 |
| 126. | Nefarious, in response, reprimands the crew member as a warning to the rest of the crew not to harm Jane. | *Id.* |
| 127. | In the Film, Elizabeth is similarly heckled by crew members on the deck of the ship before meeting face to face with Barbossa. | Gray Decl. ¶ 2 & Ex. A at 00:38:03 |
| 128. | As she tries to respond, she is slapped by one of the crew members. | Gray Decl. ¶ 2 & Ex. A at 00:38:10 |
| 129. | Just as Elizabeth is struck, Barbossa appears, grabs the crew member's arm and threateningly warns that no one is to lay a hand on her. | Gray Decl. ¶ 2 & Ex. A at 00:38:13 |

| | | |
|---|---|---|
| 130. | Male pirates in the Screenplay and Film poorly disguise themselves as women to deceive enemies during battle. In the Screenplay, Jones dresses as a "wench" before revealing himself and attacking the invading pirates. The scene is comedic, with one of the pirates seeking to kiss Jones before he says "Love hurts" and strikes the pirate. | Martinez Decl. ¶ 11 & Ex. B at 50  Gray Decl. ¶ 2 & Ex. A at 01:49:02-01:49:31; 01:51:05-01:51:33. |
| 131. | In the film, two members of Barbossa's crew dress up as young maidens to create a distraction and mount a surprise attack. | Gray Decl. ¶ 2 & Ex. A at 01:49:02-01:49:31 |
| 132. | The otherwise rugged pirates fan each other, even complimenting each other's outfits before viciously engaging in sword fights with enemies. | Gray Decl. ¶ 2 & Ex. A at 01:51:05-01:51:33. |
| 133. | In the Screenplay, while Jones is busy fighting Nefarious and his supernatural pirates, Jones' crew is able to climb aboard the unoccupied Phantom Ship. | Martinez Decl. ¶ 11 & Ex. B at 36 |
| 134. | The crew takes control of the ship without Jones, bringing him aboard only at the last minute during a hot pursuit. | Martinez Decl. ¶ 11 & Ex. B at 55-56 |
| 135. | In the Film, Sparrow's crew also takes the ghost ship while Barbossa and his crew are fighting Sparrow and other enemies. | Gray Decl. ¶ 2 & Ex. A at 01:58:40 |
| 136. | After regaining control of the empty ship without Sparrow, they likewise welcome him aboard at the end of a hot pursuit. | Gray Decl. ¶ 2 & Ex. A at 02:12:00 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 137. | The main theme in both works is about redemption. While Jones/Sparrow starts the story in despair as a failed pirate, he redeems himself after defeating his rival Nefarious/Barbossa and returns to glory. | Martinez Decl. ¶ 11 & Ex. B at 23, 102<br><br>Gray Decl. ¶ 2 & Ex. A at 00:18:15; 02:12:13-02:12:40 |
|---|---|---|
| 138. | The Film and Screenplay take place on a ghost ship ("The Black Pearl"/"Phantom Ghost Ship"), the port town ("Port Royal"/"Caribbean Port"), and the cove where the treasure is hidden ("Calavera Island"/"Isla de Muerta"). | *See generally* Martinez Decl. Ex. B; Gray Decl. Ex. A |
| 139. | The tone and mood of the story is both suspenseful and adventurous, as well as playful, humorous (slapstick, satire, and irony), and witty. This hybridity adds a "spin" on the standard pirate story. | *See generally* Martinez Decl. Ex. B; Gray Decl. Ex. A |
| 140. | The Screenplay and the Film have several instances of similarity of dialogue. Each respective ship is a ghostly, supernatural ship captained by an evil man. In the Film, it is described as "a ship with black sails, that's crewed by the damned and captained by a man so evil that hell himself spat him back out". | Gray Decl. ¶ 2 & Ex. A at 00:12:51 |
| 141. | In the Screenplay the description reads: "Legend says that a big sea monster ate him and spat him out" and now "His ghost sails the seas in his ghost ship.") | Martinez Decl. ¶ 11 & Ex. B at 27 |
| 142. | Just as the Screenplay provides, "[f]or ten years the Phantom has stopped at nothing… and he'll | Martinez Decl. ¶ 11 & Ex. B at 66 |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| | | |
|---|---|---|
| | CRUSH anyone…who gets in his way," | |
| 143. | The Film provides that Barbossa has "been praying on ships and settlements for near ten years. [And] never leaves survivors." | Gray Decl. ¶ 2 & Ex. A at 00:29:54 |
| 144. | In the Film, Elizabeth tells Barbossa, "I hardly believe in ghost stories anymore." | Gray Decl. ¶ 2 & Ex. A at 00:56:42 |
| 145. | The Screenplay has the Jones' crew discussing that the tale of "undead Jack" is an old seaman's tale and not real. | Martinez Decl. ¶ 11 & Ex. B at 31 |
| 146. | The existence of cursed pirates is also touched on throughout the Film. | Gray Decl. ¶ 2 & Ex. A at 00:00:55; 00:37:10; 00:56:28; 00:57:33. |
| 147. | In the Screenplay, two pirates say, "perhaps he be a Ghost! Maybe he thinks he be Phantom Jack" referring to "undead Jack" Nefarious. | Martinez Decl. ¶ 11 & Ex. B at 34 |
| 148. | Nefarious and Barbossa's dialogue are mirrored in the works as well. While being attacked, Nefarious/Barbossa both state that they "can't die." | Martinez Decl. ¶ 11 & Ex. B at 96<br><br>Gray Decl. ¶ 2 & Ex. A at 01:31:29. |
| 149. | In the Screenplay, Jones tries to convince a woman in the tavern that he was once a dashing, swashbuckling pirate. | Martinez Decl. ¶ 11 & Ex. B at 34 |
| 150. | In the Film, Sparrow tries to convince others of his lore as a great pirate. | Gray Decl. ¶ 2 & Ex. A at 00:18:18 |

Robins Kaplan LLP
Attorneys at Law
Minneapolis

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 151. | In both works, women slap both Jones/Sparrow in comedic scenes. In the Screenplay the woman states, "You had that coming, Davey Jones!" | Martinez Decl. ¶ 11 & Ex. B at 35 |
|---|---|---|
| 152. | In the Film, Jack Sparrow says, "Not sure I deserved that," followed by "I may have deserved that." | Gray Decl. ¶ 2 & Ex. A at 00:51:18. |
| 153. | Even Disney has observed that the archetypical pirate story was "the most failed movie genre of the modern era." | Lowe Decl. Ex. U at 113-14 |
| 154. | Yet after Disney incorporated the elements from the screenplay above—which diverged from that archetypical story through its original twist—Disney claims to have "re-invented the pirate film." | Lowe Decl. Ex. U at 148 |

| 155. | The Ride has no story or narrative. Even Disney's expert concedes as much. | Lowe Decl. ¶ 4 Ex. O at 178:9-14 |
|---|---|---|
| 156. | Disney did not inform the Court that Disney undertook a "stem-to-stern enhancement" of the ride that included "new special effects and illusions" upon the release of the Pirates sequel in 2006. | Lowe Decl. ¶ 10 & Ex. U at 147; *compare* Parras Decl. Exs. A-B (2005 ride) *with* Jessen Decl. Ex. A. |
| 157. | Further, between 1968 and 2005 (thus prior to 2006) Disney changed a dead skeleton to an undead skeleton. | Lowe Decl. ¶ 10 Ex. U at 79, 147-48; *compare* Parras Decl. Exs. A-B (2005 ride) *with* Jessen Decl. Ex. A. |
| 158. | For instance, Disney's previously undisclosed video of the ride from 1968 shows a skeleton fixed to a ship's wheel, which reflects "the skeletal remains of pirates who | Lowe Decl. ¶ 10 Ex. U at 79; *compare* Parras Decl. Exs. A-B (2005 ride) *with* Jessen Decl. Ex. A. Roman Decl. ¶ 11 & Ex. K at 16 |

| | | | |
|---|---|---|---|
| | | fell short in search for buried treasure." | |
| | 159. | Yet at some later-but-undisclosed time, Disney updated that same skeleton to make it a living skeleton actively steering the ship wheel. | Lowe Decl. ¶ 10 & Ex. U at 79, 147; *compare* Parras Decl. Exs. A-B (2005 ride) *with* Jessen Decl. Ex. A. |
| | 160. | Disney focuses on a series of Ride references that Alfred and Martinez added to pique Disney's (their then-business partner) interest. | Alfred Decl. ¶ 12; Martinez Decl. ¶ 10. |
| | 161. | Disney's expert conceded that the screenplay is original. | Lowe Decl. ¶ 4 & Ex. O at 78:14-20. |
| | 162. | The Ride references consist of only 2 pages of a 104-page Screenplay. | Alfred Decl. ¶ 15; Martinez Decl. ¶ 14. |
| | 163. | Disney and its expert contend that everything that Disney stole from Alfred and Martinez's Screenplay is "generic" and "uninventive," while they simultaneously maintain that Disney "owns" the trivialities and tropes in the ride. | Lowe Decl. ¶ 7 Ex. R at 5; Lowe Decl. ¶ 4 Ex. O at 161, 168:7-17 |

## II.   Plaintiffs' Response to Disney's Statement of Undisputed Material Facts

Disney's statement of undisputed material fact is improper. Disney's 185-fact odyssey fails to identify the material facts for the Court to decide the motion in front of it. Disney's statement is instead an improper demand for a mini-trial on all its evidence at summary judgment. The Court should deny Disney's motion.

## Issue No. 1: Facts Pertaining to Disney's Ride

Plaintiffs object to Disney's voluminous and immaterial statements about its ride. The *sole* issue in Disney's motion is whether the *Pirates* film is substantially similar to the *Pirates* movie. (Dkt. 121 ¶ 14 ("Walt Disney Pictures may file a motion for summary judgment on *only* the issue of substantial similarity . . . .").) Disney itself has represented to the Ninth Circuit that the ride is "not material to the determination that the works are not substantially similar as a matter of law." (Answering Brief at 5, *Alfred v. Walt Disney Co.*, No. 19-55669 (9th Cir. Dec. 20, 2019) (Dkt. 28).) And Plaintiffs object to Disney's declarations of Cline, Jessen, and Parras, *none* of whom Disney disclosed as witnesses it intended to rely on Disney's Rule 26 disclosures. Plaintiffs also object to all exhibits attached to the improper declarations of these Disney witnesses on the same basis, as well as on hearsay grounds and as unauthentic. Finally, Plaintiffs object to these facts as irrelevant as even Disney's expert concedes that the ride has no narrative or story. (Lowe Decl. Ex. O at 178:9-14; *see* Martinez Decl. ¶ 13; Alfred Decl. ¶ 14.) Thus, Plaintiffs dispute that any alleged fact below is admissible or should be considered in Disney's motion for summary judgment of no substantial similarity.

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Disneyland's Pirates of the Caribbean ride (the "Ride") opened in 1967. <u>Cline Decl.</u>[1] ¶ 6. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Cline Declaration. |

| 2. | Riders of Disneyland's Pirates of the Caribbean ride ("Riders") depart from Lafitte's Landing. <u>Jessen Decl</u>. Ex. A [Disneyland 1968 Program] at 19:36. <u>Jessen Decl</u>.[2] Ex. A [Disneyland 1968 Program] at 19:36. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-16<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
|---|---|---|
| 3. | As Riders near a waterfall leading into a cave, a talking pirate's skull warns "there be plundering pirates lurking in every cove" and "Dead men tell no tales." <u>Jessen Decl</u>. Ex. A [Disneyland 1968 Program] at 20:03–20:50; <u>Parras Decl</u>.[3] Ex. B [Ride footage] at 5:38-6:00. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen and Parras Declarations and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-16<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |

| 4. | Riders then pass through treasure-filled caves where Riders see scenes of skeletons studying a map, drinking rum, clutching gold coins, and steering a ship. <u>Jessen Decl</u>. Ex. A [Disneyland 1968 Program] at 20:53–21:58; <u>Cline Decl</u>. Ex. B [E-Ticket Magazine] at 26, 30: ("Heaps of jewels and gold spill from canvas bags, and the Pirate ride theme is heard, as if played on the cobweb covered harpsichord. A full-sized skull and crossbones adorns the jewel-encrusted headboard … an ironic image, considering the status of the bed's occupant below. A navigator's sextant and a collection of nautical charts at the table attest that mere death and decomposition have not deterred this bold buccaneer from his quest for treasure and the call of the sea. Indeed, his naked skull sports a grin (grotesquely enlarged by the glass clutched in his spindly hand) as he studies a treasure map and plots the course of his next ocean voyage."). | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen and Cline Declarations and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-16<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
| --- | --- | --- |
| 5. | As Riders pass through the caves, a voice repeats "dead men tell no tales." <u>Jessen Decl</u>. Ex. A [Disneyland 1968 Program] at 20:25–20:50. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15 |

ROBINS KAPLAN LLP<br>ATTORNEYS AT LAW<br>MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| | | | |
|---|---|---|---|
| | | | Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
| 6. | | Before Riders exit the treasure-filled caves, a voice says there is an "evil curse" that lies upon the "bewitched treasure." <u>Jessen Decl</u>. Ex. A [Disneyland 1968 Program] at 21:05–21:15; <u>Cline Decl</u>. Ex. B [*E-Ticket* Magazine] at 30 ("*Perhaps ye knows too much … Ye've seen the cursed treasure … Ye know where it be hidden.* These, and other threatening phrases of pirate verbiage … reverberate along the narrow stone tunnel and hint of serious consequences to come."). | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-16<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
| 7. | | Before Riders exit the treasure-filled cave, a voice says "No fear have ye of evil curses, says you?" <u>Jessen Decl.</u> Ex. A [Disneyland 1968 Program] at 20:53–50:58. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-16<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |

| 8. | Riders then see a pirate ship attacking a port town in which cannons are firing, and a pirate captain aboard the ship shouts, "We'll see you to Davey Jones!" <u>Jessen Decl.</u> Ex. A [Disneyland 1968 Program] at 21:58–22:35. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-16<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
|---|---|---|
| 9. | Riders then see a port town being sacked. <u>Jessen Decl.</u> Ex. A [Disneyland 1968 Program] at 22:37–26:42. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
| 10. | Riders pass a "take a wench for a bride" auction, with more drunken pirates chanting "we wants the redhead." <u>Jessen Decl.</u> Ex. A [Disneyland 1968 Program] at 23:21–24:15; <u>Cline Decl.</u> Ex. B [*E-Ticket* Magazine] at 32–33 (discussing the scene). | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen and Cline Declarations and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |

| 11. | Riders pass pirates singing "Yo-Ho (A Pirate's Life for Me)." <u>Jessen Decl.</u> Ex. A [Disneyland 1968 Program] at 25:04–26:42. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
| --- | --- | --- |
| 12. | Riders pass a pirate balancing hats on his head, a pirate in the mud with pigs, and a pirate on a bridge missing a shoe. <u>Jessen Decl.</u> Ex. A [Disneyland 1968 Program] at 25:10–26:42. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
| 13. | Riders pass a scene of jailed prisoners attempting to use a bone to lure a dog with keys in its mouth over to their cell. <u>Jessen Decl.</u> Ex. A [Disneyland 1968 Program] at 26:42–27:11. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12 |

| | | | Lowe Decl. Ex. O at 178-79 |
|---|---|---|---|
| 14. | | Riders pass pirates in a cave shooting pistols in a room full of barrels labeled "EXPLOSIVO," where the pirates are again singing "Yo-Ho (A Pirate's Life for Me)." The barrels explode. <u>Jessen Decl.</u> Ex. A [Disneyland 1968 Program] at 27:11–28:18. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility. <br><br> *Evidence:* <br> Martinez Decl. ¶¶ 13-15 <br> Alfred Decl. ¶ 14-16 <br> Lowe Decl. ¶ 11 & Ex. T <br> Lowe Decl. Ex. M. at 120:10-12 <br> Lowe Decl. Ex. O at 178-79 |
| 15. | | Riders then go up the waterfall and emerge from the caves below. <u>Jessen Decl.</u> Ex. A [Disneyland 1968 Program] at 28:14–28:55. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and corresponding exhibits' admissibility. <br><br> *Evidence:* <br> Martinez Decl. ¶¶ 13-15 <br> Alfred Decl. ¶ 14-16 <br> Lowe Decl. ¶ 11 & Ex. T <br> Lowe Decl. Ex. M. at 120:10-12 <br> Lowe Decl. Ex. O at 178-79 |
| 16. | | Riders then pass through the port town again briefly before disembarking. | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen Declaration and |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

| | | |
|---|---|---|
| | | corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |

## Issue No. 2: Facts Pertaining to Disney's Pirates of the Caribbean: The Curse of the Black Pearl (the "Motion Picture")

Plaintiffs object to Disney's excessive factual contentions below as immaterial under Rule 56. Disney's verbose fragments from the Pirates film below are a transparent effort to draw inferences in its favor about purported dissimilarities. Yet "[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012); *see also* Nimmer on Copyright § 13.03[B] [1][a] (2021) ("It is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown."). For that reason, courts "focus on the relationship *to the plaintiff's work* because a contrary rule that measured the significance of the copied segment in the defendant's work would allow an unscrupulous defendant to copy large or qualitatively significant portions of another's work and escape liability by *burying them beneath non-infringing material in the defendant's own work*, even where the average audience might recognize the appropriation." *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004) (emphasis added). Disney's excessive, splintered and isolated statements below do not qualify as "material facts," and Plaintiffs object this category of statements for that reason.

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 17. | In the Motion Picture, Jack Sparrow and Will Turner team up to rescue Elizabeth Swann and retake the *Black Pearl*. Gray Decl.[4] Ex. A [Motion Picture] at 42:29–44:26. | Undisputed as to content. |
| 18. | A curse has made Captain Hector Barbossa and his crew immortal skeletons, which is revealed when they are exposed to moonlight. Gray Decl. Ex. A [Motion Picture] at 55:55–57:42, 58:50–100:40. | Undisputed as to content. |
| 19. | Barbossa and his crew sail the *Black Pearl*. Gray Decl. Ex. A [Motion Picture] at 38:08–38:20. | Undisputed as to content. |
| 20. | Barbossa and his crew seek to reverse the curse. Gray Decl. Ex. A [Motion Picture] at 55:55–57:42, 58:50-100:40. | Undisputed as to content. |

| 21. | The Motion Picture features the song "Yo-Ho (A Pirate's Life for Me)." <u>Gray Decl.</u> Ex. A [Motion Picture] at 00:40–00:56, 1:36:44–1:36:55, 2:12:44–2:13:03. | Undisputed as to content. |
|---|---|---|
| 22. | The Motion Picture features an attack on Port Royal. <u>Gray Decl.</u> Ex. A [Motion Picture] at 29:40–37:40. | Undisputed as to content. |
| 23. | The Motion Picture features skeleton pirates and cursed treasure. <u>Gray Decl.</u> Ex. A [Motion Picture] at 55:55–57:42, 58:50–100:40. | Undisputed as to content. . |
| 24. | The Motion Picture features a woman with red hair. <u>Gray Decl.</u> Ex. A [Motion Picture] at 51:06–51:19. | Undisputed as to content, but disputed as to relevance and materiality. <br><br> *Evidence:* <br> Lowe Decl. Ex. M at 65:1-8 |
| 25. | The Motion Picture features a pirate sleeping with pigs. <u>Gray Decl.</u> Ex. A [Motion Picture] at 51:28–51:43. | Undisputed as to content. |
| 26. | The Motion Picture features a dog in a prison with keys. <u>Gray Decl.</u> Ex. A [Motion Picture] at 27:19–27:33, 36:00–36:29. | Undisputed as to content. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 27. | The Motion Picture features a watery cavern. <u>Gray Decl</u>. Ex. A [Motion Picture] at 109:00– 1:16:00, 1:43:18– 2:01:30. | Undisputed as to content. |
|---|---|---|
| 28. | The Motion Picture features a prologue set in the Caribbean. <u>Gray Decl.</u> Ex. A [Motion Picture] at 0:23–4:52. | Undisputed as to content. |
| 29. | The Motion Picture features a woman who is captured after being chased by pirates. <u>Gray Decl</u>. Ex. A [Motion Picture] at 34:22–34:50. | Undisputed as to content. |
| 30. | The Motion Picture features a final battle in a cave. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:43:18– 2:01:30. | Undisputed, particularly given that Plaintiffs' *Pirates* screenplay contains a similar scene.<br><br>*Evidence:*<br>Martinez Decl. Ex. B at 90, 93-95 |
| 31. | In the Motion Picture's prologue, a ship leaves civilization. <u>Gray Decl</u>. Ex. A [Motion Picture] at 0:23– 1:02. | Disputed as misleading and lacking context. The ship in question is proceeding through a cloud of fog; whether it is "leav[ing] civilization" is unclear. |

| 32. | In the Motion Picture's prologue, a young Elizabeth Swan finds a survivor of a shipwreck, a young Will Turner. Gray Decl. Ex. A [Motion Picture] at 2:22–4:05. | Undisputed as to content. |
|---|---|---|
| 33. | In the Motion Picture's prologue, Elizabeth steals Will's medallion. Gray Decl. Ex. A [Motion Picture] at 4:08–4:18. | Undisputed as to content. |
| 34. | In the Motion Picture's prologue, Elizabeth spots a pirate ship fading into the fog. Gray Decl. Ex. A [Motion Picture] at 4:44–4:52. | Undisputed as to content. |
| 35. | After the prologue, Elizabeth is now a young woman attending Captain James Norrington's promotion to Commodore in the British Royal Navy. Gray Decl. Ex. A [Motion Picture] at 10:47–11:38. | Undisputed as to content. |
| 36. | Norrington asks Elizabeth to marry him. Gray Decl. Ex. A [Motion Picture] at 14:30–15:05. | Undisputed as to content. |
| 37. | Elizabeth cannot breathe in her corset and faints, falling into the sea. Gray Decl. Ex. A [Motion Picture] at 15:00–15:07. | Undisputed as to content. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 38. | As Elizabeth falls, it is revealed she is wearing the medallion she stole from Will. <u>Gray Decl</u>. Ex. A [Motion Picture] at 15:38–15:42. | Undisputed as to content. |
|---|---|---|
| 39. | When the medallion hits the water, it emits a pulse. <u>Gray Decl</u>. Ex. A [Motion Picture] at 15:40–15:44. | Undisputed as to content. |
| 40. | Jack Sparrow is in Port Royal to steal a ship. <u>Gray Decl</u>. Ex. A [Motion Picture] at 13:30–14:00. | Undisputed as to content. |
| 41. | Sparrow sees Elizabeth fall and reluctantly jumps in to save her. <u>Gray Decl</u>. Ex. A [Motion Picture] at 15:24–15:37. | Undisputed as to content. |
| 42. | Norrington recognizes Sparrow from a tattoo and attempts to arrest him. <u>Gray Decl</u>. Ex. A [Motion Picture] at 17:25–17:44. | Undisputed as to content. |
| 43. | Sparrow flees into a workshop where he runs into Will. <u>Gray Decl</u>. Ex. A [Motion Picture] at 20:45–20:58. | Undisputed as to content. |

| 44. | Will is an apprentice to a drunken blacksmith. Gray Decl. Ex. A [Motion Picture] at 7:06–7:56, 21:10–21:30, 22:10– 22:19. | Undisputed as to content. |
|---|---|---|
| 45. | Will despises pirates. Gray Decl. Ex. A [Motion Picture] at 22:38–22:50. | Undisputed as to content. |
| 46. | Will engages Sparrow in a sword fight and captures him. Gray Decl. Ex. A [Motion Picture] at 22:54–27:00. | Undisputed that Will captures Sparrow, though Will does so with the assistance of the British Royal Navy and Will's blacksmith colleague. |
| 47. | The *Black Pearl* lays siege to Port Royal. Gray Decl. Ex. A [Motion Picture] at 29:40–29:50. | Undisputed, particularly given that Plaintiffs' *Pirates* screenplay contains a similar scene. <br><br> *Evidence*: <br> Martinez Decl. Ex. B at 30, 50, 55, 57 |
| 48. | Two pirates capture Elizabeth. Gray Decl. Ex. A [Motion Picture] at 34:22–34:50. | Undisputed, particularly given that Plaintiffs' *Pirates* screenplay contains a similar scene. <br><br> *Evidence*: <br> Martinez Decl. Ex. B at 54 |
| 49. | Elizabeth conceals her identity by saying her last name is Turner. Gray Decl. Ex. A [Motion Picture] at 39:37–39:48. | Undisputed as to content. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 50. | Elizabeth demands to see their captain. <u>Gray Decl</u>. Ex. A [Motion Picture] at 34:22–34:45 | Undisputed as to content. |
| --- | --- | --- |
| 51. | Pirates visit Sparrow in his jail cell. <u>Gray Decl</u>. Ex. A [Motion Picture] at 36:38–37:25. | Undisputed as to content. |
| 52. | As one pirate reaches through the bars of Sparrow's cell, his arm is revealed as skeletal in the moonlight. <u>Gray Decl</u>. Ex. A [Motion Picture] at 37:05–37:20. | Undisputed as to content. |
| 53. | Elizabeth meets Barbossa aboard the *Black Pearl* and urges him to leave the port. <u>Gray Decl</u>. Ex. A [Motion Picture] at 38:08–40:15. | Undisputed as to content. |
| 54. | Barbossa agrees to leave the port and takes Elizabeth hostage. <u>Gray Decl</u>. Ex. A [Motion Picture] at 40:07–41:00. | Undisputed, particularly given that Plaintiffs' *Pirates* screenplay contains a similar scene.<br><br>*Evidence*:<br>Martinez Decl. Ex. B at 10 |
| 55. | Will asks Sparrow for his help saving Elizabeth. <u>Gray Decl</u>. Ex. A [Motion Picture] at 42:29–44:26. | Undisputed as to content. |

| 56. | Will and Sparrow set off for Tortuga to assemble a crew. <u>Gray Decl</u>. Ex. A [Motion Picture] at 48:26–50:29. | Undisputed as to content. |
|---|---|---|
| 57. | Will learns Sparrow used to be the captain of the *Black Pearl* and that Barbossa mutinied and marooned Sparrow. <u>Gray Decl</u>. Ex. A [Motion Picture] at 105:40–107:42. | Undisputed, particularly given that Plaintiffs' *Pirates* screenplay contains a similar scene.<br><br>*Evidence*:<br>Martinez Decl. Ex. B at 66 |
| 58. | Elizabeth dines with Barbossa on the *Black Pearl*. <u>Gray Decl</u>. Ex. A [Motion Picture] at 53:59–55:55. | Undisputed as to content. |
| 59. | Barbossa explains that his men found the gold of Cortes, but realized too late that the treasure was cursed, turning Barbossa and his men into immortal skeletons, whose true skeleton nature is revealed by moonlight. <u>Gray Decl</u>. Ex. A [Motion Picture] at 55:55–57:42, 58:50–100:40. | Undisputed as to content. |
| 60. | The *Black Pearl* reaches Isla de la Muerta, where Cortes' gold is kept. <u>Gray Decl</u>. Ex. A [Motion Picture] at 104:04–104:53, 108:00–108:14. | Undisputed as to content. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 61. | Barbossa explains that to break the curse, they must return Cortes's gold medallions, as well as blood from every person who took them (or one of his or her descendants). Gray Decl. Ex. A [Motion Picture] at 57:55–58:24. | Undisputed as to content. |
|---|---|---|
| 62. | Barbossa is missing a medallion and blood from a single crewmember— Bill Turner, Will's father. Gray Decl. Ex. A [Motion Picture] at 57:55–58:24. | Undisputed as to content. |
| 63. | Believing Elizabeth to be Turner's child (because she had the medallion and claimed to be named Turner), Barbossa cuts her hand and drops the bloody medallion into the chest. Gray Decl. Ex. A [Motion Picture] at 1:11:40–1:12:26. | Undisputed as to content. |
| 64. | The curse is not broken by Elizabeth's blood. Gray Decl. Ex. A [Motion Picture] at 1:12:26–1:13:12. | Undisputed as to content. |
| 65. | Will knocks out Sparrow and saves Elizabeth. Gray Decl. Ex. A [Motion Picture] at 1:11:52–1:12:00, 1:13:48– 1:14:40. | Undisputed as to content. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 66. | Barbossa's men capture Sparrow and chase after Will. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:15:04– 1:15:54, 1:16:36– 1:17:27. | Undisputed as to content. |
|---|---|---|
| 67. | When the *Black Pearl* reaches Will, battle ensues. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:23:03– 1:30:48. | Undisputed as to content. |
| 68. | Will threatens to render the curse unbreakable by taking his own life. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:31:30–1:32:06. | Undisputed as to content. |
| 69. | Barbossa agrees to release Elizabeth and Sparrow, marooning them on the island where he previously marooned Sparrow. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:32:06–1:35:10. | Undisputed as to content. |
| 70. | Barbossa keeps Will and Sparrow's crew captive and returns to Isla de la Muerta to break the curse. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:41:26–1:44:13. | Undisputed as to content. |

| 71. | On the island, Sparrow and Elizabeth drink rum as Sparrow tells her the *Black Pearl* represents freedom. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:36:44–1:37:43. | Undisputed as to content. |
| --- | --- | --- |
| 72. | Sparrow collapses, drunk, and Elizabeth uses the rum to build a fire. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:38:29–1:39:30. | Undisputed as to content. |
| 73. | The Navy sees the plumes and rescues Elizabeth and Sparrow. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:39:45–1:39:55. | Undisputed as to content. |
| 74. | Once aboard Norrington's ship, Elizabeth pleads with Norrington to rescue Will. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:39:52–1:40:14 | Undisputed as to content. |
| 75. | Elizabeth promises to marry Norrington, and asks him to save Will "as a wedding gift"; Norrington agrees. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:40:39–1:41:25. | Undisputed as to content. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 76. | On Isla de la Muerta, Barbossa again prepares to shed Will's blood and break the curse. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:44:00–1:44:36. | Undisputed as to content. |
|---|---|---|
| 77. | Sparrow arrives at Isla de la Muerta and tells Barbossa the Navy is outside and suggests he wait to break the curse until after they have defeated the Navy. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:44:34–1:45:35. | Undisputed as to content. |
| 78. | Sparrow proposes an alliance, under which he will captain the *Black Pearl* under Barbossa's colors; Barbossa agrees. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:46:10–1:47:45. | Undisputed as to content. |
| 79. | Barbossa's crew ambushes Norrington's ship by walking under the water. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:48:11–1:48:56. | Undisputed as to content. |
| 80. | Elizabeth boards the *Black Pearl* and frees Sparrow's crew. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:52:52–1:53:54, 1:57:42–1:57:50. | Undisputed as to content. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 81. | Sparrow's crew promptly sails off and leaves Elizabeth to head to Isla de la Muerta. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:58:00–1:58:25. | Undisputed as to content. |
|---|---|---|
| 82. | On Isla de la Muerta, Barbossa stabs Sparrow, but Sparrow survives—he has taken a piece of Cortes's treasure and is also cursed with immortality. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:55:18–1:55:50. | Undisputed, particularly given that Plaintiffs' *Pirates* screenplay contains a similar scene.<br><br>*Evidence*:<br>Martinez Decl. Ex. B at 82 |
| 83. | Elizabeth saves Will and the two begin battling pirate guards. <u>Gray Decl</u>. Ex. A [Motion Picture] at 1:59:43–2:00:43. | Undisputed, particularly given that Plaintiffs' *Pirates* screenplay contains a similar scene.<br><br>*Evidence*:<br>Martinez Decl. Ex. B at 49 |
| 84. | Sparrow and Will break the curse just as Sparrow shoots Barbossa in the heart. <u>Gray Decl</u>. Ex. A [Motion Picture] at 2:00:43–2:01:30. | Undisputed as to content. |
| 85. | Barbossa's crew is no longer immortal and surrenders. <u>Gray Decl</u>. Ex. A [Motion Picture] at 2:01:30–2:03:10. | Undisputed as to content. |

| 86. | Later in Port Royal, the Navy prepares to hang Sparrow for piracy. Gray Decl. Ex. A [Motion Picture] at 2:04:29–2:06:27. | Undisputed as to content. |
|---|---|---|
| 87. | Elizabeth declares her love for Will, and the two help Sparrow escape to the *Black Pearl*. Gray Decl. Ex. A [Motion Picture] at 2:07:55–2:08:51. | Undisputed, though it should be noted that Will declares his love for Elizabeth, not vice versa. Otherwise undisputed, particularly given that Plaintiffs' *Pirates* screenplay contains a similar scene.<br><br>*Evidence*:<br>Martinez Decl. Ex. B at 86, 97 |
| 88. | The movie ends with Sparrow humming "Yo ho, a pirate's life for me." Gray Decl. Ex. A [Motion Picture] at 2:12:44–2:13:03. | Undisputed as to content. |

## Issue No. 3: Facts Pertaining to Plaintiffs' "Pirates of the Caribbean" Screenplay (the "Screenplay")

Plaintiffs object to Disney's heavy reliance on out-of-context excerpts from the original complaint. An amended complaint "supersedes the original, the latter being treated thereafter as *non-existent*." *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956) (emphasis added). Indeed, after amendment, "the original pleading no longer serves any function." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, Plaintiffs object to every instance that Disney relies on the original complaint below.

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 89. | Tova Laiter sent the Screenplay to Brigham Taylor at Disney Pictures with a cover letter (the "Cover Letter"). <u>Dkt</u>. 1-2.[5] | Undisputed, although Laiter hand delivered the screenplay. Laiter Decl. Ex. G. |
| 90. | The Cover Letter stated, "here is a brand new spec screenplay." <u>Dkt</u>. 1-2. | Undisputed. |
| 91. | The Cover Letter describes the Screenplay as "a swashbuckling fun adventure, 'Goonies' meets 'Pirates of the Caribbean.'" <u>Dkt</u>. 1-2. | Undisputed that the cover letter includes the statement "a swashbuckling fun adventure, 'Goonies' meets 'Pirates of the Caribbean.'" Disputed as to relevance and materiality of whether this description goes to originality of the *Pirates* screenplay.<br><br>*Evidence*:<br>Laiter Decl. ¶ 6<br>Alfred Decl. Ex. A ¶¶ 7, 11, 15(n)<br>Martinez Decl. Ex. A ¶¶ 7, 11 |
| 92. | The Cover Letter describes the Screenplay as having "the image and expectations families associate with the Disney ride." <u>Dkt</u>. 1-2. | Undisputed that the cover letter includes the statement "the image and expectations families associate with the Disney ride." |

| 93. | The Cover Letter stated that the Screenplay "is also further along than your development project, so yours can be the sequel!" <u>Dkt</u>. 1-2. | Undisputed that the cover letter includes the excerpted statement. *Evidence*: Laiter Decl. Ex. G ¶ 6(b) |
| --- | --- | --- |
| 94. | The Cover Letter includes a postscript stating, "Please let me know as soon as possible as I have a draft that does not have the Disney song or the Ride references that I plan to take to other studios." <u>Dkt</u>. 1-2. | Undisputed. |
| 95. | Plaintiffs pleaded that they "envision[ed] their screenplay incorporating the basic elements of the *Pirates of the Caribbean* ride." <u>Dkt</u>. 1 [Complaint] ¶ 26 | Undisputed that the complaint contains the excerpted quote, disputed as to improper authority because the original complaint has been superseded. *Evidence:* Martinez Decl. ¶ 9 Alfred Decl. ¶ 10-12 |
| 96. | Plaintiffs entitled their Screenplay *Pirates of the Caribbean*. <u>Dkt</u>. 1-1 at 1, 6.[6]; <u>Dkt</u>. 1-2. | Disputed in part, as Plaintiffs initially titled their *Pirates* screenplay "Pirates of the Spanish Main." Also disputed as to improper authority because the original complaint has been superseded. *Evidence:* Martinez Decl. ¶ 10 Alfred Decl. ¶ 11 |

| | | |
|---|---|---|
| 97. | The Screenplay was accompanied by concept art with the tagline "IT ISN'T JUST A RIDE ANY MORE" above an image of a skull and cross bones wearing a pirate cap. <u>Dkt</u>. 1-1 at 3. | Undisputed as to content, but disputed as to relevance and materiality. Also disputed as to improper authority because the original complaint has been superseded. |
| 98. | Plaintiffs prepared a one-minute trailer for the Screenplay, which they called a "sizzle reel." <u>Dkt</u>. 112 [FAC] ¶ 57; <u>Dkt</u>. 112-4. | Undisputed as to content, but disputed as to relevance and materiality. |
| 99. | The "sizzle reel" uses content recorded from the Ride. <u>Compare</u>, e.g., <u>Dkt</u>. 112-4 at 0:22– 0:33 (sizzle reel's use of Ride's skeleton helmsman), 0:05–0:16, 0:26–0:43 (sizzle reel's use of Ride's "Yo Ho" song), 0:19–0:23 (sizzle reel's use of Ride's "Dead men tell no tales"), 0:49–0:55 (sizzle reel's use of warning from Ride); with <u>Jessen Decl</u>. Ex. A at 21:45–21:50 (showing skeleton helmsman in the Ride), 25:05– 26:43, 27:16–27:35 (showing "Yo Ho" song in Ride), 20:03–20:50 (showing "Dead men tell no tales" In Ride); <u>Parras Decl</u>. Ex. B at 5:38 6:00 (showing warning from Ride). | Undisputed as to content, but disputed as to relevance and materiality. Plaintiffs also object to the Jessen and Parras Declarations and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶ 23<br>Alfred Decl. ¶ 27 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 100. | The Screenplay includes six children, ranging in ages from seven to fifteen, known as "the Rascal Scoundrels." <u>Dkt</u>. 1-1 at 19–20 | Undisputed. Also disputed as to improper authority because the original complaint has been superseded. |
| --- | --- | --- |
| 101. | The Screenplay has a prologue. <u>Dkt</u>. 1-1 at 8–19 | Undisputed. Also disputed as to improper authority because the original complaint has been superseded. |
| 102. | The Screenplay's prologue includes an action sequence. <u>Dkt</u>. 1-1 at 8–19; <u>Dkt</u>. 1-1 at 9 ("Jack buries his fist into Davey's gut who buckles in pain."), 10 ("The first mate is blasted off the ship!"), 15 ("The crew closes in, swords thrusting forward.") | Undisputed that the Screenplay's prologue includes the quoted statements. Also disputed as to improper authority because the original complaint has been superseded. |
| 103. | The Screenplay's prologue includes an attack by a sea monster. <u>Dkt</u>. 1-1 at 16 ("For a quick second, we see a HUGE TENTACLE submerging back under the deck."), 17 (Captain Jack: "That be no WHALE!" "The ship is under ferocious attack….."). | Undisputed that the Screenplay's prologue includes the quoted statements. Also disputed as to improper authority because the original complaint has been superseded. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 104. | The Screenplay's prologue also features a treasure map, a pirate named Davey Jones, his pirate love interest Jane, and his pirate adversary Jack Nefarious. Dkt. 1-1 at 8–19 | Undisputed. Also disputed as to improper authority because the original complaint has been superseded. |
|---|---|---|
| 105. | After the prologue, the Screenplay features an auction of wenches. Dkt. 1-1 at 19 ("A group of pirates surround a podium. A sign above reads: 'TAKE A WENCH FER YER BRIDE.'"). | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |
| 106. | The "WOMAN IN RED" is at the center of the auction. Dkt. 1-1 at 20–21 ("LINED UP ON A STAGE is a group of WENCHES, all of them large and porky, except for a WOMAN IN RED ravishing, sultry with long red hair, irresistible to any man …."). | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |
| 107. | During the auction of wenches, a "GROUP OF PIRATES" remarks "We wants the REDHEAD!" Dkt. 1-1 at 21. | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 108. | The Rascal Scoundrels steal pirates' clothing and return to their ship. <u>Dkt</u>. 1-1 at 25–30 ("SIX DRUNK MIDGETS are stumbling out of a tavern … the midgets are attacked and yanked back into the dark alley…. OUT WALK THE RASCAL SOUNDRELS in their new clothes."). | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |
|------|------|------|
| 109. | The Rascal Scoundrels call Davey Jones their "Captain." <u>Dkt</u>. 1-1 at 30–31. | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |
| 110. | The Screenplay stated that Phantom Jack Nefarious' pirate crew's "faces are painted into TRIBAL SKULLS… INTIMIDATING." <u>Dkt</u>. 1-1 at 53. | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |
| 111. | The Screenplay includes a scene where Davey "swiftly kicks the skull-faced pirate dead in the balls…. As the skull-faced pirate buckles in pain, he lets go of his sword …." <u>Dkt</u>. 1-1 at 57. | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 112. | At the end of the Screenplay, Davey Jones is "PRIVATEER CAPTAIN," and he and Jane are joined by the Rascal Scoundrels in "[r]espectable" and "[c]lean BRITISH PRIVATEER clothes." Dkt. 1-1 at 109–111 | Undisputed that the Screenplay includes the quoted statements. Also disputed as to improper authority because the original complaint has been superseded. |
|---|---|---|
| 113. | At the end of the Screenplay, Davey Jones says, "I owe it all to them," referring to the Rascal Scoundrels. Dkt. 1-1 at 110. | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |
| 114. | The Rascal Scoundrel Clumsy overcomes his stutter. Dkt. 1-1 at 110 ("Clumsy didn't stutter! Amazed, all heads turn toward him."). | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |
| 115. | Davey Jones and the Rascal Scoundrels defeat Captain Nefarious and find two halves of a map that lead them to a cave full of treasure. Dkt. 1-1 at 86–96. | Undisputed. Also disputed as to improper authority because the original complaint has been superseded. |
| 116. | The Screenplay ends with the Rascal Scoundrels in naval uniforms and Davey saying, "I owe it all to them." Dkt. 1-1 at 109–110. | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |

| 117. | The Screenplay describes a scene as being set in a "cavern like the DISNEYLAND RIDE, 'PIRATES OF THE CARIBBEAN,'" where the Rascal Scoundrels ride a boat down a waterfall. Dkt. 1-1 at 98. | Undisputed that the Screenplay includes the quoted statement. Disputed as to materiality and relevance. Also disputed as to improper authority because the original complaint has been superseded. |
| 118. | While in the cavern, the Rascal Scoundrels pass skeletons impaled by swords into the walls. Dkt. 1-1 at 98 ("Off to the side, SKELETONS OF PIRATES IMPALED BY SWORDS, PINNED TO THE ROCKY WALLS."). | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |
| 119. | While in the cavern, "[a]n eerie voice echoes throughout the cavern" that says "No fear have ye of evil curses says you … no fear of plunderin' pirates lurking in every cove, says you." Dkt. 1-1 at 97–100. | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |
| 120. | The Screenplay quotes the song "Yo-Ho (A Pirate's Life for Me)." Dkt. 1-1 at 39, 40, 52, 73, 109. | Disputed.<br><br>*Evidence*:<br>Martinez Decl. ¶ 16 & Ex. B at 32<br>Alfred Decl. ¶ 17 |
| 121. | The Screenplay includes the line "dead men tell no tales." Dkt. 1-1 at 10, 19, 105. | Undisputed that the Screenplay includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |

**Issue No. 4: Facts Pertaining to Similarities between the Screenplay and the Ride**

Plaintiffs incorporate their objections to the ride, as set forth before the purported facts for Issue No. 1, and their objections to the original complaint, as set forth before the purported facts for Issue No. 3.

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 122. | Plaintiffs "envision[ed] their screenplay incorporating the basic elements of the *Pirates of the Caribbean* ride." Dkt. 1 [Complaint] ¶ 26. | Disputed as misleading and lacking context. Also disputed as to improper authority because the original complaint has been superseded.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
| 123. | Plaintiffs in fact "incorporate[ed] the basic elements of the *Pirates of the Caribbean* ride" into their Screenplay. Dkt. 1 [Complaint] ¶ 26; Dkt 1-2 [Cover Letter]. | Disputed as misleading and lacking context. Also disputed as to improper authority because the original complaint has been superseded.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79<br>Laiter Decl. ¶ 6 |

| | | |
|---|---|---|
| | | |
| 124. | Plaintiffs titled their screenplay "Pirates of the Caribbean" after the Disney Ride <u>Dkt</u>. 112 [FAC] ¶ 49. | Disputed in part, as the Plaintiffs originally titled their screenplay "Pirates of the Spanish Main."<br><br>*Evidence*:<br>Martinez Decl. ¶ 10<br>Alfred Decl. ¶ 11. |
| 125. | Plaintiffs' Screenplay has "the image and expectations families associate with the Disney ride." <u>Dkt</u>. 1-2 [Cover Letter]. | Undisputed that the cover letter includes the quoted statement. Also disputed as to improper authority because the original complaint has been superseded. |
| 126. | Plaintiffs' Screenplay is set in the same place as the Ride (the Caribbean). Dkt. 112-6 [Román Report] at 19 ("The Screenplay's setting is primarily located on the Caribbean seas where much of the action unfolds"). | Undisputed that from a geographical perspective that the ride and screenplay both generally take place in the Caribbean. |
| 127. | Plaintiffs' Screenplay is set in the same pirate genre as the Ride. <u>Dkt</u>. 1-2 [Cover Letter]. | Disputed as a vague and ambiguous legal assertion rather than fact. It is unclear what "set in the same pirate genre as the Ride" means. |

| | | |
|---|---|---|
| 128. | Plaintiffs incorporated various specific "Ride references" into their Screenplay. <u>Dkt</u>. 1-2 [Cover letter] | Undisputed that de minimis references to the ride were included in the screenplay to pique Disney's interest, but disputed that any material references were included.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79. |
| 129. | Among these "Ride references," Plaintiffs repeatedly incorporated the phrase "Pirates of the Caribbean" or "Pirate of the Caribbean" into the Screenplay. <u>Dkt</u>. 1-1 at 11, 29, 103. | Undisputed that the screenplay includes the title phrase "Pirates of the Caribbean." Also disputed as to improper authority because the original complaint has been superseded. |
| 130. | Plaintiffs used the Ride's tagline ("Sail with the wildest crew that ever sacked the Spanish Main") as the Screenplay's tagline and incorporated it into Screenplay's dialogue. <u>Dkt</u>. 1-1 at 1, 15. <u>Cline Decl</u>. Ex. A [Poster with tagline]. | Undisputed that this de minimis reference to the quoted statement was included in the screenplay to pique Disney's interest, but disputed as to materiality, relevance, and context. Plaintiffs also object to Cline Declaration and corresponding exhibits. Also disputed as to improper authority because the original complaint has been superseded.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79. |

| | | | |
|---|---|---|---|
| | | | |
| 131. | Plaintiffs took the Ride's theme song ("Yo Ho (A Pirate's Life for Me)") and used it in the Screenplay. <u>Dkt</u>. 1-1 at 39, 40, 52, 73, 109. | Disputed.<br><br>*Evidence*:<br>Martinez Decl. ¶ 16 & Ex. B at 32<br>Alfred Decl. ¶ 17 |
| 132. | Plaintiffs' named the orphans in the Screenplay "Rascal Scoundrels" which is part of a lyric in "Yo Ho": "We're <u>rascals, scoundrels,</u> and knaves." <u>Cline Decl</u>. ¶ 5; <u>Parras Decl</u>. Ex. B [Ride footage] at 6:43–6:46. | Undisputed that the orphans in the screenplay were referred to as "Rascal Scoundrels." Disputed as to materiality, relevance, and context. Plaintiffs further object to the Cline and Parras Declarations and corresponding exhibits' admissibility.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
| 133. | Plaintiffs named the "Rascal Scoundrels" after that lyric. <u>Dkt</u>. 1-1 at 74. | Disputed.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12 |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| | | Lowe Decl. Ex. O at 178-79 |
|---|---|---|
| 134. | Plaintiffs took dialogue from the Ride and used it in the Screenplay, including the refrain "Dead men tell no tales." E.g., <u>Dkt</u>. 1-1 at 10, 19, 21, 82, 86, 100, 105, 109. | Undisputed that the screenplay includes the quoted statement; disputed as to materiality, relevance, and context.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
| 135. | Plaintiffs incorporated the Ride's bride auction (including aspects of its staging, characters, such as "the redhead," and dialogue, such as "We wants the redhead!") into the Screenplay. <u>Dkt</u>. 1-1 at 19; <u>Jessen Decl</u>. Ex. A [Disneyland 1968 Program] at 23:21–24:15. | Undisputed that the screenplay includes the quoted statements; disputed as to materiality, relevance, and context.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |
| 136. | In Plaintiffs' Screenplay, "the redhead" from the bride auction is the character Jane. <u>Dkt</u>. 1-1 at 19, 40, 42. | Disputed. Also disputed as to improper authority because the original complaint has been superseded. Further disputed as to relevance and materiality.<br><br>*Evidence*:<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12 |

| | | | |
|---|---|---|---|
| | | | Lowe Decl. Ex. O at 178-79 |
| 137. | Plaintiffs incorporated some of the Ride's depictions of skeleton pirates into the Screenplay. <u>Dkt</u>. 1-1 at 37 ("STREAKS OF LIGHTNING SPLATTER THE SKY, FOLLOWED BY THUNDER! At that instant, A SKELETON WEARING RAGGED PIRATE'S CLOTHING is seen steering the ship!"); <u>Dkt</u>. 1-1 at 98 ("Off to the side, SKELETONS OF PIRATES IMPALED BY SWORDS, PINNED TO THE ROCKY WALLS...as if battle took place years ago…"); <u>Jessen Decl</u>. Ex. A [Disneyland 1968 Program] at 20:40, 21:45. | | Undisputed that the screenplay includes the quoted statements; disputed as to materiality, relevance, and context. Plaintiffs object to the Jessen Declaration and corresponding exhibits' admissibility. Also disputed as to improper authority because the original complaint has been superseded. *Evidence:* Martinez Decl. ¶¶ 13-15 Alfred Decl. ¶ 14-16 Lowe Decl. ¶ 11 & Ex. T Lowe Decl. Ex. M. at 120:10-12 Lowe Decl. Ex. O at 178-79 |
| 138. | Plaintiffs incorporated a "cavern like the DISNEYLAND RIDE, 'PIRATES of THE CARIBBEAN'" into the Screenplay. <u>Dkt</u>. 1-1 at 98. | | Undisputed that the screenplay includes the quoted statement; disputed as to materiality, relevance, and context. Also disputed as to improper authority because the original complaint has been superseded. *Evidence:* Martinez Decl. ¶¶ 13-15 Alfred Decl. ¶ 14-16 Lowe Decl. ¶ 11 & Ex. T Lowe Decl. Ex. M. at 120:10-12 |

| | | |
|---|---|---|
| | | Lowe Decl. Ex. O at 178-79 |
| 139. | Plaintiffs' mockup poster for the Screenplay incorporates skeleton pirates photographed from the Ride. Dkt. 1-1 at 5; Jessen Decl. Ex. A [Disneyland 1968 Program] at 20:59, 21:53; Cline Decl. Ex. B [E-Ticket Magazine] at 6. | Undisputed as to content, but disputed as to relevance and materiality, especially given the amendment of the complaint. Also disputed as to improper authority because the original complaint has been superseded.<br><br>*Evidence:*<br>Martinez Decl. ¶¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M. at 120:10-12<br>Lowe Decl. Ex. O at 178-79 |

## Issue No. 5: Facts Pertaining to Plaintiffs' Expert, David Román

Of the 39 facts "pertaining to Plaintiffs' expert, David Roman," only three of them (Numbers 140, 141, and 142) relate to the material question before the Court: whether the *Pirates* film shares substantial similarities with the *Pirates* screenplay. The remaining 36 are not material. Four of them reference allegations in the now-superseded complaint. (Facts 143, 147, 149 and 151.) Several relate to questions of Disney's ride, itself not material to the inquiry of film and screenplay similarities. (Facts 153-54.) And many others address Professor Roman's qualifications and expertise. (*E.g.*, Facts 155-70.) Disney may not weigh Professor Roman's opinions on summary judgment. As a result, those facts are immaterial to the summary judgment analysis.

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 140. | Plaintiffs' expert David Román opines that "The Screenplay brings something entirely original to this traditional narrative by incorporating a humorous tone to the story." <u>Dkt</u>. 112-6 [Román Report] at 5, 6; <u>Dkt</u>. 139 [Román Rebuttal Report] at 4. | Undisputed. |
| 141. | Román opines that the presence of two sets of "male leads" is an "unusual similarity" between the Screenplay and the Motion Picture. <u>Dkt</u>. 112-6 [Román Report] at 8. | Undisputed that the report includes those quoted excerpts. Plaintiffs object to the statement as an incomplete quote. *Evidence*: Roman Decl. ¶ 8 & Ex. J at 8 |
| 142. | Román opines that Screenplay "ingeniously blurs … two stock characters," the "archetypal swashbuckler" and the "pirate," "to create a new type of protagonist with the qualities of both character types." <u>Dkt</u>. 112-6 [Román Report] at 9. | Undisputed that the report includes those quoted excerpts. Plaintiffs object to the statement as an incomplete quote. *Evidence*: Lowe Decl. Ex. M at 168:17-18, 175:10-15, 18-25, 176:3-7, 13-24 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

| 143. | Plaintiffs' original complaint pleaded that "[f]ilms have covered swashbuckling pirates," then listed nine movies that predated Plaintiffs' screenplay, "among many others." <u>Dkt</u>. 1 [Complaint] ¶ 10. | Undisputed that the original complaint included those quoted excerpts, but disputed because the original complaint is superseded and "non-existent" and the quoted statement is incomplete. |
|---|---|---|
| 144. | Román opines that women and young girls "generally are not the [pirate] genre's targeted audience." <u>Dkt</u>. 112-6 [Román Report] at 11. | Undisputed that the report includes those quoted excerpts. Plaintiffs object to the statement as an incomplete quote.<br><br>*Evidence*:<br>Roman Decl. ¶ 11 Ex. K at 9<br>Roman Decl. ¶ 8 Ex. J at 11 |
| 145. | Román opines that there is "no precedent in the genre of the pirate story to encourage such a prologue; in fact, it's highly atypical …." <u>Dkt</u>. 112-6 [Román Report] at 14. | Undisputed that the report includes those quoted excerpts. Plaintiffs object to the statement as an incomplete quote.<br><br>*Evidence*:<br>Lowe Decl. Ex. M at 90:4-24<br>Lowe Decl. Ex. N at 307:11-13 |
| 146. | Román opines that the "element of romance" was one of the Screenplay's "major innovations to the typical pirate story." <u>Dkt</u>. 112-6 [Román Report] at 17; <u>Dkt</u>. 139 [Román Rebuttal Report] at 4. | Undisputed that the report includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote.<br><br>*Evidence*:<br>Lowe Decl. Ex. M at 181:4-23, 186:12, 195:1-19 |

Robins Kaplan LLP<br>Attorneys at Law<br>Minneapolis

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| | | |
|---|---|---|
| 147. | Plaintiffs' original complaint pleaded nine pirate movies by name, "among many others," and stated that "the majority of these pirates [sic] films have a love story/triangle." <u>Dkt</u>. 1 [Complaint] at ¶ 10. | Undisputed that the original complaint included those quoted excerpts, but disputed because the original complaint is superseded and "non-existent" and the quoted statement is incomplete. |
| 148. | Román opines that James McDonald's consideration of other works in the pirate genre was misguided because "other pirate movies are irrelevant to this case." <u>Dkt</u>. 139 [Román Rebuttal Report] at 1. | Undisputed that the report includes that quoted excerpt. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context as well as irrelevant.<br><br>*Evidence*:<br>Roman Decl. ¶ 11 & Ex. K at 1 ("Other pirate movies are irrelevant to the case unless Disney is challenging the originality of the Plaintiffs' screenplay.") Lowe Decl. Ex. N at 278:8-17. |
| 149. | Plaintiffs' original complaint pleaded nine other pirate movies by name "among many others." <u>Dkt</u>. 1 [Complaint] at ¶ 10. | Undisputed that the original complaint included those quoted excerpts, but disputed as to relevance; because the original complaint is superseded and "non-existent"; and because the quoted statement is incomplete. |
| 150. | Román opines that the 1827 James Fenimore Cooper novel *The Red Rover* is an "obscure work[]" that is "not widely known." <u>Dkt</u>. 139 [Román Rebuttal Report] at 2. | Undisputed that the report includes that quoted excerpt. Plaintiffs object to the statement as an incomplete quote and irrelevant. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 151. | Plaintiffs' original complaint included *The Red Rover* as one of eight pirate novels mentioned by name. <u>Dkt</u>. 1 [Complaint] at ¶ 8 | Undisputed that the original complaint references *The Red Rover*, but disputed as to relevance, materiality, and because the original complaint is superseded and "non-existent." |
|---|---|---|
| 152. | Román opines that he was informed that dissimilarities between the Screenplay and the Motion Picture "should not be given any consideration" in his analysis. <u>Dkt</u>. 139 [Román Rebuttal Report] at 11. | Disputed as misleading and lacking context.<br><br>Evidence:<br>Lowe Decl. Ex. M 140:22-24, 144:2-25, 145:1-13, 146:1-12<br>Lowe Decl. Ex. N. at 273:21-25, 274:1-10. |
| 153. | Román opines that "[t]here was no 'ghost ship' anywhere in the Ride[.]" <u>Dkt</u>. 139 [Román Rebuttal Report] at 16. | Undisputed that the rebuttal report includes that quoted excerpt; disputed as incomplete and misleading and lacking context as a result.<br><br>*Evidence*:<br>Roman Decl. ¶ 11 & Ex. K at 16 ( "There was no 'ghost ship' anywhere in the Ride to my understanding – and it's not even clear from Disney's Report exactly what he is referring to in making that conclusory statement. The only image I saw were skeletal remains frozen in time and various scenes or vignettes.") |
| 154. | Román opines that "the Ride provides no backstory that discloses whether any pirates were cursed[.]" <u>Dkt</u>. 139 [Román Rebuttal Report] at 16. | Undisputed that the rebuttal report includes that quoted excerpt; disputed as incomplete and misleading and lacking context as a result.<br><br>*Evidence*:<br>Roman Decl. ¶ 11 & Ex. K at 16 ("Also, the Ride provides no backstory that |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

| | | |
|---|---|---|
| | | discloses whether any pirates were cursed; and there is no inference from the ride that the skeletons would rise from the dead. This is in stark contrast to Disney's Report that posits that the Ride featured 'references to cursed pirates.'") *Id.* ¶ 8 & Ex. J at 29 Lowe Decl. Ex. N at 267:8-11, 318:1-2 Lowe Decl. Ex. O at 178:9-14 |
| 155. | At his deposition, Román was asked, "Do you consider yourself as an expert in the Pirate genre?" Román testified, "No." <u>Gray Decl</u>. Ex. B [Román Dep.] at 17:18–18:15; <u>Gray Decl</u>. Ex. B [Román Dep.] at 94:9–11 ("I would say I wouldn't name myself as having an expertise in pirate stories."). | Undisputed that the deposition included those quoted excerpts; disputed as misleading and lacking context.  *Evidence:* Lowe Decl. Ex. M at 18:6-25, 82:5-9, 83:20-23, 84:11-12, 93:14-18, 96:7, 104:19-24, 105:1-16, 134:18-23 Lowe Decl. Ex. N at 254:11-13, 282:25, 283:1-16 |
| 156. | Román testified that the question whether someone is an expert in the pirate genre is "tricky because it assumes that there is such a thing as a pirate genre .... I don't know that I would necessarily identify the pirate stores having a genre of itself." <u>Gray Decl</u>. Ex. B [Román Dep.] at 18:6–15; <u>Gray Decl</u>. Ex. B [Román Dep.] at 107:1–3 ("I wouldn't necessarily say that it is an established genre...."). | Undisputed that the deposition includes those quoted excerpts. Plaintiffs object to the statement as an incomplete quote.  *Evidence*: Lowe Decl. Ex. M at 18:6-25, 93:14-18 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

| 157. | At his deposition, Román was asked, "do you consider yourself an expert in pirate literature?" Román testified, "I consider myself having familiarity with pirate literature." <u>Gray Decl</u>. Ex. B [Román Dep.] at 18:16–20. | Undisputed that the deposition includes those quoted excerpts, disputed as lacking context.<br><br>*Evidence*:<br>Lowe Decl. Ex. M at 18:6-25, 93:14-18 |
|---|---|---|
| 158. | At his deposition, Román was asked, "And did you receive any specific instructions about what standards you should apply in comparing the works for similarities?" Román testified, "No. Not really. I mean, this is partly that I had my own set of criteria that I was using. Which I explained to the lawyers earlier on, that this is how I think, this is the kind of the work that I do, this is what a comparatist does." <u>Gray Decl</u>. Ex. B [Román Dep.] at 21:25–22:7. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Roman Decl. ¶¶ 5-7, 12-13 & Ex. L at 3:8-11 (notice of errata)<br>Lowe Decl. Ex. M at 51:21-25, 52:1-18<br>Lowe Decl. Ex. N at 241:10-17, 272:22-25, 273:1-10 |
| 159. | At his deposition, Román was asked, "Did you also feel that there were any significant differences between the works at that time?" Román testified, "Yeah, no, of course. There are obvious differences between the two works that—that are immediately apparent." <u>Gray Decl</u>. Ex. B [Román Dep.] at 26:17–24. | Undisputed that the deposition includes those quoted excerpts. Disputed as misleading, lacking context, and irrelevant and immaterial.<br><br>*Evidence:*<br>Lowe Decl. Ex. M. at 138:22-24, 139:1-15, 145:10-14 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 160. | Román testified, "I will say this and again, this is with complete respect to all parties involved. I had no idea what they wanted me to do with this report, right?" Gray Decl. Ex. B [Román Dep.] at 38:12–14. | Undisputed that the deposition includes those quoted excerpts. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Lowe Decl. Ex. M at 36:3-39:23 (referencing Ninth Circuit briefing); *id.* at 51:21-25, 52:1-18<br>Lowe Decl. Ex. N at 241:10-17, 272:22-25, 273:1-10<br>Roman Decl. ¶¶ 5-7 |
|------|------|------|
| 161. | Román testified, "I am just going to say what I said earlier. You know, I think that, from my understanding, my job was to read a screenplay and screen a film. And see what the overlap, if any, there was between them. So, I kind of stayed clean to that mission, right? And that's been my guiding principle throughout.<br>What's in the screenplay, what's in in the film, what, if anything – what if any correspondence are there between them.… So, I kept it pretty—I would use the word clean, kept it pretty clean. So, I just though I'm looking at the screenplay, I am screening the film. I was tasked to do a comparative analysis of the two." Gray Decl. Ex. B [Román Dep.] at 44:25–45:13. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Lowe Decl. Ex. M at 51:1-18, 21-25, 52:11-18<br>Lowe Decl. Ex. N at 241:10-17, 272:22-25, 273:1-10<br>Roman Decl. ¶¶ 5-7 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| | | |
|---|---|---|
| 162. | At his deposition, Román was asked whether his counsel told him "anything … about what standards governed the comparison of works for substantial similarity in copyright cases." Román testified, "There was just a couple of notes that, verbal, that I wasn't sure if I was supposed to write out all the things that I didn't find to be corresponding. So, the dissimilarities. And I was informed that copyright laws aren't necessary interested in what doesn't correspond but what does correspond." <u>Gray Decl</u>. Ex. B [Román Dep.] at 47:19–48:14. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Roman Decl. ¶¶ 5-7<br>Lowe Decl. Ex. M at 144:2-25, 145:1-13, 146:1-12<br>Lowe Decl. Ex. N at 273:21-25, 274:1-10 |
| 163. | At his deposition, Román was asked, "So other than being instructed to disregard dissimilarities between the two works, were you given any other information about the legal standards governing copyright cases?" Román testified, "No. I mean, I think that there was some kind of casual conversations about copyright infringement cases. You know what it felt like? It felt like, you know, conversations in the hall…. But it didn't seem relevant to what I was tasked to do." | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Roman Decl. ¶¶ 12-13 & Ex. L at 4:20-22 (notice of errata)<br>Lowe Decl. Ex. M at 51:21-25, 52:1-18<br>Lowe Decl. Ex. N at 272:22-25, 273:1-10 |

| | | |
|---|---|---|
| | <u>Gray Decl</u>. Ex. B [Román Dep.] at 48:10–49:11. | |
| 164. | At his deposition, Román was asked, "And in connection with your assignment in this matter, were you specifically asked by counsel to apply any particular test for substantial similarity to your expert analysis?" Román testified, "I wasn't guided specifically along those lines." <u>Gray Decl</u>. Ex. B [Román Dep.] at 65:12–16. | Undisputed that the deposition includes those quoted excerpts. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Roman Decl. ¶¶ 5-7, 12-13 & Ex. L at 3:4-6<br>Lowe Decl. Ex. M at 51:21-25, 52:1-18<br>Lowe Decl. Ex. N at 241:1-17, 272:22-25, 273:1-10 |
| 165. | At his deposition, Román was asked, "Have you ever heard something called the extrinsic test for substantial similarity?" Román testified, "Not that I can recollect." <u>Gray Decl</u>. Ex. B [Román Dep.] at 66:1–5. | Undisputed that the deposition includes those quoted excerpts. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Roman Decl. ¶ 8-9 & Ex. J at 3-20<br>Lowe Decl. Ex. M at 21:18-24, 51:21-25, 52:1-18, 60:15-22 |

| | | |
|---|---|---|
| | | Lowe Decl. Ex. N at 272:22-25, 273:1-10 |
| 166. | At his deposition, Román was asked, "In conducting your analysis of the two works at issue here, did you make any effort whatsoever to distinguish between protectable and unprotectable elements of the two works?" Román testified, "I wasn't using the grid, the legal grid to write up my report, if that's what you're referring to." <u>Gray Decl</u>. Ex. B [Román Dep.] at 68:9–24. | Undisputed that the deposition includes those quoted excerpts. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Lowe Decl. Ex. M at 65:1-8, 71:4-10, 72:6-22, 75:1-23<br>Lowe Decl. Ex. N at 273:5-10, 285:1-25, 286:1-11, 288:4-13 |

| 167. | In forming his original opinions, Román did not review other works in the pirate genre to determine whether individual elements in the screenplay and the Motion Picture were original to the Screenplay. Gray Decl. Ex. B [Román Dep.] at 87:3–9 ("Q: But you didn't go out and review pirate works to determine whether other pirate works incorporated a humorous tone into the story— A: No, no, and I wasn't asked to do that. That wasn't a task at hand."); 146:23-147:12 ("Q: From the time you were retained to the time you generated your report, you didn't review other pirates works to determine whether individual elements in the works you were comparing were original to the screenplay, right? A: Right. Because my task was very clear which is they wanted me to look at the screenplay and look at the film and base my analysis on that."); 161:18–162:3 ("Q: And you weren't personally familiar with all of the works in Mr. McDonald's report,were you? A: No. No…. I did ask [Plaintiffs' counsel] Aleks and Steven if it was important for me to review those materials. Like, do I need to read up on all of | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Lowe Decl. Ex. M at 27:18, 81:24, 82:4-9, 83:20-23, 87:11-14, 97:10-21, 105:5-7<br>Lowe Decl. Ex. N at 260:3-12, 277:11-14 |
|---|---|---|

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

that? And their answer was absolutely not.").

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| 168. | At his deposition, Román was asked, "So I am asking you, is it your opinion as an expert on expressing an opinion about substantial similarities that all of the similarities you have described in your expert report relate to protectable elements of the work?" Román testified, "Let me answer it this way. You know, when I read the screenplay, I formed an opinion on the quality of the screenplay, its innovations, what I found interesting, what I found unusual, all of that, which I said several times already today. Then, when I screened the film and I saw some of those echoes, I thought, well, this is interesting. It does feel like copyright infringement. So, if what I identify as original and particular to the screenplay, I think should be protected by copyright law. But, again, I am not a lawyer and I am just saying that it does seem to me that the qualities in the screenplay that I have identified as original, even if they can be reduced to scènes à faire from an unimaginative limited perspective, I think that misses the importance of the contribution in the screenplay." <u>Gray Decl</u>. Ex. B [Román Dep.] at 74:2–24. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Lowe Decl. Ex. M at 65:2-8, 71:7-10, 75:1-23 |

| | | |
|---|---|---|
| 169. | Román testified that, other than *The Goonies*, which he watched "at the last minute" before submitting his expert report, he did not review any other works in the pirate genre before submitting his expert report. <u>Gray Decl</u>. Ex. B [Román Dep.] at 100:18–101:1. | Disputed as to relevance, materiality, and context.<br><br>*Evidence:*<br>Roman Decl. Ex. L at 3:12-14<br>Lowe Decl. Ex. M at 83:20-23, 105:5-7, 87:11-14 |
| 170. | At his deposition, Román was asked, "What was the last pirate novel you read?" Román testified, "*Hamnet*." <u>Gray Decl</u>. Ex. B [Román Dep.] at 117:7–11 | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context<br><br>*Evidence:*<br>Lowe Decl. Ex. M at 117:7-11<br>Roman Decl. ¶ 12 & Ex. Y |
| 171. | At his deposition, Román was asked, "At the time you were preparing your original report, you understood that both works were inspired in part by the Pirates of the Caribbean theme park ride, didn't you?" Román testified, "I didn't know that there was a theme park." <u>Gray Decl</u>. Ex. B [Román Dep.] at 147:16–25. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Lowe Decl. Ex. M at 117:7-11<br>Roman Decl. ¶ 12 & Ex. Y |

ROBINS KAPLAN LLP<br>ATTORNEYS AT LAW<br>MINNEAPOLIS

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES
OF MATERIAL FACTS 2:18-CV-08074-CBM-ASX

| | | |
|---|---|---|
| 172. | Román testified, "Do I think it is important to know the source material when comparing two works that share a same source material? … I would say, yeah, it absolutely helps to know the source material." <u>Gray Decl</u>. Ex. B [Román Dep.] at 151:16–23. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Martinez Decl. ¶ 13-15<br>Alfred Decl. ¶ 14-16<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. M at 120:10-12 |
| 173. | At his deposition, Román was asked, "Are you familiar with Long John Silver from *Treasure Island*?" Román testified, "I wasn't asked to screen that." <u>Gray Decl</u>. Ex. B [Román Dep.] at 169:23–25. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Lowe Decl. Ex. M at 169:23-25, 170:1-4, 173:17-23<br>Lowe Decl. Ex. N at 256:6-17, 257:3-4, 258:1-22<br>Roman Decl. ¶ 10 |
| 174. | *Treasure Island* is one of the most famous works of pirate literature. Dkt. 1 [Complaint] at ¶¶ 8, 10; <u>Gray Decl</u>. Ex. B [Román Dep.] at 107:18-25. | Disputed as to relevance, materiality, and context, and because the original complaint is superseded and non-existent.<br><br>*Evidence:*<br>Lowe Decl. Ex. M at 107:18-25, 170:12-13 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

| 175. | At his deposition, Román was asked, "Are you saying that there is no precedence for the use of a prologue in general in pirate stories, or are you saying there is something specific about the prologue that lacks any precedence in pirate stories?" Román testified, "I would even just go that prologues are an incredibly unusual literary device at large. Like, there are not, like, a lot of literary texts that start off with a prologue." <u>Gray Decl</u>. Ex. B [Román Dep.] at 199:3–14. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Lowe Decl. Ex. K at 14<br>Lowe Decl. Ex. M at 90:4-24, 199:3-24, 200:1-12, 202:3-13<br>Lowe Decl. Ex. N at 307:11-13 |
|---|---|---|
| 176. | At his deposition, Román was asked, "Did [counsel] give you anything in writing explaining your assignment or your conveying the legal standards?" Román testified, "No, no. I kind of – a part of me wished that they had, but no, that wasn't the case." <u>Gray Decl</u>. Ex. B [Román Dep.] at 275:9–13. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Lowe Decl. Ex. M 51:21-25, 52:1-18 (explaining assignment given orally rather than written).<br>Lowe Decl. Ex. N at 273:1-10 |
| 177. | At his deposition, Román was asked, "So at the time you signed and submitted your initial expert report in this matter, you had never seen footage of the Walt Disney ride?" Román testified, "I can answer that confidently that I didn't see any footage of it." <u>Gray Decl</u>. Ex. B [Román Dep.] at 323:16–20. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context.<br><br>*Evidence:*<br>Lowe Decl. ¶ 11 & Ex. T<br>Lowe Decl. Ex. N at 119:2-6, 120:7-12, 317:5-25, 318;1-2 |

| 178. | At his deposition, Román was asked whether, at the time he signed and submitted his initial expert report in this matter, whether he had "[ever] ridden the Walt Disney ride?" Román testified, "No." <u>Gray Decl</u>. Ex. B [Román Dep.] at 323:16–24. | Undisputed that the deposition includes those quoted excerpts. Plaintiffs' object to the statement as an incomplete quote. Disputed as misleading and lacking context. *Evidence:* Lowe Decl. ¶ 11 & Ex. T Lowe Decl. Ex. N at 119:2-6, 120:7-12, 317:5-25, 318;1-2 |

### Issue No. 6: Facts Pertaining to Defendant's Expert, James McDonald

Plaintiffs object to Disney's reliance on its own expert for summary judgment. On summary judgment, the Court accepts the non-moving's party's evidence as true and draws all reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The Court may not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). Nor does this Court resolve battle of the experts on summary judgment. *Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 937 (C.D. Cal. 2016). And Plaintiffs also object to McDonald under Rule 702. Thus, Plaintiffs object to the Court considering or accepting any testimony from McDonald to support Disney's motion for summary judgment of no substantial similarity.

| NO. | DEFENDANTS' UNDISPUTED FACT AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- | --- |

| 179. | James McDonald's report includes a section titled "Assignment and Applicable Standards" in which he describes the "extrinsic test" for substantial similarity. Dkt. 133-1 [McDonald Report] at 2–3. | Undisputed that the report includes those quoted statements, disputed as to correct description of the "extrinsic test." |
|---|---|---|
| | | *Evidence:* Lowe Decl. Ex. R Lowe Decl. Ex. O at 94:6-11, 103-04 |
| 180. | In forming his expert opinions, McDonald reviewed works in the pirate genre other than the Screenplay and the Motion Picture, including the "works cited in paragraph 8 of Plaintiffs' original Complaint: *A General History of the Pyrates*, *Robinson Crusoe*, *Treasure Island*, *Peter Pan*, *Captain Singleton*, *The Pirate*, *The Gold-Bug*, *The Coral Island*, and *The Red Rover*,"; the "films cited in paragraph 10 of Plaintiffs' original complaint: *Treasure Island*, *Peter Pan*, *Savage Island*, *The Buccaneer*, *The Pirate*, *The Island*, *Captain Blood*, *Blackbeard the Pirate*, and *Yellowbeard*"; *The Goonies*; and *Cutthroat Island*. Dkt. 133-1 [McDonald Report] at 3–4. | Undisputed that the report includes those statements, disputed as to relevance. |
| 181. | In forming his expert opinions, McDonald reviewed footage of the Disneyland theme park ride "Pirates of the Caribbean." Dkt. 133-1 [McDonald Report] at 3, 6, 8–10, 18, 21, 24, 27–29. | Undisputed that the report includes those statements, disputed as to relevance and materiality. |

| 182. | McDonald assessed both works under the extrinsic test for substantial similarity and opines that they are "fundamentally dissimilar." <u>Dkt</u>. 133-1 [McDonald Report] at 5–23. | Undisputed that the report includes those statements, disputed as to correctness of the conclusion. <br><br> *Evidence:* <br> Lowe Decl. Ex. R at 4-30 (not applying selection and arrangement test) <br> Lowe Decl. Ex. O at 65-66 (acknowledging propriety of selection and arrangement test) |
|---|---|---|
| 183. | McDonald's report includes a section titled "Novelty Analysis," in which he analyzes whether the similarities identified in Román's expert report are original to Plaintiffs' Screenplay and/or whether they originated in the Ride. <u>Dkt</u>. 133 [McDonald Report] at 23–30. | Undisputed that the report includes the quoted statement, disputed as to relevance, materiality, and correctness of the conclusion or analysis. <br><br> *Evidence*: <br> Lowe Decl. Ex. O at 22, 33, 50-51, 94 |
| 184. | McDonald determined that many of the "similarities" identified by Plaintiffs were generic pirate genre tropes, stock elements, and *scenes a faire*. <u>Dkt</u>. 133-1 [McDonald Report] at 23–30. | Undisputed that the report includes the stated conclusion, disputed as to correctness of the conclusion. <br><br> *Evidence*: <br> Lowe Decl. Ex. O at 74:14-20, 94:6-11 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

| 185. | McDonald testified that, at the time he was engaged as an expert in 2017, he had "been looking at the pirate genre for some time," including in connection with a previous engagement on another case involving *Pirates of the Caribbean*. <u>Gray Decl</u>. Ex. C [McDonald Dep.] at 59:21–61:04 | Undisputed that the deposition includes the quoted excerpt. Plaintiffs object as incomplete. Disputed as to relevance and materiality. |
|------|------|------|

[1] The "Cline Decl." refers to the concurrently filed Declaration of Rebecca Cline in Support of Defendant Walt Disney Pictures' Motion for Summary Judgment.

[2] The "Jessen Decl." refers to the concurrently filed Declaration of David Jessen in Support of Defendant Walt Disney Pictures' Motion for Summary Judgment. Timestamps to the video attached to the Jessen Declaration are given in the format [Minutes]:[Seconds].

[3] The "Parras Decl." refers to the concurrently filed Declaration of Diego Parras in Support of Defendant Walt Disney Pictures' Motion for Summary Judgment. Timestamps to the video attached to the Parras Declaration are given in the format [Minutes]:[Seconds].

[4] The "Gray Decl." refers to the concurrently filed Declaration of Robin S. Gray in Support of Defendant Walt Disney Pictures' Motion for Summary Judgment. Timestamps to the Motion Picture attached as Exhibit A to the Gray Declaration are given in the format [Minutes]:[Seconds] or [Hours]:[Minutes]:[Seconds].

[5] The Cover Letter is also attached as an exhibit to the First Amended Complaint at Dkt. 112-2 at 2.

[6] References to page numbers of the Screenplay are to the ECF numbering at Dkt. 1-1. A black and white scan of the Screenplay (with differing ECF pagination) is also attached to Plaintiffs' First Amended Complaint as Dkt. 112-2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:        October 4, 2021          **LOWE & ASSOCIATES, PC**

By: */s/ Steven T. Lowe, Esq.*
Steven T. Lowe, Esq.
Aleksandra Hilvert, Esq.

**ROBINS KAPLAN LLP**
Patrick M. Arenz (pro hac vice pending)

*Attorneys for Plaintiffs*
*Arthur Lee Alfred, II, et al.*