UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR LEE ALFRED II *et al.*,<br><br>    Plaintiff,<br><br>v.<br><br>THE WALT DISNEY PICTURES,<br><br>    Defendant. | Case No.:  CV 18-8074-CBM-ASx<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE SUBSTANTIAL SIMILARITY [163][193]** |

The matter before the Court is Defendant Walt Disney Picture's ("Defendant's") Motion For Summary Judgment re Substantial Similarity. (Dkt. No. 163.)  The matter is fully briefed.[1]

### I.   BACKGROUND

This is a copyright infringement action brought by Plaintiffs Arthur Lee Alfred II and Ezequiel Martinez (collectively, "Plaintiffs") arising from Defendant's alleged infringement of Plaintiffs' Screenplay entitled *Pirates of the Caribbean* (the "Screenplay").  The Complaint asserted the following five

---

[1] The parties appeared at the hearing on the Motion and were provided an opportunity to raise any issues regarding the Motion at the hearing.  Accordingly, Plaintiffs' ex parte application to file a surreply (Dkt. No. 193) is denied.

"claims":  (1) "Infringement of Copyright (Reproduction of Copyrighted Work)"; (2) "Infringement of Copyright (Preparation of Derivative Works)"; (3) "Infringement of Copyright (Distribution of Copyrighted Work)"; (4) "Infringement of Copyright (Public Performance of Copyrighted Work"); and (5) "Infringement of Copyright (Public Display of Copyrighted Work)."  The Complaint alleged that Defendant's five feature films (i.e., (1) *Pirates of the Caribbean: The Curse of the Black Pearl*; (2) Pirates *of the Caribbean: Dead Man's Chest*; (3) *Pirates of the Caribbean: At World's End*; (4) *Pirates of the Caribbean: On Stranger Tides*; and (5) *Pirates of the Caribbean: Dead Men Tell No Tales*) infringed Plaintiffs' Screenplay.

On May 13, 2019, the Court granted Defendant's motion to dismiss upon finding the parties' works were not substantially similar as a matter of law.  (Dkt. No. 93.)  On May 14, 2019, judgment was entered in favor of Defendants.  (Dkt. No. 94.)  Plaintiffs appealed.  On July 22, 2020, the Ninth Circuit issued a memorandum disposition finding Plaintiffs' Screenplay "shares sufficient similarities with the film to survive a motion to dismiss," reasoning while the district court noted that the elements the two works share in common are unprotected generic, pirate-movie tropes, the Ninth Circuit found "at this stage of the litigation, it is difficult to know whether these elements are indeed unprotectible material.  (Dkt. No. 103.)  The Ninth Circuit concluded "[a]dditional evidence would help inform the question of substantial similarity" and "expert testimony would aid in determining whether the similarities Plaintiffs identify are qualitatively significant," and therefore reversed the district court's dismissal and remanded the action.  (*Id.*)  On September 8, 2020, the Ninth Circuit issued its Mandate.  (Dkt. No. 104.)

Following remand, the parties stipulated to Plaintiffs filing a First Amended Complaint ("FAC"), which was approved by the Court.  (Dkt. No. 111.)  On November 30, 2020, Plaintiffs filed the FAC which asserts a single cause of action

2

for "Copyright Infringement Regarding the Pirates of the Caribbean Film Franchise." (Dkt. No. 112.) Defendant now moves for summary judgment on the issue of substantial similarity.

## II.  STATEMENT OF THE LAW

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Id*. at 249. The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson*, 477 U.S. at 255. But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Id*. at 252.

## III.  DISCUSSION

Defendant moves for summary judgment on the ground the works are not substantially similar as a matter of law.

A. **Plaintiffs' Screenplay and Defendant's Motion Picture *Pirates of the Caribbean: The Curse of the Black Pearl***

Defendant contends Plaintiffs' 2000 Screenplay and Defendant's 2003 motion picture *Pirates of the Caribbean: The Curse of the Black Pearl* are both based on Disney's Pirates of the Caribbean theme park ride, and "[a]fter filtering out generic, unprotectable elements and elements that are stock features or *scenes a faire* of the pirate genre, no reasonable factfinder could conclude that the works are substantially similar."

The parties submit dueling expert reports on the issue of substantial similarity. Defendant argues Plaintiffs' expert testimony does not preclude granting summary judgment in Defendant's favor because Plaintiffs' expert testified at his deposition that 1) he formed his expert opinion without reviewing any works in the pirate genre because Plaintiffs' counsel asked him not to and informed him that other pirate movies are irrelevant to this case, and only reviewed two pirate works (the *Goonies* and *Cutthroat Island*) after he formed his expert opinion (Defendant's Statement of Facts ("SUF")[2] Nos. 148, 167, 169); 2) he has never been on or heard of Disney's Pirates of the Caribbean ride, and did not review an footage of the ride in connection with forming his expert opinion (Defendant's SUF Nos. 171, 177-78); and 3) he only has "passing familiarity" with the pirate genre, he questions whether the pirate genre exists, and his background with pirate works is extremely limited[3] (Defendant's SUF Nos. 155, 156, 157, 170). Defendant thus contends Plaintiffs' expert disregarded the Ninth Circuit's "directive" "that expert testimony should help distinguish tropes of the pirate genre from original elements in the works" in in its opinion remanding the action.

---

[2] References to SUF as used herein, refer to the evidence cited in support of the fact.

[3] However, Plaintiffs' expert testified at his deposition: "I consider myself having familiarity with pirate literature." (Roman Depo. 18:16-20.)

4

In its opinion remaining this matter, the Ninth Circuit stated:

> The district court noted some of these similarities but dismissed the action largely because it concluded that many of the elements the two works share in common are unprotected generic, pirate-movie tropes. But, at this stage of the litigation, it is difficult to know whether such elements are indeed unprotectible material. Additional evidence would help inform the question of substantial similarity. *Cf. Rentmeester*, 883 F.3d at 1123 ("This is not a case in which discovery could shed light on any issues that actually matter to the outcome."). As Plaintiffs note, expert testimony would aid in determining whether the similarities Plaintiffs identify are qualitatively significant. *See Newton v. Diamond*, 388 F.3d 1189, 1196 (9th Cir. 2004). This would be particularly useful in this circumstance, where the works in question are almost twenty years old and the blockbuster *Pirates of the Caribbean* film franchise may itself have shaped what are now considered pirate-movie tropes.

(Dkt. No. 103.) While the Ninth Circuit noted it was difficult at the pleading stage to determine whether elements of the works were unprotectible, generic pirate-movie tropes, the Ninth Circuit's discussion with respect to experts was not limited to the subject of pirate-movie tropes. Rather, the Ninth Circuit stated, "[a]dditional evidence would help inform the question of substantial similarity" and expert testimony would assist in determining whether similarities identified by Plaintiffs were "significant." (*Id.*) Thus, Plaintiffs' expert was not limited to opining on pirate-movie tropes and is not precluded by the Ninth Circuit's opinion from offering expert testimony comparing the parties' works.

Defendant also contends Plaintiffs' expert testimony does not preclude summary judgment on the issue of substantial similarity because he testified at his deposition that he had never heard of the extrinsic test for substantial similarity, the "methodology" he applied was impressionistic, the law "didn't seem relevant to what [he] was tasked to do," and he could not recall his counsel telling him anything about the legal standards he should apply in reaching his opinions other than that he should disregard dissimilarities between the works. (Defendant's SUF Nos. 164-66.) However, these arguments go to the weight of Plaintiffs' expert report, and the Court cannot weigh evidence on summary judgment. *See*

*Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1056 (C.D. Cal. 2018); *Iguaçu, Inc. v. Cabrera*, 2013 WL 12173236, at *5 (N.D. Cal. Feb. 21, 2013), *aff'd sub nom. Igua%26cu, Inc. v. Filho*, 637 F. App'x 407 (9th Cir. 2016) (citing *U.S. v. Union Pacific R. Co.*, 565 F.Supp.2d 1136, 1150 n. 22 (E.D. Cal. 2008)).

Plaintiffs' expert opines that the parties' works are substantially similar and have original elements in common, whereas Defendant's expert opines that the parties' works are not substantially similar and common elements in the parties' works are common in the pirate genre generally. The opinions from the parties' experts thus creates a genuine issue of material fact in dispute regarding whether the works are substantially similar. *See Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 937 (C.D. Cal. 2016) ("[T]he Court is precluded from granting summary judgment in either side's favor. This case boils down to a battle of the experts, and such a battle must be left for the jury's resolution."), *aff'd*, 742 F. App'x 282 (9th Cir. 2018).[4]

Defendant argues district courts have granted summary judgment on the issue of substantial similarity despite the existence of dueling experts, citing *Funky Films, Inc. et al. v. Time Warner Ent. Co., L.P., et al.*, No. 8:03-cv-0964-CJC-PLAx (C.D. Cal. Feb. 19, 2004) (Dkt. No. 83), *aff'd, Funky Films, Inc. v. Time Warner Entm't, Co., L.P.*, 462 F.3d 1072 (9th Cir. 2006), *overruled by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); *Benay v. Warner Bros. Ent.*, 2008 WL 11336277 (C.D. Cal. Mar. 14, 2008), *aff'd in part, rev'd in part and remanded sub nom. Benay v. Warner Bros. Ent.*, 607 F.3d 620 (9th Cir. 2010), *overruled by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); and *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815 (C.D. Cal. 2010). Unlike in *Benay* and *Gable*,

---

[4] *See also Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 2005 WL 6070811, at *31 (C.D. Cal. Mar. 14, 2005), *aff'd*, 469 F.3d 978 (Fed. Cir. 2006); *Avery Dennison Corp. v. Acco Brands, Inc.*, 2000 WL 986995, at *12 (C.D. Cal. 2000).

1 | where the plaintiff's expert's statements were found to be inadmissible, here
2 | Defendant does not object to the admissibility of Plaintiffs' experts' reports.
3 | Moreover, unlike the expert in *Gable* who lacked literary expertise, here
4 | Plaintiffs' expert submits a copy of his curriculum vitae which demonstrates he is
5 | a professor in the English Department at the University of Southern California and
6 | has been a professor/assistant professor/instructor in the English Department at
7 | various universities and colleges since 1989, he has a bachelor's degree, Master of
8 | Arts, and Ph.D. in Comparative Literature.  (Dkt. No. 177-5.)  Furthermore, *Funky*
9 | *Films*, *Benay*, and *Gable* do not have a similar procedure posture to this case in
10 | which the Ninth Circuit found on appeal of this matter that "[a]dditional evidence
11 | would help inform the question of substantial similarity" and "expert testimony
12 | would aid in determining whether the similarities Plaintiffs identify are
13 | qualitatively significant" in this action.  (Dkt. No. 103.)
14 |         Defendant also argues expert testimony "will 'seldom be necessary' to
15 | analyze substantial similarity in cases, like this one, that involve works 'targeted at
16 | a general audience' that 'deal with subject matter readily understandable by any
17 | ordinary person, including the Court."  (Reply at 5.)  However, this Court
18 | previously conducted its own review of the works without expert testimony at the
19 | motion to dismiss stage and granted Defendant's motion to dismiss upon finding
20 | the parties' works were not substantially similar as a matter of law, but the Ninth
21 | Circuit reversed and remanded upon finding expert testimony "would aid" in
22 | determining whether the works are substantially similar.  (Dkt. No. 103.)
23 |         Accordingly, because the parties' expert opinions create a genuine issue of
24 | disputed fact regarding whether the works are substantially similar, the Court
25 | denies Defendant's Motion for Summary Judgment on the issue of substantial
26 | similarity.
27 | **B.    Derivative Work**
28 |         Defendant also contends Plaintiffs' Screenplay is an unauthorized

derivative work based on Disney's Pirates of the Caribbean theme park ride (the "Ride"). The parties disagree regarding whether this issue is within the scope of the parties' stipulation regarding Defendant's summary judgment motion.

In the parties' stipulation which was approved by the Court, the parties stipulated as follows:

> (a) Fact discovery shall be bifurcated, with discovery in the first phase limited to the issue of substantial similarity; if other discovery is necessary, it will occur in a second phase that will follow the parties' mediation and the Court's resolution of Walt Disney Pictures' intended motion for summary judgment on substantial similarity, as set forth below.
>
> (b) More specifically, in the first discovery phase discovery shall be limited to: (i) initial disclosures under Federal Rule of Civil Procedure 26(a)(1), which shall be made by January 29, 2021; expert disclosures under Federal Rule of Civil Procedure 26(a)(2) relating to the issue of substantial similarity, which shall be made by March 30, 2021; and (iii) one deposition of each side's respective expert witnesses on substantial similarity. . . .
>
> Following the completion of the first phase of discovery . . ., the parties agree to participate in a mediation . . . . In the event the parties are unable to resolve the case through mediation, Walt Disney Pictures may file a motion for summary judgment on *only* the issue of substantial similarity within 60 days of the failed mediation.

(Dkt. Nos. 121, 122.) Under the Copyright Act, a work is not a "derivative work" unless it is "based upon one or more preexisting works" and, in order to qualify as a "preexisting work," the underlying work must be copyrightable. *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1078 (9th Cir. 2000). Therefore, the Court finds the issue of whether Plaintiffs' Screenplay is a derivative work of Disney's Ride is outside the scope of the parties' stipulation because it would require the Court to examine whether Plaintiffs' Screenplay is based on Disney's Ride and whether Disney's Ride is copyrightable, rather than compare whether Plaintiffs' Screenplay is substantially similar to Defendant's Film.

Plaintiffs argue even if the issue of whether Plaintiffs' Screenplay is a derivative work could be a proper subject of Defendant's instant summary judgment motion, Defendant fails to demonstrate Plaintiffs' Screenplay is a

1  derivative work because Defendant does not offer evidence showing Disney's
2  Ride is copyrightable, citing *Espanade Prods. Inc. v. Walt Disney Co.,* 768 Fed.
3  App'x 732, 733 (9th Cir. 2019) ("a title is unprotected as a matter of federal law").
4        Defendant contends Plaintiffs' Screenplay quotes the song "Yo-Ho (A
5  Pirate's Life for Me)." Defendant states in its reply that the "Yo Ho" song heard
6  in the Ride is "subject to a registered copyright" (Reply at 20), but Defendant cites
7  to no evidence in support of this contention. Moreover, Defendant cites to the
8  following portions of Plaintiffs' Screenplay in support of its contention that
9  Plaintiffs' Screenplay quotes the "Yo Ho" song from the Disney Ride. (*See* Dkt.
10 No. 1-1, Plaintiffs' Screenplay at 39 ("Yo ho, yo ho, a phantom's life indeed"); *id.*
11 at 40 ("Yo ho, yo ho, a pirate's life for (hiccup!) me!"); *id.* at 52 ("We hack and
12 raze, behead and set blaze, avast ye scurvys yo ho! We murder with greed, do
13 treacherous deeds, Avast ye scurvy's yo ho! In search of the MAP you'll fall in
14 our trap, Avast ye scurvy's yo ho! The Phantom is near, his evil strikes fear, avast-
15 ye-scurvys-yo HOOOO!!!"); *id.* at 74 ("We kidnap and ravage and don't give a
16 hoot, drink up me'earties yo-ho! We're RASCAL SCOUNDRELS villains and
17 knaves, drink up me'earties, yo-ho!"); *id.* at 109 ("Yo ho, yo ho, a PARROTS life
18 for me.").)[5]

19       However, Plaintiff Martinez declares:

> I have reviewed Exhibit D to Gray's declaration which alleges that page 32 and 45 of the Screenplay contain references to the ride because the songs use the phrase "Yo-Ho". However, Alfred and I created the lyrics on those two pages by ourselves. In particular, the

---

[5] Defendant fails to cite to any other evidence demonstrating the "elements" of the Disney Ride purportedly copied by Plaintiffs in their Screenplay are copyrighted or copyrightable in order to demonstrate Plaintiffs' Screenplay is an unprotectable derivative work. *See Orr v. Bank of America,* 285 F.3d 764, 775 (9th Cir. 2002) (the failure to provide citations to exhibits warranted exclusion of evidence offered in opposition to motion); *Cortes v. Mkt. Connect Grp., Inc.,* 2015 WL 5772857, at *4 (S.D. Cal. Sept. 30, 2015) ("To the extent the parties failed to cite evidence, the Court is not required to search it out for them."); *Zackaria v. Wal-Mart Stores, Inc.*, 2014 WL 11398759, at *2 (C.D. Cal. Feb. 21, 2014) ("[I]t is not the court's duty to scour [through the record] in search of evidence supporting plaintiff's factual statement.").

9

> song lyrics that we created at page 32 are: "Yo ho, yo ho, a phantom life indeed. We bury, abduct, we sin and slay, avast ya scurvys yo ho! We're banshees of fright and phantoms of night, avast ye scurvy yo ho...." The song we created at page 45 are: "We hack and raze, behead and set blaze, avast ya scurvys yo ho! w murder with greed, do treacherous deeds, Avast ye scurvy' a yo ho! In search of the map you'll fall in our trap, Avast y scurvy' yo ho! The Phantom is near, his evil strikes fear, avast-ya-scurvys-yo HOOOOO!!!" Only the words "yo ho" have any similarity with the song in the ride and our songs have no melodies. To the best of my knowledge, the phrase "Yo-Ho" has long been associated with pirates and is not something that Disney created for the ride.

(Martinez Decl. ¶ 16.) Plaintiff Alfred also declares:

> I have reviewed Exhibit D to Gray's declaration, which alleges that page 32 and 45 of the Screenplay contain references to the ride because the songs use the phrase "Yo-Ho". However, Martinez and I created the lyrics on those two pages by ourselves. In particular, the song lyrics that we created at page 32 are: "Yo ho, yo ho, a phantom life indeed. We bury, abduct, we sin and slay, avast ya scurvys yo ho! We're banshees of fright and phantoms of night, avast ye scurvy yo ho...." The song we created at page 45 are: "We hack and raze, behead and set blaze, avast ya scurvys yo ho! w murder with greed, do treacherous deeds, Avast ye scurvy' a yo ho! In search of the map you'll fall in our trap, Avast y scurvy'• yo ho! The Phantom is near, his evil strikes fear, avast-ya-scurvys-yo HOOOOO!!!" Only the words "yo ho" have any similarity with the song in the ride and our songs have no melodies. To the best of my knowledge, the phrase "Yo-Ho" has long been associated with pirates and is not something that Disney created for the ride.

(Alfred Decl. ¶ 17.) Accordingly, even if the issue of whether Plaintiff's Screenplay is an unprotectable derivative work is a proper basis for Defendant's Motion for Summary Judgment as stipulated by the parties, there is a genuine issue of disputed fact regarding whether Plaintiffs' Screenplay copied the "Yo Ho" song from the Disney Ride, which precludes summary judgment on the issue of whether Plaintiffs' Screenplay is an unprotectable derivative work.[6]

---

[6] Plaintiffs also argue Defendant offers no evidence demonstrating Plaintiffs' Screenplay was unauthorized by Disney. The parties disagree regarding the effect of Disney's acceptance of Plaintiffs' Screenplay which was retitled "Pirates of the Caribbean" instead of "Pirates of the Spanish Main" (see FAC ¶ 49). Plaintiffs also argue Defendant conceded on appeal that the Ride is "not material" for purposes of determining whether the parties' works are substantially similar, and Defendant's evidence with respect to the Ride is improper because Defendant did not disclose any of the fact witnesses in its Rule 26 disclosures whom it now relies on with respect to the Ride—both contentions of which are disputed by Defendant. However, the Court does not reach these issues raised by Plaintiff

## IV. CONCLUSION

Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment re substantial similarity.

**IT IS SO ORDERED.**

DATED: December 16, 2021.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

because Defendant does not cite to any evidence or authority demonstrating Disney's Ride is copyrighted or copyrightable as required to find Plaintiffs' Screenplay is an unprotectable derivative work.