**LOWE & ASSOCIATES, PC**
Steven T. Lowe (SBN 122208)
steven@lowelaw.com
Aleksandra Hilvert (SBN 258463)
aleksandra@lowelaw.com
8383 Wilshire Blvd., Suite 1038
Beverly Hills, California 90211

**ROBINS KAPLAN LLP**
Patrick M. Arenz
(MN Bar No. 0386537) (pro hac vice)
PArenz@RobinsKaplan.com
Brandon J. Pakkebier
(MN Bar No. 0400691) (pro hac vice)
BPakkebier@RobinsKaplan.com
800 LaSalle Avenue
Suite 2800
Minneapolis, Minnesota 55402
Telephone: 612 349 8500
Facsimile: 612 339 4181

*Attorneys for Plaintiffs*
*Alfred Lee Alfred, II, et al.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR LEE ALFRED, II, et al., | Case No. 2:18-CV-08074-CBM-ASx |
| Plaintiffs, | **DISCOVERY MATTER** |
| v. | **NOTICE OF MOTION AND JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY** |
| WALT DISNEY PICTURES,, | |
| Defendant. | Judge: Hon. Alka Sagar |
| | *[referred by Hon. Consuelo B. Marshall for discovery]* |
| | Hearing Date: April 19, 2022 |
| | Time: 10:00 AM |
| | Location: Courtroom 540 |
| | This Motion is made pursuant to the conference of counsel pursuant to L.R. 37-1, which occurred March 9, 2022 |
| | Discovery Cutoff Date: June 15, 2022 |
| | Pretrial Conference Date: Jan. 9, 2023 |
| | Trial Date: Feb. 7, 2023 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

JOINT STIPULATION FOR
DISCOVERY HEARING

2:18-CV-08074-CBM-ASX

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on April 19, 2022, at 10:00 a.m., or on such other date and time convenient to and ordered by the Court, the undersigned shall appear before the Honorable Alka Sagar in Courtroom 540, and then and there Plaintiffs Arthur Lee Alfred II and Ezequiel Martinez, Jr. ("Plaintiffs") will, and hereby do, move this Court for an order compelling Defendant to provide further documents and information in response to Plaintiffs' pending discovery requests. Specifically Plaintiffs request an Order compelling:

1. Production of documents responsive to Requests for Production Nos. 23-29;

2. Further responses to Interrogatory Nos. 11-15.

This Motion is based on this Notice, the concurrently filed Joint Stipulation on Plaintiffs' Motion to Compel, as well as the pleadings, records, and files therein, the complete files and records in this action, any supplemental memoranda timely filed before the hearing, and on such other oral or documentary evidence as may be presented at the hearing of this Motion.

This Motion is made pursuant to the conference of counsel pursuant to L.R. 37-1 which took place on March 9, 2022.

Dated: March 24, 2022

Respectfully submitted,

By: */s/ Patrick M. Arenz*
**ROBINS KAPLAN LLP**
Patrick M. Arenz (pro hac vice)
Brandon J. Pakkebier (pro hac vice)

**LOWE & ASSOCIATES, PC**
Steven T. Lowe, Esq.
Aleksandra Hilvert, Esq.
*Attorneys for Plaintiffs*
*Arthur Lee Alfred, II, et al.*

# Table of Contents

I.    Plaintiffs' Preliminary Statement .............................................................4

II.   Defendant's Preliminary Statement ..........................................................5

III.  Issue 1: Sequel Film Financial Information ............................................8

    A.    Requests and Responses...................................................................8

    B.    Requested Relief .............................................................................28

    C.    Screenwriters' Contentions and Points and Authorities ............28

        1.    Financial information for the sequel films is relevant to a hypothetical license damages theory. ....................................................................28

        2.    Financial information for the sequel films is relevant to the Screenwriters' claim for indirect profits. ....................................................................29

    D.    Defendant WDP's Contentions And Points And Authorities......................32

        1.    Plaintiffs Do Not Allege The Sequels Infringe Their Screenplay ...........34

        2.    Plaintiffs' "Hypothetical License" Damages Theory Fails—Plaintiffs Would Not Be Entitled To A Royalty *Even Assuming* Such A License Existed Here ...............................................................................................................35

        3.    Plaintiffs Fail To Establish The Requisite "Causal Connection" Needed To Discover Indirect Profits ............................................................................37

        4.    There Is No Merit To Plaintiffs' Argument That WDP "Conceded" A Dispute Over Sequel Damages ......................................................................40

        5.    WDP's Proposed Resolution ..................................................................40

IV.   Issue 2: Pre-2014 Financial Information .................................................41

    A.    Requests and Responses.................................................................41

    B.    Requested Relief .............................................................................55

    C.    The Screenwriters' Contentions and Points and Authorities ............55

    D.    Defendant's Contentions And Points And Authorities..............................57

        1.    Plaintiffs' Demand For Financial Discovery Outside The Applicable Limitations Period Is Presumptively Improper ...........................................57

        2.    Plaintiffs' Vague "Hollywood Accounting" Theory Does Not Justify The Requested Discovery ......................................................................................58

        3.    WDP Is Not Relying On Any "Consequent Loss" Occurring Outside The Limitations Period, And So The Discovery Is Not Relevant To WDP's Equitable Estoppel Defense ..........................................................................59

        4.    WDP's Proposed Resolution ..................................................................59

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

JOINT STIPULATION FOR
DISCOVERY HEARING

- 3 -

2:18-CV-08074-CBM-ASX

**PRELIMINARY STATEMENTS**

The parties jointly request a discovery hearing before Your Honor to resolve three discovery disputes. Plaintiffs Arthur Lee Alfred, II and Ezequiel Martinez, Jr. ("Screenwriters") conferred with Defendant Walt Disney Pictures ("Disney" or "WDP") first on February 16, 2022. Following that call, counsel for the Screenwriters sent a formal letter under Local Rule 37-1 to Disney's counsel on February 25, 2022 requesting an additional meet and confer. Pakkebier Decl. Ex. 1. Disney replied with a letter on February 28, 2022. Pakkebier Decl. Ex. 2. The parties met and conferred on March 9, 2022, but were unable to reach agreement. The issues are now ripe for Court adjudication. A copy of the operative scheduling order in this matter, pursuant to Local Rule 37-2, is attached to this stipulation. Pakkebier Decl. Ex. 3.

## I.  Plaintiffs' Preliminary Statement

The Plaintiff Screenwriters sued Disney for copyright infringement over Disney's Pirates of the Caribbean film. After the conclusion of the first phase of discovery, Judge Marshall denied Disney's motion for summary judgment in which Disney sought to establish that its film is not substantially similar to the Screenwriters' screenplay. The parties are now completing discovery on other issues, like damages and Disney's affirmative defenses. Yet the parties have been unable to resolve three discovery disputes on these subjects.

First, Disney objects to discovery and refuses to produce documents about financial information for the four Pirates of the Caribbean sequel films. But this information is relevant—certainly for discovery purposes—because the Screenwriters seek actual damages for a hypothetical license and Disney's indirect profits. Under the first theory, the Screenwriters will offer expert testimony that a hypothetical license here would include a royalty for any sequel films, as is standard for writers in the industry. Plaintiffs will require financial information about the sequels to calculate that license/royalty. The Screenwriters will likewise

offer expert testimony that the sequel films would not exist but-for the original film, and thus a causal nexus exists to seek Disney's indirect profits. The Court should overrule Disney's relevance objection.

Second, Disney objects to discovery of its financial information related to the original film that pre-dates 2014 (three years before the action was filed, in November of 2017). Here again, Disney's relevance objection tries to use discovery to limit the Screenwriters' ability to prepare their case on the merits. Hollywood accounting is notoriously complex and questionable. In order for the Screenwriters and their experts to analyze and evaluate the information Disney provided from 2014 on, they need access to similar information from 2003-2014. Only then can they verify that no dispute exists over how Disney has allocated expenses and costs. This information is also relevant to Disney's equitable estoppel defense. The degree and specific amount that Disney has profited off the Pirates of the Caribbean film is relevant to Disney's claim that it has suffered a "consequent loss," as the Supreme Court requires.

## II.   Defendant's Preliminary Statement

Plaintiffs claim that Walt Disney Pictures' *Pirates of the Caribbean: The Curse of the Black Pearl* ("*Curse*" or "Film")—a 2003 motion picture based on Disney's Pirates of the Caribbean theme park ride—infringed Plaintiffs' copyright in their 2000 screenplay (the "Screenplay"), also titled *Pirates of the Caribbean* and also based on the Disney ride.

Through this motion, Plaintiffs pursue highly invasive discovery of financial information regarding claims Plaintiffs do not make or cannot make as a matter of law. Courts are very wary of this tactic, explaining that financial discovery into non-infringing works threatens to become a "fishing expedition," *Salinas v. Proctor & Gamble Co.*, 2020 WL 8455187, at *2 (C.D. Cal. Dec. 4, 2020), and that it is presumptively appropriate for courts to *deny* discovery into matters occurring before an applicable limitations period, *Oppenheimer Fund, Inc. v. Sanders*, 437

U.S. 340, 351–52 (1978).  Plaintiffs do not meet their burden as to either category in issue.

*First*, Plaintiffs seek financial information regarding the four *Pirates of the Caribbean* sequel movies.[1]  But Plaintiffs *do not allege* the Sequels infringe their Screenplay.  Though this was originally asserted, *see* Decl. of Juliana Yee ("Yee Decl.") Ex. A [Compl., Dkt. 1] ¶ 52, Plaintiffs opted to drop this contention in their amended complaint, and confirmed during the meet and confer that they make no such claim.  Yee Decl. ¶ 8.  Plaintiffs thus expressly walked away from any damages claim based on the Sequels.

Surprisingly and inconsistently, Plaintiffs now claim that financial information regarding the Sequels is relevant to a "hypothetical license" they say they would have received had WDP hypothetically bought their Screenplay before *Curse* was produced.  In particular, Plaintiffs argue that, in this hypothetical scenario, WDP would have given them an agreement like one they had for a separate (never made) movie project called *Red Hood*, which Plaintiffs assert provided them royalties for sequels.  Plaintiffs did not mention the *Red Hood* agreement during the meet and confer.  Had they done so, WDP would have explained that their theory fails because Plaintiffs have overlooked a critical condition for sequel royalties:  the *Red Hood* agreement makes clear (in language Plaintiffs gloss over) that to get royalties on sequels, Plaintiffs had to receive "Screenplay by" or "Written by" credit—and Plaintiffs have zero evidence (and indeed, do not even argue) that in this hypothetical scenario in which they had a similar agreement with WDP, Plaintiffs would have received such "Screenplay by" or "Written by" credit for *Curse*.  They did not and would not have, even under their hypothetical scenario.

Plaintiffs' alternative relevance argument—that profits on the Sequels are

---

[1] *Pirates of the Caribbean: Dead Man's Chest* (2006); *Pirates of the Caribbean: At World's End* (2007); *Pirates of the Caribbean: On Stranger Tides* (2011); and *Pirates of the Caribbean: Dead Men Tell No Tales* (2017) (collectively "Sequels").

"indirect profits" from the infringement Plaintiffs assert regarding *Curse*—fails because Plaintiffs have not shown, as they must, that there are *any* similarities between their Screenplay and the Sequels.

*Second*, Plaintiffs seek financial information for *Curse* going back to its release in 2003.  But Plaintiffs opted to wait fourteen years, until November 2017, to file suit.  They thus forfeited a claim for any of WDP's profits more than three years before they sued.  "No recovery may be had for infringement in earlier years."  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014).

Plaintiffs try to circumvent the Supreme Court's rule with the speculative and meaningless theory that "Hollywood accounting" makes it impossible to accept the information WDP provided for the period of 2014 to the present.  Not surprisingly, Plaintiffs have not identified any accounting irregularity in the information WDP has provided, nor have they explained how producing summary-level data showing revenue, expenses, or profit totals could plausibly enable an expert to verify pre-2014 data.

WDP's equitable estoppel affirmative defense certainly does not justify financial discovery outside the limitations period.  In asserting this defense, WDP does not intend to rely on any evidence outside the limitations period to show consequent loss.  Thus, there is no justification for Plaintiffs' to obtain financial information outside the limitations period.

WDP has fully responded to all the discovery Plaintiffs are entitled to receive.  WDP produced documents for the vast majority of requests that Plaintiffs served, including over 64,000 pages of documents.  (Plaintiffs, in contrast, produced just over 3,000 pages.)  Specifically, WDP produced information about the revenues, expenses, costs, and profits for *Curse* within the limitations period.  Plaintiffs undoubtedly perceive tactical advantages from requiring WDP to produce yet more financial information, but they have wholly failed to meet their burden to obtain such additional information.

## ISSUES IN DISPUTE

There are two issues upon which the parties seek the Court's resolution: (1) financial information for the *Pirates of the Caribbean* sequel movies (Disney's responses to Interrogatory Nos. 12 & 14 and to Requests for Production Nos. 26-29; and (2) pre-2014 financial information (Disney's responses to Interrogatory Nos. 11-15 and RFP Nos. 23-29).

**III.   Issue 1: Sequel Film Financial Information**

    **A.   Requests and Responses**

Plaintiffs served two interrogatories and four requests for production directed toward the Pirates of the Caribbean sequel movie financials. Disney objected to these discovery requests except to the extent they involve Pirates of the Caribbean: Curse of the Black Pearl (the first film). Disney incorporated its Prefatory Statement, General Objections, and Objections to Definitions and Instructions in each response. Pursuant to Local Rule 37-2.1, those components, as well as the text of each interrogatory or request for production, and response, are set forth below. *Prefatory Statement (Interrogatories):*

1. By responding to Plaintiffs' First Set of Interrogatories, WDP does not waive any privilege or objection that may be applicable to: (a) the use, for any purpose, by Plaintiffs of any information or documents sought by Plaintiffs or provided in response to an Interrogatory; (b) the admissibility, relevance, or materiality of any of the information or documents to any issue in this case; or (c) any demand for further responses involving or relating to the subject matter of any of the Interrogatories.

2. WDP's responses are based on information reasonably available to WDP as of the date of these responses.  WDP's investigation is continuing and ongoing. Subject to and without waiving any of its objections set forth herein, WDP reserves the right to alter or to supplement these responses as additional information

1  becomes known to it, but undertakes no obligation to do so beyond the obligations

2  imposed by the Federal Rules of Civil Procedure, the Local Rules, and Orders of

3  this Court.

4  *General Objections (Interrogatories):*

5  The following General Objections apply to and are incorporated into each and

6  every response to each and every specific Interrogatory, whether or not such

7  General Objections are expressly incorporated by reference in such response.

8      1. WDP objects to each and every Interrogatory, definition, and instruction to

9  the extent that it attempts to impose obligations inconsistent with or in addition to

10  those required by the Federal Rules of Civil Procedure, the Local Rules or Orders

11  of this Court, or any other applicable authority.

12     2. WDP objects to each and every Interrogatory, definition, and instruction as

13  overly broad, unduly burdensome, and not proportional to the needs of this case to

14  the extent that it is not reasonably limited in scope, or seeks information neither

15  relevant to any issue in this case nor reasonably calculated to lead to the discovery

16  of admissible evidence, particularly to the extent that compliance would force WDP

17  to incur a substantial expense that outweighs any likely benefit of the discovery.

18     3. WDP objects to each and every Interrogatory, definition, and instruction to

19  the extent that it lacks any reasonable time limitation, including but not limited to,

20  because it poses an undue burden on WDP.  To the extent WDP agrees to produce

21  information in response to a specific Interrogatory, it will do so on a timeframe that

22  is reasonable, taking into account the nature and scope of the individual

23  Interrogatory and what is proportional to the needs of this case.  Unless otherwise

24  specified—as WDP has, for example, with respect to Interrogatories seeking

25  financial information—WDP limits its responses to the timeframe of October 1,

26  1999 to June 28, 2003 (the "Relevant Timeframe").

27     4. WDP objects to each and every Interrogatory, definition, and instruction to

28  the extent that it seeks information or documents protected by the attorney-client

privilege, work product doctrine, or any other applicable law, privilege, immunity, protection, or doctrine.  WDP claims such privileges and protections to the extent implicated by each Interrogatory, and excludes privileged and protected information from its responses.  The production of any privileged information or document by WDP is unintentional, and any such inadvertent production shall not be construed as a waiver of any applicable objection or privilege.

5. WDP objects to each and every Interrogatory, definition, and instruction to the extent that it calls for a legal conclusion.  Any response by WDP shall not be construed as providing a legal conclusion regarding the meaning or application of any terms or phrases used in Plaintiffs' Interrogatories, definitions, or instructions.

6. WDP objects to each and every Interrogatory, definition, and instruction to the extent that it seeks information or documents already in the possession of or more readily available to Plaintiffs, that are equally available to Plaintiffs as they are to WDP, or that could be derived or ascertained by Plaintiffs with substantially the same effort that would be required of WDP.

7. WDP objects to each and every Interrogatory, definition, and instruction to the extent that it seeks information or documents not within WDP's possession, custody, or control.

8. WDP objects to each and every Interrogatory, definition, and instruction to the extent that it is unreasonably cumulative or duplicative.

9. WDP objects to each and every Interrogatory, definition, and instruction to the extent that it seeks any confidential, proprietary, competitively sensitive, trade secret information, financial information, or any other information or documents that WDP is not permitted to disclose pursuant to confidentiality or other legal obligations to third parties.

10. WDP objects to each and every Interrogatory, definition, and instruction to the extent that it contains subparts or a compound, conjunctive, or disjunctive request.

11. WDP objects to each and every Interrogatory, definition, and instruction to the extent that it calls for WDP to form and then render an expert opinion.

12. WDP objects to each and every Interrogatory, definition, and instruction to the extent that it is argumentative.

13. WDP objects to each and every Interrogatory, definition, and instruction to the extent that it is speculative, lacks foundation, or contains characterizations, definitions, or assumptions. Nothing contained in or absent from WDP's responses, objections, or production shall constitute, or be deemed as, an admission, concession, or agreement that Plaintiffs' characterizations, definitions, or assumptions are correct or accurate.

14. WDP objects to each and every Interrogatory, definition, and instruction to the extent that it purports to require WDP to compile information in a manner that is not maintained in the ordinary course of business, or to create documents, including but not limited to charts, tables, reviews, proposals, methodologies, and/or breakdowns, that do not already exist.

15. WDP objects to each and every Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that it calls for the production of "all" documents and/or communications concerning a subject matter, without regard to whether the documents are likely to be privileged, duplicative, and/or have any (or minimal) connection to the claims or defenses at issue in this case.

16. WDP objects to each and every Interrogatory to the extent it seeks discovery of documents or electronically stored information from sources that are not reasonably accessible in light of the burdens or costs required to locate, restore, review and produce whatever responsive information may be found. To the extent that any Interrogatory requires the identification or production of email currently in electronic form, or any other electronic communications or electronically stored information, and WDP agrees to conduct a search of media reasonably likely to

contain the same, WDP will search readily accessible email or other electronic media in relation to individual custodians or other sources likely to have responsive documents.  WDP will not search emails that are inaccessible or that are overly burdensome to restore and/or search (e.g., disaster recovery tapes), or other media containing electronically stored information that are inaccessible or unduly burdensome to search.

*Objections to Definitions and Instructions (Interrogatories):*

1. WDP's responses, regardless of whether they include a specific objection, do not constitute an adoption or acceptance of the definitions and instructions that Plaintiffs seeks to impose.

2. For clarity, WDP shall refer to "Pirates of the Caribbean film" Pirates of the Caribbean: The Curse of the Black Pearl (2003), as Film or The Curse; Plaintiffs' "Pirates of the Caribbean screenplay" as Screenplay; and the "Pirates of the Caribbean ride" as the Ride.

3. According to Plaintiffs' definition, the term "Pirates of the Caribbean franchise" would encompass any "work, product, film, book, or similar" and any "sales, licensing, or royalties related thereto" created by anyone after 2003, whether or not related in any way to the Film or WDP.  WDP objects to the defined term "Pirates of the Caribbean franchise" and to each and every Interrogatory containing that term, on the ground that it is vague and ambiguous to the extent it purports to include any work, product, film, book, sales, licensing, royalties, or other elements besides The Curse and the four films: Pirates of the Caribbean: Dead Man's Chest, Pirates of the Caribbean: At World's End, Pirates of the Caribbean: On Stranger Tides, and Pirates of the Caribbean: Dead Men Tell No Tales (together, herein, the "Four Film Sequels").  Thus, to the extent WDP's responses and objections use the term "Pirates of the Caribbean franchise," that term shall only refer to Pirates of the Caribbean: The Curse of the Black Pearl; Pirates of the Caribbean: Dead Man's

Chest, Pirates of the Caribbean: At World's End, Pirates of the Caribbean: On Stranger Tides, and Pirates of the Caribbean: Dead Men Tell No Tales.

4. WDP objects to the defined terms "document" and "documents" and to each and every Interrogatory containing those terms, to the extent the definition seeks to impose an obligation beyond Federal Rule of Civil Procedure 34(a).  WDP will construe these terms in accordance with the Federal Rules of Civil Procedure, the Local Rules, and Orders of this Court.

5. WDP objects to the defined terms "communication" and "communications" and to each and every Interrogatory containing those terms, on the ground that they are vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that these terms purport to impose an obligation beyond Federal Rule of Civil Procedure 34(a) and to the extent these terms are duplicative and cumulative of the defined terms "document" and "documents."  WDP will construe these terms in accordance with the Federal Rules of Civil Procedure, the Local Rules, and Orders of this Court.

6. WDP objects to the defined term "relating to" and to each and every Interrogatory containing that term, on the ground that it is vague, ambiguous, overly broad, and unduly burdensome, and to the extent it requires WDP to speculate as to whether documents "relate" the topic specified.  WDP will construe this term in accordance with its plain English meaning.

7. WDP objects to the defined terms "person" and "persons" and to each and every Interrogatory containing those terms, on the ground that they are vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of this case.  WDP will construe these terms in accordance with their plain English meaning.

8. WDP objects to Instruction 14 to the extent it is overly burdensome and imposes obligations beyond those imposed by the Federal Rules of Civil Procedure. WDP will not provide a privilege log in response to these interrogatories to the

1   extent that privileged documents involve litigation related to the Film.  WDP is

2   willing to meet and confer regarding a proportional privilege log.

3       9. WDP objects to Instruction 15 to the extent it is overly burdensome and

4   imposes obligations beyond those required by Rule 26(e).  WDP will supplement

5   responses as indicated herein, but will not undertake to supplement such responses

6   after the close of discovery.

7       **INTERROGATORY NO. 12:**

8       State Disney's gross revenue on an annual basis for the Pirates of the

9   Caribbean franchise.

10      **RESPONSE TO INTERROGATORY NO. 12:**

11      WDP incorporates its Prefatory Statement, General Objections, and

12  Objections to Plaintiffs' Definitions and Instructions. WDP further objects to this

13  Interrogatory as seeking highly-sensitive confidential business information for

14  tactical advantage, rather that [sic] evidentiary value. WDP objects to the term

15  "Pirates of the Caribbean franchise" on the ground that the term is vague and

16  ambiguous to the extent it purports to include any work, product, film, book, sales,

17  licensing, or royalties besides *The Curse* and Four Film Sequels. As defined, the

18  term would encompass any "work, product, film, book, or similar" and any "sales,

19  licensing, or royalties related thereto" created by anyone after 2003, whether or not

20  related in any way to *The Curse* or WDP. WDP further objects to this Interrogatory

21  as overly broad, unduly burdensome, not proportional to the needs of the case, and

22  not relevant to any party's claims or defenses to the extent it seeks information

23  regarding gross revenue derived from any works besides *The Curse*. Plaintiffs have

24  not provided any facts to support any basis for claiming infringement for the Four

25  Film Sequels or damages contentions to show the relevance of this Interrogatory. In

26  response to WDP counsel's January 25, 2022 email request for information

27  regarding the relevance of this and similar requests, Plaintiffs' counsel stated

28  vaguely that these requests "relate to damages for Disney's infringement" and

"relate[] to Disney's indirect profits." WDP further objects to this Interrogatory as overly broad, unduly burdensome, not proportional to the needs of the case, and not relevant to any party's claims or defenses to the extent it seeks information regarding gross revenue pre-dating November 14, 2014. WDP further objects to this Interrogatory insofar as "gross revenue . . . for the Pirates of the Caribbean franchise" is vague and ambiguous as to the revenue streams sought. WDP further objects that this Interrogatory calls for a legal conclusion, is premature, and the subject of expert testimony.

Subject to and without waiving the foregoing objections, WDP responds as follows: WDP refers Plaintiffs to its response to Interrogatory No. 11 regarding gross revenues for *The Curse*. With respect to gross revenue information for any of the Four Film Sequels or any other works sought by this request, WDP will not respond on the basis of its objections. WDP is willing to meet and confer with Plaintiffs regarding this Interrogatory.

**INTERROGATORY NO. 14:**

State Disney's costs and expenses on an annual basis for the Pirates of the Caribbean franchise.

**RESPONSE TO INTERROGATORY NO. 14:**

WDP incorporates its Prefatory Statement, General Objections, and Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this Interrogatory as seeking highly-sensitive confidential business information for tactical advantage, rather that evidentiary value.  WDP objects to the term "Pirates of the Caribbean franchise" on the ground that the term is vague and ambiguous to the extent it purports to include any work, product, film, book, sales, licensing, or royalties besides The Curse and Four Film Sequels.  As defined, the term would encompass any "work, product, film, book, or similar" and any "sales, licensing, or royalties related thereto" created by anyone after 2003, whether or not related in any way to The Curse or WDP.  WDP further objects to this Interrogatory as overly

broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding costs and expenses related to any works besides The Curse.  Plaintiffs have not provided any facts to support any basis for claiming infringement for the Four Film Sequels or damages contentions sufficient to show the relevance of this Interrogatory.  In response to WDP counsel's January 25, 2022 email request for information regarding the relevance of this and similar requests, Plaintiffs' counsel stated vaguely that these requests "relate to damages for Disney's infringement" and "relate[] to Disney's indirect profits."  WDP further objects to this Interrogatory as overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding costs and expenses pre-dating November 14, 2014.  WDP further objects to this Interrogatory insofar as "costs and expenses . . . for the Pirates of the Caribbean franchise" is vague and ambiguous as to the categories of costs and expenses sought.  WDP further objects that this Interrogatory calls for a legal conclusion, is premature, and the subject of expert testimony.

Subject to and without waiving the foregoing objections, WDP responds as follows: WDP refers Plaintiffs to its response to Interrogatory No. 13 regarding costs and expenses for The Curse.  With respect to costs and expenses information for any of the Four Film Sequels or any other works sought by this Interrogatory, WDP will not respond on the basis of its objections.  WDP is willing to meet and confer with Plaintiffs regarding this Interrogatory.

*Prefatory Statement (RFPs):*

1. By responding to Plaintiffs' First Set of Requests for Production of Documents, WDP does not waive any privilege or objection that may be applicable to: (a) the use, for any purpose, by Plaintiffs of any information or documents sought by Plaintiffs or provided in response to a Request; (b) the admissibility,

1  relevance, or materiality of any of the information or documents to any issue in this

2  case; or (c) any demand for further responses involving or relating to the subject

3  matter of any of the Requests.

4      2. WDP's responses are based on information reasonably available to WDP

5  as of the date of these responses.  WDP's investigation is continuing and ongoing.

6  Subject to and without waiving any of its objections set forth herein, WDP reserves

7  the right to alter or to supplement these responses as additional information

8  becomes known to it, but undertakes no obligation to do so beyond the obligations

9  imposed by the Federal Rules of Civil Procedure, the Local Rules, and Orders of

10  this Court.

11

12      *General Objections (RFPs):*

13  The following General Objections apply to and are incorporated into each and

14  every response to each and every specific Request, whether or not such General

15  Objections are expressly incorporated by reference in such response.

16      1. WDP objects to each and every Request, definition, and instruction to the

17  extent that it attempts to impose obligations inconsistent with or in addition to those

18  required by the Federal Rules of Civil Procedure, the Local Rules or Orders of this

19  Court, or any other applicable authority.

20      2. WDP objects to each and every Request, definition, and instruction as

21  overly broad, unduly burdensome, and not proportional to the needs of this case to

22  the extent that it is not reasonably limited in scope, or seeks information neither

23  relevant to any issue in this case nor reasonably calculated to lead to the discovery

24  of admissible evidence, particularly to the extent that compliance would force WDP

25  to incur a substantial expense that outweighs any likely benefit of the discovery.

26      3. WDP objects to each and every Request, definition, and instruction to the

27  extent that it lacks any reasonable time limitation, including but not limited to,

28  because it poses an undue burden on WDP.  To the extent WDP agrees to produce

1  documents in response to a specific Request, it will do so on a timeframe that is

2  reasonable, taking into account the nature and scope of the individual Request and

3  what is proportional to the needs of this case.  Unless otherwise specified—as WDP

4  has, for example, with respect to Requests seeking financial information—WDP

5  limits its production to the timeframe of October 1, 1999 to June 28, 2003 (the

6  "Relevant Timeframe").

7       4. WDP objects to each and every Request, definition, and instruction to the

8  extent that it seeks information or documents protected by the attorney-client

9  privilege, work product doctrine, or any other applicable law, privilege, immunity,

10  protection, or doctrine.  WDP claims such privileges and protections to the extent

11  implicated by each Request, and excludes privileged and protected information

12  from its responses.  The production of any privileged information or document by

13  WDP is unintentional, and any such inadvertent production shall not be construed

14  as a waiver of any applicable objection or privilege.  Plaintiffs shall, upon the

15  request of WDP, immediately return or destroy any such documents inadvertently

16  produced.  Further, upon Plaintiffs' discovery of what it thinks may be a privileged

17  document in WDP's production, Plaintiffs should immediately inform WDP of that

18  fact in writing.  WDP will neither produce nor log privileged communications made

19  between WDP and outside counsel, or any documents protected by the work

20  product doctrine, after the commencement of this litigation or made in connection

21  with similar litigation.  All such communications or documents were intended to be

22  confidential and privileged, and they have been treated as such.  In light of the

23  voluminous nature of such communications, including them in WDP's privilege log

24  would be unduly burdensome, not reasonably calculated to lead to the discovery of

25  admissible evidence, and not proportional to the needs of this case.

26       5. WDP objects to each and every Request, definition, and instruction to the

27  extent that it calls for a legal conclusion.  Any response by WDP shall not be

28  construed as providing a legal conclusion regarding the meaning or application of

any terms or phrases used in Plaintiffs' Requests, definitions, or instructions.

6. WDP objects to each and every Request, definition, and instruction to the extent that it seeks information or documents already in the possession of or more readily available to Plaintiffs, that are equally available to Plaintiffs as they are to WDP, or that could be derived or ascertained by Plaintiffs with substantially the same effort that would be required of WDP.

7. WDP objects to each and every Request, definition, and instruction to the extent that it seeks information or documents not within WDP's possession, custody, or control.

8. WDP objects to each and every Request, definition, and instruction to the extent that it is unreasonably cumulative or duplicative.

9. WDP objects to each and every Request, definition, and instruction to the extent that it seeks any confidential, proprietary, competitively sensitive, trade secret information, financial information, or any other information or documents that WDP is not permitted to disclose pursuant to confidentiality or other legal obligations to third parties.

10. WDP objects to each and every Request, definition, and instruction to the extent that it contains subparts or a compound, conjunctive, or disjunctive request.

11. WDP objects to each and every Request, definition, and instruction to the extent that it calls for WDP to form and then render an expert opinion.

12. WDP objects to each and every Request, definition, and instruction to the extent that it is argumentative.

13. WDP objects to each and every Request, definition, and instruction to the extent that it is speculative, lacks foundation, or contains characterizations, definitions, or assumptions.  Nothing contained in or absent from WDP's responses, objections, or production shall constitute, or be deemed as, an admission, concession, or agreement that Plaintiffs' characterizations, definitions, or assumptions are correct or accurate.

14. WDP objects to each and every Request, definition, and instruction to the extent that it purports to require WDP to compile information in a manner that is not maintained in the ordinary course of business, or to create documents, including but not limited to charts, tables, reviews, proposals, methodologies, and/or breakdowns, that do not already exist.

15. WDP objects to each and every Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that it calls for the production of "all" documents and/or communications concerning a subject matter, without regard to whether the documents are likely to be privileged, duplicative, and/or have any (or minimal) connection to the claims or defenses at issue in this case.

16. WDP objects to each and every Request to the extent it seeks discovery of documents or electronically stored information from sources that are not reasonably accessible in light of the burdens or costs required to locate, restore, review and produce whatever responsive information may be found.  To the extent that any Request requires the identification or production of email currently in electronic form, or any other electronic communications or electronically stored information, and WDP agrees to conduct a search of media reasonably likely to contain the same, WDP will search readily accessible email or other electronic media in relation to individual custodians or other sources likely to have responsive documents.  WDP will not search emails that are inaccessible or that are overly burdensome to restore and/or search (e.g., disaster recovery tapes), or other media containing electronically stored information that are inaccessible or unduly burdensome to search.

*Objections to Definitions and Instructions (RFPs):*

1. WDP's responses, regardless of whether they include a specific objection, do not constitute an adoption or acceptance of the definitions and instructions that

Plaintiffs seeks to impose.

2. For clarity, WDP shall refer to "Pirates of the Caribbean film" Pirates of the Caribbean: The Curse of the Black Pearl (2003) as Film or The Curse; Plaintiffs' "Pirates of the Caribbean screenplay" as Screenplay; and "Pirates of the Caribbean ride" as the Ride.

3. According to Plaintiffs' definition, the term "Pirates of the Caribbean franchise" would encompass any "work, product, film, book, or similar" and any "sales, licensing, or royalties related thereto" created by anyone after 2003, whether or not related in any way to the Film or WDP.  WDP objects to the defined term "Pirates of the Caribbean franchise" and to each and every Request containing that term, on the ground that it is vague and ambiguous to the extent it purports to include any work, product, film, book, sales, licensing, royalties, or other elements besides The Curse and the four films: Pirates of the Caribbean: Dead Man's Chest, Pirates of the Caribbean: At World's End, Pirates of the Caribbean: On Stranger Tides, and Pirates of the Caribbean: Dead Men Tell No Tales (together, herein, the "Four Film Sequels").  Thus, to the extent WDP's responses and objections use the term "Pirates of the Caribbean franchise," it shall only refer to Pirates of the Caribbean: The Curse of the Black Pearl; Pirates of the Caribbean: Dead Man's Chest, Pirates of the Caribbean: At World's End, Pirates of the Caribbean: On Stranger Tides, and Pirates of the Caribbean: Dead Men Tell No Tales.

4. WDP objects to the defined terms "document" and "documents" and to each and every Request containing those terms, to the extent the definition seeks to impose an obligation beyond Federal Rule of Civil Procedure 34(a).  WDP will construe these terms in accordance with the Federal Rules of Civil Procedure, the Local Rules, and Orders of this Court.

5. WDP objects to the defined terms "communication" and "communications" and to each and every Request containing those terms, on the ground that they are vague, ambiguous, overly broad, unduly burdensome, and not

proportional to the needs of this case to the extent that these terms purport to impose an obligation beyond Federal Rule of Civil Procedure 34(a) and to the extent these terms are duplicative and cumulative of the defined terms "document" and "documents."  WDP will construe these terms in accordance with the Federal Rules of Civil Procedure, the Local Rules, and Orders of this Court.

6. WDP objects to the defined term "relating to" and to each and every Request containing that term, on the ground that it is vague, ambiguous, overly broad, and unduly burdensome, and to the extent it requires WDP to speculate as to whether documents "relate" the topic specified.  WDP will construe this term in accordance with its plain English meaning.

7. WDP objects to the defined terms "person" and "persons" and to each and every Request containing those terms, on the ground that they are vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of this case.  WDP will construe these terms in accordance with their plain English meaning.

8. WDP objects to Instruction 16 to the extent it is overly burdensome and imposes obligations beyond those imposed by the Federal Rules of Civil Procedure. WDP will not provide a privilege log in response to these Requests to the extent that privileged documents involve litigation related to the Film.  WDP is willing to meet and confer regarding a proportional privilege log.

9. WDP objects to Instruction 17 to the extent it is overly burdensome and imposes obligations beyond those required by Rule 26(e).  WDP will supplement responses as indicated herein, but will not undertake to supplement such responses after the close of discovery.

**REQUEST FOR PRODUCTION NO. 26:**

Documents sufficient to show a detailed summary of costs and expenses on an annual basis relating to the Pirates of the Caribbean franchise following the release of the Pirates of the Caribbean film, including without limitation, film

1    sequels and merchandise.

2    **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

3        WDP incorporates its Prefatory Statement, General Objections, and

4    Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this

5    Request as seeking highly-sensitive confidential business information for tactical

6    advantage, rather that evidentiary value.  WDP further objects to the term "Pirates

7    of the Caribbean franchise" on the ground that the term is vague and ambiguous to

8    the extent it purports to include any work, product, film, book, sales, licensing, or

9    royalties besides The Curse and the Four Film Sequels.  As defined, the term would

10   encompass any "work, product, film, book, or similar" and any "sales, licensing, or

11   royalties related thereto" created by anyone after 2003, whether or not related in

12   any way to The Curse or WDP.  WDP further objects to this Request as overly

13   broad, unduly burdensome, not proportional to the needs of this case, and not

14   relevant to any party's claims or defenses to the extent it seeks information

15   regarding costs and expenses relating to any works or products besides The Curse.

16   Plaintiffs have not provided any facts to support any basis for claiming

17   infringement for the Four Film Sequels or damages contentions sufficient to show

18   the relevance of this Request.  In response to WDP counsel's January 25, 2022

19   email request for information regarding the relevance of this and similar requests,

20   Plaintiffs' counsel stated vaguely that these requests "relate to damages for

21   Disney's infringement" and "relate[] to Disney's indirect profits."  WDP further

22   objects to this Request as overly broad, unduly burdensome, not proportional to the

23   needs of this case, not relevant to any party's claims or defenses, and vague and

24   ambiguous insofar as it seeks information regarding the costs and expenses

25   "relating to . . . merchandise."  For the reasons stated above, Plaintiffs have not

26   provided information regarding their damages contentions sufficient to show the

27   relevance of this Request.  WDP further objects to this Request as overly broad,

28   unduly burdensome, not proportional to the needs of this case, and not relevant to

1   any party's claims or defenses to the extent it seeks information regarding costs and

2   expenses pre-dating November 14, 2014.  WDP further objects that the Request for

3   a "detailed summary" is vague and ambiguous, because it is subject to multiple

4   interpretations.  WDP further objects to this Request on the ground that the term

5   "relating to the Pirates of the Caribbean franchise" is vague and ambiguous as to

6   the categories of costs and expenses sought.

7       On the basis of its objections, WDP will not produce documents in response

8   to this Request.

9       **REQUEST FOR PRODUCTION NO. 27:**

10      Documents sufficient to show a detailed summary of gross revenue on an

11  annual basis relating to the Pirates of the Caribbean franchise following the release

12  of the Pirates of the Caribbean film, including without limitation, film sequels and

13  merchandise.

14      **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

15      WDP incorporates its Prefatory Statement, General Objections, and

16  Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this

17  Request as seeking highly-sensitive confidential business information for tactical

18  advantage, rather that evidentiary value.  WDP further objects to the term "Pirates

19  of the Caribbean franchise" on the ground that the term is vague and ambiguous to

20  the extent it purports to include any work, product, film, book, sales, licensing, or

21  royalties besides The Curse and Four Film Sequels.  As defined, the term would

22  encompass any "work, product, film, book, or similar" and any "sales, licensing, or

23  royalties related thereto" created by anyone after 2003, whether or not related in

24  any way to The Curse or WDP.  WDP further objects to this Request as overly

25  broad, unduly burdensome, not proportional to the needs of this case, and not

26  relevant to any party's claims or defenses to the extent it seeks information

27  regarding gross revenues derived from any works or products besides The Curse.

28  Plaintiffs have not provided any facts to support any basis for claiming

1   infringement for the Four Film Sequels or damages contentions sufficient to show

2   the relevance of this Request.  In response to WDP counsel's January 25, 2022

3   email request for information regarding the relevance of this and similar requests,

4   Plaintiffs' counsel stated vaguely that these requests "relate to damages for

5   Disney's infringement" and "relate[] to Disney's indirect profits."  WDP further

6   objects to this Request as overly broad, unduly burdensome, not proportional to the

7   needs of this case, not relevant to any party's claims or defenses, and vague and

8   ambiguous insofar as it seeks information regarding gross revenues "relating to . . .

9   merchandise."  For the reasons stated above, Plaintiffs have not provided

10  information regarding their damages contentions sufficient to show the relevance of

11  this Request.  WDP further objects to this Request as overly broad, unduly

12  burdensome, not proportional to the needs of this case, and not relevant to any

13  party's claims or defenses to the extent it seeks information regarding gross revenue

14  pre-dating November 14, 2014.  WDP further objects that the Request for a

15  "detailed summary" is vague and ambiguous, because it is subject to multiple

16  interpretations.  WDP further objects to this Request on the ground that the term

17  "relating to the Pirates of the Caribbean franchise" is vague and ambiguous as to

18  the categories of revenues sought.

19       On the basis of its objections, WDP will not produce documents in response

20  to this request.

21       **REQUEST FOR PRODUCTION NO. 28:**

22       Documents sufficient to show Disney's internal accounting methods for the

23  Pirates of the Caribbean film and Pirates of the Caribbean franchise.

24       **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

25       WDP incorporates its Prefatory Statement, General Objections, and

26  Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this

27  Request as seeking highly-sensitive confidential business information.  WDP

28  further objects that the phrase "internal accounting methods" is vague and

ambiguous, because the phrase is subject to multiple interpretations. WDP does not know what is meant by the phrase. WDP further objects to the term "Pirates of the Caribbean franchise" on the ground that it is vague and ambiguous to the extent it purports to include any work, product, film, book, sales, licensing, or royalties besides The Curse and Four Film Sequels. As defined, the term would encompass any "work, product, film, book, or similar" and any "sales, licensing, or royalties related thereto" created by anyone after 2003, whether or not related in any way to The Curse or WDP. WDP further objects to this Request as overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding "internal accounting methods" for any works or products besides The Curse. Plaintiffs have not provided any facts to support any basis for claiming infringement for the Four Film Sequels or damages contentions sufficient to show the relevance of this Request. In response to WDP counsel's January 25, 2022 email request for information regarding the relevance of this and similar requests, Plaintiffs' counsel stated vaguely that these requests "relate to damages for Disney's infringement" and "relate[] to Disney's indirect profits." WDP further objects to this Request as overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding "internal accounting methods" pre-dating November 14, 2014.

Subject to and without waiving the foregoing objections, WDP responds as follows: WDP agrees to meet and confer with Plaintiffs regarding the request for documents sufficient to show WDP's internal accounting methods for The Curse. On the basis of its objections, WDP will not produce documents in response to the request for documents sufficient to show its internal accounting methods for the "Pirates of the Caribbean franchise."

**REQUEST FOR PRODUCTION NO. 29:**

Documents relating to any internal assessment, valuation, or analysis

apportioning the value or profits of the Pirates of the Caribbean film or Pirates of the Caribbean franchise.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 29:

WDP incorporates its Prefatory Statement, General Objections, and Objections to Plaintiffs' Definitions and Instructions. WDP further objects to this Request as seeking highly-sensitive confidential business information for tactical advantage, rather that evidentiary value. WDP further objects that the phrase "apportioning the value or profits" is vague and ambiguous. To the extent this Request asks WDP to produce documents sufficient to show its methodology for apportioning any profits to allegedly infringing or non-infringing aspects of The Curse or other works, then WDP objects that this Request calls for a legal conclusion, is premature, and the subject of expert testimony. Polar Bear Prods, Inc. v. Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004). WDP further objects to the term "Pirates of the Caribbean franchise" on the ground that it is vague and ambiguous to the extent it purports to include any work, product, film, book, sales, licensing, or royalties besides The Curse and Four Film Sequels. As defined, the term would encompass any "work, product, film, book, or similar" and any "sales, licensing, or royalties related thereto" created by anyone after 2003, whether or not related in any way to The Curse or WDP. WDP further objects to this Request as overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding "apportioning the value or profits" of any works or products besides The Curse. Plaintiffs have not provided any facts to support any basis for claiming infringement for the Four Film Sequels or damages contentions sufficient to show the relevance of this Request. In response to WDP counsel's January 25, 2022 email request for information regarding the relevance of this and similar requests, Plaintiffs' counsel stated vaguely that these requests "relate to damages for Disney's infringement" and "relate[] to Disney's indirect profits." WDP further

objects to this Request as overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding "apportioning the value or profits" pre-dating November 14, 2014.

On the basis of its objections, WDP will not produce documents in response to this Request.

**B.     Requested Relief**

Plaintiffs request an Order overruling Disney's objections to Interrogatories 12 & 14 and Requests for Production 26-29 and compelling Disney to produce documents and financial information about the Pirates of the Caribbean film sequels.

**C.     Screenwriters' Contentions and Points and Authorities**

The Screenwriters seek to compel Disney to produce financial information about the Pirates of the Caribbean sequel films. As background, the Screenwriters sued Disney for copyright infringement over the first Pirates of the Caribbean film (the Curse of the Black Pearl). Disney has since released four sequels to form the Pirates of the Caribbean franchise. The Screenwriters contend financial information for these sequel films is discoverable information because it is relevant to damages based on two legal theories below. Disney contends that this information is irrelevant and that the information contains "highly confidential and sensitive information."

**1.     Financial information for the sequel films is relevant to a hypothetical license damages theory.**

The Copyright Act allows the Screenwriters to pursue both actual damages and Disney's profits. 17 U.S.C. §§ 504(a)-(b). One form of actual damages is a hypothetical license. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014). A hypothetical license is the "amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use."

1   *Wall Data Inc. v. L.A. Cty. Sheriff's Dept.*, 447 F.3d 769, 786 (9th Cir. 2006). The

2   Screenwriters intend to offer expert testimony about that hypothetical license. One

3   element of that hypothetical license will include the fact that industry standards

4   included screenwriter compensation for sequel films. *See, e.g.*, Laiter Decl. Ex. 4-B.

5         Indeed, the Screenwriters and Disney included such a provision in a contract

6   that pre-dated Disney's infringement on the Pirates film. The Screenwriters and

7   Disney executed a contract over a project which Plaintiffs wrote and optioned to

8   Disney called Red Hood in 2000. Section E of the Red Hood Contract requires

9   Disney to pay the Screenwriters a royalty for any sequel films:

> If WDPc produces and releases the Picture as a feature-length theatrical motion picture which is based in whole or in part upon the Screenplay, and thereafter produces a theatrical sequel to or a theatrical remake of the Picture . . . then Artist shall be entitled to the applicable royalty specified below.
> 1. **Theatrical Sequel.** One-half (1/2) of the Purchase Price actually paid to Artist pursuant to Paragraph B.2. above plus, as contingent compensation, **a percentage of Defined Contingent Proceeds (if any) of such sequel**, which percentage shall be equal to one-half (1/2) of the percentage of Defined Contingent Proceeds to which Artist was entitled under Paragraph C.2. above (e.g., 2 ½ % of the Defined Contingent Proceeds for the sequel if Artist received sole "screenplay by" or sole "written by" credit for the picture).

> Laiter Decl. Ex. 4-B (emphasis added)

Put differently, for any sequel film, Disney would owe the Screenwriters half the

royalty due to them for the original film. Thus, financial information for the sequel

films is relevant to the Screenwriters' claim for damages, and the Court should

compel Disney to provide it in discovery and allow the fact-finder to resolve any

dispute on the merits.

**2.    Financial information for the sequel films is relevant to the Screenwriters' claim for indirect profits.**

      Copyright law also allows the Screenwriters to pursue Disney's indirect

profits from its infringement. To recover indirect profits, the Screenwriters need

1   only show a "causal nexus" between the Plaintiffs' screenplay (as embodied in the

2   original *Pirates of the Caribbean* film) and the source of profits (here, the sequel

3   films). *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710, 712 (9th Cir.

4   2004). Yet for purposes of discovery, the Screenwriters have a lower burden. In

5   discovery, courts only require a "sufficient *possibility* of a causal nexus." *Charter*

6   *Sch. Capital, Inc. v. Charter Asset Mgmt. Fund, LP*, 2015 WL 12655550, at *3

7   (C.D. Cal. Mar. 9, 2015). Then plaintiffs are "entitled to 'explore that issue further

8   through the discovery process.'" *Id.* (quoting *Sys. Am., Inc. v. Rockwell Software,*

9   *Inc.,* 2007 WL 1593219, at *1 (N.D. Cal. June 1, 2007)). "[T]he question of

10   whether or not plaintiff 'will be able to *prove* a sufficient nexus to recover indirect

11   profits'" is "a question for another day." *Id.* (quoting *Sys. Am.*, 2007 WL 1593219,

12   at *1); *see also Ultra Int'l Music Publishing v. Phan*, 2015 WL 13919167, at *2

13   (C.D. Cal. Apr. 1, 2015) (distinguishing proof of nexus from discoverability of

14   documents based on possibility of nexus).

15         The Screenwriters' claim that Disney received indirect profits surpasses this

16   low standard for discovery. A sequel, by definition, is a production that "continues

17   the story of an earlier one." Pakkebier Decl. Ex. 5 *Sequel*, Oxford Learner's

18   Dictionary. And the sequel films do so here through the continuation of main

19   characters, supernatural elements, and the duality of morality. Courts apply a but-

20   for standard in similar situations. *See Burns v. Imagine Films Entm't, Inc.*, 164

21   F.R.D. 589, 592 (W.D.N.Y. 1996) ("the attraction would not exist but for the

22   success of the motion picture *Backdraft*," and thus some "profits of the Backdraft

23   Attraction may be indirectly attributable to any infringement of the Plaintiffs'

24   screenplays, and the information requested in the Discovery Request may be

25   relevant in calculating the damages for any infringement"). Here too, but-for the

26   first Pirates film, the sequels would not exist, and they qualify as derivative works

27   of the original screenplay. *See Garcia v. Google, Inc.*, 766 F.3d 929, 935 (9th Cir.

28   2014) ("A screenplay is itself a copyrightable creative work and a film is

1    a derivative work of the screenplay on which it is based"), *superseded on other*

2    *grounds*, 786 F.3d 733, 741 (9th Cir. 2015) (en banc) ("a motion picture is

3    derivative of the script"). At minimum, the Screenwriters should have a chance to

4    develop its record in discovery to present this theory on the merits.

5         In fact, Disney conceded that a ripe dispute over damages on the sequel

6    information existed at the summary judgment hearing in front of Judge Marshall.

7    Disney's counsel acknowledged that the Screenwriters "do have allegations that the

8    subsequent sequels are derivative works and **so there might be liability**. But it all

9    flows from the liability as to the first movie *Curse of the Black Pearl*." *See*

10   Pakkebier Decl. Ex. 6, Transcript at 20:22-25 (emphasis added). That Disney

11   recognized the potential for liability underscores that the financial information is at

12   least discoverable. Any further challenges should be on the merits at trial or on

13   *Daubert*.

14        Disney's reliance on this Court's decision in *Salinas v. Procter & Gamble*

15   *Co.* is not persuasive. 2020 WL 8455187, at *2 (C.D. Cal. Dec. 4, 2020). *Salinas*

16   concerned an indirect profits theory based on an infringing advertisement—a

17   copyrighted whistle—and sales of consumer goods. *Id.* Such a theory is notoriously

18   difficult—if not impossible—to meet. As one court put it, indirect profits based on

19   advertising "will always be difficult and often impossible to calculate in a

20   reasonable manner the revenues made from an infringing advertising campaign"

21   because "[s]ales are a function of many variables which are interrelated in complex

22   and often unknown ways." *Sid & Marty Krofft Television Prods., Inc. v.*

23   *McDonald's Corp.*, 221 U.S.P.Q. 114, 1983 WL 1142, at *2 (C.D. Cal. 1983).

24   Whether consumers bought products based on a whistle in an advertisement is

25   incomparable to Disney's creation of a movie franchise from a foundational

26   screenplay.

27        Finally, Disney also objected to this discovery because it contains "highly

28   sensitive information." Pakkebier Decl. Ex. 2 at 1-2. But courts routinely overrule

this objection when—as here—a protective order exists to protect highly confidential information. *See, e.g.*, *Vargas v. Cty. of L.A.*, 2020 WL 4032671, at *3 (C.D. Cal. May 11, 2020) (Sagar, M.J.) ("Confidentiality, however, is not a valid objection under Rule 26(b)," particularly when the "Court [has] entered the parties' agreed Protective Order . . . thus protecting confidential, proprietary, or private information from improper public disclosure." (citations omitted)). The Court should likewise overrule Disney's boilerplate general objections. *Id.* ("[B]oilerplate objections do *not* suffice and there is no ground upon which to reasonably argue otherwise." (quoting *Marti v. Baires*, 2012 WL 2029720, at *5 (E.D. Cal. June 5, 2012))). The Court should reach the same conclusion here. Thus, the Court should compel Disney to produce financial information on the sequel films in response to Interrogatories 12 and 14 and Requests for Production 26-29.

### D. Defendant WDP's Contentions And Points And Authorities

This case concerns *Curse*, a film released in 2003. Plaintiffs waited fourteen years—until late 2017—to file this copyright lawsuit claiming that popular film infringes their Screenplay.

Plaintiffs' Screenplay, which is expressly based on the Disneyland theme park ride "Pirates of the Caribbean," tells a story about a search for treasure. The story in Plaintiffs' Screenplay revolves around six orphan children, the "Rascal Scoundrels," who aspire to be pirates like their guardian, Davey Jones, and so embark on a quest for hidden treasure after stealing from Jones part of a treasure map. Yee Decl. Ex. B [FAC Ex. 2, Dkt. 112-2 (screenplay)]. Along the way, they encounter Jack Nefarious, the captain of a ghost ship crewed by pirates with skull face-paint, whom Jones ultimately vanquishes in a fight over the treasure. *Id.*

*Curse* is also based on the Disneyland theme park ride, but tells a completely different story than the Screenplay. The protagonist in *Curse* is a pirate named Jack Sparrow (played by Johnny Depp). There is no group of "Rascal Scoundrel" want-to-be pirate children. Instead, Sparrow and a blacksmith named Will Turner

(played by Orlando Bloom), seek to rescue the kidnapped daughter of an island's governor, Elizabeth Swann (played by Keira Knightley), from the cursed pirate crew of the *Black Pearl*, captained by Hector Barbossa.  Barbossa and his crew become undead skeletons in the moonlight—something inspired directly by the Disneyland ride, which starts by telling visitors: "Ye've seen the cursed treasure," and takes them past, among other things, a skeleton pirate steering a ship, and skeleton pirates pouring rum down their throats.

Plaintiffs claim their Screenplay and *Curse* share similarities, each of which is framed at an extraordinary level of generality involving common, uncopyrightable tropes that are a staple of the pirate genre.  For example, Plaintiffs claim their lead pirate (Davey Jones) is "cocky," "dashing," and "morally ambiguous," and so is Jack Sparrow, Yee Decl. Ex. C [FAC, Dkt. 112] ¶¶ 83–85; they claim the sequence of events is "fun and fast-paced," *id.* ¶ 91; and they say the conflicts culminate in caverns filled with treasure, *id.* ¶¶ 97–98.

Plaintiffs submitted their Screenplay to WDP in August 2000, after WDP already had written a treatment for a movie based on the "Pirates of the Caribbean" Disneyland ride.  WDP's screenplay for *Curse* was developed by multiple writers and was ultimately completed by Terry Rossio and Ted Elliott—an accomplished screenwriting pair who, by the time they worked on *Curse*, had already written screenplays for critically acclaimed and popular movies including *Shrek* and *Aladdin.*

Plaintiffs' discovery requests seeking financial information for the Sequels, as well as financial information for *Pirates of the Caribbean* merchandise (a claim Plaintiffs appear to have dropped), are far removed from Plaintiffs' actual claim of infringement related to *Curse*.[2]  Each of Plaintiffs' arguments for taking discovery

---

[2] Plaintiffs appear to have dropped their demand for discovery regarding profits from *Pirates of the Caribbean* merchandise, which is even more attenuated than their request for financial information relating to the Sequels.

1   regarding motion pictures they do not accuse of infringing their Screenplay fails for

2   the reasons described below.

3            **1.**      **Plaintiffs Do Not Allege The Sequels Directly Infringe Their**

4                    **Screenplay**

5       Plaintiffs no longer claim that WDP's Sequels directly infringed their

6   Screenplay.  This charge was included in their original Complaint, but abandoned

7   in their First Amended Complaint.  *See* Yee Decl. Ex. A [Compl., Dkt. 1] ¶ 52 *with*

8   *id.* Ex. C. [FAC, Dkt. 112] ¶¶ 71–74 (alleging that each film in the *Pirates of the*

9   *Caribbean* franchise after *Curse* is infringing because it is a "direct sequel to the

10   Film and a derivative work thereof [i.e., of *Curse*]," but not alleging that the sequels

11   are derivative works of Plaintiffs' Screenplay).  In response to WDP's

12   Interrogatories asking Plaintiffs to identify elements of *Curse* or the Sequels that

13   Plaintiffs contend infringe their Screenplay and facts to support their contentions of

14   copying, Plaintiffs objected:

15          Plaintiffs object to this Interrogatory as seeking information not
           relevant to any party's claims or defenses in that it requests
16          information how "any of the SEQUEL MOVIES" infringe Plaintiffs'
           Screenplay, which is not a claim asserted in the First Amended
17          Complaint (and as explained at the summary judgment hearing).

18

19   Yee Decl. Ex. F [Plaintiffs' Answers to Defendant's First Set of Interrogatories] at

20   8–9, 11.  Plaintiffs have also confirmed during the parties' meet and confer, when

21   WDP has pressed for details regarding the alleged elements infringed, that Plaintiffs

22   are *not* alleging that the Sequels infringe Plaintiffs' Screenplay.  Yee Decl. ¶ 8.

23   Plaintiffs have thus squarely surrendered any claim to damages related to the

24   Sequels.

25       Apart from the fact Plaintiffs are trying to resurrect a theory they

26   purposefully abandoned, their arguments utterly fail.  In Plaintiffs' motion, they

27   make little attempt to describe which elements of their Screenplay are similar to

28   elements in the Sequels, alluding to generic elements of story, rather than concrete

expression:  "the continuation of main characters, supernatural elements, and the duality of morality."  Section III.C.2, *supra*.  Plaintiffs assert that the Sequels "qualify as derivative works of the original screenplay."  *Id.*, *supra*.  Not so, and Plaintiffs cannot begin to support this bald assertion.  *Plaintiffs* have the burden of proving that the Sequels are infringing derivative works of their Screenplay.  They cannot.

While "a work based upon an idea or kernel contained in another work may in some sense be 'derivative' of the first work," a work is a "derivative work" within the meaning of the Copyright Act only when it satisfies the Ninth Circuit "substantial similarity" standard.  *See Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234, 1238 (C.D. Cal. 2003) (explaining that a "'derivative work' under the Copyright Act is one which 'would be considered an infringing work if the material which it has derived from a preexisting work had been taken without the consent of the copyright proprietor of such preexisting work'") (citing *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341 (9th Cir. 1988)).

Plaintiffs do not even attempt to meet this standard by alleging *specific* elements of the Sequels that are substantially similar to their Screenplay.  Notably, *both* Plaintiffs' Screenplay and WDP's *Pirates of the Caribbean* franchise are based on Disney's theme park ride, making it silly to argue that aspects of the parties' works, like the Caribbean setting, plausibly form a basis for Plaintiffs' infringement claim.  That Plaintiffs cannot point to *any* specific elements from the Sequels that infringe their Screenplay means that the Sequels are not at issue in this litigation.  Plaintiffs simply cannot obtain financial information regarding films for which they have no claim for damages.

### 2.    Plaintiffs' "Hypothetical License" Damages Theory Fails— Plaintiffs Would Not Be Entitled To A Royalty *Even Assuming* Such A License Existed Here

Knowing that they have not and cannot claim that the Sequels infringe

1    Plaintiffs' Screenplay, Plaintiffs argue that the Sequel profits are relevant because

2    they could claim damages based on a "hypothetical license" that would have given

3    them a right to royalties for the Sequels.  In support of this argument, Plaintiffs

4    identify—for the *first time* in this motion, after years of litigation—the contract that

5    Disney signed with them in 1999 to option a different screenplay they had written,

6    *Red Hood*.  *See* Yee Decl. ¶ 8.  Plaintiffs argue that "Section E of the Red Hood

7    Contract requires Disney to pay the Screenwriters a royalty for any sequel films."

8    Had Plaintiffs raised the *Red Hood* contract during meet and confer, WDP would

9    have explained why the argument is doomed from the start: under that agreement,

10   Plaintiffs only would have been entitled to receive royalties (from the original film

11   *or* any sequels) if they received "Screenplay by" or "Written by" credit for the

12   original film.  *See* Laiter Decl. Ex. 4-B §§ C.2.a, E.1.

13        This is a critical condition. "Screenplay by" and "Written by" credits are

14   terms of art in the screenwriting industry.  *See* Yee Decl. Ex. D at 19–20 [WGA

15   Screen Credits Manual].  The determination is not up to the movie studios; credit

16   determinations are made subject to the Writers Guild of America's ("WGA")

17   collective bargaining agreement with the movie studios, and the WGA resolves

18   credits disputes via arbitration.  *Id.* at 8–9.  The WGA made the final

19   credits determination for *Curse*.  *Id.* Ex. E [6/6/2003 WGA Credit Determination

20   Letter].  Four different writers did drafts of the *Curse* script, but only two—the

21   writers of the shooting script that became the motion picture, Ted Elliott and Terry

22   Rossio—received "Screenplay by" credits.  The writers who worked on the script

23   before them received "Story by" credits, which do not trigger any entitlement to

24   royalties under clauses like that in the *Red Hood* option agreement.  *See* Laiter

25   Decl. Ex. 4-B § C.2.a (providing for royalties on any *Red Hood* sequel only if

26   Plaintiffs receive sole or shared "screenplay credit" on the original film); *id.* § E.1

27   (providing contingent compensation for sequels only if the screenwriter was

28   entitled to contingent compensation for the original film).

Under the "hypothetical license" scenario Plaintiffs posit, then, Plaintiffs would not have received *any* royalty for *any* film in the *Pirates of the Caribbean* franchise, whether *Curse* or its Sequels.  Plaintiffs have never alleged—nor even suggested—a hypothetical world in which they, as novice screenwriters who had never seen any of their scripts developed into a feature film, would have displaced Elliott and Rossio (seasoned industry veterans who had written *Aladdin*, *Shrek*, and other successful films) as the credited screenwriters on a major feature film like *Curse*.  Nor could they, because any such claim would be purely speculative.  *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006) (a hypothetical lost license fee must not be based on "undue speculation").  Plaintiffs should not be permitted to conduct a fishing expedition into WDP's profits from concededly non-infringing films based on an outlandish fantasy about a screenwriting role they never played in either *Curse* or *Red Hood*.

### 3.     Plaintiffs Fail To Establish The Requisite "Causal Connection" Needed To Discover Indirect Profits

With no basis for asserting a direct damages claim to profits from the Sequels, Plaintiffs fall back on arguing that financial information about the Sequels is relevant to their claim for "indirect profits" from those films.

Indirect profits damages theories are notoriously fertile grounds for speculation and overreach, because such profits are by definition derived from *non-infringing* sales.  As the Ninth Circuit has explained, a "copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement." *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).  "[A] plaintiff seeking to recover indirect profits must 'formulate the initial evidence of gross revenue duly apportioned to relate to the infringement.'" *Id.* (citation omitted).  The Ninth Circuit has therefore empowered courts to police such theories carefully, making clear that court may preclude "recovery of a defendant's profits if

1    they are only remotely or speculatively attributable to the infringement." *Frank*

2    *Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985); *see*

3    *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002).

4         Applying this precedent, this Court has likewise held that, before seeking

5    discovery on an indirect-profits theory, a plaintiff must articulate some non-

6    speculative nexus between the alleged infringement and the indirect profits.  In

7    *Salinas v. Proctor & Gamble Co.*, this Court rejected a plaintiff's motion to compel

8    revenue information bearing on indirect profits where, like here, the plaintiff failed

9    to proffer "any non-speculative evidence supporting his requests for indirect profits

10   information."  2020 WL 8455137, at *3 (C.D. Cal. Oct. 9, 2020) (Sagar, J.), *aff'd*,

11   2020 WL 8455187, at *2 (C.D. Cal. Dec. 4, 2020).  On review before the district

12   court, the district court affirmed the order, stating that "Plaintiff must first offer

13   reasons why he would be entitled to indirect profits beyond mere speculation.  To

14   require otherwise would permit Plaintiff to engage in a fishing expedition of

15   Defendants' books." *Salinas*, 2020 WL 8455187, at *2.  In so holding, this Court

16   established a clear standard: "[a] party seeking discovery of indirect profits, that is,

17   profits not generated by selling an infringing product, must establish a non-

18   speculative 'causal nexus' between the alleged infringement and the applicable

19   revenue stream." *Salinas*, 2020 WL 8455137, at *3.

20        Here, as in *Salinas*, Plaintiffs seek expansive discovery into financial

21   information for films that they have never claimed infringe their Screenplay.

22   Despite multiple requests by WDP seeking Plaintiffs' theory supporting their

23   requests for indirect profits information, Plaintiffs refused in meet and confer to

24   identify a single element of their screenplay that they contend drove interest in the

25   Sequels or otherwise entitles them to profits for the Sequels.

26        In their motion, Plaintiffs cite the dictionary definition of "sequel" and argue

27   in a conclusory fashion that the sequel "is a production that 'continues the story of

28   an earlier [production].'"  This does not satisfy the indirect-profits standard,

1   because the mere fact that a film may be labeled as a "sequel" and continue the

2   story of an earlier film does not establish that any *infringing elements* of the

3   original story are causally connected in any way to the sequels.  *See Salinas*, 2020

4   WL 8455137, at *3.  As discussed above, Plaintiffs fail concretely to identify *any*

5   elements of the Screenplay that appear in the Sequels.  Instead, they state

6   generically that the Sequels build on *Curse* "through the continuation of main

7   characters, supernatural elements, and the duality of morality."  But Plaintiffs do

8   not connect any of those elements to the alleged infringement.  Plaintiffs' silence on

9   that score speaks volumes about the weakness of their indirect-profits theory.

10       Plaintiffs attempt to distinguish *Salinas* by pointing to the fact that the

11   plaintiff there sought indirect profits of the sales of consumer goods (Old Spice

12   products) based on Old Spice's use of an allegedly infringing musical composition

13   in its advertising.  But this argument ignores the central holding in *Salinas*, which

14   applies equally to *any* theory of indirect profits discovery:  plaintiffs bear the

15   burden to "establish a non-speculative 'causal nexus' between the alleged

16   infringement and the applicable revenue stream" before obtaining indirect profits

17   discovery.  *Salinas*, 2020 WL 8455137, at *3.

18       Plaintiffs' indirect-profits claim regarding the Sequels is subject to the same

19   criticisms that applied to the advertisement theory at issue in *Salinas*.  Plaintiffs cite

20   *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, in arguing that

21   product sales "are a function of many variables which are interrelated in complex

22   and often unknown ways."  1983 WL 1142, at *2 (C.D. Cal. Jan. 12, 1983).  But

23   the same is true of movie ticket sales, and *particularly* sequels in a franchise based

24   on a beloved Disneyland theme park ride.  Interest in the Sequels was likely driven

25   by myriad factors, including Johnny Depp's iconic performance in *Curse*, the

26   popularity of the ride, the extensive marketing campaigns for the films, the

27   name recognition of producer Jerry Bruckheimer, and many other factors.  To what

28   extent did allegedly appropriated elements from Plaintiffs' Screenplay drive

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

JOINT STIPULATION FOR
DISCOVERY HEARING

- 39 -

2:18-CV-08074-CBM-ASX

1   consumer interest in any of the Sequels?  Plaintiffs do not even begin to say.

2   Instead, they repeatedly intone the words "sequel" and "franchise" in connection

3   with *Curse*, which does not satisfy their burden to actually "*establish*" a causal

4   nexus between alleged infringement and sequel profits.  *Salinas*, 2020 WL

5   8455137, at *3.

6       Finally, the sole authority cited by Plaintiffs, *Burns v. Imagine Films*

7   *Entertainment, Inc.*, 164 F.R.D. 589 (W.D.N.Y. 1996), is an out-of-circuit district

8   court decision from the Western District of New York.  Its "but-for" reasoning—

9   permitting discovery into profits derived from a non-infringing attraction because

10   such attraction "would not exist but for the success of the motion picture," *id.* at

11   592—is directly contrary to the reasoning of *Salinas* and the Ninth Circuit case law

12   holding that plaintiffs seeking indirect profits must do more than establish a mere

13   "but-for" relationship between the infringement and source of indirect profit.  *See*

14   *Polar Bear*, 384 F.3d 700; *Salinas*, 2020 WL 8455187, at *2.

15       **4.    There Is No Merit To Plaintiffs' Argument That WDP**

16       **"Conceded" A Dispute Over Sequel Damages**

17       Lastly, Plaintiffs claim that during the course of a summary judgment

18   argument, WDP "conceded that a ripe dispute over damages" exists regarding the

19   Sequels, which justifies this discovery.

20       Defense counsel's statement at the summary judgment hearing that Plaintiffs

21   "have allegations [in the complaint] that the subsequent [S]equels are derivative

22   works and so there might be liability" was a *descriptive* statement that did nothing

23   more than acknowledge that Plaintiffs' First Amended Complaint seeks an award of

24   indirect profits associated with the Sequels.  It certainly did not concede liability for

25   those indirect profits, and it did not open the door to Plaintiffs' discovery of those

26   profits absent the causal showing required by this Court in *Salinas*.

27       **5.    WDP's Proposed Resolution**

28       During the parties' meet and confers, Plaintiffs asked WDP to produce

1  financial information regarding the Sequels.  WDP did not agree to this proposal
2  because it contends the requests are improper for the reasons stated above.  Yee
3  Decl. ¶ 9.

4      WDP believes this Court should deny Plaintiffs' motion in its entirety.  If this
5  Court is inclined to grant the motion, then WDP would provide, on an AEO basis,
6  the financial information for Sequels at the summary level Plaintiffs accepted for
7  *Curse* financial information.

8  **IV.  Issue 2: Pre-2014 Financial Information**

9      **A.     Requests and Responses**

10     The Screenwriters served five interrogatories and seven requests for
11  production directed toward their damages. Disney objected to these discovery
12  requests if the information pre-dates November 2014. Disney incorporated its
13  Prefatory Statement, General Objections, and Objections to Definitions and
14  Instructions in each response. Pursuant to Local Rule 37-2.1, those components, as
15  well as the text of each interrogatory or request for production, and response, are set
16  forth below.

17     **INTERROGATORY NO. 11:**

18     State Disney's gross revenue on an annual basis for the Pirates of the
19  Caribbean film.

20     **RESPONSE TO INTERROGATORY NO. 11:**

21     WDP incorporates its Prefatory Statement, General Objections, and
22  Objections to Plaintiffs' Definitions and Instructions.[3]  WDP further objects to this
23  Interrogatory as seeking highly-sensitive confidential business information.  WDP
24  further objects to this Interrogatory as overly broad, unduly burdensome, not
25  proportional to the needs of this case, and not relevant to any party's claims or

26

27  [3] For purposes of brevity, Plaintiffs have avoided repasting these components in this
Section. The original text of Disney's Prefatory Statement, General Objections, and
28  Objections to Plaintiffs' Definitions and Instructions are found *supra* in response to
Issue 1.

1  defenses to the extent it seeks information regarding gross revenue pre-dating
2  November 14, 2014.  WDP further objects to this Interrogatory insofar as the phrase
3  "gross revenue . . . for the Pirates of the Caribbean film" is vague and ambiguous as
4  to the revenue streams sought.  WDP construes this term to include The Curse
5  revenues derived from domestic and international theatrical, physical retail,
6  electronic home video ("EHV"), transactional video on demand ("TVOD"), pay
7  TV, free/basic TV distribution, and other non-theatrical distribution.  WDP further
8  objects that this Interrogatory calls for a legal conclusion, is premature, and the
9  subject of expert testimony.

10      Subject to and without waiving the foregoing objections, WDP responds as
11  follows: WDP directs Plaintiffs to the attached CONFIDENTIAL-ATTORNEYS
12  EYES ONLY Exhibit A, which shows WDP's revenues for The Curse domestic
13  and international theatrical, physical retail, electronic home video ("EHV"),
14  transactional video on demand ("TVOD"), pay TV, and free/basic TV distribution
15  as well as other non-theatrical distribution on an annual basis from October 2014
16  through the end of 2021.[4]

17      WDP's investigation is ongoing, and WDP reserves the right to supplement
18  this response.

19
20      **INTERROGATORY NO. 12:**
21      State Disney's gross revenue on an annual basis for the Pirates of the
22  Caribbean franchise.
23      **RESPONSE TO INTERROGATORY NO. 12:**
24      WDP incorporates its Prefatory Statement, General Objections, and
25      Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to

26  _____

[4] By producing financial information from the fourth quarter of 2014, WDP
27  expressly preserves and does not waive its objection that costs and expenses
    information pre-dating November 14, 2014 is overly broad, unduly burdensome,
28  not proportional to the needs of the case, and outside the relevant damages
    limitation period.

this Interrogatory as seeking highly-sensitive confidential business information for tactical advantage, rather that evidentiary value.  WDP objects to the term "Pirates of the Caribbean franchise" on the ground that the term is vague and ambiguous to the extent it purports to include any work, product, film, book, sales, licensing, or royalties besides The Curse and Four Film Sequels.  As defined, the term would encompass any "work, product, film, book, or similar" and any "sales, licensing, or royalties related thereto" created by anyone after 2003, whether or not related in any way to The Curse or WDP.  WDP further objects to this Interrogatory as overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding gross revenue derived from any works besides The Curse.  Plaintiffs have not provided any facts to support any basis for claiming infringement for the Four Film Sequels or damages contentions sufficient to show the relevance of this Interrogatory.  In response to WDP counsel's January 25, 2022 email request for information regarding the relevance of this and similar requests, Plaintiffs' counsel stated vaguely that these requests "relate to damages for Disney's infringement" and "relate[] to Disney's indirect profits."  WDP further objects to this Interrogatory as overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding gross revenue pre-dating November 14, 2014.  WDP further objects to this Interrogatory insofar as "gross revenue . . . for the Pirates of the Caribbean franchise" is vague and ambiguous as to the revenue streams sought. WDP further objects that this Interrogatory calls for a legal conclusion, is premature, and the subject of expert testimony.

Subject to and without waiving the foregoing objections, WDP responds as follows: WDP refers Plaintiffs to its response to Interrogatory No. 11 regarding gross revenues for The Curse.  With respect to gross revenue information for any of the Four Film Sequels or any other works sought by this request, WDP will not respond

1    on the basis of its objections.  WDP is willing to meet and confer with Plaintiffs

2    regarding this Interrogatory.

3

4        **INTERROGATORY NO. 13:**

5        State Disney's costs and expenses on an annual basis for the Pirates of the

6    Caribbean film.

7        **RESPONSE TO INTERROGATORY NO. 13:**

8        WDP incorporates its Prefatory Statement, General Objections, and

9    Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this

10   Interrogatory as seeking highly-sensitive confidential business information.  WDP

11   further objects to this Interrogatory as overly broad, unduly burdensome, not

12   proportional to the needs of this case, and not relevant to any party's claims or

13   defenses to the extent it seeks information regarding costs and expenses pre-dating

14   November 14, 2014.  WDP further objects to this Interrogatory insofar as the phrase

15   "costs and expenses . . . for the Pirates of the Caribbean film" is vague and

16   ambiguous as to the categories of costs and expenses sought.  WDP construes this

17   term to include The Curse costs and expenses incurred from domestic and

18   international theatrical, physical retail, electronic home video ("EHV"),

19   transactional video on demand ("TVOD"), pay TV, and free/basic TV distribution;

20   other non-theatrical revenues; distribution overhead; residuals; participation; and

21   production costs.  WDP further objects that this Interrogatory calls for a legal

22   conclusion, is premature, and the subject of expert testimony.

23       Subject to and without waiving the foregoing objections, WDP responds as

24   follows: WDP directs Plaintiffs to the attached CONFIDENTIAL-ATTORNEYS

25   EYES ONLY Exhibit A, which shows WDP's costs and expenses incurred from

26   The Curse domestic and international theatrical, physical retail, electronic home

27   video ("EHV"), transactional video on demand ("TVOD"), pay TV, and free/basic

28   TV distribution; other non-theatrical distribution; distribution overhead; residuals;

1  participation; and production costs on an annual basis from October 2014 through
2  the end of 2021.3  WDP's investigation is ongoing, and WDP reserves the right to
3  supplement this response.

4

5  **INTERROGATORY NO. 14:**

6  State Disney's costs and expenses on an annual basis for the Pirates of the
7  Caribbean franchise.

8  **RESPONSE TO INTERROGATORY NO. 14:**

9  WDP incorporates its Prefatory Statement, General Objections, and
10 Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this
11 Interrogatory as seeking highly-sensitive confidential business information for
12 tactical advantage, rather that evidentiary value.  WDP objects to the term "Pirates
13 of the Caribbean franchise" on the ground that the term is vague and ambiguous to
14 the extent it purports to include any work, product, film, book, sales, licensing, or
15 royalties besides The Curse and Four Film Sequels.  As defined, the term would
16 encompass any "work, product, film, book, or similar" and any "sales, licensing, or
17 royalties related thereto" created by anyone after 2003, whether or not related in
18 any way to The Curse or WDP.  WDP further objects to this Interrogatory as overly
19 broad, unduly burdensome, not proportional to the needs of this case, and not
20 relevant to any party's claims or defenses to the extent it seeks information
21 regarding costs and expenses related to any works besides The Curse.  Plaintiffs
22 have not provided any facts to support any basis for claiming infringement for the
23 Four Film Sequels or damages contentions sufficient to show the relevance of this
24 Interrogatory.  In response to WDP counsel's January 25, 2022 email request for
25 information regarding the relevance of this and similar requests, Plaintiffs' counsel
26 stated vaguely that these requests "relate to damages for Disney's infringement"
27 and "relate[] to Disney's indirect profits."  WDP further objects to this
28 Interrogatory as overly broad, unduly burdensome, not proportional to the needs of

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS
JOINT STIPULATION FOR
DISCOVERY HEARING
- 45 -
2:18-CV-08074-CBM-ASX

this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding costs and expenses pre-dating November 14, 2014. WDP further objects to this Interrogatory insofar as "costs and expenses . . . for the Pirates of the Caribbean franchise" is vague and ambiguous as to the categories of costs and expenses sought. WDP further objects that this Interrogatory calls for a legal conclusion, is premature, and the subject of expert testimony.

Subject to and without waiving the foregoing objections, WDP responds as follows: WDP refers Plaintiffs to its response to Interrogatory No. 13 regarding costs and expenses for The Curse. With respect to costs and expenses information for any of the Four Film Sequels or any other works sought by this Interrogatory, WDP will not respond on the basis of its objections. WDP is willing to meet and confer with Plaintiffs regarding this Interrogatory.

**INTERROGATORY NO. 15:**

State Disney's contention as to any apportioned values of the Pirates of the Caribbean film, including a description of Disney's method for apportionment and an identification of any documents relating to that contention.

**RESPONSE TO INTERROGATORY NO. 15:**

WDP incorporates its Prefatory Statement, General Objections, and Objections to Plaintiffs' Definitions and Instructions. WDP further objects to this Interrogatory as seeking highly-sensitive confidential business information. WDP objects to the extent this request seeks any documents or information protected by the attorney-client privilege, the work-product doctrine, or any analogous privilege or protection from discovery. WDP further objects to this Interrogatory insofar as the phrases "any apportioned values of the Pirates of the Caribbean film" and "method for apportionment" are vague and ambiguous. WDP does not understand what is meant by these phrases. To the extent this Interrogatory asks WDP to state its position regarding the amount of any profits that should be apportioned to

allegedly infringing or non-infringing aspects of the Film, then WDP objects that

this Interrogatory calls for a legal conclusion, is premature, and the subject of

expert testimony.  Polar Bear Prods, Inc. v. Timex Corp., 384 F.3d 700, 711 (9th

Cir. 2004).  WDP further objects to this Interrogatory as overly broad, unduly

burdensome, not proportional to the needs of this case, and not relevant to any

party's claims or defenses to the extent it seeks information regarding "any

apportioned values" of any profits pre-dating November 14, 2014.

On the basis of its objections, WDP will not respond to this Interrogatory.  WDP is

willing to meet and confer with Plaintiffs regarding this Interrogatory.

**REQUEST FOR PRODUCTION NO. 23:**

Documents sufficient to show a detailed summary of costs and expenses on

an annual basis relating to the Pirates of the Caribbean film.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

WDP incorporates its Prefatory Statement, General Objections, and

Objections to Plaintiffs' Definitions and Instructions.[5]  WDP further objects to this

Request as seeking highly-sensitive confidential business information.  WDP

further objects to this Request as overly broad, unduly burdensome, not

proportional to the needs of this case, and not relevant to any party's claims or

defenses to the extent it seeks information regarding costs and expenses pre-dating

November 14, 2014.  WDP further objects that the Request for a "detailed

summary" is vague and ambiguous, because it is subject to multiple interpretations.

WDP further objects to this Request on the ground that the phrase "relating to the

Pirates of the Caribbean film" is vague and ambiguous as to the categories of costs

and expenses sought.  WDP construes this term to include The Curse costs and

---

[5] For purposes of brevity, Plaintiffs have avoided repasting these components in this Section. The original text of Disney's Prefatory Statement, General Objections, and Objections to Plaintiffs' Definitions and Instructions are found *supra* in response to Issue 1.

1   expenses incurred from domestic and international theatrical, physical retail,

2   electronic home video

3   ("EHV"), transactional video on demand ("TVOD"), pay TV, and free/basic

4   TV distribution; other non-theatrical revenues; distribution overhead; residuals;

5   participation; and production costs.

6         Subject to and without waiving the foregoing objections, WDP responds as

7   follows: WDP directs Plaintiffs to the information provided in CONFIDENTIAL-

8   ATTORNEYS EYES ONLY Exhibit A to its Responses and Objections to

9   Plaintiffs' First Set of Interrogatories, concurrently served herewith.

10

11         **REQUEST FOR PRODUCTION NO. 24:**

12         Documents sufficient to show a detailed summary of gross revenue on an

13   annual basis relating to the Pirates of the Caribbean film.

14         **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

15         WDP incorporates its Prefatory Statement, General Objections, and

16   Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this

17   Request as seeking highly-sensitive confidential business information.  WDP

18   further objects to this Request as overly broad, unduly burdensome, not

19   proportional to the needs of this case, and not relevant to any party's claims or

20   defenses to the extent it seeks information regarding gross revenue for The Curse

21   pre-dating November 14, 2014.  WDP further objects that the Request for a

22   "detailed summary" is vague and ambiguous, because it is subject to multiple

23   interpretations.  WDP further objects to this Request on the ground that the phrase

24   "relating to the Pirates of the Caribbean film" is vague and ambiguous as to the

25   categories of gross revenue sought.  WDP construes this term to include The Curse

26   revenues derived from domestic and international theatrical, physical retail,

27   electronic home video ("EHV"), transactional video on demand ("TVOD"), pay

28   TV, free/basic TV distribution, and other non-theatrical distribution.

1    Subject to and without waiving the foregoing objections, WDP responds as
2    follows: WDP directs Plaintiffs to the information provided in CONFIDENTIAL-
3    ATTORNEYS EYES ONLY Exhibit A to its Responses and Objections to
4    Plaintiffs' First Set of Interrogatories, concurrently served herewith.
5
6    **REQUEST FOR PRODUCTION NO. 25:**
7    Documents sufficient to show a detailed summary of profits on an annual
8    basis relating to the Pirates of the Caribbean film.
9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**
10   WDP incorporates its Prefatory Statement, General Objections, and
11   Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this
12   Request as seeking highly-sensitive confidential business information.  WDP
13   further objects to this Request as overly broad, unduly burdensome, not
14   proportional to the needs of this case, and not relevant to any party's claims or
15   defenses to the extent it seeks information regarding profits for the Film pre-dating
16   November 14, 2014.  WDP further objects that the Request for a "detailed
17   summary" is vague and ambiguous, because it is subject to multiple interpretations.
18   WDP further objects to this Request on the ground that the phrase "relating to the
19   Pirates of the Caribbean film" is vague and ambiguous as to the categories of any
20   profits sought.  WDP construes this term to mean the net income from revenues
21   derived from The Curse domestic and international theatrical, physical retail,
22   electronic home video
23   ("EHV"), transactional video on demand ("TVOD"), pay TV, free/basic TV
24   distribution, and other non-theatrical distribution, after taking into account costs
25   and expenses incurred from The Curse domestic and international theatrical,
26   physical retail, electronic home video ("EHV"), transactional video on demand
27   ("TVOD"), pay TV, and free/basic TV distribution; other non-theatrical
28   distribution; distribution overhead; residuals; participation; and production costs.

1         Subject to and without waiving the foregoing objections, WDP responds as

2    follows: WDP directs Plaintiffs to the information provided in CONFIDENTIAL-

3    ATTORNEYS EYES ONLY Exhibit A to its Responses and Objections to

4    Plaintiffs' First Set of Interrogatories, concurrently served herewith.

5

6    **REQUEST FOR PRODUCTION NO. 26:**

7         Documents sufficient to show a detailed summary of costs and expenses on

8    an annual basis relating to the Pirates of the Caribbean franchise following the

9    release of the Pirates of the Caribbean film, including without limitation, film

10   sequels and merchandise.

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

12        WDP incorporates its Prefatory Statement, General Objections, and

13   Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this

14   Request as seeking highly-sensitive confidential business information for tactical

15   advantage, rather that evidentiary value.  WDP further objects to the term "Pirates

16   of the Caribbean franchise" on the ground that the term is vague and ambiguous to

17   the extent it purports to include any work, product, film, book, sales, licensing, or

18   royalties besides The Curse and the Four Film Sequels.  As defined, the term would

19   encompass any "work, product, film, book, or similar" and any "sales, licensing, or

20   royalties related thereto" created by anyone after 2003, whether or not related in

21   any way to The Curse or WDP.  WDP further objects to this Request as overly

22   broad, unduly burdensome, not proportional to the needs of this case, and not

23   relevant to any party's claims or defenses to the extent it seeks information

24   regarding costs and expenses relating to any works or products besides The Curse.

25   Plaintiffs have not provided any facts to support any basis for claiming

26   infringement for the Four Film Sequels or damages contentions sufficient to show

27   the relevance of this Request.  In response to WDP counsel's January 25, 2022

28   email request for information regarding the relevance of this and similar requests,

1    Plaintiffs' counsel stated vaguely that these requests "relate to damages for
2    Disney's infringement" and "relate[] to Disney's indirect profits."  WDP further
3    objects to this Request as overly broad, unduly burdensome, not proportional to the
4    needs of this case, not relevant to any party's claims or defenses, and vague and
5    ambiguous insofar as it seeks information regarding the costs and expenses
6    "relating to . . . merchandise."  For the reasons stated above, Plaintiffs have not
7    provided information regarding their damages contentions sufficient to show the
8    relevance of this Request.  WDP further objects to this Request as overly broad,
9    unduly burdensome, not proportional to the needs of this case, and not relevant to
10   any party's claims or defenses to the extent it seeks information regarding costs and
11   expenses pre-dating November 14, 2014.  WDP further objects that the Request for
12   a "detailed summary" is vague and ambiguous, because it is subject to multiple
13   interpretations.  WDP further objects to this Request on the ground that the term
14   "relating to the Pirates of the Caribbean franchise" is vague and ambiguous as to
15   the categories of costs and expenses sought.

16       On the basis of its objections, WDP will not produce documents in response
17   to this Request.

18

19       **REQUEST FOR PRODUCTION NO. 27:**

20       Documents sufficient to show a detailed summary of gross revenue on an
21   annual basis relating to the Pirates of the Caribbean franchise following the release
22   of the Pirates of the Caribbean film, including without limitation, film sequels and
23   merchandise.

24       **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

25       WDP incorporates its Prefatory Statement, General Objections, and
26   Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this
27   Request as seeking highly-sensitive confidential business information for tactical
28   advantage, rather that evidentiary value.  WDP further objects to the term "Pirates

of the Caribbean franchise" on the ground that the term is vague and ambiguous to the extent it purports to include any work, product, film, book, sales, licensing, or royalties besides The Curse and Four Film Sequels.  As defined, the term would encompass any "work, product, film, book, or similar" and any "sales, licensing, or royalties related thereto" created by anyone after 2003, whether or not related in any way to The Curse or WDP.  WDP further objects to this Request as overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding gross revenues derived from any works or products besides The Curse. Plaintiffs have not provided any facts to support any basis for claiming infringement for the Four Film Sequels or damages contentions sufficient to show the relevance of this Request.  In response to WDP counsel's January 25, 2022 email request for information regarding the relevance of this and similar requests, Plaintiffs' counsel stated vaguely that these requests "relate to damages for Disney's infringement" and "relate[] to Disney's indirect profits."  WDP further objects to this Request as overly broad, unduly burdensome, not proportional to the needs of this case, not relevant to any party's claims or defenses, and vague and ambiguous insofar as it seeks information regarding gross revenues "relating to . . . merchandise."  For the reasons stated above, Plaintiffs have not provided information regarding their damages contentions sufficient to show the relevance of this Request.  WDP further objects to this Request as overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding gross revenue pre-dating November 14, 2014.  WDP further objects that the Request for a "detailed summary" is vague and ambiguous, because it is subject to multiple interpretations.  WDP further objects to this Request on the ground that the term "relating to the Pirates of the Caribbean franchise" is vague and ambiguous as to the categories of revenues sought.

1    On the basis of its objections, WDP will not produce documents in response

2    to this request.

3

4    **REQUEST FOR PRODUCTION NO. 28:**

5    Documents sufficient to show Disney's internal accounting methods for the

6    Pirates of the Caribbean film and Pirates of the Caribbean franchise.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

8    WDP incorporates its Prefatory Statement, General Objections, and

9    Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this

10   Request as seeking highly-sensitive confidential business information.  WDP

11   further objects that the phrase "internal accounting methods" is vague and

12   ambiguous, because the phrase is subject to multiple interpretations.  WDP does not

13   know what is meant by the phrase.  WDP further objects to the term "Pirates of the

14   Caribbean franchise" on the ground that it is vague and ambiguous to the extent it

15   purports to include any work, product, film, book, sales, licensing, or royalties

16   besides The Curse and Four Film Sequels.  As defined, the term would encompass

17   any "work, product, film, book, or similar" and any "sales, licensing, or royalties

18   related thereto" created by anyone after 2003, whether or not related in any way to

19   The Curse or WDP.  WDP further objects to this Request as overly broad, unduly

20   burdensome, not proportional to the needs of this case, and not relevant to any

21   party's claims or defenses to the extent it seeks information regarding "internal

22   accounting methods" for any works or products besides The Curse.  Plaintiffs have

23   not provided any facts to support any basis for claiming infringement for the Four

24   Film Sequels or damages contentions sufficient to show the relevance of this

25   Request.  In response to WDP counsel's January 25, 2022 email request for

26   information regarding the relevance of this and similar requests, Plaintiffs' counsel

27   stated vaguely that these requests "relate to damages for Disney's infringement"

28   and "relate[] to Disney's indirect profits."  WDP further objects to this Request as

overly broad, unduly burdensome, not proportional to the needs of this case, and not relevant to any party's claims or defenses to the extent it seeks information regarding "internal accounting methods" pre-dating November 14, 2014.

Subject to and without waiving the foregoing objections, WDP responds as follows: WDP agrees to meet and confer with Plaintiffs regarding the request for documents sufficient to show WDP's internal accounting methods for The Curse. On the basis of its objections, WDP will not produce documents in response to the request for documents sufficient to show its internal accounting methods for the "Pirates of the Caribbean franchise."

**REQUEST FOR PRODUCTION NO. 29:**

Documents relating to any internal assessment, valuation, or analysis apportioning the value or profits of the Pirates of the Caribbean film or Pirates of the Caribbean franchise.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

WDP incorporates its Prefatory Statement, General Objections, and Objections to Plaintiffs' Definitions and Instructions.  WDP further objects to this Request as seeking highly-sensitive confidential business information for tactical advantage, rather that evidentiary value.  WDP further objects that the phrase "apportioning the value or profits" is vague and ambiguous.  To the extent this Request asks WDP to produce documents sufficient to show its methodology for apportioning any profits to allegedly infringing or non-infringing aspects of The Curse or other works, then WDP objects that this Request calls for a legal conclusion, is premature, and the subject of expert testimony.  Polar Bear Prods, Inc. v. Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004).  WDP further objects to the term "Pirates of the Caribbean franchise" on the ground that it is vague and ambiguous to the extent it purports to include any work, product, film, book, sales, licensing, or royalties besides The Curse and Four Film Sequels.  As defined, the

1   term would encompass any "work, product, film, book, or similar" and any "sales,

2   licensing, or royalties related thereto" created by anyone after 2003, whether or not

3   related in any way to The Curse or WDP.  WDP further objects to this Request as

4   overly broad, unduly burdensome, not proportional to the needs of this case, and

5   not relevant to any party's claims or defenses to the extent it seeks information

6   regarding "apportioning the value or profits" of any works or products besides The

7   Curse.  Plaintiffs have not provided any facts to support any basis for claiming

8   infringement for the Four Film Sequels or damages contentions sufficient to show

9   the relevance of this Request.  In response to WDP counsel's January 25, 2022

10  email request for information regarding the relevance of this and similar requests,

11  Plaintiffs' counsel stated vaguely that these requests "relate to damages for

12  Disney's infringement" and "relate[] to Disney's indirect profits."  WDP further

13  objects to this Request as overly broad, unduly burdensome, not proportional to the

14  needs of this case, and not relevant to any party's claims or defenses to the extent it

15  seeks information regarding "apportioning the value or profits" pre-dating

16  November 14, 2014.

17        On the basis of its objections, WDP will not produce documents in response

18  to this Request.

19        **B.    Requested Relief**

20        Plaintiffs request an Order overruling Disney's objections to Interrogatories

21  11-15 and Requests for Production 23-29 and compelling Disney to produce

22  documents and provide information regarding pre-2014 financial information about

23  the original Pirates of the Caribbean film.

24        **C.    The Screenwriters' Contentions and Points and Authorities**

25        The Court should also overrule Disney's refusal to produce pre-2014

26  financial information about the original Pirates of the Caribbean film. As a

27  compromise, the Screenwriters offered to accept Disney's summary information—a

28  one page overview of revenue, costs, and profits—for the movie on an annual basis

1   from 2003-2014. Indeed, Disney produced this summary information from 2014

2   onward on an attorneys-eyes-only basis. This information is relevant to the

3   Screenwriters' damages calculation and analysis, and also to Disney's equitable

4   estoppel defense.

5          As explained above, the Screenwriters will seek actual damages based on a

6   hypothetical license and Disney's profits. The damages period for their claim starts

7   in 2014. *See Petrella v. Metro-Goldwyn-Mayer, Inc.,* 134 S. Ct. 1962 (2014)

8   (allowing damages three years before filing suit). But a damages period does not

9   necessarily define the scope of discoverable information. "Hollywood accounting"

10  is notoriously complex and subject to dispute. *See, e.g.*, Carol M. Kaplan, *Once*

11  *More Unto the Breach, Dear Friends: Broadway Dramatists, Hollywood*

12  *Producers, and the Challenge of Conflicting Copyright Norms*, 16 Vand. J. Ent. &

13  Tech. L. 297, 330 n.149 (2014) ("There is a raft of literature in the form of books,

14  articles, personal accounts, and scholarly overviews, of so-called 'Hollywood

15  accounting' practices by film studios and its effect on 'net profits' participations.").

16  For that reason, any competent expert analysis will require due diligence to verify

17  that the information from 2014 onward is accurate and comprehensive. *See*

18  *generally id.* (collecting examples where films earned over $500 million, "but

19  studio accounting still shows them as 'in the red'"). For instance, the Screenwriters

20  cannot evaluate how Disney has accounted for costs and expenses after 2014

21  without the ability to review and audit that same information before 2014.

22         Disney's financial success from the Pirates of the Caribbean film over 2003-

23  2014 also refutes its equitable estoppel defense. Disney must prove detrimental

24  reliance to prove its equitable estoppel defense. *See, e.g., Hadady Corp. v. Dean*

25  *Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1399 (C.D. Cal. 1990); *Petrella v. Metro-*

26  *Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1977 (2014) (requiring "consequent loss"

27  for equitable estoppel). Disney's financial success from the film is relevant

28  evidence on this element. Far from any sort of loss, the evidence will show that

1    Disney profited handsomely over the years that Disney allegedly relied on some

2    unidentified misrepresentation. Thus, the Court should compel Disney to produce

3    its pre-2014 financial information.

4          **D.    Defendant's Contentions And Points And Authorities**

5          Plaintiffs demand *ten years* of irrelevant financial data showing the revenues,

6    expenses, costs, and profits for *Curse* outside the limitations period.  Gesturing

7    vaguely at concerns about "Hollywood accounting," Plaintiffs claim they need this

8    information for purposes of confirming the accuracy of WDP's financial data

9    within the limitations period.  But Plaintiffs are unable to offer any case authority

10   or rationale to justify this extraordinary demand, and they do not point to any

11   accounting irregularities in the existing data that WDP has produced.

12          **1.    Plaintiffs' Demand For Financial Discovery Outside The**

13          **Applicable Limitations Period Is Presumptively Improper**

14         Plaintiffs concede, as they must, that their copyright claim is subject to a

15   three-year statute of limitations and that they therefore cannot recover damages

16   before November 2014.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663,

17   671, 672, 677 (2014); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir.

18   1994).  Nevertheless, they move to compel *all* revenue, expense, cost, and profit

19   information for *Curse* stemming all the way back to its release in 2003, claiming

20   that "a damages period does not necessarily define the scope of discoverable

21   information."

22         Plaintiffs cite no case law to support this argument.  This is not surprising as

23   the limitations period places a presumptive limit on the scope of discovery under

24   Rule 26(b)(1).  *See, e.g.*, *Oppenheimer Fund*, 437 U.S. at 351–52 ("it is proper to

25   deny discovery of matter that is relevant only to … events that occurred before an

26   applicable limitations period," as discovery "not 'reasonably calculated to lead to

27   the discovery of admissible evidence'" within the meaning of Rule 26(b)(1)); *see*

28   *also* 8 Richard L. Marcus, *Federal Practice and Procedure Civil* § 2008.5 (3d ed.

2021).

Barring discovery of financial information pre-dating the applicable limitations period is likewise consistent with the purposes served by the statute of limitations governing copyright claims. As the Supreme Court explained in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, "infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work." 572 U.S. at 671. "[W]hen a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind." *Id.* at 672. Allowing Plaintiffs to take wide-ranging discovery into revenue, costs, and profits for a period of over ten years *prior* to the limitations period here would undermine the Copyright Act's purpose of encouraging the timely filing of suits and insulating defendants from liability for conduct outside the limitations period. It was *Plaintiffs* who elected to postpone the filing of their complaint for nearly fifteen years, thereby forfeiting any claim to damages before 2014. Plaintiffs must live with the consequences of that decision.

### 2.   Plaintiffs' Vague "Hollywood Accounting" Theory Does Not Justify The Requested Discovery

Plaintiffs argue that they should be entitled to "summary information" relating to revenue, costs, and profits for *Curse* from 2003–2014 because "Hollywood accounting" is "notoriously complex" and Plaintiffs wish to "verify" the post-2014 financial information WDP has produced.

Unsurprisingly, Plaintiffs cite no case law to support this argument either. Nor is there any substance to it. Plaintiffs do not identify any accounting problem or inconsistency in the data that WDP has provided for the November 2014-to-present period. Nor do Plaintiffs explain how, as a practical matter,

producing summary-level data showing revenue, expenses, costs, and profit totals could enable an expert to "verify" the financial information that WDP produced. Plaintiffs' attention-grabbing invocation of "Hollywood accounting" is a transparent excuse to extract financial information of *Curse*'s pre-2014 success, and it has no relevance to Plaintiffs' limited damages theories in this case.

### 3.   WDP Is Not Relying On Any "Consequent Loss" Occurring Outside The Limitations Period, And So The Discovery Is Not Relevant To WDP's Equitable Estoppel Defense

WDP's equitable estoppel affirmative defense does not justify Plaintiffs' far-reaching discovery. WDP does not intend to rely for its defense on any evidence regarding its financial "consequent loss" that occurred outside the statute of limitations period. There is, therefore, no justification for Plaintiffs to obtain financial information for *Curse* outside the statute of limitations period.

### 4.   WDP's Proposed Resolution

During meet and confer, Plaintiffs offered to accept WDP's summary information—a one-page overview of revenue, expenses, costs, and profits—for *Curse* on an annual basis from 2003–2014. WDP did not agree to this improper proposal for the reasons stated above. Yee Decl. ¶ 10.

WDP believes this Court should deny Plaintiffs' motion in its entirety. If this Court is inclined to grant the motion, then WDP would provide, on an AEO basis, the summary-level financial information that Plaintiffs have agreed to accept on an annual basis for the years 2003–2014.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

JOINT STIPULATION FOR
DISCOVERY HEARING
- 59 -
2:18-CV-08074-CBM-ASX

1  Dated: March 24, 2022

2

3

4

5

6

7

8

9

10  DATED:  March 24, 2022

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By: */s/ Patrick M. Arenz*
**ROBINS KAPLAN LLP**
Patrick M. Arenz (pro hac vice)
Brandon J. Pakkebier (pro hac vice)

**LOWE & ASSOCIATES, PC**
Steven T. Lowe, Esq.
Aleksandra Hilvert, Esq.
*Attorneys for Plaintiffs*
*Arthur Lee Alfred, II, et al.*

MUNGER, TOLLES & OLSON LLP

By: _____
*Attorneys for Defendant Walt Disney Pictures*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

JOINT STIPULATION FOR
DISCOVERY HEARING

- 60 -

2:18-CV-08074-CBM-ASX