**LOWE & ASSOCIATES, PC**
Steven T. Lowe (SBN 122208)
steven@lowelaw.com
Aleksandra Hilvert (SBN 258463)
aleksandra@lowelaw.com
8383 Wilshire Blvd., Suite 1038
Beverly Hills, California 90211

**ROBINS KAPLAN LLP**
Patrick M. Arenz
(MN Bar No. 0386537) (pro hac vice)
PArenz@RobinsKaplan.com
Brandon J. Pakkebier
(MN Bar No. 0400691) (pro hac vice)
BPakkebier@RobinsKaplan.com
800 LaSalle Avenue
Suite 2800
Minneapolis, Minnesota 55402
Telephone: 612 349 8500
Facsimile: 612 339 4181

*Attorneys for Plaintiffs*
*Alfred Lee Alfred, II, et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR LEE ALFRED, II, et al., | Case No. 2:18-CV-08074-CBM-ASx |
| Plaintiffs, | **DECLARATION OF BRANDON J. PAKKEBIER** |
| v. | |
| WALT DISNEY PICTURES,, | Judge: Hon. Alka Sagar |
| Defendant. | *[referred by Hon. Consuelo B. Marshall for discovery]* |
| | Hearing Date: April 26, 2022 |
| | Time: 10:00 AM |
| | Location: Courtroom 540 |

1

2

## <u>DECLARATION OF BRANDON J. PAKKEBIER</u>

3    I, Brandon J. Pakkebier, declare:

4        1.      I am one of the attorneys representing Plaintiffs Arthur Lee Alfred II

5  and Ezequiel Martinez, Jr. in this action. I have been admitted to practice before

6  this Court *pro hac vice* for this matter. I am also admitted to practice before all

7  courts in the State of Delaware and the State of Minnesota, as well as before the

8  United States District Court for the District of Delaware and for the District of

9  Minnesota. The facts stated herein are personally known to me and I could and

10  would testify competently thereto if called upon as a witness under oath.

11        2.      Attached as **Exhibit 1** is a true and correct copy of correspondence

12  from Plaintiffs to Defendant Walt Disney Pictures ("Disney") sent on February 25,

13  2022, requesting a meet and confer pursuant to Local Rule 37-1.

14        3.      Attached as **Exhibit 2** is a true and correct copy of correspondence

15  Disney sent to Plaintiffs in reply on February 28, 2022.

16        4.      Attached as **Exhibit 3** is a true and correct copy of the scheduling

17  order governing this action, as required by Local Rule 37-2.1

18        5.      Exhibit 4 is intentionally omitted.

19        6.      Attached as **Exhibit 5** is a true and correct copy of a screenshot of the

20  dictionary definition of "sequel" in the online *Oxford Learner's Dictionary*.

21        7.      Attached as **Exhibit 6** is a true and correct copy of an excerpted

22  transcript of the oral argument before the Hon. Consuelo B. Marshall on October

23  19, 2021 pertaining to Disney's summary judgment motion.

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PAKKEBIER DECL.

- 2 -

2:18-CV-08074-CBM-ASX

1    I declare under the penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct.

3    Executed on the 15th of March 2022 in Minneapolis, Minnesota.

4

5                                                      */s/ Brandon J. Pakkebier*

6                                                      Brandon J. Pakkebier

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7J：；4；F #



800 LASALLE AVENUE          612 349 8500 TEL
SUITE 2800                  612 339 4181 FAX
MINNEAPOLIS, MN 55402        ROBINSKAPLAN.COM


PATRICK M. ARENZ
612 349 8591 TEL
PARENZ@ROBINSKAPLAN.COM

February 25, 2022                    *VIA E-MAIL*

Juliana Yee                          Jordan Segall
Munger, Tolles & Olson LLP           Munger, Tolles & Olson LLP
560 Mission Street                   350 S. Grand Ave
27th Floor                           50th Floor
San Francisco, CA 94105              Los Angeles, CA 90071

     Re: *Alfred v. Disney* Local Rule 37-1 Meet and Confer Request

Dear Jordan and Juliana:

We write to follow up on our first meet-and-confer call last week. As explained then, our goal is to resolve discovery disputes without the Court's involvement. Hopefully this letter under Local Rule 37-1, and another meet-and-confer, will resolve the disputes below.

As a general matter, we underscore that established law disfavors relevancy objections in discovery. "Relevance for purposes of discovery is defined very broadly." *Garneau v. Seattle*, 147 F.3d 802, 812 (9th Cir. 1998). In fact, as the party opposing discovery, Disney bears the burden to demonstrate why the discovery is not relevant. *See V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019) (collecting cases for statement that "[t]he party seeking to avoid discovery bears the burden of showing the disputed discovery is not relevant."). Especially for the financial information in dispute, we stress that Disney should produce this information, and then allow for substantive objections to any damages theories after the close of discovery, like through *Daubert* challenges or motions in limine. This process will simultaneously eliminate an unnecessary motion to compel with the Court while also ensuring that the parties' disputes are resolved on the merits with a complete record.

With that as a guiding principle for background, we will now identify specific disputes that we hope to reach agreement on.

**Financial Information that Pre-Dates 2014**

The Screenwriters are entitled to discover Disney's financial information that pre-dates 2014. The copyright statute allows the Screenwriters to seek actual damages. 17 U.S.C. §§ 504(a)(1), 504(b). Actual damages may stem from lost sales, lost licensing revenue, or any other provable financial loss directly attributable to the infringement.

February 25, 2022
Page 2

One form of actual damages is a hypothetical license. *See, e.g., Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014). A hypothetical license is "the value of the infringing use to the infringer to determine actual damages." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708-09 (9th Cir. 2004). A hypothetical license is also the "amount a willing buyer would have been reasonably required to pay a willing seller *at the time of the infringement* for the actual use." *Wall Data Inc. v. L.A. Cty. Sheriff's Dept.*, 447 F.3d 769, 786 (9th Cir. 2006) (emphasis added). Thus, financial information that pre-dates the damages period in 2014 is necessarily relevant, as it should reflect what was actually paid to the screenwriters and inform a profit analysis (i.e., requiring revenue, expenses, etc.).

The copyright statute also allows the Screenwriters to pursue and recover Disney's profits. 17 U.S.C. § 504(b). Disney then bears the burden to prove its "deductible expenses." At this stage of fact discovery, it remains unclear how Disney will seek to meet its burden in this regard, and Disney's Ex. A to its interrogatory responses indicate that the expenses for the first Pirates movie were incurred pre-2014. To that end, we need to ensure that the Screenwriters' experts have access to, and consider, all relevant information to complete their analysis to be able to respond comprehensively to Disney's opinions on the same.

For at least these reasons, we ask Disney to withdraw its objections that Interrogatory Nos. 11-15 and RFP Nos. 23-29 seek irrelevant information, and produce responsive information that pre-dates 2014. Should we not reach agreement on this issue, the Screenwriters will seek a discovery order from the Court ordering supplemental responses and productions responsive to these requests.

**Financial Information Concerning the Sequel Movies and Merchandise**

The Screenwriters' discovery into financial information over the sequel movies and merchandise is likewise relevant. To start, this information is directly relevant to a hypothetical license, as we expect expert discovery to show that a hypothetical license would include downstream rights to derivative works in the form of franchise profits, like sequels and merchandise. And while we expect Disney will seek to rebut this expert analysis, the point remains the same now—the experts should have the necessary foundational information to offer complete opinions and analysis.

Indeed, the Screenwriters may seek "indirect profits" as part of the damages due at trial. *See, e.g., Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004). To prove indirect profits at trial, the Screenwriters need only show a "causal nexus" between (1) Disney's profits for the sequels and merchandise and (2) the original Pirates of the Caribbean film. *Id.* at 712. By definition, a sequel "continues the story or develops the theme of an earlier one." *Sequel*, Oxford Languages. And Disney builds on many of the same elements that Disney copied from the Pirates of the Caribbean Screenplay in the sequel and merchandise. Even so, any dispute over a causal nexus is not for discovery, but again one for the merits. And the Copyright

February 25, 2022
Page 3

statute allows copyright owners the right to derivative works (*see, e.g.,* 17 U.S. Code § 106), which the sequels and merchandise clearly are.

Therefore, we ask that Disney withdraw its relevance objection to Interrogatory Nos. 12 & 14 and RFP Nos. 26-29, and produce financial information for the sequel movies and merchandise. Should Disney not be amenable to this request, the Screenwriters will seek a discovery order from the Court ordering supplemental responses and productions regarding Disney's financial information for the sequels and merchandise.

**Disney Must Identify Specific Documents in its Interrogatory Responses**

Disney's responses to interrogatories that ask for an identification by bates numbers is improper. To start, the plain language asks for this specific identification, which renders Disney's vague reference to its forthcoming document production to be non-responsive on their face. Nor does Federal Rule of Civil Procedure 33(d) permit Disney's vague response either. Under Rule 33(d), Disney must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d). And Rule 33(d) "is not satisfied by the 'wholesale dumping of documents'". *Yohn v. Cal. Teachers Ass'n*, 2017 WL 11635459, at *1 (C.D. Cal. Oct. 3, 2017). Rather, Disney would need to "identify which *specific* documents, by Bates number, are responsive to which specific interrogatories." *Palmdale 3D, LLC v. Calamos*, 2015 WL 12832140, at *1 (C.D. Cal. June 24, 2015) (failing to "identify with specificity any relevant documents" justifies order requiring identification of documents by Bates number). Thus, we ask Disney to amend its interrogatory responses for Interrogatory Nos. 2, 5, & 7. Should Disney decline to do so, the Screenwriters will seek a discovery order from the court ordering Disney's improper objections stricken and ordering Disney to supplement its responses to identify its documents with specificity.

**Remaining Issues**

Finally, we understand Disney is still considering additional issues following our last meet-and-confer, including our discussion about profit participation agreements, documents about the response and praise of the Pirates movie within one year of its release, and documents about changes to the Ride. We look forward to an update and resolution on these issues as well.

* * *

Jordan and Juliana, we ask that you consider these issues with Disney and work to resolve these issues without motion practice. We should be able to work through these issues, so that the Screenwriters have access to the information reasonably necessary to present their case on the merits—while allowing Disney to rebut it in the same manner. Please let me know when you are available for a meet-and-confer call under Rule 37-1 during the following date and times:

February 25, 2022
Page 4


- February 28: 11 am – 4 pm PT
- March 1: 8 am – 4 pm PT
- March 2: 11 am – 4 pm PT
- March 3: 8 am – 11 am PT
- March 4: 8 am – 3 pm PT

Very truly yours,

/s/ Patrick M. Arenz

Patrick M. Arenz

7J：；4；F S

MUNGER, TOLLES & OLSON LLP

350 SOUTH GRAND AVENUE 50TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

February 28, 2022

Writer's Direct Contact
(213) 683-9208
(213) 683-5108 FAX
Jordan.Segall@mto.com

**VIA E-MAIL**

Patrick M. Arenz
Brandon Pakkebier
Robins Kaplan LLP
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402

Re:     *Alfred et al. v. Walt Disney Pictures*, C.D. Cal. Case No. 2:18-cv-08074-CBM-AS
        WDP's Responses to Plaintiffs' First Sets of RFPs and Interrogatories

Dear Patrick:

This letter responds to your February 22 email ("Email") and February 25 letter ("Letter"), both of which follow our February 16 meet-and-confer call ("Call"). This letter's section headings generally correspond to yours in the Email; if a section below also responds to a point in the Letter, the heading notes that as well.

**1.      Depositions**

Thank you for serving deposition notices. Since your Email, we have offered, and you have accepted, March 22 for Mr. Bruckheimer's deposition. Please serve a deposition notice as soon as possible.

**2.      Financial Information (Letter: "Financial Information that Pre-Dates 2014" and "Financial Information Concerning the Sequel Movies and Merchandise")**

*The irrelevance of Plaintiffs' requests, combined with the burden they would impose and the highly sensitive information they seek, justify WDP's valid objections.* Your Letter begins by "underscor[ing] that established law disfavors relevancy objections in discovery." Letter at 1. Based on that broad proposition, you "stress that Disney should produce [financial information], and then allow for substantive objections to any damages theories after the close of discovery ...." *Id.* But neither of the cases you cite in that paragraph has anything to do with copyright law. That matters, because although the Copyright Act may permit recovery of indirect as well as direct profits, the Ninth Circuit has expressed particular concern about indirect-damages theories that are speculative, remote, and unconnected to the claimed infringement. The Court has explained that a "copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement." *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004). "[A] plaintiff seeking to recover indirect profits must 'formulate the initial evidence of gross revenue duly apportioned to relate to the infringement.'" *Id.* The court may preclude "recovery of a defendant's profits if they are only remotely or speculatively

MUNGER, TOLLES & OLSON LLP

Patrick M. Arenz
February 28, 2022
Page 2

attributable to the infringement." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985); *see Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002).

Applying this caselaw, Magistrate Judge Sagar has rejected a copyright plaintiff's motion to compel indirect profits-related discovery as "not relevant or proportional to the needs of this case." *Salinas v. Proctor & Gamble Co.*, 2020 WL 8455137, at *2–3 (C.D. Cal. Oct. 9, 2020), *aff'd by* 2020 WL 8455187, *2 (C.D. Cal. Dec. 4, 2020). Here, as in *Salinas*, Plaintiffs seek expansive discovery into highly sensitive financial information dating back a decade before the statute of limitations period applicable to their claims, and with respect to films that they admit do not infringe their Screenplay. WDP's objections to the relevance and proportionality of these requests are valid, as this Court has already concluded with respect to this very same issue in *Salinas* (and for the reasons discussed in further detail below). Indeed, relevance and proportionality serve a particularly important role in the context of this indirect profits discovery to stave of "fishing expedition[s]" into speculative and unsupported damages theories. *Id.* at *2.

**Pre-2014 financial information.** Plaintiffs filed their complaint on November 14, 2017. Therefore, Plaintiffs are barred from recovering any damages for the period prior to November 14, 2014. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671, 672, 677 (2014). During the Call, we asked for any authority justifying your continued insistence on discovering financial information about *Curse of the Black Pearl* ("*Curse*") outside the limitations period. Neither your Email nor your Letter provides any support for Plaintiffs' position.

The Letter asserts pre-2014 financial information could be relevant to a "hypothetical license" theory of damages. Letter at 2. According to the case law you cite, any lost-license calculation must be based on the fair market value of a copyright license *at the time of the original infringement*, which here (according to Plaintiffs' allegations) occurred in 2000. *Polar Bear*, 384 F.3d at 709; *Wall Data Inc. v. L.A. Cty. Sheriff's Dept.*, 447 F.3d 769, 786 (9th Cir. 2006); *see also Mackie*, 296 F.3d at 917 ("To determine the work's 'market value' at the time of the infringement, we have endorsed a hypothetical approach: 'what a willing buyer would have been reasonably required to pay to a willing seller for [the owner's] work.'").

Plaintiffs want detailed information about actual revenues, expenses, and profits earned well *after* the alleged infringement, and continuing for more than a decade through November 14, 2014. The financial results of *Curse* could not have been known to the parties at the time of the hypothetical-license negotiation your relevance theory imagines. For that reason, courts in this District have rejected the applicability of an *ex post* "book of wisdom" approach— sometimes used in calculating *patent* damages—to determine the amount of a hypothetical *copyright* license. *See, e.g.*, *Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 836418, at *4 (C.D. Cal. Mar. 4, 2011) (calculating a hypothetical copyright license is "an *ex ante* determination that considers the objective market value of the copyrighted work"). *Ex post* financial data is especially irrelevant because, at the time of the alleged infringement in 2000, Plaintiffs were novice screenwriters who had optioned a single screenplay to date and who were unable to sell

MUNGER, TOLLES & OLSON LLP

Patrick M. Arenz
February 28, 2022
Page 3

their *Pirates* Screenplay to any studio to whom they pitched it.  What they might have been paid had they optioned their Screenplay to WDP in 2000 is readily ascertainable without regard to how the film subsequently performed.

For these reasons, the information Plaintiffs seek is not relevant to support a hypothetical license theory.

Second, you assert that pre-2014 financial information is relevant to the calculation of WDP's "deductible expenses," purportedly because "Disney's Ex. A to its interrogatory responses indicate[s] that the expenses for the first Pirates movie were incurred pre-2014."  Ltr. at 2.  Exhibit A indicates no such thing, but instead summarizes the revenues, expenses, and net income to WDP from exploitation of *Curse* within the limitations period.  Accordingly, we will not withdraw our objections to Interrogatory Nos. 11–15 and RFP Nos. 23–29 with respect to financial information outside the limitations period.

One other note under this heading:  the Email (but not the Letter) asks "when Disney will produce documents underlying or supporting Disney's Ex. A to the Interrogatory responses."  We do not know where this request is coming from or the basis for it.  You did not raise it on the Call, and you did not serve a discovery request seeking such documents.  The information on Exhibit A was gathered and compiled specifically to respond to your Interrogatories.  To the extent Plaintiffs have any issue with respect to the information provided on Exhibit A, please raise it through a discovery request or, if you believe there is an existing discovery request that applies to the issue, through the meet-and-confer process.  For the reasons just demonstrated, your single-sentence question in the Email does not discharge Plaintiffs' meet-and-confer obligations.

***Financial information for sequels and merchandise.***  When we have previously asked you for basic facts and authority that would support the relevance of financial information regarding *Pirates of the Caribbean* sequels or merchandise.  You have said the information is relevant because the sequels are "derivative works," and that information regarding their financial performance "relates to Disney's indirect profits."  (1/27/2022 Patrick Arenz email regarding L.R. 7-3 meet and confer.)  Neither theory justifies the document requests and interrogatories regarding these matters.

First, your claim that the sequels are derivative works of *Curse* is a non-sequitur.  For Plaintiffs to have any claim that any Sequel infringed the right to create derivative works, Plaintiffs would have to show that one or more Sequels infringed *the Screenplay*.  Plaintiffs have never done this, and you have represented Plaintiffs do not intend to do this.  We address Plaintiffs' meritless objections to our requests for verified responses confirming this in our meet-and-confer letter addressed to WDP's offensive discovery.  But, suffice to say, the "derivative works" theory does not support the discoverability of sequel profits and other financial information because you have disclaimed any intent to pursue a claim of infringement with respect to those works.

MUNGER, TOLLES & OLSON LLP

Patrick M. Arenz
February 28, 2022
Page 4

With respect to indirect profits, Plaintiffs bear the burden to proffer non-speculative evidence supporting a causal relationship between the infringement and profits generated indirectly from the infringement. *Mackie*, 296 F.3d at 915-16; *Polar Bear*, 384 F.3d at 710. We have repeatedly asked Plaintiffs to articulate any facts or legal theory supporting their claim for indirect profits relating to the sequels or merchandise. Your Letter simply cites a dictionary definition of "sequel," and asserts, without any support, that the sequels "build[] on many of the same elements that Disney copies from the Pirates of the Caribbean Screenplay in the sequel and merchandise." But which ones? What elements that were allegedly appropriated from the Screenplay appear in the sequels, much less in merchandise? Your Letter conspicuously avoids answering this question, even though we have put it to you numerous times. We understand that Plaintiffs have no answer to these questions, and that the requests therefore have no foundation.

In *Salinas*, Magistrate Judge Sagar rejected a plaintiff's motion to compel revenue information bearing on indirect profits where, like here, the plaintiff failed to proffer "any non-speculative evidence supporting his requests for indirect profits information." *Id.* at *3. Judge Klausner affirmed Judge Sagar's ruling, stating that "Plaintiff must first offer reasons why he would be entitled to indirect profits beyond mere speculation. To require otherwise would permit Plaintiff to engage in a fishing expedition of Defendant's books." *Salinas*, 2020 WL 8455187, at *2.

For these reasons, we decline to withdraw our objections to Interrogatory Nos. 12 and 14 and RFP Nos. 26–29 with respect to financial information about *Pirates of the Caribbean* merchandise and *Curse* sequels.

**Profit participation "details."** RFP 17 seeks documents "sufficient to show all persons who received profit participation for the Pirates of the Caribbean film." We continue to believe this request seeks irrelevant information. Nevertheless, we agreed to confer with our client regarding this request and will get back to you with WDP's final position regarding this RFP.

## 3. Document Production Timing

At your request, we made an initial expedited document production on February 18. We made an additional, rolling production on February 25, bringing WDP's total pages produced to-date to over 30,000. We plan to make another rolling production this week. To facilitate orderly depositions, we are endeavoring to prioritize the collection, review, and production of documents relating to Brigham Taylor, Nina Jacobson, Stuart Beattie, Ted Elliott, and Jerry Bruckheimer.

That said, we wish to make clear that we have not made any specific commitments regarding when our document production will be substantially complete. We have moved diligently to locate and collect responsive documents, but our search is ongoing and has been made more challenging by the significant passage of time since the relevant events took place. In the event we locate substantial quantities of new documents requiring review, our production timeline may be adjusted.

MUNGER, TOLLES & OLSON LLP

Patrick M. Arenz
February 28, 2022
Page 5

**4.      Documents About Disney Ride**

RFPs 18–19 request documents sufficient to show "each material change to the Pirates of the Caribbean ride" during certain time periods.  As phrased, your request requires us to make certain judgment calls regarding what changes are material.  During the Call, you clarified that you were not interested in small changes to the ride, such as giving a skeleton a fresh coat of paint.  This kind of guidance and explanation is helpful to assessing the scope of your request.

We do not currently anticipate any dispute over the production of documents relating to the ride.  As we explained on the Call, finding documents showing changes to the ride has proven difficult because the ride goes back 60 years and there does not appear to be a single document that comprehensively lists changes to the ride over time, although we have located and already produced some documents responsive to your requests.

**5.      Relevant Time Frame**

We agree to produce (1) documents sufficient to show the two *Pirates of the Caribbean* concepts Disney considered in the 1990s.  As for (2) ("praise of the movie within one year of its release"), we are investigating whether Disney maintains a press file or something similar that may have responsive documents and, if it does, whether it would be unduly burdensome to collect and review such documents.

Point (3) of your Email states that Plaintiffs will agree to a "presumptive" 1999-2003 timeframe for WDP's responses provided that "the presumptive relevant time frame is mutual for both sides."  This mischaracterizes our call.  We did not discuss the scope of Plaintiffs' productions at all on the call.  We do *not* agree that 1999-2003 is a presumptively appropriate time period for Plaintiffs' responses and production of documents.  The parties are not similarly situated with respect to the relevant time frame.  Plaintiffs waited over 14 years following the release of *Curse* to file suit.  In the intervening years, Plaintiffs likely engaged in numerous communications—including non-privileged communications—regarding *Curse*, their Screenplay, anticipated litigation, and other topics relevant to their claims or WDP's defenses.  For example, if in 2004, a year after the release of *Curse*, Plaintiffs exchanged emails between themselves or with others discussing elements of *Curse* and Plaintiffs' reactions to that movie, that email would be highly relevant and subject to production.  We will address other examples in our meet-and-confer letter regarding the deficiencies in Plaintiffs' discovery responses.  The bottom line here is that, with the exception of financial information relevant to damages (which is limited to November 14, 2014 to the present), the appropriate timeframe for WDP's responses and documents is 1999–2003, and we will not agree to a corresponding restriction on the scope of Plaintiffs' responses.

MUNGER, TOLLES & OLSON LLP

Patrick M. Arenz
February 28, 2022
Page 6

## 6.    Specific Requests for Production

*RFP 8*.  Based on our investigation thus far, we believe that the three executives listed in response to RFP 8 were the key executives on the *Curse* project and would have received any "executive-level" memoranda relating to *Curse*.  We do not currently have any reason to believe there were executive-level memoranda sent to others besides these three, but will supplement this Interrogatory if subsequent investigation reveals other such executives.

## 7.    Interrogatories (2/25 Letter: "Disney Must Identify Specific Documents in its Interrogatory Responses")

We disagree with the Email's characterization of the meet-and-confer Call and of WDP's interrogatory responses as having identified "broad categories of individuals, as well as prior works."  During the Call, we specifically discussed WDP's response to Interrogatory 1, which asked WDP to identify "each individual at or affiliated with Disney who had access to or reviewed Plaintiffs' Pirates of the Caribbean screenplay before the release of the Pirates of the Caribbean film."  In addition to listing Brigham Taylor and his assistant in the response, we also listed "WDP's Development department" because, as we explained during the Call, that department prepared an unsigned coverage of the Plaintiffs' Screenplay.  At your request, we produced the coverage document to you on February 18, as part of an expedited production.  *See* WDP0000001.  The coverage shows it was prepared by "WDP Development" but does not indicate the name of the author.  Based on our investigation, WDP does not appear to maintain records that would allow for the identification of the author of that coverage.

We also disagree with your Email characterization that we said WDP "does not know … what the specific prior works were for the respective interrogatories."  In response to Interrogatory 4, which sought information regarding "any idea for a potential film relating to the Pirates of the Caribbean ride before the release of the Pirates of the Caribbean film," WDP identified several specific projects it had considered in the 1990s.  With respect to Interrogatories 8 and 10, which request identification of "each pirate film, book, or work that Disney was aware of before 2000 that featured both humorous and supernatural elements," and "a list of films, books, or works that Disney was aware of in 2000 that incorporated" elements of a conventional or standard pirate story, we explained that WDP does not and cannot subjectively "know" every work that its writers were "aware of" or considered when developing *Curse*.  It is impossible to identify everything that a company with huge numbers of employees—as well as many individuals involved in the creation of *Curse* who were not employees—"knew" or "was aware of" regarding these matters.  We also explained that such information is not relevant because the generic elements analysis is objective; it does not matter whether WDP was subjectively aware of particular pirate films or stories.  We suggested that Plaintiffs could obtain the requested information through depositions of the writers and through review of the materials in WDP's productions.

MUNGER, TOLLES & OLSON LLP

Patrick M. Arenz
February 28, 2022
Page 7

      Regarding Rule 33(d), we believe this issue is premature because WDP's document productions are not yet complete.  Once our productions are complete, we will comply with Rule 33(d) to the extent it imposes specific obligations on WDP, though we continue to disagree with your position that the Rule requires WDP to identify particular documents by Bates number.  Once the productions are complete, we are happy to further meet and confer with Plaintiffs regarding this issue if you feel there is some additional information you need that would help ameliorate the burden of conducting your own review of the produced documents.

* * *

      Thank you for your attention to these matters.

Very truly yours,

*/s/ Jordan D. Segall*

Jordan D. Segall

7J：；4;F ％

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 18-8074-CBM(ASx) | Date | MAY 25, 2021 |
|---|---|---|---|
| Title | Arthur Lee Alfred et al v. Walt Disney Company, The et al., | | |

| Present: The Honorable | CONSUELO B. MARSHALL, UNITED STATES DISTRICT JUDGE |
|---|---|

| Yolanda Skipper | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant |
|---|---|
| Aleksandra M. Hilvert | Robin S. Gray |
| Steven T. Lowe | Jordan Dentler Segall |

**Proceedings:**   TELEPHONIC HEARING RE SCHEDULING CONFERENCE AND STATUS CONFERENCE RE MANDATE APPEAL NO. 55669

The case is called and counsel state their appearance. The Court and counsel confer. Hearings held.

Following discussions with the parties, the Court will have the parties meet and confer re the 2nd phase. Court sets the following dates as stated on the record:

Motion for summary judgment hearing will be set for October 19, 2021 at 10:00 a.m.
ADR-1 Form shall be filed on or before June 1, 2021.

Expert discovery shall be completed on or before June 15, 2022.
Fact discovery shall be completed on or before June 27, 2022.
Rebuttal expert disclosure completion due no later than July 13, 2022.
Expert discovery shall be completed on or before August 15, 2022.

Settlement conference shall be held on or before September 13, 2022.

Motions shall be filed by no later than September 13, 2022 and set for oral argument on or before October 25, 2022 at 10:00 a.m..

Pre Trial Conference is set on January 9, 2023 at 2:30 p.m.

Jury Trial is set on February 7, 2023 at 10:00 a.m.(est. 4-5 days).

:   **35**

Initials of Preparer   YS

# EXHIBIT 5

Oxford **Learner's Dictionaries**

Dictionaries ∨    Grammar ∨    Word Lists ∨    Resources ∨

English ∨    Search Oxford Advanced Learner's Dictionary

Definition of **sequel noun** from the Oxford Advanced Learner's Dictionary

# sequel noun

🔊 /ˈsiːkwəl/

🔊 /ˈsiːkwəl/

1  ⭐ **sequel (to something)** a book, film, play, etc. that continues the story of an earlier one

   • *a sequel to the hit movie 'Madagascar'*

   COMPARE **prequel**

   ┃  + Extra Examples

   TOPICS **Literature and writing** `C1` , **Film and theatre** `C1`

   ┃  + Oxford Collocations Dictionary

   **Questions about grammar and vocabulary?**                    ⧉

   Find the answers with ***Practical English Usage*** online, your indispensable guide to problems in English.

2  ⭐ [usually singular] **sequel (to something)** something that happens after an earlier event or as a result of an earlier event

## Nearby words

sepulchral *adjective*

sepulchre *noun*

sequel *noun*

sequence *noun*

sequence *verb*

---

14 March 2022                    🔊

**leaflet**

*noun*

🔊    🔊

From the word list

**OXFORD 5000**

`B2`

*Oxford Learner's Dictionaries Word of the Day*

- *There was an interesting sequel to these events later in the year.*

**+** Extra Examples

**+** Word Origin

See **sequel** in the Oxford Advanced American Dictionary

Check pronunciation: sequel

   

**Oxford Learner's Dictionaries**

Browse Dictionaries & Grammar

Search Box

System Requirements

Contact Us

**More from us**

Oxford Learner's Dictionaries API

English Language Teaching

Oxford Teacher's Club

Oxford Learner's Bookshelf

Oxford Languages

**Who we are**

About Us

Our history

Annual report

The way we work

Working for OUP

Oxford University Press is a department of the University of Oxford. It furthers the University's objective of excellence in research, scholarship, and education by publishing worldwide

**OXFORD**
UNIVERSITY PRESS

Privacy Policy   Cookie Policy   **Cookies Settings**   Terms & Conditions   Accessibility   Legal Notice   English (US)   © 2022 Oxford University Press

# EXHIBIT 6

1           UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE CONSUELO B. MARSHALL, U.S. DISTRICT JUDGE

4

5   ARTHUR LEE ALFRED, et al., )
                               )
6       PLAINTIFFS,            )    CASE NO.
                               )
7            vs.               )    CV 18-8074-CBM
                               )
8   THE WALT DISNEY COMPANY,   )
    et al.,                    )
9                              )    PAGES 1 TO 46
                               )
        DEFENDANTS.            )
10  _____)

11

12

13
                     REPORTER'S TRANSCRIPT OF
14               MOTION FOR SUMMARY JUDGMENT
                 TUESDAY, OCTOBER 19, 2021
15                     10:41 A.M.
                 LOS ANGELES, CALIFORNIA
16

17

18

19

20

21

22
    _____
23
             MIRANDA ALGORRI, CSR 12743, RPR, CRR
24            FEDERAL OFFICIAL COURT REPORTER
              350 WEST 1ST STREET, SUITE 4455
25            LOS ANGELES, CALIFORNIA 90012
                 MIRANDAALGORRI@GMAIL.COM

1           **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFFS:**

4         ROBINS KAPLAN, LLP
          BY:  PATRICK M. ARENZ
5         800 La Salle Avenue
          Suite 2800
6         Minneapolis, Minnesota 55105

7

          LOWE & ASSOCIATES, PC
8         BY:  STEVEN T. LOWE
          BY:  ALEKSANDRA M. HILVERT
9         8383 Wilshire Boulevard
          Suite 1038
10        Beverly Hills, California 90211

11

12   **FOR THE DEFENDANT:**

13        MUNGER TOLLES & OLSON, LLP
          BY:  JORDAN DENTLER SEGALL
14        BY:  ROBIN S. GRAY
          355 South Grand Avenue
15        35th Floor
          Los Angeles, California 90071

16

17

18

19

20

21

22

23

24

25

**LOS ANGELES, CALIFORNIA; TUESDAY, OCTOBER 19, 2021**

**10:41 A.M.**

**---**

THE CLERK:  Item No. 4, civil case 18-8074, Arthur Lee Alfred, et al., versus Walt Disney Company, et al.

Counsel, state your appearances at the lectern.

MR. ARENZ:  Good morning, Your Honor.

Patrick Arenz of Robins Kaplan, and with me is my co-counsel Steven Lowe and Aleksandra Hilvert of Lowe & Associates.  We are here representing the plaintiffs, the screenwriters who are with us today, Mr. Alfred and Mr. Martinez.  And we look forward to addressing this issue with the Court.

THE COURT:  Good morning.

MR. SEGALL:  Good morning, Your Honor.

Jordan Segall and Robin Gray for the defendant, Walt Disney Pictures.

THE COURT:  Good morning.  Today seems to be the remand day from mandates from the Circuit.  So this too is a case that's been returned to the Court.  The parties know the history.  So I don't need to go through that again.  But the matter before the Court this morning is defendant's Motion for Summary Judgment.

The parties have each presented evidence from

1    of creativity.

2              And here how you know that there is a pattern of

3    similarities and it can't be said they are just random is

4    because they start to finish.  The prologue, the 9th Circuit

11:03AM    5    identified was an important similarity.  To the end, the final

6    battle scene, an important similarity.  The three most

7    important characters are similar.  And, you know, again, page

8    17 highlights, you know, just sort of that shorthand.  We, of

9    course, detailed it.  That's what trials are for is to detail

11:04AM    10    it on the record.

11              But *Shaw* and *Metcalf* underscore that this is a

12    triable issue.  And, you know, unless the Court has any

13    questions, I'm happy to sit down for a moment.

14              THE COURT:  Well, I do have one question, and I

11:04AM    15    think you touched upon it.  I just want to be clear.

16              Is plaintiffs' copyright infringement claim based

17    only on defendants' first *Pirates of the Caribbean* film or all

18    of the defendants' *Pirates of the Caribbean* films?

19              MR. ARENZ:  Sure.

11:04AM    20              THE COURT:  And as we look at the Summary

21    Judgment Motion, so your answer may be different as to the

22    scope of that cause of action versus the scope of the Summary

23    Judgment Motion based upon the stipulation that the parties

24    entered into.

11:05AM    25              MR. ARENZ:  Right.  I think there is some nuance

        1    to that, and I think it is something that would be taken up

        2    kind of in phase two.

        3                 I think to answer your question most directly,

        4    Your Honor, for purposes of the motion, the stipulation is

11:05AM  5    focused on the screenplay in the first film.  What I want to be

        6    clear about, though, is that the follow-on films are derivative

        7    works.  So by statute we would have a claim for infringement

        8    and claim for damages for those as well.  That is not in front

        9    of the Court for this motion.

11:05AM 10                 THE COURT:  All right.  Thank you.

       11                 MR. ARENZ:  Thank you.

       12                 THE COURT:  So I will hear from the defense now.

       13    So you may respond to any of the comments made by plaintiff.

       14    Plaintiff did talk about the stipulation and whether this --

11:05AM 15    your motion was within the scope of that or outside the scope

       16    of that.  The Court raised that last question, and plaintiff

       17    has responded to that.  I would like to hear what your thoughts

       18    are.

       19                 MR. SEGALL:  Thank you, Your Honor.  Again,

11:06AM 20    Jordan Segall for the defendant Walt Disney Pictures.

       21                 I'm happy to start with Your Honor's last

       22    question there.  I think there are actually two distinct

       23    questions, one related to the stipulation and then one related

       24    to which works are implicated by the claim for copyright

11:06AM 25    infringement in this case.

1      THE COURT:  And then maybe the third, if there

2  are two, the scope of the Summary Judgment Motion.  So the

3  scope of the claim itself may be different from the scope of

4  this motion based upon the agreement of the parties as to what

11:06AM   5  this motion would actually address.

6      MR. SEGALL:  Yes, Your Honor.  So let me just

7  address those in turn.

8      The first question is what movies are actually

9  accused to be infringing works here?  And in the original

11:06AM   10  complaint, the plaintiffs made allegations that there were

11  substantial similarities between the screenplay and, not just

12  the first movie, *Curse of the Black Pearl* but all of the movies

13  in the franchise.

14      On appeal the plaintiffs largely abandoned those

11:07AM   15  arguments and argued fairly narrowly to the 9th Circuit that

16  the only substantial similarities were between the screenplay

17  and the first movie, *The Curse of the Black Pearl*.

18      They then amended their complaint upon remand,

19  and in the amended complaint, again, they allege only that

11:07AM   20  there is substantial similarity between the first movie and the

21  screenplay.

22      Now, they do have allegations that the subsequent

23  sequels are derivative works and so there might be liability.

24  But it all flows from the liability as to the first movie *Curse*

11:07AM   25  *of the Black Pearl*.

1        So I think the only question for Your Honor's

2   cognizance is really the question of is there substantial

3   similarity between the screenplay and first film in the

4   franchise which is *The Curse of the Black Pearl.*

11:08AM   5        Moving to the second question about the effect of

6   the stipulation, I don't actually think the stipulation affects

7   that issue at all.  All the stipulation said was that the

8   parties recognized that, you know, after remand, after

9   Your Honor had granted a 12(b)(6) motion on the issue of

11:08AM  10   substantial similarity, the 9th Circuit said we think this

11   ruling is premature.  We think there needs to be -- the expert

12   testimony might inform this ruling.  So we are to remand to

13   consider it on summary judgment.

14        So at that point the parties both recognized that

11:08AM  15   substantial similarity between the screenplay and the first

16   film, *Curse of the Black Pearl,* which was the issue that you

17   resolved at the pleading stage two years ago, that that issue

18   would be squarely presented as something of a threshold issue.

19        So just for efficiency's sake to avoid

11:08AM  20   substantial discovery on other issues, things like access,

21   independent creation, damages, you know, recognizing that there

22   is a threshold issue of substantial similarity between the

23   screenplay and the first film, the parties agreed to bifurcate

24   discovery so that there would just be expert discovery

11:09AM  25   responding to the 9th Circuit's mandate, and then we would