**LOWE & ASSOCIATES, PC**
Steven T. Lowe (SBN 122208)
steven@lowelaw.com
Aleksandra Hilvert (SBN 258463)
aleksandra@lowelaw.com
8383 Wilshire Blvd., Suite 1038
Beverly Hills, California 90211

**ROBINS KAPLAN LLP**
Patrick M. Arenz
(MN Bar No. 0386537) (pro hac vice)
PArenz@RobinsKaplan.com
Brandon J. Pakkebier
(MN Bar No. 0400691) (pro hac vice)
BPakkebier@RobinsKaplan.com
800 LaSalle Avenue
Suite 2800
Minneapolis, Minnesota 55402
Telephone: 612 349 8500
Facsimile: 612 339 4181

*Attorneys for Plaintiffs*
*Alfred Lee Alfred, II, et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR LEE ALFRED, II, et al., | Case No. 2:18-CV-08074-CBM-ASx |
| Plaintiffs, | **DECLARATION OF TOVA LAITER** |
| v. | Judge: Hon. Alka Sagar |
| WALT DISNEY PICTURES,, | *[referred by Hon. Consuelo B. Marshall for discovery]* |
| Defendant. | Hearing Date: April 26, 2022 |
| | Time: 10:00 AM |
| | Location: Courtroom 540 |

### DECLARATION OF TOVA LAITER

I, Tova Laiter, declare:

1.      I was the Producer of the entertainment industry project created by writers Arthur Lee Alfred II ("Alfred") and Ezequiel Martinez, Jr. ("Martinez"), originally entitled "Pirates of the Spanish Main", retitled "Pirates of the Caribbean" (the "Project"). The facts stated herein are personally known to me and I could and would testify competently thereto if called upon as a witness under oath.

2.      By August 2000, I had been working in the entertainment industry for about 28 years. A true and correct copy of my resume is attached as Exhibit 4-A, which accurately sets forth an overview of my background and experience in the entertainment industry as a film and TV producer. For example, I have served as Vice President of Warner Brothers (Head of Story Department); as Senior Vice-President of Imagine Entertainment; and President of Production at Cinergi Pictures; among other executive positions in the entertainment industry. The list of films that I produced or supervised development/production of, includes GLORY, FRIDAY NIGHT LIGHTS, JUDGE DREDD, EVITA, THE SCARLET LETTER, VARSITY BLUES, KINDERGARTEN COP, NIXON and DIE HARD III. One of my early jobs in the entertainment industry was as a production assistant on the set of the GODFATHER 2.

3.      Throughout my career, I have worked with some of the top directors and actors in the industry, like Ron Howard, Oliver Stone, Ben Stiller, Henry Winkler, Denzel Washington, Demi Moore, Steve Martin, Anthony Hopkins, and Gary Oldman. I have also been conducting a successful screening and Q&A series for the past 11 years for the New York Film Academy. I have brought on many notable guests, such as Steven Spielberg and Ted Sarandos, as well as famous actors including Al Pacino, Bryan Cranston, Jonah Hill, Cedric the Entertainer, Alec Baldwin and Josh Brolin.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

LAITER DECL.

- 2 -

2:18-CV-08074-CBM-ASX

4.      In or around 1999, I began working with Alfred and Martinez as their "producer," which meant (in this context) that I would submit their "projects" (usually a screenplay and a "trailer" or "sizzle reel") to my contacts in the entertainment industry. These contacts included all the major studios, like Disney, Paramount, Warner Bros, and Universal.  If one of the studios wanted to produce one of the projects, then I would come onboard as a Producer. As an industry veteran with an eye for talent, I was immediately impressed with Alfred and Martinez's creativity, work ethic, and potential.

5.      The first project written by Alfred and Martinez that I submitted to Disney in 1999 was called RED HOOD. RED HOOD was a new spin on the old fairy tale, Little Red Riding Hood. I was impressed with its innovation and creativity and knew I could sell it.  I pitched it to my contacts in the entertainment industry at the studios.  At that time my main contact at Disney was Todd Garner. After I submitted it to him on April 16, 1999, Garner told me he thought it was perfect for the Disney/Buena Vista label, who then wanted to "option" it. Alfred and Martinez started working with the Disney/Buena Vista team of Brigham Taylor, Josh Harmon and Michael Haynes on this project with meetings on the Disney lot in Burbank, California in approximately October 1999.

6.      As part of the RED HOOD option agreement, Alfred and Martinez entered into a contract with Disney. A true and correct copy of that agreement is attached as Exhibit 4-B. That agreement contains compensation provisions for Alfred and Martinez in the event of a theatrical or TV release, including through a royalty for any sequel films or TV productions in Section E.

7.      At the time of the RED HOOD agreement it was industry standard for writers to receive royalties for any sequel films that are developed in the future, even if the writers were not involved in those specific sequel films.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

LAITER DECL.

- 3 -

2:18-CV-08074-CBM-ASX

1   I declare under the penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct.

3       Executed on the __15__ of March 2022 in Los Angeles, California.

4

5

6                                                                       Tova Laiter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 4-A

# TOVA LAITER
## AVIDA ENTERTAINMENT – PRODUCER

Movies (produced or in development) include:

| | |
|---|---|
| **INDUSTRY A-LIST GUEST Q&A SERIES** | NYFA (see attach page & Link) |
| **DON'T TELL MOM THE BABY SITTER IS DEAD** (reboot) | Tree House production- Budgeting |
| **VARSITY BLUES TV series** | Paramount Studios- Roku |
| **THE MIRROR – HBO. – development** | Exec Producer: Ben Stiller |
| **ELVIS HAS LEFT THE BUILDING – Lion's** | Stars: Kim Basinger & John Corbett |
| **Gate VARSITY BLUES – Paramount/ MTV Films** | Stars: John Voight / Paul Walker,James V.B |
| **RUN FOR YOUR LIFE – Universal- development** | Stars: jJhn Travolta |
| **COMPULSION- Dimension Films** | Stars: Heather Graham,Carrie-Ann Moss |

## CINERGI PRODUCTIONS – PRESIDENT OF PRODUCTION
### 1993-1996

Movies include:

| | |
|---|---|
| **EVITA with Madonna & Antonio Banderas** | Director: Alan Parker |
| **NIXON with Anthony Hopkins** | Director: Oliver Stone |
| **DIE HARD III with Bruce Willis & Sam Jackson** | Director: John McTiernan |
| **JUDGE DREDD with Sylvester Stallone** | Director: Danny Cannon |
| **SCARLETT LETTER with Demi Moore & Gary Oldman** | Director: Roland Joffe |

## IMAGINE ENTERTAINMENT – SENIOR VICE PRESIDENT OF PRODUCTION
### 1990-1993

Movies include:

| | |
|---|---|
| **FAR AND AWAY with Tom Cruise & Nicole Kidman** | Director: Ron Howard |
| **KINDERGARTEN COP with Arnold Schwarzenegger** | Director: Ivan Reitman |
| **FRIDAY NIGHT LIGHTS- with Billy Bob Thornton** | Director: Peter Berg |
| **LORENZO'S OIL with Susan Sarandon & Nick Nolte** | Director: George Miller |
| **HOUSESITTER with Goldie Hawn & Steve Martin** | Director: Frank Oz |
| **MY GIRL with Macaulay Culkin & Anna Chlumsky** | Director: Howard Zieff |
| **CB-4 with Chris Rock** | Director: Tamra Davis |
| **COP AND A HALF with Burt Reynolds** | Director: Henry Winkler |

## FREDDIE FIELDS PRODUCTION – PRESIDENT
### 1988-1990

Movies include:

| | |
|---|---|
| **GLORY with Denzel Washington (Oscar, Golden Globe)** | Director: Ed Zwick |

## INDEPENDENT PRODUCER
### 1983-1988

Movies include:

| | |
|---|---|
| **MURDER IN MISSISSIPPI, with Tom Hulce, Jennifer Grey, NBC** | EMMY& DGA winner |
| **LENA, MY HUNDRED CHILDREN, with Linda Lavin, NBC** | TV GUIDE- Ten Best list |
| **ONE MORE SATURDAY NIGHT with Al Franken, COLUMBIA** | Exec. Producr Dan Aykroyd |
| **FIRE WITH FIRE, Paramount Studios** | Actress: Virginia Madsen |

**Prior employment: VP at WARNER BROS studio, in charge of Story Department of 37 employees; Five years of WEST COAST EDITOR for DELL/DIAL/ DElACORTE publishing house; First movie: Francis Coppola and Paramount's GODFATHER 2**

## EDUCATION

## B.A. - ART HISTORY & PHILOSOPHY- HEBREW UNIVERSITY, JERUSALEM

**Industry Guests A-List Q&A series**
**From Tova Laiter, Curator & Moderator**

I have been both an Executive and Producer in the Entertainment industry for many years:
Vice President at WB, Senior Vice-President of Imagine Entertainment; President of Production at Cinergi Pictures and Producer of main studio films and A-List stars..

For the past 11 years I have been conducting a very successful screening and Q&A series for The New York Film Academy at WB studios, NYFA/LA theater and at NYC headquarters at Battery Park.

I have brought **Steven Spielberg, Ron Howard, Bob Towne, Billy Friedkin,** etc for my 70's Classic Series... and for my Industry screening series:  executives such as: **Ted Sarandos, Kevin Feige, Alan Horn, Jim Gianopulos, Sherry Lansing** and Talent such as **Nancy Meyer, Darren Star, Jay Roach, Dan Gilroy, Michael Shamberg, Grant Heslov, Stephanie Allain, Joel Silver and Janusz Kaminski** among many others.

Actors included: **Alec Baldwin, Al Pacino, Bryan Cranston, Cedric the entertainer, Seth Rogen, Jonah Hill, Ben Stiller, J.K. Simmons, Beanie Feldstein, Kathleen Turner, Bill Hader, Adam Driver, Elizabeth Olsen Edward James Olmos, Josh Brolin, Beanie Feldstein, Richard Dreyfuss,** etc.

Among the Oscar/Emmy movies we screened during the years:  **THE LOST DAUGHTER, KING RICHARD, SUMMER OF SOUL, US vs. BILLIE HOLIDAY, MINARI, PARASITE, THE SHAPE OF WATER, FREE SOLO, 12 YEARS A SLAVE, LA LA LAND, THE BIG SHORT, BIRDMAN, WHIPLASH, HACKSAW RIDGE, SULLY, COCO, THE BREADWINNER, MOANA, CAROL, ROOM, WIDOWS, NIGHTCRAWLER, THE HUMBLING, MONUMENT MEN, SAVING MR. BANKS, FLIGHT, HITCHCOCK** and many more.

We have an e-blast of 100,000 for students and alumni, a widely read blog, an association with Final Cut and great social media following. We have schools in NYC, LA, Miami South Beach, Florence and Sydney.

Please look at the short video link below to see some of the esteemed Q&A guests:
vimeo.com/246314209
password: TOVA

If you are unable to open it. If not, please look at: https://www.nyfa.edu/tova/

Tova Laiter

Avida Entertainment/ NYFA Q&A series
0- 323 876 2932
C-323 646 6093
www.tovalaiter.com
https://www.nyfa.edu/tova/
vimeo.com/246314209 /Password: TOVA



U.S. POSTAGE
0155
H.MEIER 708228

LOS ANGELES, CA

**LOEB&LOEB** LLP
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

ATTORNEYS AT LAW
10100 SANTA MONICA BOULEVARD
SUITE 2200
LOS ANGELES, CA  90067-4164

Mr. Arthur Lee Alfred, II
11142 Amherst Avenue
Montclair, California 91763



L&L

CONFIDENTIAL

SCREENWRITERS0002404



**LOEB&LOEB** LLP

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

10100 SANTA MONICA BOULEVARD
SUITE 2200
LOS ANGELES, CA 90067-4164

TELEPHONE: 310.282.2000
FACSIMILE: 310.282.2192
www.loeb.com



Direct Dial: 310-282-2304
e-mail: lspoto@loeb.com

October 18, 2000

Mr. Arthur Lee Alfred, II
11142 Amherst Avenue
Montclair, California 91763

Mr. Ezequiel Martinez, Jr.
28262 Cornus Court
Highland, California 92346

Re:     "RED HOOD"/Lee
        Alfred and Ezequiel Di Romero/Option/Rights/Associate Producer
        Agreement

Dear Lee and Ezequiel:

I am pleased to enclose a fully executed copy of the above-referenced
agreement for each of your respective records.

We will retain the original signature copies in our internal client files for
safekeeping.

Best wishes for much success with this project.

Best regards,

Louis A. Spoto
for Loeb & Loeb LLP

LAS:le
20165910001
CC285699.1

Enclosure
cc:     Keith Fleer

LOS ANGELES
NEW YORK
NASHVILLE
ROME

CONFIDENTIAL                                                    SCREENWRITERS0002405

DATE:       As of January 14, 2000
SUBJECT:    "RED HOOD"
            LEE ALFRED & EZEQUIEL DI
            ROMERO/OPTION/RIGHTS/
            WRITERS/ASSOCIATE PRODUCERS

## MEMORANDUM OF AGREEMENT

The following are the terms of the Agreement ("Agreement") dated as of January 14, 2000 between WALT DISNEY PICTURES ("WDPc"), on the one hand, and ARTHUR LEE ALFRED II ("Alfred") and EZEQUIEL MARTINEZ, JR. (a.k.a. EZEQUIEL DI ROMERO) ("Martinez") (together, "Artist"), on the other hand, relating to (i) WDPc's acquisition of an option to acquire all rights in and to the original screenplay written by Artist entitled "RED HOOD" (the "Screenplay") in connection with a proposed motion picture tentatively entitled "RED HOOD" to be based upon the Screenplay (the "Picture") and (ii) the writing and associate producing services of Artist in connection therewith.

A.   GENERAL

1.   Conditions Precedent.  WDPc shall have no obligation to perform under this Agreement unless and until:

a.   WDPc receives an executed copy of this Agreement, including a Writer's Certificate in the form attached hereto as Exhibit "A," in form and substance acceptable to WDPc.

b.   WDPc receives an executed "Short Form Option" in the form attached hereto as Exhibit "B" pursuant to which WDPc acquires the sole, exclusive and irrevocable option to acquire the Screenplay.

c.   WDPc receives an executed Assignment of Rights (the "Assignment") in the form attached hereto as Exhibit "C" pursuant to which WDPc acquires all of Artist's right, title and interest in and to the Screenplay.

d.   WDPc approves the chain-of-title to the Screenplay, approves all agreements with respect thereto, and receives all assignments and releases which it reasonably requires in connection therewith.

e.   WDPc receives an executed agreement in form and substance acceptable to WDPc between WDPc and Tova Laiter ("Laiter") (or her loan-out company) for the producing services of Laiter in connection with the Picture.

2.   Prior Agreement/Superceding Effect.  Upon satisfaction of the Conditions Precedent set forth in Paragraph A.1., above, this Agreement shall supercede and replace in its entirety that certain letter agreement (the "Prior Agreement") dated March 15, 1999 between Laiter, on the one hand, and Alfred and Martinez, on the other hand, in connection with the Screenplay and the Prior Agreement shall be of no further force or effect.  A copy of the Prior Agreement is attached hereto as Exhibit "D".

3.   Team.  Each individual comprising Artist acknowledges that he/she shall perform all services, if any, and obligations hereunder as a team, subject to the terms of this

1

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00    Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00



CONFIDENTIAL

Agreement, and in no instance under this Agreement shall WDPc be required to employ, if at all, either of said individuals separately other than as a team. Each individual comprising Artist further acknowledges that all amounts payable hereunder are the combined total for said team and shall be paid entirely to Artist, provided that all such payments shall be divided into equal shares by WDPc and paid one-half (1/2) to Alfred and one-half (1/2) to Martinez, except with respect to payments made pursuant to Paragraph H.2. below, if any, which payments are only payable to the individual who travels.

     4.   <u>Joint and Several</u>. The obligations, representations, and warranties of each individual comprising Artist hereunder are joint and several, and the failure of one of them to perform for any reason (including, without limitation, default, death and/or disability) shall give WDPc the same remedies against the other that it has against the one failing to perform, including the right to terminate or suspend this Agreement with respect to Alfred and/or Martinez without any further obligations except for the sums due and owing and not yet paid (subject, however, to WDPc's rights and remedies). In the event WDPc exercises any remedy hereunder only as to the non-performing Artist, the engagement of the other such individual Artist (the "Retained Artist") may, in WDPc's sole discretion, continue and the Retained Artist shall be entitled to receive, subject to the terms and conditions hereof, an amount equal to fifty percent (50%) of the consideration specified herein (divided and allocated as specified in Paragraph A.3. above) which is payable with respect to the Retained Artist. Notwithstanding the provisions set forth above, in the event that one (1) of the individuals comprising Artist is unable to perform solely as a result of such individual's death or disability, the engagement of the Retained Artist shall continue, and the Retained Artist shall be entitled to receive, subject to the terms and conditions hereof, seventy-five percent (75%) of the balance of that portion of the contingent compensation specified in Paragraph C.2. below (<u>i.e.</u>, otherwise payable to the team); provided, however, that the consideration specified in Paragraph B below (<u>i.e.</u>, the "Option Price" and "Purchase Price") shall not be reduced pursuant to this Paragraph A.4.

     5.   <u>No Further Writing Services/Waiver</u>. Artist agrees and acknowledges that, except as specifically set forth in Paragraph C., below, Artist shall perform no further writing services in connection with the Picture (unless otherwise requested by WDPc in which event WDPc shall negotiate in good faith within WDPc's standard parameters with Artist to engage Artist to provide such further writing services in connection with the Picture and shall enter into a separate written agreement in connection therewith). In addition, WDPc and Artist hereby acknowledge and agree that, notwithstanding anything to the contrary set forth in the Agreement, Artist hereby waives Artist's right under Article 16.A.3.c. of the Writers Guild of America Theatrical and Television Basic Agreement (the "MBA") to perform rewrite services.

B.   <u>ACQUISITION OF THE SCREENPLAY</u>

     1.   <u>Option to Purchase Screenplay</u>.

        a.   In consideration of the sum of $15,000 (the "Option Price"), which sum shall be payable to Artist within ten (10) business days following satisfaction of the Conditions Precedent set forth in Paragraph A.1., above, and which sum shall be applicable against the "Purchase Price" (as defined and set forth in Paragraph B.2 below), Artist hereby grants to WDPc an exclusive and irrevocable option to purchase (the "Purchase Option") all right, title and interest in and to the Screenplay throughout the universe, in perpetuity, and in any and all languages, for all now and/or hereafter existing uses, media, and forms including, without limitation, all copyrights (and

2

CONFIDENTIAL           SCREENWRITERS0002407

renewals and extensions thereof), all forms of: motion picture, television, television series, digital television, video and computer games, videocassette and video or laser disc, any computer-assisted media (including but not limited to CD-ROM, CD-I and similar disc systems, interactive media and multi-media and any other devices and/or methods now existing and/or hereinafter devised) character, sequel, remake, theme park, stage play, sound record, merchandising and all allied, incidental, ancillary and subsidiary rights of every kind and nature whatsoever (and the right to exploit such rights by any means and/or device(s) now known and unknown and in any media now known and unknown). The Purchase Option shall commence on the date hereof and shall continue until the date that is eighteen (18) months after the satisfaction of all of the Conditions Precedent set forth in Paragraph A.1., above (the "First Option Period").

b.      The First Option Period may be extended for a period of eighteen (18) months (the "Second Option Period") by the payment to Artist of an additional $15,000 at any time prior to the expiration of the First Option Period.

c.      The payment to Artist under Paragraphs B.1.b., above (if applicable) shall not be applicable against the "Purchase Price" (as defined and set forth in Paragraph B.2 below).

d.      The First Option Period and the Second Option Period shall sometimes be collectively referred to herein as the "Option Period." Notwithstanding anything to the contrary contained herein, any Option Period may be further extended as follows: (A) for any period during which a claim with respect to the Property has been asserted and remains unresolved (provided that, with respect to any claim that is not based on Artist's breach, or facts which if true would constitute a breach, of any of Artist's representations, warranties, or obligations hereunder, such extension shall not exceed twelve (12) months unless one of the following has occurred with respect to such claim: (i) a lawsuit has been filed, (ii) an agreement to enter arbitration has been reached, (iii) any other judicial proceeding or alternative dispute resolution proceeding (e.g., mediation, so-called "rent-a-judge" proceedings, etc.) has been reached or (iv) WDPc has entered into settlement negotiations, in which case this twelve (12) month time limitation shall not apply), and (B) for any period during which WDPc's development or production activities based upon the Property are interrupted or postponed due to any occurrence of an event of force majeure, including without limitation, any labor dispute; provided, however, that such extension(s) for each event of force majeure shall not exceed twelve (12) months with respect to any individual event of force majeure (except for force majeure events related to any labor dispute, including a labor dispute of the Writers Guild of America (the "WGA") or any other guild or collective bargaining unit for which there will be no time limit).

2.      Purchase of Screenplay.  WDPc may exercise the Purchase Option at any time prior to the expiration of the Option Period by giving written notice thereof to Artist and by agreeing to pay Artist an amount equal to two and one-half percent (2-1/2%) of the final all-in validated and approved by WDPc budget ("Validated Budget") for the Picture (the "Purchase Price") (provided that in no event shall the Purchase Price be less than $75,000 or more than $250,000), less all sums previously paid to Artist pursuant to Paragraph B.1.a. above (i.e., less $15,000). In the event WDPc exercises the Purchase Option and the Validated Budget is not yet available, WDPc shall, at such time, pay to Artist $75,000 (less $15,000 pursuant to Paragraph B.1.a. above). In the event the Validated Budget is not available three (3) months after WDPc's exercise of the Purchase Option, WDPC shall at that time pay to Artist an

3

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00   Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00; Exe. 09/28/00

CONFIDENTIAL                                                                      SCREENWRITERS0002408

additional flat sum of $25,000. In the event the Validated Budget is not available six (6) months after WDPc's exercise of the Purchase Option, WDPC shall at that time pay to Artist an additional flat sum of $25,000. In the event the Validated Budget is not available nine (9) months after WDPc's exercise of the Purchase Option, WDPC shall at that time pay to Artist an additional flat sum of $25,000, all of which payments shall be applicable against, and an advance of the Purchase Price. WDPC shall pay any balance of the Purchase Price due to Artist, if any, when the Validated Budget is finalized and available.

      3.    <u>Payment of the Purchase Price</u>. If WDPc exercises the Purchase Option, then WDPc shall pay Artist the Purchase Price within fifteen (15) business days following WDPc's exercise of the Purchase Option.

      4.    <u>Development</u>. Artist exclusively licenses WDPc (and persons and entities engaged by WDPc) to engage in preproduction, development and writing activities based on or pertaining to the Screenplay during the Option Period (as defined below). Artist acknowledges that Artist shall have no right, title or interest in the results and proceeds of any such activities, whether or not the Purchase Option is exercised, and that the results and proceeds shall be the sole property of WDPc, whether or not the Purchase Option is exercised.

## C.    WRITING SERVICES

      1.    <u>Polish</u>. Upon satisfaction of the Conditions Precedent set forth in Paragraph A., above, and WDPc's request that Artist commence services (whichever last occurs), Artist shall write a polish of the Screenplay. The Option Price (<u>i.e.</u>, $15,000) set forth in Paragraph B.1., above, shall be deemed an advance against the writing services under this Paragraph C.1. Artist acknowledges that the writing services hereunder shall be deemed performed for minimum payments required under the MBA (<u>i.e.</u>, the sum of $11,804) and further, that the Option Payment shall be deemed inclusive of such minimum payments.

      2.    <u>Contingent Compensation</u>.

          a.    If the Picture is produced and released as a feature-length theatrical motion picture and Artist receives sole screenplay credit therefor upon final credit determination under the MBA, but not Article 7. of Theatrical Schedule A thereto ("Final Credit Determination"), then Artist shall be entitled to receive contingent compensation in an amount equal to 5% of l00% of the "Defined Contingent Proceeds", if any, of the Picture. If the Picture is produced and released as a feature-length theatrical motion picture and Artist receives shared screenplay credit therefor upon Final Credit Determination, then in lieu of the foregoing, Artist shall be entitled to receive contingent compensation in an amount equal to 2-1/2% of l00% of the "Defined Contingent Proceeds", if any, of the Picture. Artist shall not be entitled to any such contingent compensation under this Paragraph C.2.a. if Artist does not receive either sole or shared screenplay credit for the Picture as set forth herein.

          b.    For the purposes of this Agreement, "Defined Contingent Proceeds" shall be defined, computed and paid in accordance with WDPc's Exhibit "DCP" (including a l5% overhead charge plus charges for any WDPc facilities used in accordance with the then-current WDPc rate card), attached hereto and incorporated herein by this reference.

      3.    <u>Fair Compensation</u>. Artist acknowledges that the fixed compensation provided to be paid under Paragraph(s) B.1.a. and C.1., above is by itself fair, reasonable and sufficient

4

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00    Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

SCREENWRITERS0002409

compensation for all services rendered by Artist hereunder and for all rights granted to WDPc hereunder whether or not any contingent compensation under Paragraph C.2. above ever becomes payable to Artist.

D.    **GENERAL TERMS  -- WRITING SERVICES**

     1.    Delivery Schedule - Polish

| | |
|---|---|
| Start of services: | Upon satisfaction of the Conditions Precedent under Paragraph A.1. above, and WDPc's request that Artist commence services (whichever last occurs). |
| Writing Period: | 3 weeks |
| Reading Period: | 4 weeks |

     2.    Exclusivity.  Artist's writing services with respect to the Picture hereunder shall be exclusive to WDPc during all writing periods and non-exclusive, but on a first-priority basis, during all reading periods.  Time is of the essence respecting the writing services and delivery dates specified herein.  In the event that WDPc elects in its sole discretion to extend the writing period hereunder in order to allow additional time for Artist to complete Artist's services hereunder, then Artist shall not be entitled to any additional compensation for writing services rendered by Artist during the extended writing period.  Artist acknowledges that only an authorized Business Affairs executive of WDPc has the authority to commence Artist's services pursuant to Paragraph C.1., above, and Artist may not rely on the instructions or representations of any other individual or entity.

     3.    Deferred Services.  WDPc may defer Artist's services on the writing step to such other times as WDPc elects.

     4.    Novelization.  Novelization shall be as set forth in the MBA; provided that rights under sections 16A 3(a)(3) (other than rights to minimum compensation in connection with any novelization of the Picture) shall be deemed waived by Artist.

E.    **ROYALTIES.**

     If WDPc produces and releases the Picture as a feature-length theatrical motion picture which is based in whole or in part upon the Screenplay, and thereafter produces a theatrical sequel to or a theatrical remake of the Picture (collectively, a "Theatrical Production"), or a television motion picture (i.e., a pilot, initial episode of a series, a movie-of-the-week or miniseries, collectively, a "Television Production") as set forth below based on the Picture, and provided Artist receives sole separation of rights under the MBA for the Picture and is not engaged to write for the applicable production described below, then Artist shall be entitled to the applicable royalty specified below.  If Artist receives shared separation of rights under the MBA and Artist is not engaged to write for the applicable production described below, all payments under this Paragraph E. shall be reduced by any corresponding payments to any other writer(s) on the Picture who are entitled to separation of rights under the MBA, but in no event shall payments to Artist be reduced to less than fifty percent (50%) of the applicable sum for the applicable use set forth below.

     1.    Theatrical Sequel.  One-half (1/2) of the Purchase Price actually paid to Artist pursuant to Paragraph B.2. above plus, as contingent compensation, a percentage of Defined Contingent Proceeds (if any) of such sequel, which percentage shall be equal to one-half (1/2)

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00    Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

CONFIDENTIAL                                                                      SCREENWRITERS0002410

of the percentage of Defined Contingent Proceeds to which Artist was entitled under Paragraph C.2. above (e.g., 2 ½% of the Defined Contingent Proceeds for the sequel if Artist received sole "screenplay by" or sole "written by" credit for the Picture).

2.    Theatrical Remake.  One-third (1/3) of the Purchase Price actually paid to Artist pursuant to Paragraph B.2. above plus, as contingent compensation, a percentage of Defined Contingent Proceeds (if any) of such remake, which percentage shall be equal to one-third (1/3) of the percentage of Defined Contingent Proceeds to which Artist was entitled under Paragraph C.2., above (e.g., 1.66% of the Defined Contingent Proceeds for the remake if Artist received sole "screenplay by" or sole "written by" credit for the Picture).

3.    Television Series.  The following royalties are payable for each episode of a television series based upon the Picture, as produced for a particular broadcast season:

### Primetime Network (i.e., ABC, CBS, FBC or NBC)

| Running Time | Payment |
|---|---|
| 30 minutes (or less) | $1,500 |
| 60 minutes (or less, but in excess of 30 minutes) | $2,700 |
| 90 minutes (or more) | $3,500 |

### Non-Primetime or Non-Network

| Running Time | Payment |
|---|---|
| 30 minutes | $ 750 |
| 60 minutes | $1,350 |
| 90 minutes (or more) | $1,750 |

4.    Movies(s)-of-the-Week or Mini Series.  An aggregate sum of $15,000 for the first two (2) hours, $7,500 for each additional hour thereafter (prorated for portions thereof), not to exceed a maximum of $80,000, regardless of running time.

5.    Reruns and Royalties.  Twenty percent (20%) of the applicable royalty set forth in Paragraph E.3. shall be payable for each of the first five (5) network reruns in the combined territory of the United States and Canada.  No further rerun payments shall be made thereafter unless required by the MBA, and if so required, at the minimum rate specified therein.

6.    Payment of Royalties.  Unless specified otherwise, theatrical payments due under this Paragraph E. shall be payable on completion of principal photography and television payments shall be payable upon the initial United States broadcast.

7.    MBA Minimums.  The royalty and rerun payments set forth in this Paragraph E. are inclusive of the minimum royalties and rerun fees payable under the MBA for the corresponding use.  Any additional payment required by the MBA under this or any other paragraph of this Agreement shall be payable at the minimum rate required by the MBA.

6

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00      Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

CONFIDENTIAL                                            SCREENWRITERS0002411

F.   <u>WARRANTIES AND INDEMNITIES</u>

1.   <u>Representations and Warranties</u>

Artist hereby represents, warrants and agrees that:

a.   The Screenplay was created and written by Artist, and Artist is the author thereof and owner thereof and is entitled to the copyright therein forever with the right to make such changes therein and such uses thereof as he may determine as author;

b.   The Screenplay was written solely by and is original with Artist, except for incidental material in the public domain (provided that Artist advises WDPc as to what material Artist believes to be in the public domain);

c.   Neither the Screenplay nor any element thereof infringes upon any copyright or, to the best of Artist's knowledge (or that which Artist should have known in the exercise of reasonable prudence or diligence) violates any other right in any other literary properties;

d.   To the best of Artist's knowledge (or that which Artist should have known in the exercise of reasonable prudence or diligence) the production and/or exploitation of any motion picture or other production based on the Screenplay will not violate the rights of privacy of any person or constitute a defamation against any person, nor will production or exploitation of any motion picture or other production based thereon in any other way violate the rights of any person whomsoever;

e.   Artist owns all rights in the Screenplay free and clear of any liens, encumbrances, claims or litigation, whether pending or threatened and owns all rights granted or purported to be granted herein to WDPc;

f.   Artist has full right and power to make and perform this Agreement;

g.   Except for the Prior Agreement referenced in Paragraph A.2. above, Artist has not entered into any agreement prior to this Agreement with respect to the Screenplay;

h.   The Screenplay has not previously been exploited as a motion picture, television production, play or otherwise, and, except per the Prior Agreement, which is superceded and replaced by this Agreement pursuant to Paragraph A.2. above, no rights have been granted to any third parties to do so; and

i.   Artist's assignment of the Screenplay to WDPc shall constitute an assignment of all right, title and interest in and to the underlying rights to the Picture.

The term "person" as used herein shall mean any persons, firm, corporation or other entity.

2.   <u>Indemnities</u>.

a.   Artist shall indemnify WDPc, its parent, subsidiaries, affiliates, subsidiaries of its parent, and each of their respective officers, directors, agents and

7

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00    Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00; Exe. 09/28/00

CONFIDENTIAL

SCREENWRITERS0002412

employees against any and all liability, loss, damages, costs and expenses, including reasonable attorney's fees and court costs, relating to or arising out of any breach or alleged breach of the foregoing representations, warranties and agreements made by Artist.

      b.      Except with respect to (i) matters constituting a breach by Artist of any of the representations, warranties and/or agreements contained herein or (ii) gross negligence, or willful misconduct, or recklessness by Artist or (iii) a third party claim relating to, referring to, or arising out of actions by Artist that are outside the course and scope of Artist's services in connection with the Picture, WDPc agrees to indemnify Artist and hold Artist harmless from and against any and all damages and expenses (other than with respect to any settlement entered into without WDPc's written consent or claim to which WDPc has not been notified) arising out of any third party claim against Artist resulting from WDPc's development, production, distribution and/or exploitation of the Picture or any element thereof and shall provide Artist with a defense (with counsel of WDPc's choice), provided, Artist cooperates with WDPc and follows WDPc's reasonable instructions in connection with such claim. Nothing herein shall be deemed a waiver of WDPc's right of subrogation, except that WDPc shall waive its right of subrogation to the extent such damages and expenses are covered by this indemnity. The foregoing shall not limit WDPc's right to include any such damages and expenses in the negative cost of the Picture or as a distribution cost for the Picture.

      3.      <u>Additional Documentation</u>. Concurrently herewith, Artist will execute and deliver the Assignment in the form of Exhibit "B" attached hereto and, at WDPc's request, Artist will execute or cause the execution of any and all additional documents and instruments reasonably deemed by WDPc to be necessary or desirable to effectuate the purposes of this Agreement. Artist hereby appoints WDPc, or its nominee, as Artist's irrevocable attorney-in-fact, with the right but not the obligation, for the sole benefit of WDPc, to bring, prosecute, defend and appear in suits, actions, and proceedings of any nature under or concerning all copyrights in and to the Screenplay and all renewals thereof, or concerning any infringement of any such copyright or renewal copyright, or any interference with any of the rights herein granted to WDPc; and to take such action as WDPc may deem advisable to enforce, protect, and/or defend any of the rights, privileges and property herein granted to WDPc under any and all such copyrights and renewals thereof, as well as any of the rights, licenses, privileges, warranties and agreements contained and/or set forth in any of the documents herein referred to, insofar as the same relate to the rights, privileges and property herein granted to WDPc, and to litigate, collect and receive all damages arising from any infringement of any such rights. Any such action may be taken by WDPc in the name of Artist or otherwise, and WDPc may join Artist as party plaintiff or defendant in any such suit, action or proceeding. In the event of the failure of Artist to do or cause to be done any and all acts and things necessary to obtain the renewal of any United States copyright involved, or in the event of Artist's failure to execute and deliver or cause to be executed and delivered to WDPc all instruments reasonably required in accordance with the provisions of this Agreement, Artist hereby appoints WDPc, or its nominee, as Artist's irrevocable attorney-in-fact in Artist's name and on Artist's behalf, with the right, but not the obligation, to do any and all acts and things necessary for the obtaining of such renewal copyright, and to execute and deliver all such instruments for the purposes aforesaid. The foregoing power of attorney shall be deemed coupled with an interest. WDPc shall provide Artist with copies of any such documents executed by WDPc as attorney-in-fact; provided, however, WDPc's inadvertent failure to provide such copies shall not be deemed a breach of this Agreement.

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00    Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

CONFIDENTIAL

SCREENWRITERS0002413

G.    ASSOCIATE PRODUCER SERVICES/FEE/CREDIT

1.    Associate Producer Services. If WDPc elects to proceed with the production of the Picture, then, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, including but not limited to the Option Price, Artist shall personally render all services customarily rendered by individual associate producers in the motion picture industry in connection with the preproduction, production and post production of the Picture and as otherwise required by WDPc.  The services of Artist shall be non-exclusive to WDPc, provided that Artist's services to third parties or on Artist's own account shall not materially interfere with Artist's services to WDPc hereunder.  Time is of the essence in connection with all associate producing services hereunder.   No breach of this Paragraph G. shall be deemed a breach of this Agreement.

2.    Associate Producer Credit.  Provided Artist is not in breach or default hereunder, Artist shall be accorded an associate producer credit (which credit may be shared with other associate producers of the Picture in WDPc's sole discretion) on screen at WDPc's sole discretion in the end titles of the Picture in an average size of type not less than one-hundred percent (100%) of the average size of type utilized to accord individual credit to any other individual associate producer of the Picture on screen in the end titles.  All other characteristics of Artist's credit hereunder shall be at WDPc's sole discretion. WDPc's inadvertent failure to accord Artist credit in accordance with the terms of this Paragraph G.2. shall not be deemed a breach of this Agreement.

H.    MISCELLANEOUS

1.    Writing Credit.  Artist's writing credit shall be accorded as provided under the MBA.

2.    Transportation and Expenses.  If in connection with Artist's associate producing services hereunder, WDPc requires either individual comprising Artist to travel more than fifty (50) miles from Artist's principal place of residence (presently Los Angeles County for both individuals comprising Artist), then each such individual comprising Artist who is required to travel shall be entitled to receive a proratable (at 1/7th thereof per day) weekly allowance, in lieu of all living or other expenses, of $1,750 per week in major metropolitan cities (i.e., Tokyo, New York, London), $1,500 per week in other major metropolitan cities (e.g. San Francisco), and $1,250 per week elsewhere, plus one first-class (if available) round trip transportation.  WDPc shall not be responsible for any other expenses or perquisites of Artist.  All travel arrangements, including but not limited to the acquisition of airline tickets, booking of accommodations, etc., shall be made through WDPc's location or travel department unless prior written approval is obtained from a WDPc Business Affairs Executive.  If Artist receives a transportation and expense allowance in connection with Artist's services for the Picture in any other capacity, then Artist shall not be entitled to receive the transportation and expense allowance set forth herein.

3.    Pension, Health and Welfare Contributions.  WDPc shall pay directly to the applicable pension, health and welfare fund contributions required by the MBA in connection with Artist's services hereunder.

4.    Ownership And Distribution.  The results and proceeds of Artist's services hereunder, including without limitation all material composed, submitted, added, created, or interpolated by Artist hereunder (hereafter the "Work"), which Artist acknowledges may have been or may be rendered in collaboration with others, shall be deemed a work-made-for-hire

9

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00    Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

specifically ordered by WDPc, and Artist hereby further acknowledges that all of the Work has been paid for by WDPc and is the sole property of WDPc for any and all purposes whatsoever. Notwithstanding the preceding sentence, Artist hereby assigns and/or grants all rights, including all exclusive exploitation rights, of every kind and nature (including any and all copyrights and neighboring rights, to the extent such assignment is allowed by law) in and to such Work to WDPc. All rights to such Work are owned by WDPc solely and exclusively, for the duration of the rights in each country and area and space, in all languages, throughout the universe. Artist and WDPc are aware and hereby acknowledge that new rights to the Work may come into being and/or be recognized in the future, under the law and/or in equity (hereafter the "New Exploitation Rights"), and Artist intends to and does hereby grant and convey to WDPc any and all such New Exploitation Rights to the Work granted by Artist hereunder. Artist and WDPc are also aware and do hereby acknowledge that new (or changed) (1) technology, (2) uses, (3) media (4) formats, (5) modes of transmission and (6) methods of distribution, dissemination, exhibition or performance (hereafter the "New Exploitation Methods") are being and will inevitably continue to be developed in the future, which would offer new opportunities for exploiting the Work. Artist intends and does hereby grant and convey to WDPc any and all rights to such New Exploitation Methods with respect to the Work. Artist hereby agrees to execute any document WDPc deems in its interest to confirm the existence of the preceding and to effectuate its purpose to convey such rights to WDPc, including without limitation the New Exploitation Rights and any and all rights to the New Exploitation Methods. Artist further hereby agrees that he or she will not seek (1) to challenge, through the courts, administrative governmental bodies, private organizations, or in any other manner the rights of WDPc to exploit the Work by any means whatsoever or (2) to thwart, hinder or subvert the intent of the grants and conveyances to WDPc herein and/or the collection by WDPc of any proceeds relating to the rights conveyed hereunder.

      5.   <u>Employment Eligibility</u>.  Artist acknowledges that any offer of employment hereunder is subject to and contingent upon each individual comprising Artist's ability to prove such Artist's identity and employment eligibility as required by the Immigration Reform and Control Act of 1986, and each individual comprising Artist hereby agrees (a) to complete and execute Section 1 ("Employee Information and Verification") of an Employment Eligibility Verification ("Form I-9") at the time of Artist's execution of this Agreement or commencement of services, whichever is earlier, and (b) to deliver, in person, to WDPc said Form I-9,  together with documentation of such Artist's employment eligibility, within three (3) business days of Artist's execution of this Agreement or commencement of services, whichever is earlier.  If Artist fails to verify and deliver the Form I-9 as provided above, WDPc shall have the right, by notice to such effect given to Artist to terminate this Agreement and thereupon Artist's employment hereunder shall cease and terminate and neither party shall have any right, duty or obligation to the other under this Agreement except such as shall have accrued prior to the effective date of termination.

      6.   <u>No Obligation To Use</u>.  WDPc is not obligated to use the services of Artist or to develop, produce, distribute, or exploit the Picture, or, if commenced, to continue the development, production, distribution, or exploitation of the Picture in any territory. Regardless of whether or not WDPc elects to produce, distribute and/or exploit the Picture (or to commence same) WDPc is not obligated to use the services of Artist or the results and proceeds of Artist in whole or in part.

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00     Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

CONFIDENTIAL                            SCREENWRITERS0002415

7.    <u>Notices</u>.  Any notice pertaining hereto shall be in writing.  Any such notice and any payment due hereunder shall be served by delivering said notice or payment personally or by sending it by certified mail, return receipt requested, or by cable or telex (postage or applicable fee prepaid), addressed as follows (or as subsequently designated in writing):

|              |                                               |
|--------------|-----------------------------------------------|
| To Artist:   | LOEB AND LOEB, L.L.P.                          |
|              | 10100 Santa Monica Boulevard, Suite 2200      |
|              | Los Angeles, California  90067                |
|              | Attn:  Keith Fleer, Esq.                       |
| To WDPc:     | WALT DISNEY PICTURES                           |
|              | 500 South Buena Vista Street                   |
|              | Burbank, CA  91521                            |
|              | Attn:  Senior Vice President                   |
|              | Business and Legal Affairs                     |

The date of personal delivery, mailing, or delivery to the cable or telex office of such notice or payment shall be deemed the date of service of such notice or payment, unless otherwise specified herein; provided, however, that any notice which commences the running of any period of time for WDPc's exercise of any option or WDPc's performance of any other act must be served by hand and shall be deemed served only when actually received by WDPc.

8.    <u>General</u>.  The balance of the terms of this Agreement consists of WDPc's Standard Terms and Conditions for a Producer (Direct), Exhibits "A", "B", "C", "D" and WDPc's Exhibit "DCP" attached hereto and incorporated herein by this reference.  This Agreement contains the full and complete understanding between the parties and supersedes all prior and contemporaneous written and/or oral agreements and understandings pertaining hereto and cannot be modified except by a writing signed by or on behalf of each party.  Artist's sole and exclusive remedy for WDPc's breach, termination, or cancellation of this Agreement or any term hereof (including any term pertaining to credit) shall be an action for damages and Artist irrevocably waives any right to seek and/or obtain rescission and/or equitable and/or injunctive relief.

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00    Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

CONFIDENTIAL                                                                                SCREENWRITERS0002416

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Memorandum of Agreement as of the date and year first written above.

WALT DISNEY PICTURES

By: _____

Its: _____
STEVEN W. GERSE
VICE PRESIDENT
BUSINESS AND LEGAL AFFAIRS

ACCEPTED AND AGREED TO:

_____
ARTHUR LEE ALFRED II
Social Security No.: 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

_____
EZEQUIEL MARTINEZ, JR. (a.k.a. Ezequiel Di Romero)
Social Security No.: 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

12

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00     Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

CONFIDENTIAL

SCREENWRITERS0002417

As of January 14, 2000

EXHIBIT "A"

**WRITER'S CERTIFICATE**

The undersigned certifies that for valuable consideration received and hereby acknowledged, all literary material (the "Material") written by the undersigned in connection with a motion picture or possible motion picture tentatively entitled "RED HOOD" was written as a work made for hire for WALT DISNEY PICTURES. ("WDPc") in the regular course of employment pursuant to an agreement between the undersigned (or a company entitled to "loan out" the undersigned's services) and WDPc dated as of January 14, 2000. The undersigned further certifies that WDPc shall be deemed the author of the Material and is entitled to the copyright therein (and all renewals and extensions thereof), with the right to make such changes therein and uses thereof as WDPc may from time to time determine, and the foregoing is inclusive of a full assignment to WDPc of all now known or hereafter existing rights of every kind throughout the universe, in perpetuity and in all languages, pertaining to the Material for all now known or hereafter existing uses, media, and forms, subject to any applicable terms of such Writers Guild of America Theatrical and Television Basic Agreement as is presently in effect with WDPc.

The undersigned certifies and warrants that the Material is original with the undersigned, does not defame any person or entity, or violate any copyright, right of privacy or publicity, or any other right of any person or entity and is not the subject of any litigation or claim that might give rise to litigation. The undersigned agrees to indemnify and hold harmless WDPc, it successors, licensees, and assigns against any breach or alleged breach of any of the foregoing warranties. The undersigned shall execute such further documents and do such other acts as may be required by WDPc or its successors, licensees, or assignees to evidence or effectuate WDPc's rights hereunder. WDPc's rights in the Material may be assigned, licensed, or otherwise transferred, and this Writer's Certificate shall inure to the benefit of WDPc's successors, licensees, and assignees. [Notwithstanding anything contained herein to the contrary, the undersigned acknowledges that the Material is based upon material assigned to it by WDPc.]

WRITER:

_____
LEE ALFRED

_____
EZEQUIEL MARTINEZ, JR.
(a.k.a. Ezequiel Di Romero)

State of California          )

County of Los Angeles,      )

On _10/5/2000_____ before me, _LINDA J. EHRLICH_____, personally appeared _LEE ALFRED AND EZEQUIEL MARTINEZ JR_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

> Linda J. Ehrlich
> Comm #1121480
> NOTARY PUBLIC CALIFORNIA
> LOS ANGELES COUNTY
> Comm Exp Jan 9, 2001

13

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00    Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

CONFIDENTIAL                                                          SCREENWRITERS0002418

EXHIBIT "B"
SHORT FORM OPTION

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, ARTHUR LEE ALFRED II and EZEQUIEL MARTINEZ, JR. (a.k.a. Ezequiel Di Romero) (together, "Owner") hereby grants to WALT DISNEY PICTURES ("Purchaser"), its successors and assigns, the sole, exclusive and irrevocable option ("Option") to acquire all right, title and interest in and to the screenplay written by Owner entitled "RED HOOD" (the "Property") and such rights shall include, without limitation, the copyrights (and renewals and extensions thereof), all forms of: motion picture, digital television, television, videocassette, video and computer games, video and laser disc, computer-assisted media, (including but not limited to CD-ROM, CD-I and similar disc systems, interactive media and multi-media and any other methods or devices now known or hereinafter devised), character, remake, sequel, sound record, theme park, stage play, merchandising and allied, ancillary and subsidiary rights therein, of every kind and nature (without reservation of any rights whatsoever),  throughout the universe and in perpetuity, in and to the Property and every part thereof (the "Rights").  If Purchaser exercises the Option, the rights granted to Purchaser shall include the copyright and all rights in and to the Property of every kind and nature or description, now or hereafter known, recognized, contemplated, developed, invented, devised or at any time coming into existence, including the exclusive, absolute and unlimited right to use the Property and each and every part thereof, for any purpose in any manner, as more particularly set forth in and subject to the terms and conditions of that certain Memorandum of Agreement for Option/Acquisition of Rights dated as of January 14, 2000, between Owner and Purchaser.

Dated:  As of January 14, 2000

_____
ARTHUR LEE ALFRED II

_____
EZEQUIEL MARTINEZ, JR.
(a.k.a. Ezequiel Di Romero)

State of CALIFORNIA )

County of LOS ANGELES )

On 10/5/2000 before me, LINDA J. EHRLICH NOTARY PUBLIC
Date                          Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared ARTHUR LEE ALFRED, II AND ELEQUIEL MARTINEZ, JR
Name of Signer(s)

☐ personally known to me – OR – ☐ proved to me on the basis of satisfactory evidence to be the  person(s) whose name is/are subscribed to the within instrument and acknowledged to me that  he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Linda J. Ehrlich
Comm #1121480
NOTARY PUBLIC  CALIFORNIA
LOS ANGELES COUNTY
Comm Exp Jan 9 2001

WITNESS my hand and official seal.

_____
Signature of Notary Public

14

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00     Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exc. 09/28/00

CONFIDENTIAL

SCREENWRITERS0002419

Exhibit "C"
## SHORT FORM ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS:  That the undersigned, for value received, hereby sells, assigns, transfers and grants in perpetuity unto WALT DISNEY PICTURES and its successors and assigns (herein called "Assignee"), all right, title and interest in and to the screenplay written by ARTHUR LEE ALFRED II and EZEQUIEL MARTINEZ, JR. (a.k.a. Ezequiel Di Romero) currently entitled "RED HOOD" including, without limitation, the title, themes, contents and characters and other versions thereof (collectively, the "Property").  The rights granted to Assignee shall include, without limitation, the sole and exclusive copyright (and all renewals and extensions thereof), and all forms of:  motion picture, television, digital television, video and computer games, remake, sequel, sound record, videocassette, video and laser disc, character, music publishing, merchandising, novelization, theme park, live stage, promotional and advertising and computer-assisted media (including, without limitation, CD-ROM, CD-I and similar disc systems, interactive media and multi-media, and any other devices or methods now known or hereafter devised), and all allied, ancillary and subsidiary rights, under copyright and otherwise, of every kind and nature and in all media whether now known or hereafter devised throughout the universe and in perpetuity (collectively, the "Rights") in and to the Property and every part thereof.  Said grant of the Rights is more particularly set forth in and subject to the terms and conditions in that certain Memorandum of Agreement between the undersigned and Assignee, dated as of January 14, 2000.

The undersigned hereby agrees to obtain or cause to be obtained renewals of all United States copyrights in and to said Property, whether or not referred to herein, and hereby assigns said Rights under said renewal copyrights to Assignee; and should the undersigned fail to do any of the foregoing, the undersigned hereby irrevocably appoints Assignee as attorney-in-fact, with full and irrevocable power and authority to do all such acts and things, and to execute, acknowledge, deliver, file, register and record all such documents, in the name and on behalf of the undersigned, as Assignee may deem necessary or proper in the premises to accomplish the same.

Assignee is also hereby empowered to bring, prosecute, defend and appear in suits, actions and proceedings of any nature under or concerning all copyrights in and to said Property and all renewals thereof, or concerning any infringement thereof, or interference with any of the Rights hereby granted under said copyrights or renewals thereof, in its own name or in the name of the copyright proprietor, but at the expense of Assignee, and, at its option, Assignee may join such copyright proprietor and/or the undersigned as a party plaintiff or defendant in any such suit, action or proceeding.

DATED: January 14, 2000

WRITERS:

_____
ARTHUR LEE ALFRED II

_____
EZEQUIEL MARTINEZ, JR.
(a.k.a. Ezequiel Di Romero)

15

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00     Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

CONFIDENTIAL                                                     SCREENWRITERS0002420

State of _CALIFORNIA_ )

County of _LOS ANGELES_ )

On _10/5/2000_ before me, _LINDA J. EHRLICH NOTARY PUBLIC_

Date                                    Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _ARTHUR LEE ALFRED, II AND EZEQUIEL MARTINEZ, JR._

Name of Signer(s)

☐ personally known to me – **OR** – ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

> Linda J. Ehrlich
> Comm #1121480
> NOTARY PUBLIC  CALIFORNIA
> LOS ANGELES COUNTY
> Comm. Exp. Jan 9, 2001

Signature of Notary Public

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00    Sent 02/16/00
AJH/REDHOOD/rights5-exe.doc
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00; Exe. 09/28/00

16

CONFIDENTIAL

SCREENWRITERS0002421

Exhibit "D"

Prior Agreement
(attached)

17

akb\films\red hood\diromero&alfred\rights.003
Est. 02/03/00     Sent 02/16/00
**AJH/REDHOOD/rights5-exe.doc**
Rev. 05/31/00 Rev. 07/25/00;  Rev. 08/03/00;
Rev. 09/19/00;  Exe. 09/28/00

CONFIDENTIAL

SCREENWRITERS0002422

# WALT DISNEY PICTURES
# PRODUCER OR DIRECTOR
# STANDARD TERMS AND CONDITIONS

of the Agreement dated as of January 14, 2000 between WALT DISNEY PICTURES ("WDPc") on the one hand, and ARTHUR LEE ALFRED II ("Alfred") and EZEQUIEL MARTINEZ, JR. ("Martinez") on the other hand, (Alfred and Martinez may be referred to as "Artist") in connection with the project(s) or production(s) (the "Picture") described therein.

## A. SERVICES

1. Artist shall render Artist's services at WDPc's studio in Burbank, California, or at such other place as WDPc may designate and at the times required by WDPc, including Sundays, nights and holidays. Artist shall render Artist's services hereunder and devote Artist's best talents, efforts, and abilities in accordance with the instructions, control, and directions of WDPc (including those of creative, artistic, or dramatic taste and judgment). Artist shall meet or collaborate with persons designated by WDPc at such time and place as WDPc may designate. WDPc shall have all rights of approval and control respecting creative, business, and all other elements in connection with the Picture. Artist's services shall be rendered exclusively for WDPc throughout the Term except as may otherwise be provided in this Agreement.

2. Throughout the Term, Artist shall advise WDPc's production office of where and how Artist can be reached at all reasonable hours of the day or night.

3. In addition to services provided for herein and customarily rendered by directors or producers engaged in the motion picture industry, Artist upon WDPc's request shall: assist in the selection of the cast for the Picture; rehearse the cast; assist in connection with the use of special effects; consult with WDPc's production department with respect to the production of the Picture; assist in the preparation of the budget; and perform any other service incidental to the performance of Artist's services hereunder.

4. Artist shall render Artist's services hereunder at such places as WDPc shall designate during the Term or thereafter in connection with retakes and added scenes (herein "Retakes") and in connection with all other post-production services including, but not limited to, trick shots, process shots, transparencies, foreign versions, trailers, and sound recordings for the Picture (herein "Post-Production Services"). If, following the Term, other employment in the motion picture or television industry prevents Artist from furnishing Artist's services for Retakes or Post-Production Services at the time requested by WDPc, then Artist shall exercise Artist's best efforts to arrange the schedule for such other employment to enable Artist to render the services requested by WDPc and Artist agrees to notify WDPc within twenty-four (24) hours after WDPc requests Artist's Retake or Post-Production Services of the date and time when Artist will be available to render such services for WDPc. Artist's services following the completion of principal photography shall be without additional compensation except only as may otherwise be required to be paid by the terms of any Directors Guild of America Basic Agreement with WDPc which is applicable to Artist's services hereunder (the "DGA Agreement"), if Artist is the director of the Picture hereunder.

## B. RIGHTS

1. The results and product of Artist's services hereunder, including without limitation any and all material composed, submitted, added, created, or interpolated by Artist pursuant to this Agreement (the "Work") in connection with the Picture, and the Picture, in whatever stage of completion, shall be deemed a work made for hire for WDPc within the scope of Artist's employment and shall automatically become the property of WDPc as the author thereof upon creation, together with all rights therein.

2. Without in any manner limiting the generality of the foregoing:

(a) WDPc shall own, and Artist hereby acknowledges WDPc's ownership of, all now known or hereafter existing rights of every kind throughout the universe, in perpetuity and in all languages, pertaining to the Work and Picture (including, without limitation, the copyright therein and any renewals and extensions thereof) for all now known or hereafter existing uses, media, and forms, including, without limitation, all motion picture, literary, dramatic, musical, stage, recording, mechanical, merchandising, publishing, radio, free or pay television, videotape, video disc or other video device, sequel, remake, ancillary, and allied rights in the Work and the Picture, and the foregoing is inclusive of a full assignment to WDPc thereof.

(b) WDPc shall have the right, but not the obligation, to use, adapt, change, edit, or revise the Work or Picture or any part thereof or the title thereof and to combine the same with other material or works and Artist hereby expressly waives any so-called "moral rights" of authors in the Work or Picture.

3. The expiration, termination, cancellation, or breach of this Agreement on whatever grounds and by whomsoever effected shall not affect WDPc's exclusive ownership of the Work or Picture, nor affect any of WDPc's rights under this Agreement, notwithstanding any other provision of this Agreement.

AJH/RED HOOD/RIGHTS/STC

C. **NAME AND LIKENESS**

1. WDPc is hereby granted the exclusive right to issue publicity about, and photographs of, Artist pertaining to Artist's engagement hereunder and WDPc may answer correspondence addressed to Artist and may affix to such publicity, photographs, or answers a representation of Artist's signature.

2. WDPc may use Artist's name, photograph, likeness, and recordings of Artist's voice and other sound effects in connection with any of the following: the production, advertisement, distribution, or exploitation of the Picture or any motion picture using the Work; WDPc's institutional advertising; publications of or other material based on the Picture; and so-called "commercial tie-ups" between the Picture and any products or services, provided that such commercial tie-ups do not constitute an endorsement by Artist of such product or services. Listing Artist's name in the credits relating to the Picture or any motion picture using the Work shall not be deemed an endorsement. Artist shall not directly or indirectly issue or permit the issuance of any publicity or disclose any information concerning this Agreement, Artist's services hereunder, the Picture, or WDPc's business or production methods, without WDPc's prior written consent; provided, however, that Artist shall not be deemed in breach of this subparagraph C.2 if Artist incidentally and nondisparagingly refers to said matters during an interview concerned primarily with Artist rather than any of said matters. Artist shall pose for publicity pictures and appear for such interviews with such persons as WDPc may designate in connection with publicity and advertising for the Picture without additional compensation, but subject to Artist's other employment if after completion of Artist's services for the Picture.

D. **REPRESENTATIONS, WARRANTIES AND INDEMNITY**

Artist hereby represents and warrants and agrees to indemnify WDPc as follows:

1. Artist is free to enter into this Agreement and no rights of any third parties are or will be violated by Artist's entering into or performing this Agreement. Artist is not subject to any conflicting obligation or any disability, and Artist has not made and shall not hereafter make any agreement with any third party, which could interfere with the rights granted to WDPc hereunder or the full performance of Artist's obligations and services hereunder.

2. All of the Work shall be wholly original with Artist and none of the same has been or will be copied from or based upon any other work. The reproduction, exhibition, or any other use of the Work or any of the rights herein granted shall not defame any person or entity nor violate any copyright, right of privacy or publicity, or any other right of any person or entity. The warranty in this subparagraph D.2 shall not apply to any material as furnished to Artist by WDPc (unless such furnished material was written or created by Artist or originally furnished to WDPc by Artist) or material inserted in the Work by WDPc but shall apply to all material which Artist may add thereto.

3. Artist has not accepted nor paid, nor will Artist accept or pay or agree to accept or pay any money, service or other

valuable consideration as defined in Section 507 of the Federal Communications Act of 1934, as amended, for the inclusion of any matter in the Picture, other than payment by WDPc to Artist hereunder.

4. Artist shall indemnify and hold harmless WDPc (and its affiliated companies, successors, assigns, and the directors, officers, employees, agents, and representatives of the foregoing) from any damage, loss, liability, cost, penalty, guild fee or award, or expense of any kind (including attorneys fees) (hereinafter "Liability") arising from any claim, demand, or action inconsistent with any agreement, warranty, representation, or grant by Artist in this Agreement, any other agreement between Artist and WDPc or between Artist and a third party, or involving any third party's claim to an amount payable hereunder. The party receiving notice of such claim, demand or action shall promptly notify the other party thereof. This indemnity does not require payment by WDPc as a condition precedent to recovery from Artist hereunder. WDPc may withhold any compensation or payment due to Artist hereunder to secure Artist's and Artist's payment to WDPc of any Liability under this indemnity and Artist shall remain obligated for the full amount of said Liability to the extent such withheld compensation or payment is insufficient to satisfy the Liability. If WDPc so elects, WDPc shall have absolute right to control the litigation or resolution of any claim, demand, or action to which this indemnity applies.

5. Artist acknowledges that Artist's services are of a unique, extraordinary, and intellectual character, the loss of which cannot be adequately compensated in damages in an action at law, and therefore Artist acknowledges that WDPc shall be entitled to injunctive and other equitable relief to prevent or curtail any breach of this Agreement by Artist.

E. **GUILD MEMBERSHIP**

1. If Artist is rendering services hereunder as a director, then subparagraphs (a), (b), and (c) below shall apply.

   (a) To the extent it may be lawful for WDPc to require Artist to do so, Artist agrees that Artist is now (or if not, then forthwith upon the execution hereof Artist will become) a member in good standing of Directors Guild of America, Inc. and that during the entire period when Artist's services are performed hereunder and to the extent it may be lawful for WDPc to require Artist so to do, Artist will remain or become and remain a member in good standing of the properly designated labor organization or organizations (as defined and determined under the applicable law) representing persons performing services of the type and character that are required to be performed by Artist hereunder. If Artist fails or refuses to so become or remain a member of such Guild or organization in good standing as required by the terms of WDPc's agreement therewith, WDPc may terminate WDPc's obligations under this Agreement at any time after such failure or refusal. If Artist should cease to be a member in good standing of such Guild or organization by reason of failure to pay any dues or assessments, and if Artist should fail to pay such dues or assessments and such default shall not be cured within five (5) days after written notice from such Guild or organization, WDPc shall have the right, at its election, to deduct the amount thereof from any compensation

AJH/RED HOOD/RIGHTS/STC

SCREENWRITERS0002424

then or thereafter payable to Artist hereunder and to pay such amount to such Guild or organization on behalf of Artist. WDPc shall be entitled to rely upon any facts, figures and other information furnished by such Guild or organization with respect to any such failure or default on the part of Artist and shall not be liable to Artist for any payment or overpayment to such Guild or organization based upon such facts, figures or other information, nor shall WDPc be under any obligation to take any steps whatever to reclaim or recover such payment or overpayment from such Guild or organization. Nothing herein contained, however, shall be construed to prevent Artist from taking any such steps on Artist's own behalf.

(b)   To the extent that any term of the DGA Agreement is more advantageous to Artist than the terms hereof, the terms of the DGA Agreement shall supersede the less advantageous terms hereof, but said less advantageous terms shall be limited only to the extent necessary to comply with the minimum mandatory terms of the DGA Agreement.  Any additional compensation payable to Artist pursuant to the DGA Agreement shall be paid at the minimum rate permitted thereby.

(c)   To the extent that any payment hereunder exceeds applicable DGA Agreement minimums, then such excess, to the fullest extent not prohibited by the DGA Agreement, shall be credited against any additional payment required by the DGA Agreement and shall be deemed payment for any additional services or rights obtainable by such payment under the DGA Agreement and WDPc shall be entitled to the maximum benefits and rights provided for in the DGA Agreement. All sums payable hereunder are inclusive of any required sums payable under the DGA Agreement for Artist's services or any use of the Work or Picture.

2.  If WDPc requires Artist to become a member of any foreign guild or labor organization in order for Artist to render services hereunder, then WDPc shall pay the entrance or initiation fee required by such foreign guild or labor organization.  Artist shall cooperate with WDPc to obtain any labor permit required by any governmental authority to enable Artist to render services in a foreign country. While WDPc is attempting to obtain such labor permit, WDPc may suspend Artist's services hereunder until one (1) week after a final determination by said governmental authority is made concerning such labor permit. WDPc may terminate this Agreement at any time during such suspension or upon WDPc's discovering that the labor permit cannot be obtained, provided that such termination under this subparagraph E.2 shall not affect Artist's entitlement to noncontingent cash compensation theretofore earned by Artist.

F.  **CREDIT**

1.  No credit provisions of this Agreement shall apply to, nor shall the same be construed to prevent so-called trailer or other advertising (including promotional films) on the screen; radio and television, group, list, "teaser," "directory," narrative form, or special advertising; so-called "award ads" including consideration, nominations, or congratulations for an award); advertising not related primarily to the Picture; WDPc's institutional advertising; advertising of eight (8) column inches or less; posters or stills; by-products, record album jackets and similar packaging, merchandising products or commercial tie ups; or publicity or exploitation relating to the Picture, the story upon which the Picture is based, any members of the cast thereof, the author, other persons who performed services for the Picture, or similar matters, without mentioning Artist's name. With respect to any obligation in this Agreement to accord credit in paid advertising, the references, if any, herein to the title of the Picture shall be to the so-called "regular" use of the title as distinguished from any "artwork" use (such as a display or fanciful use) of the title; and with respect to any obligation to accord screen credit in the event of an "artwork" use of the title, Artist shall receive credit in accordance with such obligation, if any, as to size, subject to reasonable adjustment if such size of credit is not feasible. All references to "size" however stated, whether as a percentage or otherwise, shall mean height. Except as otherwise specified in this Agreement, the according of credit and all matters relating to Artist's credit, such as size, style of type, placement, color, and other matters, shall be at WDPc's sole discretion. No so-called presentation or production credit shall be deemed granted Artist unless specifically provided in this Agreement, and if so provided shall apply only to the screen, trade paper advertising, and full page New York City and Los Angeles newspaper advertising.  No casual or inadvertent failure to comply with the credit provisions of this Agreement shall constitute a breach of this Agreement.

2.  If Artist is rendering services hereunder as the director of the Picture, subparagraph F.1 shall be subject to the applicable terms of the DGA Agreement.

G.  **ARTIST'S INCAPACITY OR DEFAULT; FORCE MAJEURE**

1.  If Artist is prevented from performing hereunder by reason of Artist's accident, illness, mental or physical disability (herein an "Incapacity"), or if Artist otherwise fails, refuses, or neglects to fully perform Artist's services or if Artist fails, refuses, or neglects to fulfill any of Artist's obligations hereunder (herein a "Default"), then Artist's services and compensation shall be suspended automatically from the date of such Incapacity or Default, unless WDPc elects otherwise. Any statement by Artist that Artist will not comply with Artist's obligations hereunder, or Artist's failure to deliver to WDPc within two (2) business days after WDPc's request a written assurance that Artist will comply with the terms hereof shall constitute an Incapacity or Default, as the case may be, from the date of such statement or failure to deliver said assurance.

2.  If WDPc is prevented, materially hampered, or interrupted in the preparation or production of the Picture or in the operation of WDPc's business by reason of any governmental law, action, inaction, ordinance, regulation, executive or judicial order, judgment or decree, earthquake, flood, fire, epidemic, accident, explosion, casualty, act of God, lockout, strike, labor controversy or threat thereof, riot, civil disturbance, boycott, war or armed conflict (whether or not officially declared), act of a public enemy, embargo, delay of a common carrier, the inability to obtain sufficient material, labor, transportation, power or other essential commodity required

AJH/RED HOOD/RIGHTS/STC

SCREENWRITERS0002425

in the conduct of WDPc's business, or by reason of any other cause of a similar nature; or by reason of the death, incapacity, or Default of the director (unless Artist is the director), director of photography, or principal member of the cast of the Picture; or if for any reason a substantial group of distributors or exhibitors of WDPc's motion pictures cease such distribution or exhibition for one (1) week or more (any of the foregoing referred to herein as an "Event of Force Majeure"), then WDPc may on notice suspend Artist's services and compensation for the duration of any Event of Force Majeure. If, in addition to Artist's services as a director or producer (as the case may be) hereunder, Artist is obligated to furnish Artist's services in another capacity to WDPc, and Artist is prevented from performing Artist's services hereunder as a director or producer (as the case may be) by reason of a strike or other labor controversy, then WDPc may suspend, terminate, or require the continuance of Artist's services to WDPc in said other capacity.

3. This Agreement shall continue in full force during any period of suspension except Artist's services and compensation shall be suspended. WDPc shall not be deemed to have waived any of WDPc's rights hereunder by making any payment to Artist during any period of suspension, and WDPc may apply such payment against any payment thereafter becoming due to Artist. Any period of suspension for an Event of Force Majeure shall be deemed to expire three (3) days after WDPc resumes the preparation or production of the Picture or the operation of WDPc's business in the same manner as before said Event of Force Majeure; any period of suspension for Artist's incapacity shall be deemed to expire three (3) business days, and for Artist's Default seven (7) business days, after Artist reports to WDPc ready, willing, and able to render Artist's services hereunder; provided, however, that WDPc shall compensate Artist as provided herein for any services rendered at WDPc's request during said suspension period. WDPc may, by written notice to Artist, terminate any suspension prior to the time herein specified.

4. WDPc may extend the Term and any option period or other time period specified herein for a period of time equal to the aggregate length of any period of suspension or any part thereof or WDPc may reduce the Term by a period of time equal to the aggregate length of any period of suspension hereunder or any part thereof. Artist's compensation shall be reduced in proportion to any such reduction in the Term and no such extension shall entitle Artist to additional compensation.

5. WDPc may terminate this Agreement by written notice to Artist if Artist's Incapacity continues for a period of seven (7) aggregate days, or, for an Event of Force Majeure or Artist's Default, immediately or at any time, including during any period of suspension. If Artist is terminated for Incapacity, Default, or an Event of Force Majeure, or in the event of Artist's death during the Term, then payment of the noncontingent cash compensation, if any, theretofore earned by Artist shall be payment in full of all compensation payable hereunder; provided, however, that if Artist is terminated for Default, then WDPc may, in addition to filing appropriate actions against Artist, withhold and deduct from compensation or other payments due to Artist hereunder any damage,

loss, or expense (including attorneys fees) caused WDPc by Artist's Default and Artist shall remain liable to WDPc for the full amount of said damage, loss, or expense (including attorneys fees) to the extent such withheld or deducted compensation or other payment is insufficient to satisfy said amount. If WDPc terminates Artist, then Artist shall immediately reimburse WDPc for all paid but unearned sums.

6. During any period of suspension due to Incapacity or Default, Artist shall not render any services in the entertainment industry to others or on Artist's behalf. During any suspension due to an Event of Force Majeure, if Artist is not in Default, Artist may furnish Artist's services to any other person or entity or Artist may render services on Artist's behalf; provided, that WDPc shall have the right to recall Artist to render services hereunder on two (2) days oral or written notice, and Artist shall cause Artist to report to WDPc to render services at the expiration of said two (2) days. If Artist claims that Artist has an Incapacity, then WDPc may have Artist examined by such physician as WDPc may designate, and Artist may have Artist's designated physician present at such examination at Artist's expense. Artist agrees that Artist shall not ingest any alcoholic beverage or drug so as to interfere with Artist's full performance of Artist's services or obligations hereunder. WDPc may invoke its rights under this paragraph G as often as any Event of Force Majeure, Incapacity, or Default occurs.

7. If Artist is rendering services hereunder as the director of the Picture, subparagraphs G.1 through G.6 shall be subject to the applicable terms of the DGA Agreement.

## H.   MISCELLANEOUS PROVISIONS

### 1.   No Obligation

WDPc is not obligated to utilize Artist's services or the Work or any rights granted to WDPc hereunder or to produce or distribute the Picture or any motion picture using the Work, or, if commenced, to continue the production or distribution thereof in any territory.   If and to the extent this Agreement provides circumstances under which Artist shall become entitled to compensation in lieu of WDPc requiring services to be performed by Artist hereunder, WDPc's obligations under this Agreement shall be deemed fully performed by payment to Artist of the noncontingent cash compensation as so provided in this Agreement, subject to WDPc's rights of suspension, extension, and termination.

### 2.   Third Party Agreements

Artist shall not make any commitment or agreement whereby WDPc is required to pay any consideration to any third party without first obtaining WDPc's express written consent.

### 3.   Illegal Acts

Nothing contained in this Agreement shall be construed to require any act contrary to law. To the extent that any term of this Agreement conflicts with any law, then the latter shall prevail, and the conflicting term of this Agreement shall be limited only to the extent necessary to comply with said law. The terms of this Agreement are severable, and the invalidity

AJH/RED HOOD/RIGHTS/STC

SCREENWRITERS0002426

of any term in this Agreement shall not affect the validity of any other term.

#### 4. Agent's Fees; Deductions

Artist authorizes WDPc to deduct and withhold from Artist's compensation any amounts required by any applicable law. WDPc shall not be liable for any compensation payable to any agent of Artist in connection with this Agreement. Artist authorizes WDPc to deduct from Artist's compensation any telephone, meal, or other expenses or fixed indebtedness owed by Artist to WDPc.

#### 5. Assignment

WDPc may sell, grant, license, assign, or otherwise transfer WDPc's rights under this Agreement, and this Agreement shall inure to the benefit of WDPc's successors, licensees, or assigns. No obligation of Artist hereunder may be assigned or delegated to any third party.

#### 6. Team

If more than one employee are parties to this Agreement in producing capacities, then the term "Artist" shall refer to each and all of said employees. Further, said employees represent and warrant that prior to the date hereof each of them agreed that the employees shall collaborate as a team for the producing services to be rendered hereunder, that all compensation specified in this Agreement shall be the combined total for the team, and that the Work and Picture shall result from the team's combined services. All of the agreements, warranties, representations, obligations, and rights granted herein shall be deemed to have been jointly and severally made by each and all such employees and each and all such employees shall be jointly and severally bound thereby. All WDPc's rights are exercisable against each and all of the employees jointly and severally. If WDPc terminates or suspends (or in the event of death of) any employee in the team, then WDPc also may terminate or suspend any other or all of the employees constituting the team and the compensation otherwise due such employees. If WDPc exercises its rights of suspension or termination only as to a particular employee, then the employment and compensation of the other employee shall continue and WDPc shall compensate the employees who continue to render services hereunder for a proportionate amount of the compensation otherwise due until such time, if any, as WDPc exercises its suspension or termination rights with respect to all the employees.

#### 7. Waiver

No waiver by either Artist or WDPc of any failure of the other party to fulfill any term hereof shall be deemed to be a waiver of any preceding or succeeding breach or nonfulfillment of the same or any other term hereof.

#### 8. Headings

Headings contained herein are for reference only and shall not be given any legal effect.

#### 9. Prior Agreements

This Agreement constitutes the entire agreement between WDPc and Artist and supersedes all prior written or oral agreements pertaining hereto, and cannot be modified except by a writing signed by Artist and WDPc. Artist acknowledges that Artist has not executed this Agreement in reliance on any representations not contained herein and has had the opportunity to consult with counsel regarding the Agreement.

#### 10. Choice of Law, Venue, and Service of Process

This Agreement shall be construed and enforced in accordance with the laws of the State of California governing contracts to be wholly performed in California. This Agreement shall be deemed executed at Burbank, California, regardless of the actual place of execution. Nothing in this Agreement shall be construed as creating a third party beneficiary agreement. WDPc may and Artist shall file any court proceeding in connection with this Agreement in an appropriate Federal or State court located in the County of Los Angeles, California. Artist consents that Artist shall be deemed personally served in connection with any court proceeding filed by WDPc upon service by certified mail of the appropriate pleading or order to the address designated for service of notices; provided, however, that Artist also may be served by any other means permitted by law.

#### 11. Rights Cumulative; Limitation of Remedies

(a) Except as limited by subparagraphs H.10 and H.11(b) hereof, each and all of the several rights and remedies provided for in this Agreement shall be cumulative, and no one of them shall be deemed exclusive of the others or of any right or remedy allowed by law or equity.

(b) Artist's sole and exclusive remedy for WDPc's breach, termination, or cancellation of this Agreement or any provision hereof (including any provision pertaining to credit) shall be an action for damages and Artist irrevocably waives any right to equitable or injunctive relief.

#### 12. Further Documents

Artist shall execute, acknowledge, verify, and deliver to WDPc any further documents pertaining to the Work which WDPc may request and in the form WDPc may prescribe; provided, however, that Artist's failure or refusal to do so shall not affect any of WDPc's rights in the Work or Picture. Artist hereby irrevocably appoints WDPc, whose power is coupled with an interest, as Artist's attorney-in-fact to execute any such other documents in Artist's name and on Artist's behalf and to institute and prosecute such proceedings as WDPc may deem expedient to secure, protect, or enforce the rights WDPc is acquiring hereunder. WDPc may sue in its own name or may use the name of Artist, or may join Artist as party plaintiff or defendant in any such suit or proceeding.

#### 13. Date

This Agreement shall be deemed executed as of the date specified in the introductory clause hereof, regardless of the actual date of execution.

#### 14. Music

Artist shall not use any music (or any arrangement or orchestration thereof) in the Picture unless prior written

AJH/RED HOOD/RIGHTS/STC

CONFIDENTIAL

SCREENWRITERS0002427

approval and notice that such material has been cleared for such use has been obtained from WDPc.

### 15. Insurance

WDPc may secure, in WDPc's name or otherwise, and at WDPc's expense, life, health, accident, cast, pre-production and other insurance covering Artist, or Artist and others; and Artist shall not have any right, title or interest in or to such insurance or benefits payable thereunder. Artist shall assist WDPc in procuring such insurance by submitting to usual and customary medical and other examinations, and by signing such applications and other instruments in writing as may be reasonably required by the insurance companies to which application is made for such insurance. In the event any such examination establishes a substantial doubt as to Artist's physical ability to complete Artist's services hereunder or if Artist fails to appear for such examination at the time and place designated by WDPc, WDPc may terminate this Agreement; and, moreover, in the event cast insurance covering Artist cannot be obtained for normal premiums and without substantial exclusions, WDPc may terminate this Agreement. Artist agrees that from the date twenty-one (21) days before the start date until completion of all services required of Artist hereunder, Artist will not ride in any aircraft other than as a passenger on an airliner flown by a United States or major international air carrier maintaining regularly published schedules, or engage in any extra-hazardous activity without WDPc's written consent in each and every case.

### 16. Payments

All payments to be made to Artist hereunder are subject to the full and faithful performance and observance by Artist of Artist's services and the other obligations of Artist hereunder. If for any reason whatever WDPc fails to make any payment as herein provided, then WDPc shall not be deemed in default hereunder unless and until following such failure Artist shall have given WDPc written notice demanding such payment and WDPc shall have failed to make such payment within five (5) business days after WDPc's receipt of said notice. In any event WDPc's liability for any such default and Artist's rights and remedies therefor shall be limited to the recovery of money only, not exceeding the amount of such payment, and in no event shall any of the rights acquired or to be acquired by WDPc hereunder be affected or impaired.

### 17. Agreement

The "Agreement" means the agreement in which reference is made to additional or standard terms for the engagement of Artist in a producing or directing capacity, and identified in the introductory clause hereof, including the within terms and conditions and any other schedules, attachments and exhibits (including the Inducement) thereto.

**END OF STANDARD TERMS AND CONDITIONS**

AJH/RED HOOD/RIGHTS/STC

SCREENWRITERS0002428

# EXHIBIT "DCP"

This Exhibit "DCP" is attached to and made part of the Agreement dated as of January 14, 2000 between WALT DISNEY PICTURES ("WDPc") on the one hand, and ARTHUR LEE ALFRED II ("Alfred") and EZEQUIEL MARTINEZ, JR. ("Martinez") on the other hand, (Alfred and Martinez may be referred to as "Participant") for the services of Participant relating to the motion picture project currently entitled "PRINCESS DIARIES" or such other project(s) or production(s) described therein (the "Picture") and as to which this Exhibit is referenced.

## NOTE:  PLEASE READ CAREFULLY

THIS EXHIBIT "DCP" IS TO BE USED SOLELY FOR THE DEFINITION, COMPUTATION, ACCOUNTING AND PAYMENT (IF ANY, PURSUANT TO THE TERMS HEREOF) OF SPECULATIVE CONTINGENT COMPENSATION AS PROVIDED FOR IN THE AGREEMENT.  WORDS AND TERMS USED IN CONNECTION WITH PARTICIPANT'S CONTINGENT PARTICIPATION, IF ANY, ARE USED SOLELY FOR THE CONVENIENCE OF DRAFTING AND ARE INTENDED TO BE UNDERSTOOD AND APPLIED ONLY AS DEFINED AND USED IN THE AGREEMENT AND EXHIBITS THERETO.  SPECIFICALLY, SAID WORDS AND TERMS AND ALL OTHER DEFINED TERMS HEREIN ARE NOT INTENDED TO CORRESPOND TO ANY CONVENTIONAL UNDERSTANDING OR DICTIONARY DEFINITION OF SUCH WORDS AND TERMS, WHETHER USED IN THE ENTERTAINMENT INDUSTRY OR ANY OTHER INDUSTRY OR BUSINESS. MOREOVER, PARTICIPANT UNDERSTANDS THAT THE WORDS AND TERMS USED HEREIN ARE NOT INTENDED TO CORRESPOND IN ANY WAY TO GENERALLY ACCEPTED ACCOUNTING PRINCIPLES ("GAAP"), OR ANY OTHER MEANINGS THEREOF, WHICH MAY BE ASSOCIATED WITH THE PRACTICES OF ACCOUNTING OR AUDITING. THE PARTIES UNDERSTAND THAT THE FEES AND CHARGES DESCRIBED HEREIN MAY NOT BEAR ANY RELATIONSHIP TO ACTUAL EXPENDITURES INCURRED BY WDPc OR ITS AFFILIATES.  PARTICIPANT ACKNOWLEDGES THAT THERE IS NO GUARANTEE WHATSOEVER THAT ANY SUMS WILL BE GENERATED AND/OR BECOME PAYABLE TO PARTICIPANT IN CONNECTION WITH PARTICIPANT'S CONTINGENT PARTICIPATION AS PROVIDED IN THE AGREEMENT AND DEFINED HEREIN, REGARDLESS OF THE LEVEL OF INCOME, REVENUES, PROFITS AND/OR RECEIPTS, IF ANY, THAT WDPc OR ANY DISTRIBUTOR OR EXHIBITOR REALIZES FROM THE EXPLOITATION OF THE PICTURE.  RATHER, THE PARTIES SPECIFICALLY AGREE THAT PARTICIPANT SHALL BE ENTITLED ONLY TO SUCH SUMS, IF ANY, AS MAY BECOME PAYABLE IN ACCORDANCE WITH THE TERMS HEREOF. PARTICIPANT EXPRESSLY ACKNOWLEDGES THAT THE TERMS OF THE AGREEMENT AND THIS EXHIBIT "DCP" HAVE BEEN SPECIFICALLY NEGOTIATED BY PARTICIPANT'S REPRESENTATIVES AND THAT PARTICIPANT HAS A FULL UNDERSTANDING OF THE TERMS OF THE AGREEMENT AND THIS EXHIBIT "DCP", AND THAT NO REPRESENTATIONS WHATSOEVER HAVE BEEN MADE TO PARTICIPANT TO THE CONTRARY, OTHER THAN THOSE WHICH MAY HAVE BEEN SET FORTH IN WRITING AND EXECUTED BY ALL THE PARTIES TO THE AGREEMENT.

AJH/REDHOOD/RIGHTS/DCP

SCREENWRITERS0002429

## TABLE OF CONTENTS – EXHIBIT "DCP"

I.   APPLICATION OF DEFINED RECEIPTS
     A.   Fees
     B.   Expenses
     C.   Other Participations
     D.   Negative Cost
     E.   Deferments
     F.   Defined Contingent Proceeds

II.  DEFINED RECEIPTS
     A.   Sources
     B.   Defined Receipts Exclusions

III. DISTRIBUTION FEES
     A.   Theatrical Defined Receipts
     B.   Free TV
     C.   Other
     D.   Subdistribution

IV.  DISTRIBUTION COSTS
     A.   Ad and Publicity Costs
     B.   Conversion
     C.   Checking
     D.   Claims
     E.   Collections
     F.   Copyright and Royalties
     G.   Other Versions
     H.   Residuals
     I.   Insurance
     J.   Trade Dues
     K.   Licenses
     L.   Prints
     M.   Taxes
     N.   Transportation

V.   NEGATIVE COSTS
     A.   Cost of Production
     B.   Overhead
     C.   Interest
     D.   Overbudget

VI.  ACCOUNTING
     A.   General
     B.   Books
     C.   Withholdings
     D.   Statements
     E.   Incontestablility
     F.   Address
     G.   Reserves
     H.   Tax Credits
     I.   Creditor-Debtor

VII. MISCELLANEOUS
     A.   No Representation
     B.   Control of Distribution and Marketing
     C.   Sale of all Rights
     D.   Assignment by Participant
     E.   Litigation
     F.   Relationship
     G.   Heading

VIII. DEFINITIONS
     A.   Applicable Distribution Fees
     B.   Conversion
     C.   Film Rental
     D.   Defined Receipts
     E.   Here
     F.   Includes
     G.   Participant
     H.   Person
     I.   WDPc
     J.   Restricted Funds
     K.   Subdistributor
     L.   Territory
     M.   This Agreement

AJH/REDHOOD/RIGHTS/DCP

CONFIDENTIAL

I.   APPLICATION OF DEFINED RECEIPTS

Defined Receipts shall be applied to the following categories on a continuing basis and in the herein listed order of priority.

A.  Fees

WDPc distribution fees per Paragraph III.

B.  Expenses

WDPc distribution costs per Paragraph IV.

C.  Other Participations

Amounts WDPc may be contractually obligated to pay (whether as a deferment [other than those specified in E. below], a defined receipts participation, a defined contingent proceeds participation [or similar participation]), or otherwise, but excluding any sums payable by way of defined contingent proceeds participation (or similar participation) which comes out of the Participant's share of defined contingent proceeds as may be provided in this Agreement) to any person including Participant, but excluding any share of defined contingent proceeds payable to Participant or WDPc hereunder, for rights or services in connection with the Picture, based or dependent on all or any part or percentage of the defined receipts or defined contingent proceeds (whether or not such defined receipts or defined contingent proceeds are defined or computed in the same manner as set forth herein) and which are not included in the computation of negative cost are called participations.   In computing share of Participant hereunder, a participation shall be deductible hereunder (notwithstanding the order of priority in this Paragraph I.) if, when and to the extent that WDPc's obligation to pay it accrues, whether or not such payment has then become due or been made and regardless of whether WDPc has recovered its negative cost.

D.  Negative Cost

Negative cost of the Picture per Paragraph V provided that the amount deemed interest herein shall be recoupable before negative cost.

E.  Deferments

All amounts payable pursuant to a contract approved in writing by WDPc to any person entitled to same out of first defined contingent proceeds or immediately prior to there being such defined contingent proceeds, unless there is a different order of payment specified under this Agreement.

F.  Defined Contingent Proceeds

Defined contingent proceeds are the defined receipts, if any, remaining after deduction of items specified in Paragraphs I.A through I.E inclusive.

II.   DEFINED RECEIPTS

A.  Sources

For accounting purposes, Defined Receipts means all receipts received by WDPc on behalf of the Picture as:

(1)  WDPc Film Rental.

(2)  Film rental from Subdistributors, subject to Paragraph III.D.

(3)  Receipts from Flat Sale(s).

(4)  Receipts (less all costs) from copyright infringers.

(5)  Receipts from theater box office operated by WDPc (such as in four-wall or road show exhibitions) to the extent receipts from all such engagements taken as a whole exceed costs incurred for all such engagements.

(6)  Subsidies or prizes provided that if use to such amounts is a condition to receipt thereof, such amount is not included until actually used.

(7)  Royalties as more fully set forth in Schedules A (Music), B (Soundtrack Records, Merchandising/Publishing), and C (Video Devices), which are attached hereto and incorporated herein by this reference.

If the respective costs relating to Paragraph II.A(4), II.A(5) or Paragraph 2 of Schedule B, and applicable distribution fees, if any, exceed receipts from Paragraph II.A(4), II.A(5) or Paragraph 2 of Schedule B, respectively, such excess costs shall be deductible as a distribution cost.

B.  Defined Receipts Exclusions

Notwithstanding anything in this Agreement to the contrary, the following are not included in Defined Receipts:

(1)  Box office receipts of any theater or other exhibitors (except as specified in Paragraph II.A(5) hereof); and receipts of: broadcasters and other transmitters including, but not limited to, radio and television (TV), e.g., both "free" and "pay"; book or music publishers; wholesale or retail distributors, licensors or sellers of audio visual cassettes, video discs or any similar devices hereafter devised; record or tape producers, distributors or stores; merchandisers; or any other similar person; whether or not any or all such foregoing excluded persons are owned, operated or controlled by WDPc.

(2)  Amounts collected as taxes or for payment of taxes such as admission, sales, use or value added taxes.

(3)  Film rental contributed to charitable organizations.

(4)  Receipts from remakes, sequels, TV series or other derivative uses of the Picture or any element thereof other than as specified in Paragraph II.A(7) hereof.

(5)  Salvage value or receipts derived from print stocks, stock footage, stills, props, sets, wardrobe, or other items included in negative cost.   Notwithstanding the foregoing, any sums received from the sale of cars purchased specifically in connection with the Picture and sold after completion of photography shall be included in the Defined Receipts of the Picture without a distribution fee.

AJH/REDHOOD/RIGHTS/DCP

SCREENWRITERS0002431

III. DISTRIBUTION FEES

WDPc shall retain for its own account as its distribution fee for the Picture the following percentages of Defined Receipts:

A. Theatrical Defined Receipts

30% U.S. and Canada

35% U.K.

40% Foreign

15% Flat Sales

B. Free TV

25% U.S. Network (a network is defined to consist of 100 or more interconnected over-the-air broadcast TV stations, and if less than 100 such TV stations it shall be deemed syndication).

35% U.S. Syndication and Canada

40% Foreign

C. Other

The fee set forth in Paragraph III.A for the Territory shall be applicable to other receipts including but not limited to receipts from Supplemental Markets, except no such fee shall be applied against infringement recoveries or subsidies included in Defined Receipts.

D. Subdistribution

With respect to distribution through Subdistributors the following alternative methods of calculation shall apply to the receipts derived therefrom and the distribution costs and fees relating thereto, whichever alternative WDPc elects from time to time as to each such Subdistributor. Either: (a) all such receipts received and earned by the Subdistributor, and all distribution costs of the Subdistributor relating to the Picture shall be treated as though such receipts were WDPc Film Rental and such distribution costs were distribution costs of WDPc, and the applicable WDPc distribution fee shall include the Subdistributor's distribution fee; or (b) WDPc's share of such receipts actually received by WDPc from such Subdistributor shall be included in WDPc Film Rental upon which share WDPc shall be entitled to the applicable WDPc distribution fee, provided, however, in no event shall the combined distribution fee under alternative (b) to WDPc and the respective Subdistributor exceed 50% of such receipts to such Subdistributor.

IV. DISTRIBUTION COSTS

WDPc shall be entitled to deduct and retain for its own account, from the Defined Receipts remaining after the continuing deduction of its distribution fees, the aggregate of all sums paid or advanced, and all costs, expenses and charges incurred by WDPc, directly or indirectly, in connection with the distribution, exhibition and exploitation of the Picture, which are not included in negative cost (and all such deductible amounts, and such amounts incurred by any Subdistributor as to which Paragraph III.D(a) applies, are herein collectively called "distribution costs"), including any such sums, costs, expenses and charges for or in connection with any of the following:

A. Ad and Publicity Costs

Advertising, promoting, exploiting and publicizing collectively "ad" or "advertising"), including but not limited to the cost of ad space, time, physical material used for production of or broadcasting ads and commercials, shipping, integrating and monitoring of ads and commercials, preparation and distribution of ad and promotional material, salaries, fees, and travel and business expenses of WDPc advertising and marketing executives in connection with the Picture, personalities connected to the Picture, and publicists, press representatives and field exploitation persons appropriately allocated to the Picture, and regardless if incurred by or paid to WDPc employees or other persons, previews, screenings, premieres, entertainment of press and personalities, research and tests of ad concepts and effectiveness, press books and kits, trailers, stills and other accessories and publicity releases, advertising allowances to theatres or other exhibitors regardless of how effected, commercial tie ups, other advertising and publicity costs whether directed to the consumer or the exhibitor and institutional costs, and an amount equal to 10% of all such costs under this Paragraph A.

B. Conversion

Costs, discounts and expenses incurred in obtaining remittances of receipts to the U.S., including costs of contesting the imposition of restrictions which result in restricted funds.

C. Checking

Checking theater attendance and receipts, and investigating unauthorized usage of the Picture, whether payable to or incurred by WDPc employees or other persons.

D. Claims

The gross amount paid for the settlement of any claims (or on account of any judgment or decree in any litigation relating to any claims), such as for infringement, unfair competition, violation of any right of privacy, right of publicity, defamation or breach of contract, or arising out of other matters in connection with the Picture (such as the literary, dramatic or musical material on which the Picture is based), or the distribution, exploitation or exhibition thereof, including all expenses, court costs and attorneys' fees in connection with any such claims or litigation, or in connection with the investigation, assertion, prosecution or defense of any other claims or litigation relating to the Picture or its distribution, exhibition or exploitation.

E. Collections

Costs incurred in connection with collection of Defined Receipts including attorney and auditor fees and costs, and liability incurred by WDPc in connection therewith.

F. Copyright and Royalties

Copyright, trademark and patent costs in connection with the Picture and protection thereof.

AJH/REDHOOD/RIGHTS/DCP

SCREENWRITERS0002432

Royalties payable to manufacturers of sound recording and other reproducing equipment, to the extent not included in negative cost.

### G. Other Versions

To make, deliver and use foreign or TV or any other media versions of the Picture, or titles thereof, or to make changes required by censorship and rating considerations, to the extent not included in negative cost.

### H. Residuals

All costs incurred and payments required under applicable collective bargaining agreements by reason of or as a condition to use or exhibition of the Picture on television or in any other media. To the extent such payments are made to or on behalf of Participant and Participant is thereafter entitled to defined contingent proceeds, such payments shall be deemed a credit against such defined contingent proceeds to the extent not prohibited by the applicable collective bargaining agreement. Any payments made to Participant hereunder prior to payment of residuals, are deemed a credit against such residuals to the extent not prohibited by the applicable collective bargaining agreement. In neither event may credit, when applicable, be deducted a second time against Participant.

### I. Insurance

All costs for insurance coverage of any and all risks of loss with respect to the Picture and any components thereof. WDPc may elect to self-insure as to any items of risk and charge as an insurance cost an amount equal to the insurance premium WDPc would otherwise have paid for such insurance, and WDPc shall, in its sole discretion, determine whether or not to obtain or maintain any insurance or self-insure any items of risk.

### J. Trade Dues

Allocable portion of dues, assessments, including legal fees and costs and contributions to the MPAA, AMPTP or similarly constituted or substitute persons throughout the world (including legal fees to counsel respecting antitrust matters).

### K. Licenses

All licenses, duties, fees or any other amounts required to permit use of the Picture.

### L. Prints

Prints of the Picture including lab, labor, service and materials, titles, discs, dubbing, subtitling, gauge reductions, inspection, repair, shipping, storage, delivery and insurance thereon.

### M. Taxes

Taxes and governmental fees of any nature and however characterized including costs of contesting, interest and penalties thereon (other than WDPc or subdistributor corporate income taxes), imposed directly or indirectly on the Picture or any part thereof or on the Defined Receipts or the license, distribution or exhibition of the Picture, or collection, conversion or remittance of monies connected therewith.

### N. Transportation

Transportation, shipping, reels and containers, and all other related charges.

## V. NEGATIVE COST

### A. Cost of Production

(1) The cost of production (or direct cost) is the aggregate of all costs, charges, claims and expenses paid or incurred by WDPc in connection with the development, production and delivery of the Picture and its trailers, including payments required to be made at a later date following production of the Picture, determined in the customary manner WDPc accounts for production costs at the time the Picture is produced. WDPc's facilities shall be used to the extent they reasonably meet production requirements, and all charges in connection therewith shall be included in the cost of production in accordance with the then current WDPc facilities charge schedule.

(2) Participations in Defined Receipts shall be deemed included in cost of production regardless of whether the obligation is fixed or dependent upon Defined Receipts; provided that participations in Defined Receipts shall be included in the cost of production only to the extent WDPc's obligation to pay said participation accrues before any defined contingent proceeds pursuant hereto have been derived.

### B. Overhead

Overhead of 15% of the aggregate of amounts determined pursuant to Subparagraphs V.A(1) and V.A(2). The determination of what items are Subparagraph V.A(1) charges and what items are within overhead charge shall be made in the same manner WDPc customarily determines same. WDPc overhead charge shall accrue and be included in the cost of production concurrently with the incurring of the respective items of direct cost on the Picture. Should WDPc's standard overhead charge for all motion pictures produced by WDPc exceed 15%, then said overhead charge shall increase accordingly.

### C. Interest

Interest on aggregate amounts determined pursuant to Subparagraphs V.A and V.B above shall be deemed to be at an annual rate equal to 125% of U.S. prime rate of the Bank of America, as the same may vary from time to time, such interest commencing from respective dates on which amounts chargeable to the cost of production are incurred or paid and continuing until the middle of an accounting period with respect to which said amounts are recouped as herein provided.

### D. Overbudget

An additional amount by which the cost of production exceeds the approved Picture budget by the lower of $300,000 or 10% of the budget shall be

AJH/REDHOOD/RIGHTS/DCP

SCREENWRITERS0002433

deemed included in cost of production, but such excess overbudget amount shall not itself bear overhead or interest. Excess costs incurred due to force majeure, changes requested or approved by WDPc as confirmed by a Business Affairs executive of WDPc in writing, and retroactive increases to scale personnel under collective bargaining agreements are excluded from overbudget computation.

## VI. ACCOUNTING

### A. General

WDPc shall render statements to Participant showing in summary form the appropriate calculations relating to treatment of Defined Receipts. Such statements may be on billing or collection basis as WDPc may elect from time to time. Whenever Defined Receipts are derived or applicable costs incurred in connection with transactions involving the Picture and other motion pictures, WDPc shall allocate the same based on its reasonable opinion and with respect to trailers and shorts utilized with the Picture outside of the U.S. and Canada, 3% of such receipts for trailers and 5% thereof for shorts shall be conclusively deemed reasonable with respect thereto.

### B. Books

WDPc shall keep books of account at its Burbank office with respect to the distribution of the Picture. Said books, to the extent they have not become incontestable or have not been previously examined, may be examined at Participant's expense once in each 12 month period (the first of which commences upon issuance of the first statement hereunder) by a national firm of reputable CPA's, the selection of which is subject to WDPc's approval not to be unreasonably withheld. No such examination may continue beyond a period of 30 days after commencement thereof. A copy of the report of such examination shall be delivered to WDPc at such time as it is made available to Participant. Notwithstanding anything contained in this Agreement, Participant shall have no right to inspect or copy any tax return of WDPc or any Subdistributor, or any affiliate thereof, or require the production of any such tax return or any information contained therein.

### C. Withholdings

All amounts payable to Participant under this Agreement shall be subject to all laws and regulations now or hereafter in existence requiring the reporting, deduction or withholding of payments for income or other taxes payable by or assessable against Participant. WDPc shall have the right to make such deductions and withholdings, and the payment or reporting thereof to the governmental agency concerned in connection with WDPc's good faith determination of such laws and regulations shall constitute payment hereunder to Participant, and WDPc shall not be liable to Participant for the making of such reports, deductions and/or withholdings or the payment thereof to the governmental agency concerned. In any such event, Participant shall make and prosecute any and all claims which it may have

(and which it desires to make and prosecute) with respect to the same directly with the governmental agency having jurisdiction thereof.

### D. Statements

WDPc shall give Participant quarterly statements relating to the distribution of the Picture for the first two years after the date established by WDPc and reflected in its records in its usual fashion as the date of first general release of the Picture in the U.S. After expiration of such period, statements shall be given semiannually for the next two years, and then annually (if any compensation is payable to Participant) hereunder or if none due, then on Participant's written request, provided such request is not effective unless made at least one year after the last such request or statement. Such statements shall be for the applicable accounting period and be given within 90 days thereafter and accompanied with payment of the amount, if any, shown due Participant. The right of Participant to receive statements hereunder shall terminate if the Picture has been made available for U.S. TV syndication and the first statement thereafter issued shows that more than $500,000 in Defined Receipts would be needed before Participant would be entitled to receive defined contingent proceeds. If the Picture is generally reissued in the U.S. theatrically, then WDPc shall resume quarterly statements for one year from the date of such reissue.

### E. Incontestability

Statements shall be subject to correction or amendment at any time. WDPc shall keep the books of account referred to in Subparagraph VI.B above for at least 24 months after the last transaction reflected in a statement for the first time. Each statement shall be deemed conclusively correct and binding on Participant as to the transactions reflected therein for the first time on the expiration of a period of 24 months after the date sent. The inclusion of any item from a prior statement on a subsequent statement shall not render such prior-appearing item contestable or recommence the running of the applicable 24 month period with respect thereto. If Participant serves written notice on WDPc within the applicable 24 month period, objecting in specific detail to particular items and stating the nature of the objection, then insofar as such specified items are concerned, such statements shall not be deemed conclusively correct and binding. If Participant's objections are not resolved amicably, Participant may maintain or institute an action with respect to an objection raised and not resolved amicably if commenced before the end of 6 months after the expiration of said 24 month period or prior to the expiration of the period of the applicable statute of limitations established by law as to such transactions or items, whichever first occurs. WDPc's books of account and all supporting documentation need not be retained and may be destroyed after the expiration of said 24 month period unless Participant has duly objected prior thereto and instituted an action as herein provided.

AJH/REDHOOD/RIGHTS/DCP

CONFIDENTIAL

SCREENWRITERS0002434

F. Address

All statements shall be deemed sent when mailed to Participant at the then current address for notices under this Agreement.

G. Reserves

WDPc shall have the right to establish appropriate reserves and adjust same from time to time for any distribution costs, uncollected accounts or other items which WDPc reasonably anticipates will be deductible from Defined Receipts hereunder. WDPc agrees to liquidate any reserves hereunder within a reasonable period of time.

H. Tax Credits

WDPc shall have the sole right to take the full amount of whatever credits (including without limitation investment tax credits), deductions or other benefits that may be available to them throughout the world, with respect to taxes and excises payable with respect to the Picture or any activity related thereto, without any accounting, credit or payment obligation to Participant.

I. Creditor-Debtor

There is a creditor-debtor relationship between WDPc and Participant with respect to payment of amounts due Participant hereunder and nothing contained herein shall be construed to create an agency, trust or fiduciary obligation with respect to such amount or to prevent WDPc from commingling any such amounts with any other funds or give Participant a lien on the Picture and Participant waives any right to claim to the contrary. WDPc's obligation to pay Participant hereunder shall not bear interest nor entitle Participant to gains which may accrue to such funds prior to payment to Participant.

VII. MISCELLANEOUS

A. No Representation

WDPc has no obligation to distribute the Picture and if it does so, Participant acknowledges that WDPc has not made any representations with respect to the likelihood or amount of Defined Receipts, deferments, or defined contingent proceeds, if any, which will or may be derived from distribution of the Picture.

B. Control of Distribution and Marketing

(1)   As between WDPc and Participant, WDPc shall have exclusive and perpetual control of the distribution, marketing, advertising, publicizing, exploitation, sale or other disposition of the Picture and may distribute, or withhold or withdraw the Picture from distribution at its sole discretion with respect to one or more countries or media. WDPc may distribute the Picture with other pictures whether or not WDPc has any ownership interest or participation in such other pictures.

(2)   WDPc owns all rights to the Picture and its Defined Receipts and defined contingent proceeds including the right to hypothecate them

and Participant shall have no right, title or interest therein except nothing specified in this Subparagraph VII.B(2) shall release WDPc from making payments to Participant to the extent required hereunder.

(3)   WDPc can make percentage or flat sales and grant others rights to distribute the Picture on terms determined by WDPc, and may make and cancel contracts, adjust and settle disputes, and give allowances and rebates to distributors, licensees, exhibitors or other persons whether or not any such entity is owned, operated or controlled by WDPc.

(4)   WDPc shall have complete discretion in determining the extent, if any, to which it will audit or check payments to WDPc or press claims for amounts which, if collected, would become Defined Receipts.

C. Sales of All Rights

(1)   If WDPc sells all its right, title and interest in the Picture (other than through merger or consolidation), Participant may elect that:

(a)   The net sum received by WDPc shall constitute Defined Receipts hereunder but further income of purchaser would not be included in Defined Receipts, or,

(b)   The sum received by WDPc shall not be included in Defined Receipts and all receipts and expenses (other than purchase price paid WDPc) of the purchaser relating to the Picture shall be treated for purposes of accounting to Participant, as though they were receipts and expenses of WDPc, provided that upon assumption by purchaser of such obligation, the sale shall be deemed a novation and WDPc shall thereafter have no obligation of any kind to Participant.

(2)   Such election shall be made within 7 days after WDPc notifies Participant in writing that it proposes to make such sale and identifies the purchaser and purchase price. Participant shall be deemed to have elected alternative (a) above, unless WDPc receives written notice of Participant's election of alternative (b) above within 7 days after issuance of WDPc's notice. If a price change subsequently occurs and it is substantial and adversely affects the elected alternative, the above procedure is to be repeated.

D. Assignment by Participant

Participant may assign Participant's right to receive percentage compensation hereunder, at any time after the release of the Picture. However, WDPc shall only be obligated to honor one such assignment, and then only if it is an assignment of all (as distinguished from part) of Participant's right to receive such percentage compensation thereafter. Nothing herein contained shall be deemed to preclude Participant from making a partial assignment or to preclude the first assignee (of all of Participant's said right) from making a subsequent complete or partial assignment; however, WDPc shall not be obligated to

AJH/REDHOOD/RIGHTS/DCP

CONFIDENTIAL

pay in accordance with any such partial or subsequent assignment unless a single person is designated as a disbursing agent, to whom WDPc may make all such payments thereafter, regardless of any further assignment(s). WDPc's obligation to pay in accordance with any such assignment, or designation of a disbursing agent, shall be further conditioned on WDPc's receipt of written notice thereof, in form satisfactory to WDPc. WDPc's payment in accordance with any such assignment or designation shall be deemed to be the equivalent of payment to Participant hereunder. Participant's right to examine WDPc's books of account shall not be assignable without WDPc's prior written consent. WDPc shall have the right of first refusal with respect to any proposed assignment of Participant's right to receive percentage compensation hereunder and Participant shall notify WDPc of terms of any such proposed assignment and WDPc shall have 7 days within which to elect to accept such terms. Participant shall make no change in said terms adverse to Participant's own interest without giving WDPc the opportunity to accept such other terms. The preceding two sentences shall not apply to family gifts or transfers by operation of law.

### E. Litigation

Participant waives any right which Participant may have at law or equity to revoke, terminate, diminish or enjoin any rights granted or acquired by WDPc hereunder by reason of a claim which Participant may assert for non-payment of any monies claimed due and payable hereunder, it being agreed that Participant shall be limited to an action at law for any such monies granted.

### F. Relationship

Nothing herein contained shall be deemed to create a third party beneficiary agreement, nor a partnership or joint venture between WDPc and Participant or make Participant WDPc's agent or create a relationship between WDPc and Participant other than creditor-debtor.

### G. Headings

Headings are for convenience only and are of no effect in construing the contents of this Agreement.

## VIII. DEFINITIONS

### A. Applicable Distribution Fees

The following applies for purposes of determining distribution fees under Paragraph III hereof:

#### (1) Theatrical

Theatrical is exhibition in theatres, airlines, other transportation media, armed forces, V.A., Red Cross and similar institutional use.

#### (2) Free TV

Free TV is as commonly understood in the Industry.

#### (3) "Flat Sale"

Flat Sale is a license for theatrical exhibition of the Picture for a period in excess of two years for a territory or area in consideration of the payment of a specified amount not fixed by a percentage of receipts of such person. "Flat Sale" as used herein shall not apply to the customary manner in which pictures are licensed to certain exhibitors in the U.S. and Canada.

#### (4) Supplemental Markets

Supplemental Markets is exhibition in pay, cable and subscription television, as well as audio-visual cassettes, discs and similar devices for transmission of audio and visual images, whether now known or hereafter devised.

### B. Conversion

The conversion of foreign currency into U.S. dollars shall be made at the spot rate of exchange applicable when remittances accountable hereunder are received by WDPc in the U.S. during the applicable accounting period.

### C. Film Rental

Amounts received by WDPc for the license or privilege to exhibit the Picture in any and all motion picture media including theatrical, free TV, non-theatrical exhibitions, cable or pay TV, videocassette or other audio-visual device and any other motion picture media, whether now known or hereafter devised, but excluding amounts received from flat sales, advance payments or security deposits (unless earned by exhibition or broadcast or forfeited), and refunds, rebates or adjustments granted other persons by WDPc.

### D. Defined Receipts

Amounts are not deemed Defined Receipts or received unless paid in U.S. dollars in the U.S. or payable in a foreign currency which is not restricted and could be remitted in U.S. dollars to the U.S. if WDPc in the exercise of reasonable discretion could do so. Defined Receipts from armed forces exhibitions shall be subject to the applicable distribution fees in Paragraph III.A hereof with respect to the territories where such exhibitions shall occur. Defined Receipts from airlines and other transportation media exhibitions shall be subject to the applicable distribution fees in Paragraph III.A hereof with respect to the territories where the agreements relating to such exhibition are entered into.

### E. Here

"Here" as prefix in words such as "hereof" and "hereunder" refers to this Exhibit "DCP".

### F. Includes

"Includes" (and equivalents "included" or "including") and "such as", are illustrative and not limitative.

### G. Participant

Person who has entered into this Agreement with WDPc.

AJH/REDHOOD/RIGHTS/DCP

CONFIDENTIAL

H. Person

Any corporation, partnership or other business entity or natural person.

I. WDPc

For the purposes hereof, "WDPc" means Walt Disney Pictures and the owned or controlled subsidiaries of The Walt Disney Company engaged in the business of distributing motion pictures for exhibition in theatres and for broadcasting over television stations but shall not include: any person distributing the Picture for purposes other than exhibition in theatres or for broadcasting by television stations; exhibitors or others who may actually exhibit the Picture to the public; radio or television broadcasters; cable and other pay television operators, and persons transmitting the Picture to such operators by any method; wholesale distributors or retailers of video discs, videocassettes or similar devices; book or music publishers; phonograph record producers or distributors; merchandisers; or any other similar person, whether or not any of the foregoing excluded persons are owned, operated or controlled by WDPc.

J. Restricted Funds

(1) Amounts which would otherwise be included in Defined Receipts but which are not because they are payable in foreign currency and not received pursuant hereto due to remittance restrictions, are restricted. Such restricted amounts shall not be deemed Defined Receipts hereunder nor accounted for hereunder unless and until they have been received by WDPc in U.S. dollars in the U.S. or unless used by WDPc in the territory in which held.

(2) As and when percentage compensation becomes payable to Participant under this Agreement, Participant may notify WDPc in writing that Participant elects to require settlement of Participant's share of restricted funds remaining in any country outside the U.S. in the currency of such country. Such notice shall also include a designation of a bank or other representative in such country, to whom payment may be made for Participant's account. Such payment shall be made to such representative as and when Participant has obtained any required permission. Such payment shall be made at Participant's expense and shall, to the extent thereof, be deemed the equivalent of the inclusion in Defined Receipts of the restricted funds of which such payment represents Participant's share, and shall satisfy WDPc's obligations to Participant with respect to such restricted funds and Participant's share thereof.

(3) On Participant's written request, WDPc shall report to Participant the amount of restricted funds (if any) which under this Paragraph VIII.J have not yet been included in Defined Receipts as of the closing date of the most recent statement which has then been furnished to Participant under Paragraph VI.D hereof.

K. Subdistributor

A Subdistributor is a person other than WDPc licensed by WDPc for the distribution of the Picture in a specific area other than the U.S. Territory, with an obligation to report Defined Receipts and expenses to WDPc regardless of whether based on a percentage or fixed basis. If and to the extent Paragraph III.D(a) applies, then the same shall be subject to the provisions of Paragraph VIII.J relating to restricted funds, and the licensing or other arrangement between WDPc and each such Subdistributor shall be of no relevance hereunder.

L. Territory

This is:

(1) U.S. is the United States, together with any other countries which are licensed by or through the distributing organization(s) servicing the U.S. for WDPc.

(2) Canada is Canada and any other countries licensed by or through WDPc's Canadian distribution organization or WDPc's Subdistributor for Canada.

(3) The United Kingdom (U.K.) is United Kingdom of Great Britain and Northern Ireland, Republic of Ireland, Channel Islands, Isle of Man, Gibraltar, Malta, and ships and aircraft flying British flag, and British camps wherever situated.

(4) Foreign is all countries (other than U.S., U.K. and Canada) and any other areas in the universe.

(5) All foregoing references to countries include their territories and possessions, and political subdivisions.

M. This Agreement

This Agreement is the agreement to which this exhibit is attached, this exhibit, and any other attached amendments, exhibits and schedules.

AJH/REDHOOD/RIGHTS/DCP

## SCHEDULE "A"
### REFERRED TO IN PARAGRAPH I.A(7) OF EXHIBIT "DCP"

As to original music and/or lyrics written specifically for and synchronized in the Picture as generally released (the "Music"), and with respect to which WDPc or a wholly-owned subsidiary of WDPc (collectively referred to herein as "Company") shall have acquired the right to administer the music publishing; then, if Participant does not receive a share of publishing income (other than by reason of this Schedule "A"), a sixteen and two-thirds percent (16-2/3%) of the Net Publishing Income shall be included in the Defined Receipts of the Picture, without the application of distribution fees.  "Net Publishing Income", as used herein, shall mean the "aggregate fees" (as that term is defined below) less the following in the following order:

(i)      Ten Percent (10%) of such aggregate fees, as and for an administration fee to Company;

(ii)     Royalties or other monies payable by Company to the composer(s) and/or lyricist(s) of the Music;

(iii)    All additional shares of such aggregate fees payable by Company to such composer(s), lyricist(s) and/or any other third party co publishers, administrators or other participants;

(iv)     Collection of other fees customarily and actually charged by The Harry Fox Agency, Inc., or any other collection agent which may be used by the Company;

(v)      Copyright registration fees and the costs of transcribing for lead sheets; and

(vi)     All other administrative and exploitative expenses incurred with respect to the Music, including, without limitation, the costs of producing demonstration records, advertising and promotion expenses, costs or amounts payable to third-party publishers, co-publishers, administrators, publishing participants, subpublishers, licensees, trustees or collection agents, attorneys' and accountants' fees directly related to the Music, and damages and expenses incurred by reason of infringement claims, but excluding rents, overhead, salaries and other similar general expenses.

For the purposes of the foregoing computation, "aggregate fees" shall mean monies actually received by Company for its own account (i.e., net of any amounts paid directly to or retained by any third party who has any rights to such income) in the United States in United States currency, for mechanical reproductions and printed copies of the Music, and from performing rights societies with respect to the Music.  Excluded from such "aggregate fees" shall be any advance, guarantee or minimum royalty payment received by Company in connection with any sub-publishing, collection, licensing or other agreement, unless such payment is solely and specifically attributable to the Music, or until (and to the extent) earnings have been credited thereagainst in reports to Company.

**WALT DISNEY PICTURES**
**MUSIC PUBLISHING**
**SCHEDULE "A" TO EXHIBIT "DCP"**

AJH/REDHOOD/RIGHTS/DCP

**SCHEDULE "B"**
**REFERRED TO IN PARAGRAPH II.A(7) OF EXHIBIT "DCP"**

1.    <u>SOUNDTRACK RECORDS</u>.  If Participant (other than by reason of this Schedule "B") is not entitled to receive any royalties in respect of "phonorecords" (as that term is defined in the U.S. Copyright Act of 1976, 17 U.S.C. Sections 101, et. seq.) derived from the soundtrack of the Picture, then, if WDPc shall have all rights to the use and exploitation of the soundtrack of the Picture in phonorecords, and in the event that WDPc causes a soundtrack album of the Picture (the "LP") to be distributed in phonorecord form (which WDPc is in no way obligated to do), WDPc agrees that the following royalties shall be included in Defined Receipts of the Picture:

Either WDPc's net royalty (after deduction of all third party royalties; the "Net LP Royalty") derived from sales of the LP, or (if the LP is distributed by an affiliate of WDPc) a royalty of 2-1/2% of 90% of the suggested retail price for United States normal, top line, full price, retail net sales of such LP, and a royalty for all other sales reduced in the same proportion as the overall royalty payable under the agreement between WDPc and the distributor of such LP (the "Distributor") is reduced for the sales involved.  All other aspects of said royalty (including, without limitation, packaging deductions, free goods, reserves, etc.) shall be defined, computed, reduced and paid in the same manner and on the same basis as is the overall royalty under the agreement between WDPc and the Distributor.  In either case said royalties shall be included only in respect of sales occurring after the recoupment therefrom of a pro-rata share of:  (a) all recording costs of the selections from the Picture embodied in the LP; (b) any re-recording costs of selections in the Picture which are re-recorded for the LP; and (c) all costs of converting the selections in the Picture from motion picture recordings to phonograph record use (including, without limitation, re-recording costs, reuse fees, editing, sweetening, etc.).  The pro-rata share of said costs which is recoupable shall be a fraction thereof in which the numerator is either the Net LP Royalty or 2-1/2 (as applicable), and in which the denominator is the aggregate royalties payable (or accruable against advances or other charges) by WDPc in respect of the LP (including, without limitation, royalties payable to artists, producers, record companies, film personnel and music supervisors, the royalty payable pursuant to this Schedule "B", etc.).  Notwithstanding the foregoing, no royalties shall be included hereunder for any so-called "storyteller" or "read-along" phonorecords or for any phonorecords embodied in other merchandise.

2.    <u>MERCHANDISING/PUBLISHING</u>.  If Participant does not otherwise share in receipts from this source, then:

(A)    With respect to items which are sold by a licensee of WDPc or licensee of a WDPc Affiliate, the royalties WDPc (or WDPc Affiliate, if applicable) receives from the exercise of merchandising (including interactive games and other products and services) and book publication rights (including children's storytelling recordings, as distinguished from soundtrack records, but excluding souvenir programs and similar publications) shall be included in Defined Receipts of the Picture after first deducting (i) WDPc's distribution fee of fifty percent (50%) (sixty-five percent [65%] for such receipts derived outside the U.S.); and (ii) out-of-pocket costs and royalties to third parties; or

(B)    With respect to items of merchandise (including interactive games and other products and services) which WDPc or a WDPc Affiliate purchases, manufactures or otherwise acquires for resale at the wholesale or retail level by WDPc or a WDPc Affiliate, at WDPc's election either:  (i)  an amount equal to seven (7%) of the wholesale price of such items sold by WDPc or WDPc Affiliate at the wholesale level (less a reasonable allowance for returns); or (ii)  an amount equal to seven percent (7%) of fifty percent (50%) of the gross retail revenues of such items sold by WDPc or WDPc Affiliate at the retail level (less a reasonable allowance for returns); shall be included in Defined Receipts of the Picture after first deducting (a) WDPc's distribution fee of fifty percent (50%) (sixty-five percent [65%] for such receipts derived outside the U.S.) inclusive of subdistributor fees (but WDPc's distribution fee shall be fifteen percent (15%) with respect to any book novel licensed by WDPc based on the Picture, plus subdistributor's fees with respect thereto); and (b)  out-of pocket costs and royalties to third parties.

In no event shall any items of merchandise be treated as falling under both provisions (A) or (B) above.

**WALT DISNEY PICTURES**
**SOUNDTRACK RECORDS/MERCHANDISING/PUBLISHING**
**SCHEDULE "B" TO EXHIBIT "DCP"**

AJH/REDHOOD/RIGHTS/DCP

CONFIDENTIAL

**SCHEDULE "C"**
**REFERRED TO IN PARAGRAPH II.A(7) OF EXHIBIT "DCP"**


      All royalties received by WDPc from and as accounted thereto by any third party from the manufacture and/or distribution of audio-visual cassettes, video discs and all electronic and/or optical storage and/or transmission formats, any analog or digital reproductions, or any similar device and/or format embodying the Picture now known or hereafter devised ("Video Devices"), less royalties payable to third parties, shall be included in the Defined Receipts. To the extent WDPc grants to its subsidiary or affiliated company the right to manufacture and distribute such Video Devices, then there shall be included in the Defined Receipts of the Picture a royalty in an amount equal to 20% of the sums actually received by such subsidiary or affiliated company (less taxes, credits and returns) from its distribution thereof by virtue of the aforesaid grant of such rights.

**WALT DISNEY PICTURES**
**VIDEO DEVICES**
**SCHEDULE "C" TO EXHIBIT "DCP"**

AJH/REDHOOD/RIGHTS/DCP

CONFIDENTIAL

**SCHEDULE "D"**
**REFERRED TO IN PARAGRAPH VII.B OF EXHIBIT "DCP"**


WDPc, or its assignees, may in their sole discretion license pay television rights to the Picture exclusively to The Disney Channel upon financial terms consistent with prices generally paid by The Disney Channel for other similar motion pictures.

**WALT DISNEY PICTURES**
**CONTROL OF DISTRIBUTION AND MARKETING**
**SCHEDULE "D" TO EXHIBIT "DCP"**

AJH/REDHOOD/RIGHTS/DCP

CONFIDENTIAL