KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
JORDAN D. SEGALL (State Bar No. 281102)
jordan.segall@mto.com
ROSE L. EHLER (State Bar No. 296523)
rose.ehler@mto.com
JULIANA M. YEE (State Bar No. 304564)
juliana.yee@mto.com
ROBIN S. GRAY (State Bar No. 316544)
robin.gray@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

*Attorneys for Defendant Walt Disney Pictures*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR LEE ALFRED, II et al., | Case No. 2:18-CV-08074-CBM-ASx |
| Plaintiffs, | **DISCOVERY MOTION** |
| v. | **JOINT STIPULATION REGARDING DEFENDANT'S MOTION TO COMPEL RESPONSES TO CONTENTION INTERROGATORIES** |
| WALT DISNEY PICTURES, | |
| Defendant, | Judge:   Hon. Alka Sagar |
| | Hearing Date:   April 26, 2022 |
| | Time:   10:00 a.m. |
| | Place:   Roybal Ctrm. 540 |
| | Pretrial Conf.:   January 9, 2023 |
| | Trial Date:   February 7, 2023 |
| | Discovery Cutoff:   June 27, 2022 |

# TABLE OF CONTENTS

**Page**

I.    WDP'S INTRODUCTORY STATEMENT .................................................. 1

II.   PLAINTIFF SCREENWRITERS' INTRODUCTORY STATEMENT .......... 4

III.  INTERROGATORIES IN DISPUTE ...................................................... 5

IV.   WDP'S CONTENTIONS AND POINTS AND AUTHORITIES ................. 9

    A.   WPD Served Targeted Contention Interrogatories That Are
         Proper And Necessary To Narrow The Issues Remaining For
         Trial ........................................................................................... 9

    B.   Plaintiffs' Claim That The Parties' Prior Discovery Stipulation
         Prohibits Fact Discovery on Substantial Similarity Is Frivolous ......... 15

    C.   Even If Plaintiffs' Objections Were Meritorious, They Would Be
         Beside The Point, Because WDP's Interrogatories Are Highly
         Relevant To Issues Other Than Substantial Similarity ........................ 19

V.    PLAINTIFF SCREENWRITERS' CONTENTIONS AND POINTS
      AND AUTHORITIES ........................................................................ 21

VI.   PROPOSED RESOLUTIONS DURING THE CONFERENCE OF
      COUNSEL ....................................................................................... 28

    A.   WDP's Proposed Resolution ............................................................ 28

    B.   Plaintiff Screenwriters' Proposed Resolution ................................... 28

This Joint Stipulation is submitted by the undersigned parties pursuant to Local Rule 37-2 in connection with Defendant Walt Disney Pictures' ("WDP") motion to compel Plaintiffs Arthur Lee Alfred II and Ezequiel Martinez, Jr. to respond to interrogatories.  In accordance with Local Rule 37-1, the parties have met and conferred in good faith to resolve this dispute but were unable to do so.

## I.    WDP'S INTRODUCTORY STATEMENT

This is a copyright infringement case in which Plaintiffs allege that WDP's 2003 motion picture *Pirates of the Caribbean: The Curse of the Black Pearl* ("*Curse*") infringes their Screenplay, which—like WDP's motion picture—adapted Disney's Pirates of the Caribbean theme park ride.  It will be Plaintiffs' burden at trial to identify and prove which original elements of their Screenplay WDP infringed.

That is precisely the information that WDP seeks with four contention interrogatories that Plaintiffs refuse to answer.  These interrogatories seek essential facts about Plaintiffs' contentions:  Interrogatories 4 and 6 ask Plaintiffs to identify the elements of their Screenplay that WPD allegedly infringed and the elements of *Curse* that are allegedly infringing; Interrogatory 5 asks Plaintiffs to state all facts supporting their contention that each of the allegedly infringed elements in the Screenplay constitute original expression that is protectable by copyright; and Interrogatory 8 asks Plaintiffs to state all facts that support their contention that WDP copied their Screenplay.

Plaintiffs' primary objection is that these interrogatories are precluded by an earlier Court order bifurcating discovery pursuant to a stipulation of the parties.  That order bifurcated early *expert* discovery on substantial similarity to facilitate the efficient disposition of early summary judgment motions, and importantly provided that discovery on "all issues" would open if the case proceeded beyond summary judgment.  Declaration of Jordan D. Segall ("Segall Decl.") Ex. 4 [Dkt. 122] ¶ 7. Indeed, WDP *could not* have served the interrogatories at issue in discovery phase 1:

the Court's bifurcation order specifically limited to discovery to initial disclosures, an exchange of expert reports on substantial similarity, and "one deposition of each side's respective expert witnesses on substantial similarity." *Id.* ¶ 5.  The parties did not forfeit the opportunity to take *non-expert* discovery on substantial similarity.  In any event, even if Plaintiffs' interpretation of the discovery stipulation were viable, the interrogatories at issue are relevant to issues other than substantial similarity, such as independent creation and the Screenplay's status as a derivative work of Disney's intellectual property (namely, the theme park attraction).  Even Plaintiffs concede these issues are appropriate topics for discovery at this stage.

Indeed, it is well-established that contention interrogatories are "generally proper" and serve the important purpose of narrowing the issues for trial. *Stamps.Com, Inc. v. Endicia, Inc.*, 2009 WL 2576371, at *2 (C.D. Cal. May 21, 2009).  District courts in the Ninth Circuit have repeatedly compelled plaintiffs to answer contention interrogatories, in part because defendants "should not have to guess" about plaintiffs' legal contentions or the facts supporting them.  *Tennison v. City & Cnty. of San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005).

WDP is particularly entitled to full and complete answers to these particular interrogatories because, in the five years they have been litigating this case, Plaintiffs' account of what elements of their Screenplay were allegedly appropriated has been all over the map.  In their original complaint, Plaintiffs alleged that the "Captain Jack Sparrow" character in *Curse* was substantially similar to the "Captain Davy Jones" character in their Screenplay because both are "depicted as having a sense of humor."  *See* Segall Decl. Ex. 5 [Compl., Dkt. 1] ¶ 13.  The First Amended Complaint, by contrast, alleges that both works are similar because they depict "morally ambiguous" pirates with "significant alcohol problem[s]."  *See id.* Ex. 6 [FAC, Dkt. 112] ¶¶ 84–85.  Plaintiffs then submitted an expert report from a comparative literature professor who identified a number of purported similarities that were not described in any pleading, including that both works feature "strong

1  female heroine[s]" and "pirate ships with skeleton crews"; "share a common theme

2  of mentorship of male orphans"; and both "begin[] with a prologue." *Id.* Ex. 7

3  [Román Report, Dkt. 112-6] at 10, 11, 12, 13.

4         With the close of fact discovery now just three short months away, these

5  moving-target litigation tactics must come to an end.  To adequately prepare for

6  trial, WDP needs a definitive statement of the contentions that Plaintiffs intend to

7  make at trial regarding the specific elements of their Screenplay that they allege

8  WDP copied in making *Curse*.  This information is crucial for WDP's trial

9  preparation so that it can respond with evidence (1) that Plaintiffs appropriated the

10  allegedly similar elements from Disney's theme park ride; (2) that the purportedly

11  similar elements between *Curse* and the Screenplay are significantly different at the

12  level of concrete expression; (3) that purportedly similar elements are generic to the

13  pirate genre and are therefore not protectable in copyright; and (4) that the evidence

14  shows that the allegedly similar elements were independently created by *Curse*

15  writers who had no access to Plaintiffs' Screenplay.

16         WDP cannot assert these defenses effectively if it cannot pin Plaintiffs down

17  on which elements of their Screenplay were allegedly copied by WDP and

18  incorporated into *Curse*.  And there is no question that now is the appropriate time

19  for Plaintiffs to articulate such contentions.  Plaintiffs submitted their Screenplay to

20  WDP in 2000, and *Curse* was released in 2003.  They have had nearly *twenty years*

21  to evaluate the alleged similarities between *Curse* and their work.  With expert

22  discovery on substantial similarity complete and the close of discovery ending soon,

23  there is no conceivable basis for Plaintiffs' continued stonewalling.

24         The Court should compel Plaintiffs to provide complete answers to WDP's

25  Interrogatories 4, 5, 6, and 8.

26  ///

27  ///

28  ///

## II.     PLAINTIFF SCREENWRITERS' INTRODUCTORY STATEMENT

The parties' dispute over substantial similarity is ready for trial. Several years ago, the Ninth Circuit rejected Disney's arguments that the Plaintiff Screenwriters' *Pirates* screenplay is not substantially similar to Disney's *Pirates* film as a matter of law. The parties have completed discovery on the subject, including through dueling experts who disagree over the substantial similarity between the two works. And Judge Marshall has denied Disney's motion for summary judgment on that same issue as well, along with Disney's motion to certify that denial to the Ninth Circuit.

The parties envisioned this posture when they bifurcated fact discovery into two phases. On remand from the Ninth Circuit, the parties streamlined fact and expert discovery on substantial similarity in Phase 1, so that Disney could enjoy the benefit of an early summary judgment motion. While Disney enjoyed that benefit, it now seeks to backtrack on that stipulation because it does not like the result from Judge Marshall. Consider Disney's position now that Plaintiff Screenwriters are "wrong" that "[t]he purpose of the stipulation was that substantial similarity would be *resolved* in Phase 1." Disney Points and Contentions, §IV.B. Yet Disney's counsel represented the exact opposite when it negotiated and induced the original stipulation on bifurcation: "As we agreed during the call, the purpose of bifurcating discovery is so that substantial similarity can be *resolved* before proceeding to discovery [on] *other* issues." Hilvert Decl. ¶8 Ex. D (emphasis added). Disney's efforts to relitigate substantial similarity in Phase 2 discovery does not honor the purpose or the plain language of the parties' agreement or corresponding order.

The plain language of Disney's four overlapping and burdensome contention interrogatories addresses substantial similarity, not any affirmative defense. Indeed, these interrogatories are about elements in the film that are "copied," "infringed," and "original"— topics that underlie a substantial similarity analysis and which the parties litigated in Phase 1. Nor has Disney justified why it would need four separate

"all facts" contention interrogatories on the same subject under any scenario. The Court should deny Disney's motion.

## III.   INTERROGATORIES IN DISPUTE

### INTERROGATORY NO. 4:

Identify and describe with particularity each element of YOUR SCREENPLAY that you contend DEFENDANT infringed.

### ANSWER TO INTERROGATORY NO. 4:

Plaintiffs object to this Interrogatory as seeking discovery on questions of substantial similarity in violation of the parties' stipulation, which provides that discovery is bifurcated. *See* Dkt. No. 121. After the Ninth Circuit remanded this case, the parties stipulated to phased discovery—at Disney's suggestion—to best expedite the litigation. That agreement was predicated on a shared interest "in streamlining this action by reducing the number of named defendants and establishing certain mutually-agreeable timeframes regarding discovery, motion practice, and ADR." *Id.* ¶ 1. To that end, the parties agreed to a "phased" approach to discovery, under which fact discovery would be bifurcated into two phases. "[D]iscovery in the first phase [was] limited to the issue of substantial similarity." *Id.* ¶ 10. The Parties completed that phase, including through expert reports and depositions. Disney then filed its summary judgment motion, which the Court denied.

After the Court's denial of summary judgment, this case moved into the "second phase" of discovery. That "second phase" encompasses "other discovery" *not relating to* substantial similarity. *See id.* ¶ 10(a). Thus, pursuant to the Court's adoption of the parties' stipulation, this "second phase" is limited to issues *other* than substantial similarity.

On the basis of their objection, Plaintiffs will not respond to this Interrogatory.

**INTERROGATORY NO. 5:**

Identify all facts that support or refute YOUR contention that each component identified in response to Interrogatory 4 above contains original expression that is subject to protection under copyright law.

**ANSWER TO INTERROGATORY NO. 5:**

Plaintiffs object to this Interrogatory as seeking discovery on questions of substantial similarity in violation of the parties' stipulation, which provides that discovery is bifurcated. *See* Dkt. No. 121. After the Ninth Circuit remanded this case, the parties stipulated to phased discovery—at Disney's suggestion—to best expedite the litigation. That agreement was predicated on a shared interest "in streamlining this action by reducing the number of named defendants and establishing certain mutually-agreeable timeframes regarding discovery, motion practice, and ADR." *Id.* ¶ 1. To that end, the parties agreed to a "phased" approach to discovery, under which fact discovery would be bifurcated into two phases. "[D]iscovery in the first phase [was] limited to the issue of substantial similarity." *Id.* ¶ 10. The Parties completed that phase, including through expert reports and depositions. Disney then filed its summary judgment motion, which the Court denied.

After the Court's denial of summary judgment, this case moved into the "second phase" of discovery. That "second phase" encompasses "other discovery" *not relating to* substantial similarity. *See id.* ¶ 10(a). Thus, pursuant to the Court's adoption of the parties' stipulation, this "second phase" is limited to issues *other* than substantial similarity.

Plaintiffs further object to the requirement to provide "all facts" as overbroad and unduly burdensome. *See Philips N. Am. LLC v. PKI Healthcare, Inc.*, No. SACV 19-01765-JVS (JDEx), 2020 WL 3031614, at *2-3 (C.D. Cal. Mar. 10, 2020) (collecting cases and noting that interrogatories demanding "all details, facts, and information . . . [are] facially overbroad, unduly burdensome, and disproportionate

to the needs of the case."). Plaintiffs further object to the interrogatory to the extent

as not proportional to the needs of case as it calls for a legal conclusion on

individual components and is inconsistent with the Ninth Circuit's direction to apply

the original selection and arrangement of elements.

On the basis of their objections, Plaintiffs will not respond to this

Interrogatory.

**INTERROGATORY NO. 6:**

Identify and describe with particularity each element of CURSE or any of the

SEQUEL MOVIES that YOU contend infringed YOUR copyright in THE

SCREENPLAY.

**ANSWER TO INTERROGATORY NO. 6:**

Plaintiffs object to this Interrogatory as seeking information not relevant to

any party's claims or defenses in that it requests information how "any of the

SEQUEL MOVIES" infringe Plaintiffs' Screenplay, which is not a claim asserted in

the First Amended Complaint (and as explained at the summary judgment hearing).

(For the avoidance of doubt, and as explained, Disney's profits from the Sequels are

relevant to an award of damages for Disney's infringement of the Pirates

Screenplay.)

Plaintiffs object to this Interrogatory as seeking discovery on questions of

substantial similarity in violation of the parties' stipulation, which provides that

discovery is bifurcated. *See* Dkt. No. 121. After the Ninth Circuit remanded this

case, the parties stipulated to phased discovery—at Disney's suggestion—to best

expedite the litigation. That agreement was predicated on a shared interest "in

streamlining this action by reducing the number of named defendants and

establishing certain mutually-agreeable timeframes regarding discovery, motion

practice, and ADR." *Id.* ¶ 1. To that end, the parties agreed to a "phased" approach

to discovery, under which fact discovery would be bifurcated into two phases.

"[D]iscovery in the first phase [was] limited to the issue of substantial similarity."

1   *Id.* ¶ 10. The Parties completed that phase, including through expert reports and

2   depositions. Disney then filed its summary judgment motion, which the Court

3   denied.

4         After the Court's denial of summary judgment, this case moved into the

5   "second phase" of discovery. That "second phase" encompasses "other discovery"

6   *not relating to* substantial similarity. *See id.* ¶ 10(a). Thus, pursuant to the Court's

7   adoption of the parties' stipulation, this "second phase" is limited to issues *other*

8   than substantial similarity.

9         On the basis of their objection, Plaintiffs will not respond to this

10  Interrogatory.

11        **<u>INTERROGATORY NO. 8</u>:**

12        Identify all facts that support YOUR contention that DISNEY copied YOUR

13  SCREENPLAY in the conception, creation, development, or production of CURSE

14  or any of the SEQUEL MOVIES.

15        **<u>ANSWER TO INTERROGATORY NO. 8</u>:**

16        Plaintiffs object to this Interrogatory as overbroad and unduly burdensome in

17  that it requests identification of "all facts." *See Philips N. Am. LLC v. PKI*

18  *Healthcare, Inc.*, 2020 WL 3031614, at *2-3 (C.D. Cal. Mar. 10, 2020) (collecting

19  cases and noting that interrogatories demanding "all details, facts, and information .

20  . . [are] facially overbroad, unduly burdensome, and disproportionate to the needs of

21  the case."). Plaintiffs object to this Interrogatory as seeking information not relevant

22  to any party's claims or defenses in that it requests information how "any of the

23  SEQUEL MOVIES" infringe Plaintiffs' Screenplay, which is not a claim asserted in

24  the First Amended Complaint (and as explained at the summary judgment hearing).

25  (For the avoidance of doubt, and as explained, Disney's profits from the Sequels are

26  relevant to an award of damages for Disney's infringement of the Pirates movie.)

27  Plaintiffs further object to this Interrogatory as seeking discovery on questions of

28  substantial similarity in violation of the parties' stipulation, which provides that

discovery is bifurcated. *See* Dkt. No. 121. After the Ninth Circuit remanded this case, the parties stipulated to phased discovery—at Disney's suggestion—to best expedite the litigation. That agreement was predicated on a shared interest "in streamlining this action by reducing the number of named defendants and establishing certain mutually-agreeable timeframes regarding discovery, motion practice, and ADR." *Id.* ¶ 1. To that end, the parties agreed to a "phased" approach to discovery, under which fact discovery would be bifurcated into two phases. "[D]iscovery in the first phase [was] limited to the issue of substantial similarity." *Id.* ¶ 10. The Parties completed that phase, including through expert reports and depositions. Disney then filed its summary judgment motion, which the Court denied.

After the Court's denial of summary judgment, this case moved into the "second phase" of discovery. That "second phase" encompasses "other discovery *not relating to* substantial similarity. *See id.* ¶ 10(a). Thus, pursuant to the Court's adoption of the parties' stipulation, this "second phase" is limited to issues other than substantial similarity.

On the basis of their objections, Plaintiffs will not respond to this Interrogatory.

## IV.    WDP'S CONTENTIONS AND POINTS AND AUTHORITIES

### A.    WPD Served Targeted Contention Interrogatories That Are Proper And Necessary To Narrow The Issues Remaining For Trial

Contention interrogatories, which request that a party state its legal contentions or the facts supporting those contentions, are "generally proper." *Stamps.Com*, 2009 WL 2576371, at *2 (compelling responses to contention interrogatories in a patent infringement case that sought infringement and invalidity arguments for each of plaintiff's patent claims).[1]  Such interrogatories serve as "a

---

[1] Contention interrogatories are such a well-established discovery mechanism that disputes over contention interrogatories typically involve, not *whether* they are

useful tool to narrow the issues in dispute." *Protective Optics, Inc. v. Panoptx, Inc.*, 2007 WL 963972, at *2 (N.D. Cal. Mar. 30, 2007) (compelling responses to a contention interrogatory seeking identification of claim limitations allegedly practiced by the accused product). "Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation." *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003 (N.D. Cal. 2019) (quoting *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012)).

WDP served four targeted contention interrogatories on Plaintiffs:

- **Interrogatory 4** asks Plaintiffs to identify every element of the Screenplay that WDP allegedly infringed.

- **Interrogatory 5** asks Plaintiffs to state all facts supporting the contention that the elements identified in Interrogatory 4 constitute original expression that is subject to protection under copyright law.[2]

_____

proper, but *when* they are proper, i.e., whether they are premature and should be deferred until discovery is complete or a pretrial conference is held. *See* Fed. R. Civ. P. 33(a)(2). Plaintiffs do not object on the basis that WDP's requests are premature and have therefore waived any such argument. *O. L. v. City of El Monte*, 2021 WL 926105, at *3 (C.D. Cal. Jan. 11, 2021) (citing cases finding failure to raise objection in responding to interrogatories waives it). In any event, WDP's requests are not premature. *See, e.g.*, *In re Northrop Grumman Corp. ERISA Litig.*, 2010 WL 11468588, at *3 (C.D. Cal. May 17, 2010) (contention interrogatories appropriate where claims had been pending, plaintiff had time to review defendant's document production, and discovery would close in three months).

[2] Copyright only protects concrete expression, not general plot ideas, generic elements, genre tropes, or *scenes-a-faire*. *Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072, 1081 (9th Cir. 2006). In opposing summary judgment, Plaintiffs relied on the "selection and arrangement" doctrine, which holds, in certain narrow circumstances, that a novel selection and arrangement of generic elements can itself constitute protectable expression. *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002). Interrogatory 5 is intended to help WDP distinguish between the common elements that Plaintiffs contend are non-generic protectable expression and the common elements that Plaintiffs contend are unprotectable in themselves but subject to the selection-and-arrangement doctrine.

- **Interrogatory 6** asks Plaintiffs to identify every element of *Curse* or its sequels that allegedly infringes the Screenplay.[3]

- **Interrogatory 8** asks Plaintiffs to state all facts that support their contention that WDP copied the Screenplay.

These interrogatories are straightforward: Plaintiffs should be compelled to state the elements of their Screenplay that they claim WDP infringed and all facts in support so the parties know the issues in dispute as they prepare for trial.

The alleged similarities between Plaintiffs' work and WDP's will be a paramount issue at trial, and Plaintiffs' contentions on that issue should not be a guessing game. *See, e.g.*, *Tennison*, 226 F.R.D. at 618 (granting motion to compel responses to contention interrogatories because defendant "should not have to guess" at facts underpinning plaintiff's claims). Plaintiffs will have the burden at trial to identify for the jury the elements of their Screenplay that they allege WDP both copied and unlawfully appropriated—as well as the facts that support their claim of copyright infringement. *See, e.g.*, *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018) (plaintiff must prove "substantial similarity" which includes "both the degree of similarity relevant to proof of copying and the degree of similarity necessary to establish unlawful appropriation"). WDP has a right to know what Plaintiffs contend so it can prepare its defenses.[4] Such contention

---

[3] Plaintiffs have stated in meet-and-confer calls that they are *not* contending that the *Curse* sequels infringe their Screenplay, but have so far refused to commit to that position in verified interrogatory responses. One further reason why WDP seeks an answer to Interrogatory 6 is to obtain a definitive answer on Plaintiffs' infringement contentions regarding the sequels.

[4] On summary judgment the Court held that competing expert opinions precluded a finding that Plaintiffs' Screenplay is not substantially similar to *Curse* as a matter of law, and the unresolved question of substantial similarity will be decided by the jury at trial. And even once the jury decides that issue, WDP could move for judgment as a matter of law on the substantial similarity issue. *See Gray v. Hudson*, __ F.4th __, 2022 WL 711246, at *10 (9th Cir. Mar. 10, 2022) ("A trial judge has had the benefit of hearing testimony and a full presentation of the evidence when ruling on a

interrogatories "will advance the litigation as it will pin down [Plaintiffs'] position as the parties prepare for trial." *Tennison*, 226 F.R.D. at 618.

Courts addressing similar contention interrogatories in the context of infringement allegations have compelled responses precisely so the defendant is not left guessing at trial:

> At trial [plaintiff] is going to have to identify the allegedly infringing software and explain why it is infringing—it will need to say *something* about those issues simply as part of putting on its case…. Whatever [plaintiff's] copyright case is at this point, it needs to disclose it to [defendant]. At this late date, [defendant] should not be in the position of having to guess what [plaintiff's] theories will be at trial concerning what the allegedly infringing software is and how it is similar to [plaintiff's] software.

*AutoOpt Networks, Inc. v. Karani*, 2018 WL 4558270, at *2 (N.D. Cal. Sept. 20, 2018) (compelling a response to a contention interrogatory requiring identification of all similarities in a copyright case where plaintiff had sufficient discovery to answer the interrogatory in order to give defendant notice of plaintiff's theories for trial).

The reasoning in *AutoOpt Networks* is on point.  The plaintiff in that case had "some information with which to answer the interrogatory," including, most importantly, copies of the software programs.  2018 WL 4558270, at *1.  The court held that plaintiff could not continue to refuse to answer the interrogatory because "it [wasn't] waiting for anything."  *Id.* at *2.  That case was at the close of fact and expert discovery, but certain depositions remained.  *Id.* ("fact and expert discovery closed … except for specified depositions").

Here, the key evidence relevant to Plaintiffs' infringement contentions—the contents of Plaintiffs' Screenplay and WDP's *Curse* motion picture—has been

---

post-trial JMOL motion, which may occasionally give her new insights into the legal sufficiency of the evidence. While JMOL and summary judgment are procedurally similar, there is no rule preventing a trial judge from reconsidering her views on a case's merits." (citation omitted)).

known to Plaintiffs for literally decades.  Plaintiffs filed this lawsuit in 2017, fourteen years after the alleged infringement.  Both before and after filing suit, Plaintiffs and their attorneys have had ample time to determine what elements they intended to claim were infringed.  Further, WDP has completed its production of substantially all relevant documents and the parties have exchanged substantial similarity expert reports and conducted expert depositions of those witnesses. Segall Decl. ¶¶ 10, 20.  By the time this motion is heard, Plaintiffs will have taken several key depositions, including of executives and writers of *Curse*.  *Id.* ¶ 15.  In fact, Plaintiffs have compiled various (and often contradictory) lists of alleged similarities at different points during this litigation, including in their original Complaint, First Amended Complaint, motion to dismiss briefing, appellate briefs to the Ninth Circuit, summary judgment briefing, and their substantial similarity expert's reports.  *Compare, e.g.*, *id.* Ex. 5 ¶¶ 8–13 (substantial similarity contentions in original Complaint), *with id.* Ex. 6 ¶¶ 79–118 (substantial similarity contentions in FAC), *and id.* Ex. 7 (substantial similarity contentions in expert report of David Román).  As was true of the defendant in *AutoOpt Networks*, WDP is simply asking for Plaintiffs' final contentions now that fact discovery is nearly complete: whatever Plaintiff believes to be the similar elements between the Screenplay and *Curse*, it must disclose them so WDP is not guessing at Plaintiffs' theories as it deposes Plaintiffs and prepares for trial.  *AutoOpt Networks*, 2018 WL 4558270, at *2.

The equities and judicial economy also favor compelling Plaintiffs to respond to WDP's contention interrogatories.  WDP will be prejudiced if it does not have a complete list of the elements that Plaintiffs contend were infringed.  WDP cannot readily prepare its defenses if it cannot pinpoint what expression Plaintiffs claim was infringed.  Likewise, judicial economy is disserved if WDP must guess at Plaintiffs' alleged similarities from the various contradictory pleadings and filings Plaintiffs have prepared in five years of litigation—the trial will take longer and

WDP will expend substantial resources preparing unnecessary defensive evidence, experts, and witnesses to address possible similarities that Plaintiffs do not intend to assert at trial. *Cf. Asia Vital Components*, 377 F. Supp. 3d at 1004 (patent rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed" (citations omitted)).

Plaintiffs suffer no hardship, burden, or prejudice in answering WDP's interrogatories. As noted above, Plaintiffs have *already* compiled various lists of alleged similarities and presumably believe they have evidence to support at least some of those claims. *Tennison*, 226 F.R.D. at 618 ("At this juncture, discovery is nearly complete, and hence Plaintiff is in a position to provide meaningful answers."). Plaintiffs' reason for not responding is purely tactical.[5] They have benefitted thus far from ambiguously framing the alleged similarities at the most general level and then making statements like "Professor Román's opinion detailed *scores more similarities across all factors in the extrinsic test.*" Segall Decl. Ex. 10 [Dkt. 206] at 6 (emphasis added).

Plaintiffs surely believe they are strategically well-served by refusing to be pinned down on their contentions about the similarities between the works—particularly where, as here, the works have few concrete elements in common and most of Plaintiffs' purported "similarities" are familiar adventure-movie tropes like humor, romance, and a Caribbean setting. But Plaintiffs' obstruction does not serve the aims of a "just, speedy, and inexpensive determination" of this action as required

---

[5] To the extent Plaintiffs claim they are still developing their theory, that is not a reason to deny this motion. Plaintiffs are not foreclosed from amending their interrogatories under appropriate circumstances: "[b]ecause 'answers to contention interrogatories evolve over time as theories of liability and defense begin to take shape .... Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, be corrected or supplemented to reflect those changes." *Asia Vital Components*, 377 F. Supp. 3d at 1003–04 (citing *Woods*, 692 F.3d at 1280).

by Rule 1 of the Federal Rules of Civil Procedure.  Courts regularly compel responses to contention interrogatories where, as here, WDP is "entitled to know the basis of, and information regarding plaintiffs' contentions on the matters that are the subjects of the contention Interrogatories in Issue while discovery is ongoing so that they may appropriately focus and conduct any further discovery in a timely fashion."  *Williams v. City of Long Beach*, 2019 WL 11318323, at *5 (C.D. Cal. May 30, 2019) (compelling responses to contention interrogatories demanding all facts supporting certain claims); *see also Mosaic Brands, Inc v. Ridge Wallet LLC*, 2020 WL 12048883, at *7 (C.D. Cal. Nov. 2, 2020) (compelling a response to a contention interrogatory seeking for plaintiff to identify all facts supporting claimed equivalencies and all instances of alleged infringement).

### B.   Plaintiffs' Claim That The Parties' Prior Discovery Stipulation Prohibits Fact Discovery on Substantial Similarity Is Frivolous

Plaintiffs' principal objection to answering the contention interrogatories at issue is that "discovery on questions of substantial similarity" is "in violation of" the parties' prior agreement to bifurcate discovery.  This objection is flatly inconsistent with the plain meaning of that stipulation.

The record reflects that the parties agreed to bifurcate discovery not to confine fact discovery on substantial similarity to a first phase, but rather to facilitate the district court's efficient resolution of an early dispositive motion.  By way of background, courts in the Ninth Circuit routinely grant judgment for defendants in copyright cases at the motion to dismiss or summary judgment stage on the ground that the works at issue are not substantially similar as a matter of law. *See, e.g.*, *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977) (substantial similarity "may often be decided as a matter of law").  The district court here granted WDP's motion to dismiss Plaintiffs' complaint on precisely that ground.  *See* Segall Decl. Ex. 8 [Dkt. 93] (dismissing complaint without leave to amend).  The Ninth Circuit reversed, holding that expert

testimony could help inform the question of substantial similarity, particularly by distinguishing "unprotected generic, pirate-movie tropes" from protectable expression. *Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020).

On remand, WDP indicated that it intended to renew on summary judgment its argument that the works are not substantially similar as a matter of law. Fact discovery was not needed to tee up WDP's new motion on substantial similarity, because that motion entailed only an objective comparison of the similarities between the two works, which were already before the Court and the contents of which were undisputed. The only thing that needed to be added to the record before WDP could file its summary judgment motion on substantial similarity was the expert testimony that the Ninth Circuit had suggested could help inform the Court's analysis of substantial similarity. Accordingly, WDP proposed that discovery be bifurcated to facilitate the efficient resolution of WDP's summary judgment motion without burdensome and costly fact discovery. *See* Segall Decl. ¶¶ 4–5. In phase 1, the parties would be limited to expert discovery on substantial similarity; and then, in phase 2—if the case survived WDP's summary judgment motion—discovery would open on all issues. *Id.*

The text of the stipulation confirms that this was the parties' agreement, and belies Plaintiffs' argument that the stipulation was intended to *prohibit* fact discovery on substantial similarity in phase 2. *See* Segall Decl. Ex. 3 [Dkt. 121]. The stipulation provided that discovery would be bifurcated, with "[d]iscovery in the first phase limited to the issue of substantial similarity." *Id.* ¶ 10(a). The stipulation went on to clarify that phase 1 discovery would be limited to *expert* discovery on substantial similarity:

> *More specifically*, in the first discovery phase discovery shall be limited to: (i) initial disclosures under Federal Rule of Civil Procedure 26(a)(1), which shall be made by January 29, 2021; expert disclosures under Federal Rule of Civil Procedure 26(a)(2) relating to the issue of substantial similarity, which shall be made by March 30, 2021; and (iii) one deposition of each side's respective expert witnesses on substantial similarity.

-16-

*See id.* ¶ 10(b) (emphasis added).  In other words, *all* non-expert discovery (on *any* issue) was prohibited in phase 1—including document requests, fact depositions, and written discovery.  The parties further stipulated that phase 2 of discovery would only commence if the case did not settle and the Court denied WDP's motion for summary judgment on substantial similarity.  In that circumstance, the stipulation provided that phase 2 discovery "shall commence **on all issues with no limitations other than as provided herein or by law**." *Id.* ¶ 15.

On January 19, 2020, the Court issued an order bifurcating discovery pursuant to the parties' stipulation.  *See* Segall Decl. Ex. 4 [Dkt. 122].  The Court's bifurcation order provided that, while discovery in phase 1 would be limited to initial disclosures and *expert* discovery on substantial similarity, discovery in phase 2 would "encompass all issues":

> Discovery in the second phase shall commence following the Court's rulings on Walt Disney Pictures' motion for summary judgment, or immediately after mediation if Walt Disney Pictures elects not to file a motion for summary judgment. **The second phase of discovery shall encompass all issues**, without limitation other than as provided herein or by law.

*Id.* ¶ 7 (emphasis added).  Notably, nothing in the order purported to limit the subject matter of discovery in phase 2.

The stipulation and the Court's bifurcation order refute Plaintiffs' objection that the second phase of discovery is limited to "'other discovery' *not relating to* substantial similarity."  *See* Segall Decl. Ex. 2 [Interrogatory Responses] at 7.  The order provides that phase 2 of discovery encompasses "all issues, without limitation other than as provided herein or by law." *Id.* Ex. 4 [Dkt. 122].  Neither anything in the order, nor any legal provision, prohibits fact discovery on substantial similarity.  Indeed, they provide that such discovery is fair game now.

Plaintiffs' argument amounts to the illogical proposition that the parties agreed, *sub silentio*, to prohibit non-expert discovery on substantial similarity altogether.  As noted, the Court's bifurcation order limited discovery in phase 1 to

-17-

1   expert discovery.  *See id.* ¶ 5 (providing that phase 1 discovery "shall be limited to"

2   Rule 26(a)(1) initial disclosures, expert disclosures and reports, and "one deposition

3   of each side's respective expert witnesses on substantial similarity").  Plaintiffs'

4   objection may have had some purchase if WDP had an opportunity to serve

5   interrogatories regarding Plaintiffs' substantial similarity contentions in phase 1 but

6   elected not to.  Instead, WDP *could not* have served the interrogatories at issue in

7   phase 1, because only *expert* discovery was allowed in that phase.  In other words, if

8   Plaintiffs were correct that the Court intended to prohibit discovery on substantial

9   similarity in phase 2, the bifurcation stipulation would have the effect of prohibiting

10   fact discovery on substantial similarity altogether—resulting in the parties mutually

11   forfeiting the right to discover documents, serve written discovery, or ask deposition

12   questions regarding the alleged similarities between the works.[6]  The parties would

13   never agree to such an arrangement, and the record clearly reflects they did not do

14   so.

15         Plaintiffs' construction of the parties' stipulation appears to be a contrivance

16   to give them an escape hatch for discovery they prefer (understandably) not to

17   answer.  In meet and confer, Plaintiffs contended that "[t]he purpose of the

18   stipulation was that substantial similarity would be *resolved* in Phase 1."  Segall

19   Decl. Ex. 13 [3/11 Arenz Email] (emphasis added).  But that is wrong.  The purpose

20   of the discovery stipulation was to "[l]imit[] initial discovery to facilitate the

21   efficient resolution of whether substantial similarity exists" between the works *as a*

22   *matter of law* by permitting the parties to introduce the expert testimony that the

23   Ninth Circuit had stated would help inform that question.  *Id.* Ex. 3 [Dkt. 121] ¶ (b).

24   Ultimately, the Court denied WDP's summary judgment motion, holding that

25

26   _____

     [6] Plaintiffs have noticed the depositions of several of the screenwriters, producers,

27   and executives on *Curse*, and will most surely ask about purported similarities

     between *Curse* and the Screenplay.  Any such questioning would be wholly

28   inconsistent with Plaintiffs' refusal to answer the four interrogatories at issue.

disputes of facts precluded the issue from being decided as a matter of law on a pre-trial motion. The Court's summary judgment order did not "resolve" the issue of substantial similarity, as Plaintiffs put it; rather, it held that "the parties' expert opinions create a genuine issue of disputed fact regarding whether the works are substantially similar" that will have to be resolved by the jury at trial. *Id.* Ex. 9 [Dkt. 200] at 7. Substantial similarity remains a live issue at trial, and with fact discovery now open on "all issues," *id.* Ex. 4 [Dkt. 122] ¶ 7, WDP is entitled to use interrogatories to discover Plaintiffs' contentions regarding the purported similarities between the works.

### C.   Even If Plaintiffs' Objections Were Meritorious, They Would Be Beside The Point, Because WDP's Interrogatories Are Highly Relevant To Issues Other Than Substantial Similarity

Even if Plaintiffs were correct that the Court's bifurcation order could be interpreted to prohibit all fact discovery on substantial similarity, Plaintiffs would still be obligated to answer WDP's contention interrogatories because they are relevant to matters that are concededly the proper subject of discovery in phase 2, including (1) whether the elements that Plaintiffs allege were infringed actually derive from the Disney theme park ride that Plaintiffs' Screenplay adapted; and (2) whether WDP or third-party screenwriters independently created the elements that Plaintiffs claim were infringed.

First, WDP sought summary judgment on the ground that Plaintiffs' Screenplay is an unauthorized derivative work of Disney's Pirates of the Caribbean theme park ride, and the Court agreed with Plaintiffs that that issue was *not* covered by the parties' stipulation:

> [T]he Court finds the issue of whether Plaintiffs' Screenplay is a derivative work of Disney's Ride is outside the scope of the parties' stipulation because it would require the Court to examine whether Plaintiffs' Screenplay is based on Disney's Ride and whether Disney's Ride is copyrightable, rather than compare whether Plaintiffs' Screenplay is substantially similar to Defendant's Film.

Segall Decl. Ex. 9 [Dkt. 200] at 8.  Accordingly, whether the Screenplay elements Plaintiffs claim were infringed were derived from the much earlier theme park ride was not part of discovery phase 1.  WDP has a right to know which elements Plaintiffs claim were infringed, so it can develop evidence that these elements were actually taken from Disney's own ride.  For example, if Plaintiffs contend that *Curse* infringes their Screenplay's Caribbean setting or depiction of skeleton-faced pirates (as in fact Plaintiffs have), WDP can show the jury that these elements already existed in the ride that serves as the source material for both parties' works and therefore cannot serve as the basis for a copyright claim.  But WDP cannot identify which of the alleged similarities between the works have a common source in the ride until Plaintiffs answer the contention interrogatories at issue.

Second, the contention interrogatories are relevant to WDP's independent creation defense, which is clearly not covered by the stipulation.  WDP will seek to prove at trial that the alleged similarities between the Screenplay and *Curse* were in fact independently created by WDP and/or third-party screenwriters, either because they appeared in written treatments before Plaintiffs submitted their Screenplay or because they were conceived by screenwriters who never had access to Plaintiffs' Screenplay.

WDP's substantial similarity defense depends on WDP knowing which elements of the Screenplay Plaintiffs claim were infringed, so it can develop relevant proof of independent creation.  For example, if Plaintiffs contend they (and only they) came up with the idea of using supernatural elements, WDP needs to know precisely what they are claiming *Curse* infringed so they can determine which of the writers introduced that element to the *Curse* script.  WDP is already prejudiced by Plaintiffs' failure to answer these interrogatories in advance of the depositions of executives and writers for the *Curse* film.  While Plaintiffs may know which elements they intended to claim were infringed; WDP does not and therefore cannot ask the witnesses about their independent conception, development, and

creation of such elements during the depositions.  If these witnesses become unavailable for trial, WDP will not have had a fair opportunity to develop that testimony.

## V.   PLAINTIFF SCREENWRITERS' CONTENTIONS AND POINTS AND AUTHORITIES

The Plaintiffs Screenwriters have pursued their claim that Disney copied their *Pirates* screenplay since 2017. Disney has aggressively defended this case at every stage since. Disney first moved to dismiss the Screenwriters' complaint on the issue of substantial similarity. After the district court granted that motion, the Screenwriters appealed.

The Ninth Circuit reversed. The Ninth Circuit held that the district court erred by "failing to compare the original selection and arrangement of the unprotectible elements between the two works." *Alfred v. Disney*, 821 F. App'x 727, 729 (9th Cir. 2020). And based on its own review, the Ninth Circuit found that "the selection and arrangement of the similarities between [the two works] is more than de minimis." *Id.* The court also invited expert testimony about whether these similarities were "qualitatively significant." *Id.* Disney then petitioned for en banc review of this memorandum disposition, which the Ninth Circuit denied. Hilvert Decl. ¶ 3.

On remand, Disney wanted to bifurcate discovery. Hilvert Decl. ¶4. Disney sought to expedite its motion for summary judgment on substantial similarity as soon as possible. The parties negotiated a stipulation to bifurcate discovery by issue as a result. Phase 1 would address substantial similarity with limited discovery. *Id.* Phase 2 would address all other issues. *Id.* Indeed, in Disney's counsel's own words, "the purpose of bifurcating discovery is so that substantial similarity can be *resolved* before proceeding to discovery *other* issues." *Id.* at ¶8, Ex. D (emphasis added). The parties filed their stipulation and the Court bifurcated discovery into phases as a result. Segall Decl. Ex. 3 at ¶10, Ex. 4 at ¶4.

1    The parties stipulated that they needed little fact discovery for Phase 1. While

2    Disney originally envisioned several fact depositions and document requests (*id.* Ex

3    B at pg. 3), the parties' thereafter agreed to streamline Phase 1 even further to focus

4    on expert discovery. *Id.* Ex. E at pg. 3. This stipulation was designed at Disney's

5    interest in expediting its summary judgment motion as soon as possible. To that end,

6    the Screenwriters' served an expert report from a tenured profession at the

7    University of Southern California. Segall Decl. Ex. 7. He opined about the

8    qualitative significance of the elements that the Ninth Circuit found similar between

9    the two works. *Id.* Professor Román also detailed his opinion on each of the eight

10   factors that make up the extrinsic test. *Id.* Disney served a rebuttal report who

11   disagreed with Professor Román and concluded that the elements in the screenplay

12   were not novel. Hilvert Decl. Ex. ¶13 Ex. F. Professor Román then served a rebuttal

13   to Disney's report. Hilvert Decl. ¶14.  Ex. G. And the parties deposed the experts

14   over four days and 800 pages of testimony. Hilvert Decl. ¶15-16.

15   Disney then moved for summary judgment last fall. Yet Disney backtracked

16   on the plain language of the stipulation—for the first time—in its motion for

17   summary judgment. In the stipulation, the parties agreed that "Walt Disney Pictures

18   may file a motion for summary judgment on *only* the issue of substantial similarity"

19   in Phase 1. Segall Decl. Ex. 3 at ¶14 (emphasis added). Even so, Disney's motion

20   for summary judgment was not so limited. Disney argued that the screenplay was an

21   unauthorized derivative work—Disney's thirteenth affirmative defense—aside from

22   its argument that works were not substantially similar.

23   Judge Marshall rejected both arguments from Disney. On substantial

24   similarity, the Court applied routine summary judgment principles to deny the

25   parties' clear fact dispute. Segall Decl. Ex. 9 at pg. 7 ("the parties' expert opinions

26   create a genuine issue of disputed fact regarding whether the works are substantially

27   similar, [so] the Court denies Defendant's Motion for Summary Judgment on the

28   issue of substantial similarity."). Judge Marshall also rejected Disney's efforts to

1  renege on the parties' clear stipulation. *Id.* at pg. 8 ("the Court finds the issue of

2  whether Plaintiffs' Screenplay is a derivative work of Disney's Ride is outside the

3  scope of the parties' stipulation"). Thus, the Court denied Disney's motion for

4  summary judgment and the case went on to Phase 2.

5       Unsatisfied and undeterred, Disney moved to certify Judge Marshall's order

6  on summary judgment to the Ninth Circuit. Hilvert Decl. ¶17. Judge Marshall

7  denied this motion in early March. Hilvert Decl. ¶18, Ex. H. As a result, the parties

8  need only complete discovery in Phase 2, on topics like damages and Disney's

9  affirmative defenses, before the parties may finally resolve this case on the merits at

10  trial in February 2023. Yet as this motion shows, Disney is not done with its

11  scorched-earth effort to relitigate substantial similarity.

12
13      **A.**    **The Court should deny Disney's motion to compel because discovery on substantial similarity falls outside the parties' stipulation to bifurcate discovery into two phases.**
14

15       Disney's contention interrogatories about substantial similarity are improper

16  for Phase 2. The essential quid-pro-quo for Disney's proposed bifurcation was to

17  streamline discovery about substantial similarity, so Disney could proceed with an

18  early motion for summary judgment on that issue. Disney enjoyed that benefit and

19  lost its motion. The Court should deny Disney's effort to relitigate that same issue

20  again now. Indeed, the plain language of the stipulation, the parties' intent for the

21  stipulation, and common sense dictates that Phase 2 discovery is about all issues

22  *other* than substantial similarity.

23       Disney's efforts to backtrack on its agreement to bifurcate fact discovery

24  eliminates the efficiencies the stipulation was meant to provide. The stipulation—

25  and corresponding order—reflects the unambiguous conclusion that fact discovery

26  was bifurcated into two phases:

27
28         **Fact discovery shall be bifurcated**, with discovery in the first phase limited to the issue of substantial similarity; if **other** discovery is

> necessary, it will occur in a second phase that will follow the parties' mediation and the Court's resolution of Walt Disney Pictures' intended motion for summary judgment on substantial similarity, as set forth below.

Segall Decl. Ex. 3 at ¶10 (emphasis added); *see also* Ex. 4 at ¶4. Put differently, the first phase of "fact discovery" was limited to substantial similarity. *Id.* The second phase of "fact discovery" addressed all "*other* discovery." *Id.* (emphasis added). Nothing about this plain language supports Disney's conclusion now that Phase 1 was limited to fact discovery on substantial similarity, and Phase 2 encompasses all discovery with no limits.

Nor does the intent of the parties support Disney's interpretation now. Perhaps most glaring is how inconsistent Disney with what it states to this Court versus how it induced the stipulation originally. Here is what Disney stated to the Court:

- "In meet and confer, Plaintiffs contended that '[t]he purpose of the stipulation was that substantial similarity would be *resolved* in Phase 1.' Segall Decl. Ex. 13 [3/11 Arenz Email] (emphasis added). But that is wrong." Disney Points and Contentions, § IV.B.

Yet Disney said the exact opposite when it negotiated the stipulation for its benefit:

- "As we agreed during the call, the purpose of bifurcating discovery is so that substantial similarity can be *resolved* before proceeding to discovery [on] *other* issues." Hilvert Decl. ¶8 Ex. D (emphasis added).

The Court should deny Disney's motion based on these contradictory representations alone.

Yet there is more. Early drafts of the stipulation contemplated some fact deposition beyond what the parties ultimately agreed to. *See, e.g.*, Hilvert Decl. ¶6, Ex. B ("(b) In the first discovery phase, the parties shall be limited to three (3) fact depositions each and twenty (20) requests for production of documents."). That the parties narrowed the stipulation further without other material changes to the bifurcation of discovery underscores that the parties knowingly limited the scope of

-24-

"fact discovery" on the issue of substantial similarity. Indeed, that was a core element of the stipulation: Disney would get the benefit an early summary judgment motion (and the ability to move for summary judgment again on other issues if the first motion failed) in exchange for streamlined and limited fact discovery. Hilvert Decl. ¶10. Counsel for the Screenwriters would not have agreed to the stipulation if Disney could prolong the trial date through bifurcated discovery while also preserving the ability to pursue unbridled discovery on substantial similarity even after Judge Marshall denied summary judgment on that issue. Hilvert Decl. ¶10.

Disney's hindsight interpretation also ignores other key limiting language. Like a contract, the Court should not render language surplusage. *United States v. Hathaway*, 242 F.2d 897, 900 (9th Cir.1959) ("a court must give effect to every word or term employed by the parties and reject none as meaningless or surplusage in arriving at the intention of the contracting parties"). Both the stipulation and order state: "The second phase of discovery shall encompass all issues, without limitation **other than as provided herein** or by law." Segall Decl. Ex. 4 at ¶7 (emphasis added); *see also* Ex. 3 at ¶15. If Phase 2 fact discovery is unlimited as Disney now contends, then this "other than as provided herein" provision is meaningless. And the conclusion that Phase 2 fact discovery would not cover substantial similarity follows common sense as well: why would parties bifurcate fact discovery on an issue before a motion for summary judgment if that same issue would be subject of fact discovery *after* the Court found a genuine dispute of material fact on that issue?

Finally, Disney's arguments about the need for this discovery ignores the record. If Disney needed the discovery it now contends it so badly needs, then it would have sought it before the hundreds of pages of expert reports and depositions and its motion for summary judgment on that exact issue. Yet Disney's expert had no issue responding to Professor Román and expressing his opinions on substantial similarity. And Disney likewise had no issue vigorously arguing that the Court

1  should grant summary judgment. That Disney forewent contention interrogatories in

2  Phase 1 only confirms that it does not need them now in Phase 2.

### B.   Disney's four overlapping and burdensome contention interrogatories address the subject of substantial similarity, not Disney's affirmative defenses.

5      Disney is incorrect that these interrogatories are somehow directed at

6  affirmative defenses. Interrogatory 4 and 6 both ask for detailed contentions about

7  elements that are "infringed." Interrogatory 8 is about elements that Disney

8  "copied." And Interrogatory 5 is about "original expression," and courts use

9  "original" and "protectible" interchangeably in copyright law. *See, e.g., Swirsky v.*

10  *Carey*, 376 F.3d 841, 844 (9th Cir. 2004). The entire basis for Disney's motion to

11  dismiss and summary judgment was that the similarities between the two works

12  were not protectible. These four interrogatories on their face go to the

13  Screenwriters' prima facie case on substantial similarity. None of these

14  interrogatories addresses the elements of any affirmative defense.

15      Even so, the Court should not compel *four* overlapping and duplicative

16  interrogatories under any scenario. All discovery is subject to the rule of

17  proportionality. *See, e.g., Hernandez v. Barr*, 2019 WL 13019923, at *5 (C.D. Cal.

18  Mar. 25, 2019) ("[t]he 2015 amendments to Rule 26(b)(1) emphasize the need to

19  impose reasonable limits on discovery through increased reliance on the common-

20  sense concept of proportionality") (internal citation omitted). Disney's four

21  duplicative interrogatories fail this "common-sense concept of proportionality" in

22  spades on this record. To start, the Court has already found a triable issue based on

23  an extensive record. More discovery on this subject only serves to multiply the

24  burden of the extensive pretrial record here.

25      Disney also fails to address each interrogatory individually. This omnibus

26  approach is by itself is wrong. "[W]hen the dispute concerns individual objections,

27  such a vagueness, overbreadth, or privilege, relating to individual discovery

28  requests, and the specific language of the request and the response matter, the Joint

Stipulation's presentation prevents the Court from efficiently and effectively considering the parties' respective positions' to the extent it uses 'an 'omnibus' 'legal argument' relating to all disputed discovery requests, rather than following each request at issue." *See Williams v. J.B. Hunt Transport, Inc.*, 2021 WL 3265337, at *8 (C.D. Cal. May 19, 2021)). Indeed, Disney offers no showing as to why it needs four separate "all facts" contention interrogatories on the same subject. And "all facts" contention interrogatories are overbroad and burdensome. *See Heredia v. Sunrise Senior Living LLC*, 2020 WL 12584277, at *5 (C.D. Cal. July 20, 2020) (collecting cases).

Even if Disney's interrogatories fell within the scope of Phase 2 discovery, Disney's motion also conflicts with established law and its own position on contention interrogatories. "Indeed, it is generally accepted that courts '[will] not order responses to contention interrogatories until late in the pretrial period' and that 'the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period.'" *Open Text Inc. v. Northwell Health, Inc.*, 2020 WL 6050595, at *4 (C.D. Cal. Aug. 6, 2020) (quoting *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985)); *see also* Fed. R. Civ. P. 33(a)(2), 1970 Advisory Committee Notes ("[T]he court is expressly authorized to defer an answer."). And Disney took this exact position to refuse to answer interrogatories served by the Screenwriters. For instance, Disney objected to the Screenwriters' interrogatory about damages: "To the extent this Interrogatory asks WDP to state its position regarding the amount of any profits that should be apportioned to allegedly infringing or non-infringing aspects of the Film, then WDP objects that this Interrogatory calls for a legal conclusion, is premature, and the subject of expert testimony." *See, e.g.*, Hilvert Decl. Ex. I at 24:1-5. That Disney refuses to provide its "position" on damages-related information—a proper subject for Phase 2—refutes Disney's demand that the Screenwriters answer its contention interrogatories now. Disney's requested relief is just make-work while the parties

undertake the discovery that was postponed for Phase 2. The Court should deny Disney's motion.

## VI. PROPOSED RESOLUTIONS DURING THE CONFERENCE OF COUNSEL

### A. WDP's Proposed Resolution

WDP initially addressed these contention interrogatories in a letter on February 28, 2022. *See* Segall Decl. ¶ 16 & Ex. 11. WDP's letter requested that Plaintiffs provide complete responses to Interrogatories 4, 5, 6, and 8. At the conference of counsel on March 9, 2022, WDP reiterated that request and explained that this should not be difficult given that Plaintiffs had set forth lists of similarities in numerous places over time, and that WDP's request for was for Plaintiffs to commit to a single, comprehensive list of similarities in a verified written discovery response so the parties could narrow the issues for trial. *Id.* ¶ 17. Plaintiffs responded that they believed they had no obligation to answer the interrogatories. *Id.* Finally, WDP sent a second meet-and-confer letter on March 11, 2022, reiterating its request for full and complete responses to these four interrogatories. *Id.* ¶ 18 & Ex. 12. By email dated March 11, 2022, Plaintiffs' counsel stated that Plaintiffs "will stand on our objection that the current phase of discovery excludes the issue of substantial similarity." *Id.* ¶ 19 & Ex. 13.

### B. Plaintiff Screenwriters' Proposed Resolution

Disney's position at the conference of counsel was a take-it-or-leave it position. It offered no compromise. Given the plain text of the parties' stipulation, fact discovery in this phase two does not address substantial similarity. Because Disney's discovery addresses substantial similarity, Disney's requests are improper and will lead to additional pre-trial litigation and motion practice that the bifurcation stipulation and order was designed to prevent.

DATED:  March 29, 2022          ROBINS KAPLAN LLP

                                By:  _____/s/ Patrick M. Arenz_____
                                *Attorneys for Plaintiffs Arthur Lee Alfred II
                                and Ezequiel Martinez, Jr.*

DATED:  March 29, 2022          MUNGER, TOLLES & OLSON LLP

                                By:  _____/s/ Jordan D. Segall_____
                                *Attorneys for Defendant Walt Disney Pictures*