1 | **LOWE & ASSOCIATES, PC**
Steven T. Lowe (SBN 122208)
2 | steven@lowelaw.com
Aleksandra Hilvert (SBN 258463)
3 | aleksandra@lowelaw.com
8383 Wilshire Blvd., Suite 1038
4 | Beverly Hills, California 90211

5 | **ROBINS KAPLAN LLP**
Patrick M. Arenz
6 | (MN Bar No. 0386537) (pro hac vice)
PArenz@RobinsKaplan.com
7 | Brandon J. Pakkebier
(MN Bar No. 0400691) (pro hac vice)
8 | BPakkebier@RobinsKaplan.com
800 LaSalle Avenue
9 | Suite 2800
Minneapolis, Minnesota 55402
10 | Telephone: 612 349 8500
Facsimile: 612 339 4181

*Attorneys for Plaintiffs*
*Alfred Lee Alfred, II, et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR LEE ALFRED, II et al., | Case No. 2:18-CV-08074-CBM-ASx |
| Plaintiffs, | **DISCOVERY MOTION** |
| v. | **PLAINTIFFS' LOCAL RULE 37-2.3 SUPPLEMENTAL MEMORANDUM OF LAW** |
| WALT DISNEY PICTURES, | |
| Defendant, | Judge: Hon. Alka Sagar |
| | Hearing Date: April 26, 2022
Time: 10:00 a.m.
Place: Roybal Ctrm. 540 |
| | Pretrial Conf.: January 9, 2023
Trial Date: February 7, 2023
Discovery Cutoff: June 27, 2022 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' LOCAL RULE 37-2.3
SUPPLEMENTAL MEMO OF LAW

2:18-CV-08074-CBM-ASX

# Introduction

Disney's response to the Plaintiff Screenwriters' Motion to Compel (Dkt. No. 228) tries to invert a straightforward and unburdensome discovery request into a trial on the merits. Yet the Screenwriters need the requested financial information—both on the sequel films and pre-2014 on the original film—to prepare their case and expert analysis. Without any dispositive authority to the contrary, Disney's relevance objections just try to short-cut and prevent their ability to conduct discovery. The Court should grant the Screenwriters' motion.

## I. Disney's financial information about the sequels is discoverable under both a hypothetical license and actual damages theory.

### A. Disney's argument about actual screenwriter credit mischaracterizes the hypothetical license standard.

Disney contorts the plain meaning of a *hypothetical* license. A plaintiff need not "show that a license would have been granted" because "[h]ypothetical-license damages *assume* rather than require the existence of a willing seller and buyer." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087-88 (9th Cir. 2014). Indeed, that is the entire point of a *hypothetical* license: "The very word 'hypothetical' indicates that damages may be awarded in the absence of an actual license." *Oracle*, 765 F.3d at 1088. That Plaintiffs were not ultimately hired to write *Curse of the Black Pearl* or ultimately given screenwriter credit is immaterial. If it were, no screenwriter would ever meet the "hypothetical" license standard because they would have an "actual" license with the infringer. The law requires no greater showing than plaintiffs have made—especially as a threshold matter for discovery—and Disney has offered no case law to the contrary. The Court should compel Disney to provide financial information on the Pirate film sequels (which the Screenwriters will accept on an Attorneys' Eyes Only designation under the protective order).

### B. The Screenwriters' indirect profits theory is not speculative.

Disney's quibbles with the Screenwriters' indirect profits theory is also inappropriate for a discovery dispute for two reasons. First, Disney's submission conflates the standard for discovery with the later burden of proof on the merits. For discovery of indirect profits, Disney ignores that the Screenwriters need only show a *possibility* of a nexus for discovery. *Charter Sch. Capital, Inc. v. Charter Asset Mgmt. Fund, LP*, 2015 WL 12655550, at *3 (C.D. Cal. Mar. 9, 2015) (citing *Sys. Am., Inc. v. Rockwell Software, Inc.*, 2007 WL 1593219, at *1 (N.D. Cal. June 1, 2007)). None of Disney's authorities is to the contrary. *Polar Bear* and *Wall Data* "do[] not stand for the principle that *discovery* into damages should be precluded when the causal nexus may turn out to be weak." *Charter Sch. Capital*, 2015 WL 12655550, at *3.[1]

Second, Disney is wrong to frame the question as whether a sequel infringes the original screenplay. If that were the test, then the Screenwriters would have a right to *direct* profits for the infringement. Indeed, even though indirect profits for a sequel may not be "itself an infringing work," because "interest in the [first] motion picture elevated the public's interest in the [sequel], some profits from the [sequel] may have been indirectly attributable to the infringement of the plaintiff's screenplays." *Hendricks v. DreamWorks, LLC*, 2007 WL 9705916, at *3 (C.D. Cal. Nov. 20, 2007) (citing *Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 589, 592 (W.D.N.Y. 1996)). As a result, and contrary to Disney's argument, *Burns* does reflect the state of the law in the Ninth Circuit. *See also Charter Sch. Capital*, 2015 WL 12655550, at *3 (compelling production of documents based on *Burns*, noting that "but for the success of the motion picture that purportedly was based on the screenplays," follow-on works would not exist). *Salinas* is therefore also

---

[1] *Sobhani* is distinguishable for this and other reasons. *See Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234, 1238 (C.D. Cal. 2003) (analyzing *merits* of a derivative work argument at summary judgment, rather than analyzing the issues of damages in a copyright case, nor is it a discovery dispute).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' LOCAL RULE 37-2.3
SUPPLEMENTAL MEMO OF LAW

- 2 -

2:18-CV-08074-CBM-ASX

1  distinguishable because the plaintiff did not "first offer reasons why he would be
2  entitled to indirect profits beyond mere speculation." *Salinas v. Procter & Gamble*
3  *Co.*, 2020 WL 8455187, at *2 (C.D. Cal. Dec. 4, 2020). The Screenwriters here
4  have offered that nexus sufficient for discovery and exceeded any speculation about
5  it: but-for the success of the first Pirates film, the sequels would not exist. And the
6  sequels utilize the same main characters and other key elements from the original
7  film. That is the entire point of a franchise. Nor is there a legitimate question of
8  burden, as the Screenwriters' seek information that Disney maintains in the
9  ordinary course of business.

### II. Disney's pre-2014 financial information is relevant to both the Screenwriters' claims and Disney's equitable estoppel defense.

Disney misstates the law in its submission. While courts may under some circumstances "deny discovery of matter . . . that occurred before an applicable limitations period," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). Disney omits the rest of *Oppenheimer's* holding. If "the information sought is otherwise relevant to issues in the case," then one should *not* deny discovery, even discovery outside the limitations period. *Id.* & n.15. Here, the pre-2014 financial information for the original film is relevant for multiple reasons.

Pre-2014 financial data is relevant first to what is commonly referred to as Hollywood accounting. That "Plaintiffs do not identify any accounting problem or inconsistency in the data that WDP has provided," (Dkt. No. 228 at 58:26-28), is *because* Disney has not produced financial information underlying it. The Screenwriters cannot know what they do not know. Without a way to verify the complete data set (as is elementary in any damages analysis in complex litigation), the Screenwriters are left without the ability to perform their analysis on the merits.

Pre-2014 financial information is also relevant to Disney's equitable estoppel defense. To prove that defense, Disney must show "detrimental reliance." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1977 (2014). Although Disney

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' LOCAL RULE 37-2.3
SUPPLEMENTAL MEMO OF LAW
- 3 -
2:18-CV-08074-CBM-ASX

vows to not affirmatively rely on consequent loss before 2014 to prove its equitable estoppel defense, (Dkt. 228 at 59:9-13), that does not moot the relevance of the pre-2014 information. How Disney chooses to prove its defense does not limit how the Screenwriters may respond to defeat it. The pre-2014 financial information will refute any detriment that Disney has suffered. If anything, the timing of the lawsuit has benefited Disney because it will enjoy profits from the hundreds of millions of dollars generated from the original Pirates film that otherwise would be subject to damages for the Screenwriters' claim.

## Conclusion

This is a discovery dispute, not a merits dispute. Financial information—both for the sequel movies, and those pre-dating 2014—is relevant, well within Disney's control, and not burdensome to provide under the Court's protective order. The Court should compel Disney to produce that information.

Dated: April 12, 2022

Respectfully submitted,

By: */s/ Patrick M. Arenz*
**ROBINS KAPLAN LLP**
Patrick M. Arenz (pro hac vice)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' LOCAL RULE 37-2.3
SUPPLEMENTAL MEMO OF LAW

- 4 -

2:18-CV-08074-CBM-ASX